UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, ) ) ) | Civil No. 1:07-cv-01646 |
| ) ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, ) ) | |
| vs. ) ) | |
| RICHARD (DICK) L. OLVER, et al., ) ) | |
| Defendants, ) ) | |
| – and – ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, ) ) ) | |
| Nominal Defendant. ) ) | |
| ─────────────────────────────── ) | |

**THE CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM'S MOTION TO CONSOLIDATE RELATED ACTIONS AND APPOINT LEAD DERIVATIVE COUNSEL**

**Table of Contents**

|  |  |  | Page |
|---|---|---|---|
| I. | | INTRODUCTION | 1 |
| II. | | AUTHORITY | 2 |
| | A. | Related Stockholder Derivative Actions Should Be Consolidated | 2 |
| | B. | Plaintiff's Selection of a Single Lead Derivative Counsel Serves Important Functions and Should Be Approved | 4 |
| III. | | CONCLUSION | 7 |

Pursuant to Rule 42 of the Federal Rules of Civil Procedure, plaintiff The City of Harper Woods Employees' Retirement System (the "Retirement System") submits this Motion for Consolidation of Related Actions and Appointment of Lead Derivative Counsel.

## I.     INTRODUCTION

On September 19, 2007, the Retirement System, a substantial long-term shareholder of BAE Systems plc ("BAE" or the "Company"), filed this stockholder derivative action on behalf of the Company against its entire Board of Directors and several of its present and former officers and directors alleging intentional, reckless and/or negligent breaches of their fiduciary duties of care, control and candor, involving illegal, improper and/or *ultra vires* conduct, including causing BAE to violate the laws of the United States and international business conduct codes and conventions relating to honest trade and business practices by making, or permitting to be made, improper and/or illegal bribes, kickbacks and other payments.  Also named as defendants are Prince Bandar Bin Sultan ("Bandar"), PNC Financial Services Group, Inc. ("PNC"), legal successor by merger to Riggs National Corporation/Riggs Bank, N.A. ("Riggs"), and three former Riggs executives and controlling shareholders, which were, respectively, the primary recipient or beneficiary of the bribes, payoffs and improper payments and the primary intermediary via which these Bandar payments were laundered, actively concealing them from government regulators and BAE's own auditors.  BAE is a global corporation organized under the laws of the United Kingdom.  This action is the first and the only action seeking this relief for the Company.

By this motion, the Retirement System seeks: (i) the consolidation of any other stockholder derivative actions that arise out of the same or substantially related course of conduct, whether later-filed in this District or transferred here from another district, and (ii) the appointment of Coughlin Stoia Geller Rudman & Robbins, LLP ("Coughlin Stoia") as Lead Derivative Counsel and Cuneo Gilbert & LaDuca, L.L.P. and the Law Offices Of Roger M. Adelman as Co-Liaison Counsel for

plaintiff.  The Retirement System seeks this consolidated lead counsel structure in order to assure that a significant BAE stakeholder is placed in control of this important shareholder action, litigation-related costs are reduced and efficiency is increased.  Essentially, by this motion the Retirement System seeks a defined structure that will allow for the effective and efficient prosecution of this stockholder derivative action, and of any later-filed, substantially related actions, through counsel it has selected and can monitor and direct.

The Retirement System believes it would be advantageous for the Court to approve a leadership structure that permits it to direct the prosecution of this important case through its selected counsel.  Such a structure is not only efficient, but it will also allow the designated Lead Derivative Counsel to capitalize on the knowledge and resources of the other plaintiff's lawyers and to avoid waste, inefficiency and duplication of effort in the event additional substantially-related stockholder derivative actions are filed that arise out of the same or substantially-related misconduct as alleged in this action.  As Judge Leon of this District held appointing Coughlin Stoia's lawyers lead counsel in the Fannie Mae Derivative Litigation currently pending in this Circuit, where stockholder derivative actions are instituted on behalf of large, publicly-traded companies with hundreds, if not thousands, of shareholders, "a leadership structure is necessary to provide for an orderly litigation."  *Horn v. Raines*, 227 F.R.D. 1, 3 (D.D.C. 2005).  In light of the geographic dimensions and legal complexity of this case, plaintiff Retirement System requests that a consolidated lead counsel structure be established forthwith to ensure the appropriate resources and experience required to prosecute this important action are secured.

## II.     AUTHORITY

### A.     Related Stockholder Derivative Actions Should Be Consolidated

Pursuant to Federal Rule of Civil Procedure 42, the Retirement System seeks an order consolidating this action with any other stockholder derivative actions that arise out of the same or substantially related conduct as has been alleged in its action, later filed in this District or transferred

here from another district. The power to order consolidation prior to trial falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Fed. R. Civ. P. 42(a) provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990) ("Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate actions for trial when there are common questions of law or fact to avoid unnecessary costs or delay."); *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970) (same). A court has discretion to consolidate related cases, which involve common questions of fact and law under Fed. R. Civ. P. 42(a), "under the policy that considerations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd*, 435 F.2d at 204.

Especially where stockholder actions are brought on behalf of large, publicly-traded companies, consolidation alleviates the "needless duplication of time, effort, and expense on the part of the parties and the Court" that multiple filings and protracted leadership battles may entail. *Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *6 (N.D. Ga. Oct. 1, 2004). "[W]ithout consolidation there is a significant risk of duplicative efforts and expenses on the part of the parties." *Horn*, 227 F.R.D. at 3. Where, as here, consolidation is appropriate and desirable, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits. *Id.*; *see also Dollens v. Zionts*, No. 01 C 5931, 2001 U.S. Dist. LEXIS 19966, at *5 (N.D. Ill Dec. 4, 2001) (same); *Millman*, 2004 U.S. Dist. LEXIS 20113, at *7 (same). Thus, any later-filed (or subsequently

transferred) actions that arise from the same course of conduct should be consolidated with this action.

### B. Plaintiff's Selection of a Single Lead Derivative Counsel Serves Important Functions and Should Be Approved

To ensure its ability to oversee and direct the prosecution of this important shareholder litigation, the Retirement System also seeks an order appointing a single lead counsel structure in the Consolidated Action.

As Judge Harmon pointed out in appointing Coughlin Stoia lawyers as sole lead counsel the Enron securities litigation, "it is centrally important to the litigants on both sides and to this Court, especially because there are so many parties involved . . . that the discovery process not disintegrate into chaos and harassment." *In re Enron Corp. Sec. Litig.*, 206, F.R.D. 427, 451 (S.D. Tex. 2002). *See generally In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 176 (D.N.J. 1999) ("[T]he approval of multiple lead counsel may engender inefficiency in class action litigation. The potential for duplicative services and the concomitant increase in attorneys' fees works against the approval of multiple lead counsel.");[1] *Singer v. Nicor, Inc.*, No. 02 C 5168, 2002 U.S. Dist. LEXIS 19884, at *4 (N.D. Ill. Oct. 16, 2002).

The Retirement System has selected experienced counsel, Coughlin Stoia, to serve in the lead counsel role, which if appointed Lead Derivative Counsel, would permit it to coordinate and draw upon the efforts of other counsel as it deems appropriate and to prevent any duplication of effort and costly, drawn out leadership battles that may otherwise ensue absent such an order. The leadership structure requested here, which vests the decision-making and responsibility for the prosecution of this and any other substantially-related action in the hands of a single, engaged shareholder plaintiff with a streamlined lead counsel structure, should be entered for the same efficiency reasons that

---

[1]  Citations and footnotes are omitted and emphasis is added unless otherwise noted.

militate in favor of consolidation of this action with any later-filed/transferred shareholder actions arising out of the same course of conduct.

The decision regarding appointment of Lead Derivative Counsel is placed squarely within the discretion of the Court. *Dollens*, 2001 U.S. Dist. LEXIS 19966, at \*5. The principle that guides the Court's decision is whether appointing plaintiff's selection of lead counsel will best serve the interests of the Company and its shareholders. *Millman*, 2004 U.S. Dist. LEXIS 20113, at \*8. In making this determination, courts consider, among other things, "experience and prior success record, the number, size, and extent of involvement of represented litigations, the advanced stage of proceedings in a particular suit, and the nature of the causes of action alleged." 3 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* §9.35, at 388 (4th ed. 2002). Courts also consider the quality of the pleadings and the vigor with which lawsuits have been prosecuted. *Dollens*, 2001 U.S. Dist. LEXIS 19966, at \*12; *Horn*, 227 F.R.D. at 3.

The Retirement System's selected counsel, Coughlin Stoia, is uniquely situated to serve as Lead Derivative Counsel. Coughlin Stoia is highly experienced in the field of shareholder litigation. It is a "law firm with exceptional resources and capability to prosecute this action." *Enron*, 206 F.R.D. at 454. Appointing Coughlin Stoia lead counsel in the Fannie Mae Shareholder Derivative Litigation, Judge Leon found the firm's lawyers are "experienced counsel that have had success with this type of litigation," and specifically that its lawyers "have represented vigorously institutional plaintiffs, with significant financial interests in the outcome of the litigation, and have prosecuted the litigation with well-plead and thorough pleadings." *Horn*, 227 F.R.D. at 3.

The detailed 89 page, 158 paragraph complaint plaintiff directed Coughlin Stoia to draft and file in this action demonstrates the diligence, acumen and legal ability its selected counsel will bring to bear in this action. The Coughlin Stoia lawyers prosecuting this action have successfully litigated numerous other shareholder derivative actions, including serving as lead counsel in many of the

option backdating derivative actions pending around the country. The firm is uniquely qualified to prosecute this particular shareholder derivative action on behalf of BAE, an English company, having been responsible for the successful prosecution of other shareholder derivative actions prosecuted on behalf of other British companies in the United States, including the Royal Dutch Shell Derivative Litigation in the District of New Jersey in 2005 (*Unite National Ret Fund, et al., v. Watts*, No. 04-CV-3603-(DMC) (MF) (D.N.J., filed July 28, 2004) and the BP plc Derivative Litigation currently pending in Alaska State court where plaintiffs recently defeated a motion to dismiss. *See In re BP P.L.C. Derivative Litig.*, No. 3AN-06-11929 CI, Order Denying Motion to Dismiss (Super. Ct. Alaska 3d Dist. May 18, 2007), a copy of which is submitted herewith as Ex. A .

Coughlin Stoia's diligent investigation and the subsequent thoroughness of its pleadings in this case, together with its history of conscientious prosecution, more than justify the Retirement System's belief that its counsel is uniquely qualified to prosecute in this case by serving as Lead Derivative Counsel and guiding this complex action to the best possible result for BAE and its shareholders. In sum, because Coughlin Stoia's appointment will allow for a single Lead Counsel who is responsible to the Court and will permit the Retirement System to oversee and direct the prosecution of this important action and to channel the efforts of other counsel who's experience in representing plaintiffs in shareholder matters can be utilized and drawn upon in an effective and efficient manner, Coughlin Stoia should be appointed as Lead Derivative Counsel.

## III.    CONCLUSION

For the above stated reasons, The Retirement System respectfully requests the Court enter an order: (i) consolidating with this action any substantially related stockholder derivative actions later-filed in this District or subsequently transferred from another district, and (ii) approving its selection of Lead Derivative Counsel.

DATED:  September 20, 2007

Respectfully submitted,

LAW OFFICES OF ROGER M. ADELMAN
ROGER M. ADELMAN (DC Bar # 056358)


_____s/ ROGER M. ADELMAN_____
ROGER M. ADELMAN

1100 Connecticut Ave., NW, Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)

Proposed Co-Liaison Counsel

COUGHLIN STOIA GELLER RUDMAN
    & ROBBINS LLP
DARREN J. ROBBINS
MARY K. BLASY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Proposed Lead Counsel

CUNEO GILBERT & LaDUCA, L.L.P.
JONATHAN W. CUNEO(DC Bar # 939389)
WILLIAM H. ANDERSON (DC Bar # 502380)
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-1813 (fax)

Proposed Co-Liaison Counsel

VANOVERBEKE MICHAUD & TIMMONY, P.C.
MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Attorneys for Plaintiff

S:\CasesSD\BAE Derivative\MOT00045678.doc

# EXHIBIT A

## IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

)
)
In re BP P.L.C. DERIVATIVE )
LITIGATION )
_____)

JD

MAY 1 8 2007

Lead Case No. 3AN-06-11929CI

## **ORDER DENYING MOTION TO DISMISS**

Defendants have moved to dismiss the Complaint for three reasons: 1) failure to state a valid derivative claim under English law; 2) lack of jurisdiction over the Defendants based upon personal jurisdiction, general jurisdiction and specific jurisdiction; and 3) *forum non conveniens*. Plaintiffs argue: 1) English law on derivative actions is in a state of transition which will set aside the common law and allow derivative actions as of October 2007; 2) Defendants have waived challenges to jurisdiction and *forum non conveniens* based upon their conduct in this litigation; 3) British Petroleum p.l.c.'s (BP or Company) conduct and the conduct of its subsidiary, British Petroleum Exploration (Alaska) Inc. (BPXA) in Alaska establishes jurisdiction; 4) Alaska statutes concerning corporations doing business in Alaska should apply to British Petroleum; and 5) conflict of laws principles mandate the application of Alaska law to this case.

## **Summary of Facts:**

This is a stockholder derivative action on behalf of BP against the BP Board of Directors (Board), several of its present or former officers and directors, and officers and directors of US subsidiaries of BP. Many of the individual Defendants and BP assert they are citizens of countries other than the US or states other than Alaska. Plaintiffs are stockholders of BP, including retirement/pension funds and individuals. Three Plaintiffs assert they are residents of Alaska. Plaintiffs allege intentional, reckless and/or negligent breaches of fiduciary duties of care and candor by Defendants caused BP and

three of its US subsidiaries to violate: 1) environmental protection regulations and laws; 2) worker and workplace safety regulations and laws; and 3) fair and honest trade practices regulations and laws. The United States subsidiaries involved in the action are BP America, Inc., The Standard Oil Company, and BPXA.

Plaintiffs assert: BP is the largest non-US based company listed on the New York Stock Exchange and the largest oil and gas producer in the US. BP is the second-largest liquids pipeline company in the US, operating about 10,000 miles of pipeline. BP is the second largest refiner, fuels marketer, and gasoline marketer in the US. BP commenced its operations at Prudhoe Bay on Alaska's North Slope in 1969 as part-owner, and sole operator, of the largest oil field in the US. The Company employs about 34,000 people in the US, and has offices in Alaska as well as across the country. The Company's operations in the US, including extensive ones in Alaska, are its most substantial anywhere in the world.

Plaintiffs allege that Defendants, in an effort to distance BP from the practices and image of other oil companies, undertook a massive campaign, targeted at shareholders and the public, to portray the Company under their leadership as one that is progressive, ethical, environmentally sensitive, focused on safety and aware of the impact its operations have on both its own workers and the communities in which it operates. Plaintiffs allege Defendants also stressed that BP was achieving substantial profits due to the skillful management of the Company by the Board. Plaintiffs state that the reality differed from those representations. Defendants allegedly permitted, or even encouraged, improper and illegal activities targeted at cutting costs, boosting revenues, and inflating the results reported from the Company's operations. These practices were especially prevalent in BP's North American operations and resulted 1) in a reduction (or elimination) of expenditures on plant and equipment maintenance for both refineries and pipelines; 2) in a decrease of mandatory inspections; and 3) in unfair and illegal trade practices, which included price manipulation of propane, unleaded gas, and crude oil.

BP's operating costs decreased and its revenues increased. Plaintiffs allege these short term financial successes came at the price of the long-term interest held by BP's true owners, the Company's shareholders. Defendants' actions, seen by Plaintiffs as imprudent, reckless, negligent and illegal, allegedly created dangerous conditions for BP employees, damaged the Company's reputation and undermined its financial stability.

Plaintiffs assert Defendants gave precedent to their own short-term financial gains and breached their fiduciary duties to the Company and its shareholders and committed corporate waste. Plaintiffs allege those management practices resulted in the 2006 crude oil leak at the Prudhoe Bay oil field. Plaintiffs assert the leak was caused by inadequate pipeline maintenance, decreased inspections, inadequate worker training and a lack of emergency response plans.

Plaintiffs state that Defendants' "grossly negligent – if not intentional – failure" to perform their fiduciary duties to the Company and its assets have exposed BP to hundreds of millions of dollars in damages, remedial costs and loss of corporate image and reputation. Plaintiffs allege Defendants have failed to properly react to "warnings" about the inadequate operational aspects of BP, including a federal investigation and criminal prosecution against BPXA in 1997 – 1999 for operations at Endicott Island.

## Relief Requested in Complaint

Plaintiffs ask the Court to award money damages against all Defendants; to direct all Defendants to account for all damages caused; for all profits, special benefits, and unjust enrichment given to the Board to be placed in a constructive trust; to direct BP to reform and improve its corporate governance and internal control procedures to comply with the Sarbanes-Oxley Act of 2002[1]; and to award punitive damages.

---

[1] "The Act mandated a number of reforms to enhance corporate responsibility, enhance financial disclosures and combat corporate and accounting fraud, and created the "Public Company Accounting Oversight Board" to oversee the activities of the auditing profession." http://www.sec.gov/about/laws.shtml

## Procedural Status

Plaintiffs filed their Amended Complaint on 10/09/2006 and sought to remove the case to US federal court on October 24, 2006. All Defendants filed notices of consent to removal from state court. Several motions were filed in the federal court before the parties stipulated to return the case to state court on 12/11/2006. Defendants' counsel filed to appear *pro hac vice* in state court. On 12/18/06 Defendants filed a Motion to Disqualify Plaintiffs' counsel. That motion was argued on April 9, 2007. This motion was filed by Defendants on February 13, 2007. This motion was argued on April 24, 2007.

## Arguments of Parties in This Motion

### Defendants

Defendants argue that the Complaint should be dismissed for three independent reasons.

1. It fails to state a valid derivative claim under English law, which should govern this case under choice of law principles, because BP is incorporated under the law of England and Wales. English law generally does not allow for shareholder derivative claims on behalf of companies and their subsidiaries in instances where the alleged wrongdoing could be ratified by a majority of shareholders. Defendants argue that shareholders could ratify breaches of fiduciary duty and that the limited exceptions provided for by English law do not apply to the case before the Court. Defendants also state that English law does not allow for "double derivative claims," in which shareholders of the parent company bring derivative actions on behalf of its subsidiaries, or the boards or managers of those subsidiaries.

2. This Court lacks: a) personal jurisdiction over BP, because the company is headquartered in London; b) general jurisdiction over former and current BP directors because not one of them is an Alaska domiciliary, and none has engaged in substantial activities in the state; c) general jurisdiction over all but four Defendants who are directors and officers of BP

subsidiaries, as they are not Alaska domiciliaries and have not engaged in substantial activities in the state; and d) specific jurisdiction over Defendants because Plaintiffs do not allege any contacts between Defendants and Alaska which are the basis for this action. Defendants argue that the alleged conduct which led to this action took place in London (in BP's case) and in Illinois (in the subsidiaries' case).

3. The doctrine of *forum non conveniens* warrants dismissal. Defendants argue that the courts of England represent an adequate forum for the resolution of this case; the case is governed by English law; England has the greatest interest in the action because it involves alleged breaches of duty of the Board of an English company; and the convenience of the parties and witnesses would be best served if the action could be litigated in the English forum.

4. In their Reply, Defendants assert the State of Alaska has no interest in the real crux of this case – whether or not the Board breached its duties to BP and whether or not BP will recover for those breaches.

## Plaintiffs

Plaintiffs argue that the Complaint should not be dismissed for the following reasons:

1. All Defendants, based on their litigation conduct prior to filing this motion, have waived and forfeited any challenges to jurisdiction, venue, and *forum non conveniens*. Plaintiffs argue that this conduct included removing the action to federal court, remanding the action, and asking the Court to disqualify Plaintiffs' counsel.

2. BP is subject to this Court's jurisdiction because it owns 100% of its US subsidiaries, including its Alaska operations; the substantial misconduct alleged in the Complaint was directed at Alaska; and the significant economic and non-economic damage that BP suffered occurred in Alaska (and the Lower 48).

3. The domicile of one of the individual Defendants is Alaska.

4. Defendants have not met their burden of proving that Alaska constitutes a *forum non conveniens*. Plaintiffs argue that Defendants have not produced evidence to support the five factors required by Alaska law to balance the doctrine's considerations. Plaintiffs argue that the balance of "private" and "public" interests weigh in favor of maintaining the action in this forum because: a) the vast majority of the evidence is located in the US; b) the majority of the witnesses are in the US or have significant US contacts, making it more expensive to litigate this case in England; c) Plaintiffs' choice of forum should be respected, as it does not pose an undue hardship on Defendants; d) Defendants do not meet their burden of showing that the judgment against Defendants will be unenforceable in England; and e) the State of Alaska has a strong interest in this action, as Defendants' conduct was directed at Alaska.

5. BP's substantial activities in Alaska through its subsidiary BPXA subject BP to jurisdiction in the State. Individual Defendants' conduct directed at Alaska and their contacts with the State subject them to jurisdiction of its courts.

6. English law concerning derivative actions is not settled, nor would it necessarily bar Plaintiffs' claims. Plaintiffs argue that Defendants' argument on English derivative actions common law is academic, as the common law rule has been repealed and replaced statutorily.

7. Alaska's Corporations Code applies on its face to all corporations doing business in the State, including foreign corporations.

8. Alaska's conflict of laws principles mandate the application of Alaska law because the State has the most contacts with the issues in this case.

## Legal Analysis

### 1) Choice of Law Considerations

#### "Internal Affairs" Doctrine

Defendants urge this Court to apply the "internal affairs doctrine", which concludes that "the rights of shareholders in a foreign company, including the right to sue derivatively, are determined by the law of the place where the

company is incorporated." Batchelder v. Kawamoto, 147 F.3d 915, 920 (9th Cir.Cal.1998) (referring to Hausman v. Buckley, 299 F.2d 696, 702 (2d Cir.1962); McDermott Inc. v. Lewis, 531 A.2d 206, 214-17 (Del.1987); Levine v. Milton, 219 A.2d 145, 147 (Del.1966); cf. CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987). See also Seghers v. Thompson, 2006 WL 2807203, at *4 (S.D.N.Y.2006) (Not Reported in F.Supp.2d); In re Tyco Intern., Ltd., 340 F.Supp.2d 94 (D.N.H.2004). "The internal affairs doctrine is equally applicable to double derivative claims brought on behalf of an American subsidiary. cf. Kostolany v. Davis, 1995 WL 662683, *1-3 (Del.Ch.1995) (applying Dutch law to determine a shareholder's right to bring double derivative claims because "plaintiff is a stockholder of the Dutch parent, not of the Delaware subsidiaries")". Id.

Based on Defendants' analysis, Plaintiffs' claims must fail as English law applies to this action. Under English common law, a plaintiff cannot bring a derivative suit for wrongs done to a company when such acts or omissions are capable of ratification by the majority of the shareholders. According to English law, breaches of fiduciary duty are capable of ratification. Defendants also argue that the three exceptions to the Rule do not apply in this case. The exceptions allow a shareholder to bring a derivative action when 1) the alleged wrong is *ultra vires*; 2) the validity of the transaction depends on the approval of the majority of the shareholders; or 3) the wrongdoers, who are in voting control, have profited at the expense of the Company through self-dealing. Plaintiffs' claims against BP would not be actionable under English common law and could not be brought in an English court. Defendants assert under the "internal affairs" doctrine, the claims against BP should be dismissed. Defendants acknowledge shareholders cannot ratify *ultra vires* acts by the Board and directors but fail to explain why alleged breaches of the laws of Alaska and/or the United States would not be considered *ultra vires*.

Even accepting the argument of Defendants, the causes of action against the US subsidiaries would still stand. The right of the BP shareholders to bring action against BP's American subsidiaries would be determined by the location of those companies' incorporation. It is alleged that BP America is incorporated in

Delaware. Delaware law recognizes double-derivative actions. See Sternberg v. O'Neil, 550 A.2d 1105 (Del. 1988). It is alleged that Standard Oil, a subsidiary of BP America, is a "resident" of Illinois. Illinois also recognizes double-derivative actions. See Powell v. Gant, 556 N.E.2d 1241 (Ill. App. 4th,1990). It is alleged that BPXA is a "resident" of Alaska, with its principal place of business in the State, but it is incorporated in Delaware. As noted, Delaware law allows double derivative lawsuits. The ability to bring double-derivative actions appears to be an issue of first impression in Alaska.

Not all state courts follow the "internal affairs" doctrine. Actions and recovery impossible under the law of the location of incorporation have nonetheless been allowed using the statutes of the state where a foreign corporation does business. Rest 2d Conf. §309. (The case summaries which follow are from §309 section of the Restatement.) Schwarz v. Artcraft Silk Hosiery Mills, 110 F.2d 465 (2d Cir.1940) (applying New York statute in action by stockholder and director of Delaware corporation against its officers for mismanagement and waste); In re Burnet-Clarke, Limited, 56 F.2d 744 (2d Cir.1932) (applying New York statute in action by trustee in bankruptcy of Maryland corporation against its directors for improper purchase by corporation of its own stock); German-American Coffee Co. v. Diehl, 109 N.E. 875 (N.Y.1915) (applying New York statute in action by New Jersey corporation against its directors for improper declaration of dividends); cf. Saracco Tank & Welding Co. v. Platz, 150 P.2d 918 (Cal.Ct.App.1944) (permitting recovery by creditor of Nevada corporation against its directors for improper distribution of corporate assets under California statute which, however, predicated liability on an act unauthorized by the local law of the state of incorporation). The US Supreme Court has cited German-American Coffee Co. with approval to illustrate the power of a state to regulate matters pertaining to foreign corporations. (See International Harvester v. Wisconsin Dep't. of Taxation, 322 U.S. 435 (1944)).

### Statute Overruling English Common Law

The parties note that a recently-enacted English statute, which becomes effective on October 1, 2007, has created a new cause of action that will allow derivative claims to "be brought only in respect of a cause of action arising from an actual or proposed act or omission involving negligence, default, breach of duty or breach of trust by a director of the company." *Companies Act 2006*, Ch. 46, § 260(3) (Eng.). That statute will make the causes of action available to shareholders in England identical to those available per Alaska law. The statute was enacted on 11/8/2006. Plaintiffs filed their Consolidated Amended Complaint on 01/11/2007. Plaintiffs' causes of action would be actionable under this new statute.

The statute does not state whether it applies retroactively. However, the statutory definition of "director" encompasses "former directors." Id. Certainly one implication of that definition is that as of October 1, 2007 "former" directors can be sued for acts or omissions which occurred at some point prior to October 1, 2007 when they were at the helm of the Company.

### Alaska Law and Conflict of Laws

No contractual agreement exists in this case from which a "choice of law" clause could be ascertained. The closest thing to it is the Charter BP/BPXA/AMOCO signed with the State of Alaska in 1999. The parties agreed that the Charter was governed by the law of Alaska and that BP Amoco p.l.c. acknowledged and consented "to the jurisdiction of any state or federal court within the State of Alaska for the purposes of enforcing its commitments under section IV of this Charter."[2] It is also unclear at this point if the ADRs held by Plaintiffs contain a choice-of-law provision.[3] If they do, that choice-of-law provision may govern this issue. See Batchelder v. Kawamoto, 147 F.3d 915, (9th Cir. Cal.1998).

---

[2] *Affidavit of Mary K. Blasy,* Exhibit F, at 13, §§ B, C.
[3] "The stocks of most foreign companies that trade in the U.S. markets are traded as American Depositary Receipts (ADRs). U.S. depositary banks issue these stocks. Each ADR represents one or more shares of foreign stock or a fraction of a share."
http://www.sec.gov/answers/adrs.htm

The Alaska Corporations Code provides that a foreign corporation authorized to do business in the State enjoys the same rights and privileges as a domestic corporation, and is subject to the same duties, restrictions, penalties, and liabilities as a domestic corporation of like character. AS § 10.06.740. The Corporations Code allows shareholder's derivative actions in Alaska:

> (a) An action may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by a holder of shares of the corporation, of voting trust of the corporation, or of a beneficial interest in the shares of the corporation. AS § 10.06.435.

The Code applies to all corporations doing business in the State, both foreign and domestic. The statute provides all companies notice that they may be sued derivatively in the State of Alaska.

Alaska's conflict of laws principles are consistent with and resolved under the Restatement (Second) of Conflict of Laws. See Long v. Holland America Line Westours, Inc. 26 P.3d 430 (Alaska 2001). The Restatement states:

> [t]he local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, *except where*, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied." Rest 2d Confl. § 309 (emphasis added).

The principles stated in the Restatement and the applicable considerations in this case are: (a) the needs of the interstate and international systems. Interstate and international systems must rely on corporations to be good corporate citizens. Laws which hold corporations liable for their wrongdoing facilitate the harmonious flow of commerce; (b) the relevant policies of the forum. The policies of Alaska favor holding Defendants accountable for their alleged acts and omissions which have an impact within the state. Alaska policies also favor allowing Plaintiffs to sue in their chosen forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue. While England does have an interest in policing the internal affairs of its corporations, Alaska's interest here is dominant, as it is the *situs* of the consequences of Defendants' alleged

wrongdoing. Moreover, the corporate law of England currently would not allow these actions to proceed. The legislative and public policy of England is undergoing change as reflected by the referenced statute effective in October 2007. Although that statute may apply retroactively, English courts have not had an opportunity to interpret it. Notably, Defendants argue that it is definitely not retroactive. Regardless of whether the statute is retroactive, Alaska has a significant interest in the management of BP when those decisions detrimentally impact the nature and quality of operations in Alaska; (d) the protection of justified expectations.

The Charter signed between the State and BP indicates state courts have jurisdiction interpreting that Charter. The Corporations Code of Alaska clearly governs foreign corporations operating in Alaska. BP can hardly be surprised that Alaska law governs. BP and its subsidiaries have availed themselves of the laws of this State and could justifiably expect to be held accountable under the same laws which have allowed them to make substantial profits in this State; (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. An Alaska state court will be able to effectively apply state law. See Rest 2d Confl. § 6.

"If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made." Id., Comment (e).

One of the purposes of the Alaska Corporations Code is to allow shareholders of a company, on behalf of that company, to redress alleged wrongdoing which harmed it. That purpose should be honored when considered together with the above public policy factors.

Alaska law is applicable to this cause of action.

## 2) Jurisdiction

### Personal Jurisdiction

The Court entered a previous order indicating it would reserve ruling on personal jurisdiction for those individual Defendants who raised that issue. However, after review of the law, the Court sets aside that order and will enter a ruling on personal jurisdiction. The Defendants' declarations concerning personal jurisdiction were considered.

The Alaska long-arm statute has been interpreted broadly as an attempt by the legislature to establish jurisdiction to the maximum extent permitted by due process. See Jonz v. Garrett/Airsearch Corp., 490 P.2d 1197 (Alaska 1971); Packard v. Cessna Aircraft Co., 366 F. Supp. 966 (D. Alaska 1973). State courts have jurisdiction over a foreign corporation that "is engaged in substantial and not isolated activities in the state, whether the activities are wholly interstate, intrastate, or otherwise." AS § 09.05.015(a)(1)(D). The Alaska Supreme Court has construed the statute "as having for its purpose the providing of a local forum to residents of the state who have a grievance against a foreign corporation growing out of its business activities within the state." Northern Supply, Inc., v. Curtis-Wright Corporation, 397 P.2d 1013, 1015 (Alaska 1965).

Constitutional due process is satisfied when a nonresident defendant has minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. Jonz , 490 P.2d 1197. The 9th Circuit uses the following factors when determining the sufficiency of contacts with the forum: 1) the nonresident defendant must purposefully avail himself of the privilege of conducting business in the forum, thereby invoking the benefits and protections of its laws; 2) the claim must arise from nonresident defendant's forum-related activities; 3) the exercise of jurisdiction must be reasonable. Insurance Co. of N. Am. v. Marina Salina Cruz, 649 F.2d 1266, 1270 (9th Cir. 1981).

The quality, rather than the quantity, of contacts matters when establishing personal jurisdiction. Jonz, 490 P.2d 1197. The occurrence of an injury in Alaska allegedly caused by an act or omission by a defendant outside of Alaska is itself a contact with the State. While insufficient on its own, few additional

contacts must be shown to satisfy due process requirements. Id. The Alaska Supreme Court has upheld jurisdiction in a case involving German and Alaska legal doctrine, documents, exhibits, witnesses and counsel; where the parties were both American and German; and where the original injury and the underlying litigation occurred in the state (despite parties' claims of inconvenience and unreasonableness). Volkswagenwerk v. Klippan, 611 P.2d 498 (Alaska 1980), cert denied, 49 U.S. 974, 101 S. Ct. 385, 66 L. Ed. 2d 236 (1980).

Plaintiffs assert BP owns 100% of its US subsidiaries, including BPXA.; that BP is Alaska's 6th largest employer, the largest investor and taxpayer, the owner of 47% of the Trans-Alaska pipeline; and that BP derives 10% of its worldwide oil production from Alaska. Defendants have not contested these allegations.

Plaintiffs allege that BPXA, BP's subsidiary in Alaska, is the corporate alter ego of BP. Using the test for a corporate alter ego articulated by the Alaska Supreme Court in Jackson v. Gen. Elec., 514 P.2d 1170, 1173 (Alaska 1973), Plaintiffs argue that BP and BPXA are essentially one entity. Plaintiffs state that: 1) BP owns all or most of the capital stock of BPXA; 2) a commonality exists between the directors and officers of BP and BPXA; 3) BPXA's earnings are reflected in BP's financial reports to determine the parent company's income; 4) BPXA has no other business besides that with BP, the parent Corporation, and has no assets except for those conveyed to it by BP; 5) BP characterizes BPXA internally and externally (on its website) as a division or department of BP; 6) BP uses the property of BPXA as its own; and 7) the management of BPXA does not act independently, but takes its orders from the BP Board. The Charter BP signed with Alaska further ties the parent Company to BPXA.

BP operates in the State pursuant to a 1999 Charter for the Development of the Alaskan North Slope. The Charter, entered into by BP, the State of Alaska, and ARCO was a condition of the merger between BP and ARCO and required the companies to make "substantial marketplace and community commitments to Alaska." Lord John Browne and Rodney Chase (for BP), Kevin Meyers (for ARCO), and Richard Campbell (for BPXA) bound the Company, and

themselves as fiduciaries, when they signed the Charter with the State. Browne and Chase are individual Defendants in this case.

The State of Alaska could sue BP under contract theories if there was non-performance under the Charter. BP made a number of environmental and other commitments in the Charter. Plaintiffs allege those commitments were not met as a result of the alleged conduct of the Company and its Board and that the conduct of the Company and Board caused the injuries leading to this action. Those commitments included North Slope spill response requirements, corrosion monitoring and cleanup of abandoned sites. BP also guaranteed that should any of its group companies or assignees fail to fulfill the terms of the Charter, BP Amoco would "cause that performance to be otherwise fulfilled." By consenting to assume responsibility for the acts or omissions of its subsidiaries, BP, as the parent Company, may have assumed liability for the actions of BPXA. See, Nerox Power Systems, Inc. v. M-B Contracting Co., Inc., 54 P.3d 791, n. 42 (Alaska 2002) (quoting Jackson, 514 P.2d 1170 at 1173). Imposition of liability on the parent is justified where "the two corporations are so closely intertwined that they do not merit treatment as separate entities." Id.

BP America, a subsidiary of BP and a Defendant, is incorporated in Delaware. BPXA is also incorporated in Delaware. Corporate case law from Delaware is instructive in evaluating whether BP and its subsidiaries should be subject to Alaska courts. A line of cases from Delaware has held that that "while the stock ownership of a Delaware subsidiary is not, without more, a sufficient contact upon which to predicate jurisdiction, that contact may be sufficient where the cause of action arises from the creation and operation of the Delaware subsidiary." Computer People, Inc. v. Best Intern. Group, Inc., 1999 WL 288119, at *9 (Del.Ch., 1999) (Not Reported in A.2d). The Delaware Supreme Court has held that "a foreign corporation cannot use the laws of this State to govern the operations of its subsidiary and then, in a suit relating to the operation of the subsidiary, claim that jurisdiction in Delaware offends traditional notions of fair play." Id., n.35 (quoting Sternberg v. O'Neil, 550 A.2d 1105, 1121 (Del.1988)). The record seems to indicate that BP created BPXA to facilitate its Alaskan operations. The alleged acts or omissions of BP's Board, officers and directors

had an allegedly negative impact on BPXA, its operation, its profitability, and its corporate citizenship in Alaska. Allegedly those decisions or actions led to an oil spill on the North Slope. The exercise of personal jurisdiction over BP "through" its subsidiary BPXA would be proper.

BP has availed itself of the privilege of doing business in Alaska and of the protections of Alaska's laws, making it reasonable for BP to expect to be haled into court in the State. The claims which are the subject of this litigation arise out of Defendants' decision making that had forum-related impact. The directors and officers of BP and its subsidiaries are and were under fiduciary duties to the companies. The individual defendants availed themselves of the benefits of sitting on the Board or being officers of BP and its subsidiaries. They should all reasonably expect to be responsible for their decisions including the impact where those decisions are carried out. The alleged breach of their duties had an impact on BP's operations in Alaska. The injuries complained of took place in Alaska. Finally, the exercise of jurisdiction over both individual and corporate Defendants is reasonable because witnesses, documents, exhibits, and parties are located in Alaska, and nothing points to Alaska having any less of a jurisdictional claim over Defendants than England would have.

This Court's jurisdiction over Defendants does not offend "traditional notions of fair play and substantial justice". International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945).

### Waiver

Rule 12(h) of the Alaska Rules of Civil Procedure states that a defense of lack of jurisdiction over a person and improper venue are waived if the defense was omitted in previous motion practice, despite the fact that it was then available to the party claiming lack of jurisdiction in the current motion. Alaska R.Civ.P. 12(g)-(h). The Alaska Supreme Court has ruled that Rule 12(b) "requires the defendant to plead the defense of lack of personal jurisdiction in its answer or by motion, at the peril of waiving the defense pursuant to Rule 12(h)." Morrow v. New Moon Homes, 548 P.2d 279, 294 (Alaska 1976) (overruled on other grounds).

"In addition to waiver by failure to include the defense in a responsive pleading or in a Rule 12 motion, the defense may be waived as a result of the course of conduct pursued by a party during litigation." Wright v. Interbank Capital Inc., 1999 WL 354516, at *2 (N.D.Cal). The 9th Circuit in Wright denied the defendants' motion to dismiss the action for lack of personal jurisdiction and venue and found that defendants had waived those defenses through their litigation conduct. The Court based its decision on a 1st Circuit case, which affirmed defendants' waiver of venue based on their requests for hearings on plaintiffs' motions for TROs, the filing of applications to appear *pro hac vice* and the signing of two stipulations. Id. The Wright Court emphasized that the case for waiver before it was especially strong given the defendants "sought affirmative relief from this Court," which included a motion to remove counsel. Id.

In this case Defendants removed the case to the United States District Court for the District of Alaska on 10/24/06. All individual Defendants and nominal Defendants BP America, Inc., BP and BPXA filed notices of consent to removal on or around the same date. Defendants filed multiple applications for their counsel to appear *pro hac vice* in federal court. Defendants filed a motion to disqualify counsel on 11/17/06 in the federal court. On 12/11/06, Defendants signed a stipulation to remand the action back to Alaska state court. This was followed by Defendants' applications to appear *pro hac vice* in state court. On 12/18/06, Defendants moved to disqualify Plaintiffs' counsel in state court. On 12/22/06, Defendants signed a stipulation to consolidate the pending actions (Donnelly and Unite Here). In the following months, Defendants engaged in extensive motion practice without raising the defense of lack of personal jurisdiction until their motion to dismiss, filed on 2/13/07. Defendants have waived the defense of lack of personal jurisdiction both procedurally, per Rule 12(h), and based on their litigation conduct.

Defendants' motion to dismiss the case on the basis of lack of personal jurisdiction over the parties is denied.

## 3) Forum Non Conveniens

Defendants rely on the US Supreme Court's decision in Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252 (1981) to argue that while a degree of deference is afforded to Plaintiffs' choice of forum, the Court must look at whether the forum proposed by Defendants could exercise jurisdiction over Defendants and would be adequate. While this is an accurate statement of the law as articulated by Piper Aircraft, Defendants' reference is incomplete. The text they quote goes on to state:

> In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute. cf. Phoenix Canada Oil Co. Ltd. v. Texaco, Inc., 78 F.R.D. 445 (Del.1978) (court refuses to dismiss, where alternative forum is Ecuador, it is unclear whether Ecuadorian tribunal will hear the case, and there is no generally codified Ecuadorian legal remedy for the unjust enrichment and tort claims asserted).

Piper Aircraft Co., 454 U.S. at 255, 102 S.Ct. at 265 n.22. A foreign forum may be seen as inadequate if the remedies it provides are "so clearly inadequate or unsatisfactory" as to afford no remedy at all. Id., at 254, 265.

The Piper Aircraft Court's reasoning is applicable to this case. An alternative forum does exist. It is probable, but not known to a certainty, that England could exercise jurisdiction over all Defendants. But the Court questions whether that forum is in fact an adequate one. In their pleadings, Defendants argue that the English courts are an adequate forum for the resolution of this case while simultaneously asserting that this action could not be brought under English common law, which allows for derivative suits only in extremely limited circumstances. Defendants also argue that the pending English corporate statutory law is not retroactive. Given the current uncertainty as to English law in this area, English courts do not constitute an adequate forum for Plaintiffs. This brings the issue of *forum non conveniens* back to Piper Aircraft, which held the dismissal of an action in cases "where the alternative forum does not permit

litigation of the subject matter of the dispute" inappropriate. Id., at 255, 265, n.22.

The Alaska Supreme Court has ruled that the doctrine of *forum non conveniens* has "'only an extremely limited application' in cases where a plaintiff is a resident of the forum state." Baypack Fisheries, L.L.C. v. Nelbro Packing Co., 992 P.2d 1116, 1119 (Alaska 1999) (quoting Bromley v. Mitchell, 902 P.2d 797, 800 (Alaska 1995)). A court applying the doctrine "should decline to exercise its jurisdiction only if the selected forum is a seriously inconvenient place to conduct litigation." Id., at 1118. The Court also stated that "a plaintiff's choice of forum should rarely be disturbed unless the balance of private and public interests weighs strongly in favor of dismissing the case." Id., at 1119. Three of the five Plaintiffs in this action are identified as Alaska residents.

There are five factors to consider when evaluating alleged *forum non conveniens*: "the ease of proof, the availability and cost of obtaining witnesses, the possibility of harassment of the defendant in litigating in an inconvenient forum, the enforceability of the judgment, [and] the burden on the community in litigating matters not of local concern...." Id. (citing Crowson v. Sealaska Corp., 705 P.2d 905, 907-08 (Alaska 1985)). In the case at bar, the proof and the ease of obtaining it does not point to dismissal. Much of the alleged conduct occurred in Alaska (and the US) and it is likely that much of the supporting documentation will be found here. Although the BP Board is headquartered in London, modern technology will allow evidence and discovery to be transmitted electronically. The availability of witnesses does not point toward dismissal. If witnesses located outside of Alaska or the US cannot attend trial, "their depositions may be used." Id., at 1120. Defendants have sufficient contacts with Alaska to anticipate being involved in litigation in the forum. Plaintiffs assert the cost of transporting witnesses to England will be higher than the cost of transporting the English witnesses here, as more witnesses are located in the US. Regardless of the accuracy of that assertion, "[T]he operative issue is not whether considerations of efficiency and economy make a foreign forum more convenient for defendants, but whether there are factors that render litigating in this forum vexatious or

oppressive." National Union Fire Ins. Co. of Pittsburgh, PA v. BP AMOCO P.L.C., 2003 WL 21180421, at *8 (S.D.N.Y. 2003) (Not Reported in F.Supp.2d).

Nothing has been presented to this Court to show that Plaintiffs have chosen this forum to harass Defendants or that Plaintiffs have engaged in "forum shopping". Plaintiffs' choice appears motivated by their connection to the forum, which was the situs of the results of Defendants' alleged misconduct. That choice is entitled to "a high degree of deference". Id., at *3.

The Court has been advised there is a similar action pending in federal court in New York. Plaintiffs are not legally required to join that action. They are free to bring their independent claims for relief as long as the maintenance of the separate suits does not "render[ ] the domestic forum so oppressive and inconvenient that it merits overriding plaintiffs' choice of forum." Id., at *8.

Given BP's extensive holdings in Alaska and the US, nothing will prevent the enforcement of a judgment against the corporate Defendants, should such a judgment be handed down. At least one court has held that "any judgment obtained in New York would be enforceable as easily as one obtained in London. Since BP Amoco is composed of many corporations with offices and assets located around the world, any logistical problems or opportunities involved in enforcing a judgment would be similar in either case." Id., at *6. The relief sought against individual Defendants includes forfeiture of any bonuses and "unjust enrichment" received based upon their positions. To the extent those remunerations have not yet occurred, BP controls the assets and is subject to any decision of the Court, as previously noted. Lastly, the State of Alaska and its citizens have an interest in the board and officer activity of any foreign corporation when those decisions result in injury to the local environment or the local economy.

This case is not dismissed for forum non conveniens.

**CONCLUSION**

Defendants' Motion to Dismiss is **DENIED**.

ENTERED this 17th day of May, 2007, in Anchorage, Alaska.

_Jack W. Smith_
Jack W. Smith
Superior Court Judge

I certify that on ___5/17/07___,
a copy of the above was mailed to each of the
following at their addresses of record: _Feldman / Trickey / Torgerson_

_Claire Sigurdsson_
CSigurdsson
Administrative Assistant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.  The foregoing document will also be served on all non-CM/ECF participants indicated on the attached Manual Notice List as they receive service of process.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 20, 2007.

s/ ROGER M. ADELMAN
ROGER M. ADELMAN (DC Bar # 056358)

LAW OFFICES OF ROGER M. ADELMAN
1100 Connecticut Ave., NW, Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)
E-mail:  radelman@erols.com

# Mailing Information for a Case 1:07-cv-01646-RMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Roger M. Adelman**
  Adelmarm@erols.com,maryb@csgrr.com,scotts@csgrr.com,lisamp@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER, et al., | ) ) | |
| Defendants, | ) ) | |
| – and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

**[PROPOSED] PRE-TRIAL ORDER NO. 1 CONSOLIDATING RELATED DERIVATIVE ACTIONS AND APPOINTING LEAD DERIVATIVE COUNSEL**

Having found The City of Harper Woods Employees' Retirement System's Motion to Consolidate Related Actions and Appoint Lead Derivative Counsel well received, and pursuant to Rule 42 of the Federal Rules of Civil Procedure, it is hereby ordered that:

1.      This action and all other shareholder derivative actions commenced on behalf of BAE Systems plc ("BAE") that relate to the same subject matter that are subsequently filed in or transferred to this Court are hereby consolidated into one action (the "Consolidated Action") for all purposes, pursuant to Fed. R. Civ. P. 42.

2.      The Consolidated Action shall be maintained in one Master File under Master Docket No. 1:07-cv-01646.  The Clerk shall file all pleadings in the Master File and note such filings on the Master Docket.

3.      An original of this Order shall be filed by the Clerk in the Master File.

4.      The Clerk shall mail a copy of this Order to counsel of record in the Consolidated Action.

5.      Every pleading subsequently filed in the Consolidated Action after entry of this Order shall have the following caption:

UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE BAE SYSTEMS PLC DERIVATIVE LITIGATION | ) ) ) | Master File No. 1:07-cv-01646 |
| _____ | ) ) | (Consolidated Derivative Action) |
| This Document Relates To: | ) ) | |
| ALL ACTIONS. | ) ) | |
| _____ | ) | |

6.      This Court requests the assistance of counsel in calling to the attention of the Clerk of this Court, the filing or transfer of any case that might properly be consolidated as part of the Consolidated Action.

7.      When a case that arises out of the same subject matter of the Consolidated Action is hereinafter filed in this Court or transferred from another Court, the Clerk of this Court shall:

(a)      File a copy of this Order in the separate file for such action;

(b)      Mail a copy of this Order to the attorneys for the plaintiff(s) in the newly-filed or transferred case and to any new defendant(s) in the newly-filed or transferred case; and

(c)      Make the appropriate entry in the Master Docket for the Consolidated Action.

8.      Each new case that arises out of the subject matter of the Consolidated Action which is filed in this Court or transferred to this Court, shall be consolidated with the Consolidated Action and this Order shall apply thereto, unless a party objects to consolidation, as provided for herein, or any provision of this Order, within 10 days after the date upon which a copy of this Order is served on counsel for such party, by filing an application for relief and this Court deems it appropriate to grant such application.  Nothing in the foregoing shall be construed as a waiver of the defendants' right to object to consolidation of any subsequently filed or transferred related action.

9.      The Retirement System's selection of Coughlin Stoia Geller Rudman & Robbins LLP as Lead Derivative Counsel and Cuneo Gilbert & Laduca, L.L.P. and the Law Offices of Roger M. Adelman as Co-Liaison Counsel in the Consolidated Action is approved.  Plaintiffs' Lead Derivative Counsel shall have the authority to speak for plaintiffs in matters regarding pre-trial procedure, trial and settlement negotiations and shall make all work assignments in such manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort.

10.      Plaintiffs' Lead Derivative Counsel shall be responsible for coordinating all activities and appearances on behalf of plaintiffs and for the dissemination of notices and orders of the Court.

No motion, request for discovery, or other pre-trial or trial proceedings shall be initiated or filed by any plaintiff in the Consolidated Action except through plaintiff's Lead Derivative Counsel.

11.    Plaintiffs' Lead Derivative Counsel shall also be available and responsible for communications to and from the Court, including distributing orders and other directions from the Court to counsel.  Plaintiffs' Lead Derivative Counsel shall be responsible for creating and maintaining a master service list of all parties and their respective counsel.

12.    Defendants' counsel may rely upon all agreements made with plaintiffs' Lead Derivative Counsel, or other duly authorized representative of plaintiffs' Lead Derivative Counsel, and such agreements shall be binding on all plaintiffs in this Consolidated Action.

IT IS SO ORDERED.

DATED: _____     _____
                                                          THE HONORABLE ROSEMARY M. COLLYER
                                                          UNITED STATES DISTRICT JUDGE
Submitted by:

LAW OFFICES OF ROGER M. ADELMAN
ROGER M. ADELMAN (DC Bar # 056358)


_____
             s/ ROGER M. ADELMAN
             ROGER M. ADELMAN

1100 Connecticut Ave., NW, Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)

Local Counsel


S:\CasesSD\BAE Derivative\ORD00045677.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.  The foregoing document will also be served on all non-CM/ECF participants indicated on the attached Manual Notice List as they receive service of process.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 20, 2007.

s/ ROGER M. ADELMAN
ROGER M. ADELMAN (DC Bar # 056358)

LAW OFFICES OF ROGER M. ADELMAN
1100 Connecticut Ave., NW, Suite 730
Washington, DC  20036
Telephone:  202/822-0600
202/822-6722 (fax)
E-mail:  radelman@erols.com

# Mailing Information for a Case 1:07-cv-01646-RMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Roger M. Adelman**
  Adelmarm@erols.com,maryb@csgrr.com,scotts@csgrr.com,lisamp@csgrr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)