UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on behalf of BAE SYSTEMS PLC, | ) Civil No. 1:07-cv-01646 ) ) Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| RICHARD (DICK) L. OLVER, et al., | ) ) |
| Defendants | ) ) |
| - and - | ) ) ) |
| BAE SYSTEMS PLC, an England and Wales Corporation, | ) ) ) ) |
| Nominal Defendant. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PNC's AND THE ALLBRITTONS' JOINT MOTION TO DISMISS**

January 31, 2008

**Table of Contents**

Background and Summary.............................................................................................................. 1

Facts ...................................................................................................................................... 3

    The Primary Allegations Against the BAE plc Defendants and Prince Bandar.................. 3

    The Allegations Against Riggs and the Allbrittons ............................................................. 4

Argument .............................................................................................................................. 8

I.     The Plaintiff Lacks Standing to Bring Claims Against PNC or the Allbrittons
       on BAE plc's Behalf................................................................................................ 8

II.    The Complaint Does Not Adequately Plead an Aiding and Abetting Claim
       Against PNC or the Allbrittons........................................................................... 10

    A.    The Aiding and Abetting Claims Against PNC and the Allbrittons Are
         Governed by the Law of the District of Columbia ................................... 11

    B.    The Complaint Fails to Plead Essential Elements of Aiding and
         Abetting, and Some of Its Allegations Rebut Such a Claim...................... 13

        1.    The Complaint Does Not Allege That Riggs or the Allbrittons
            Knew About the Alleged Bribery Scheme, and In Fact It
            Contains Allegations That Riggs Did *Not* Have Such
            Knowledge .................................................................................. 14

        2.    The Complaint Does Not Allege Substantial, Knowing
            Assistance By Riggs or the Allbrittons......................................... 17

III.   The Doctrine of *In Pari Delicto* Bars Plaintiff's Claims Against PNC and the
       Allbrittons ..................................................................................................... 22

    A.    The Doctrine of *In Pari Delicto* Bars Claims by Those Involved in the
         Alleged Misconduct................................................................................ 22

    B.    The Alleged Misconduct of the BAE plc Defendants is Imputed to BAE
         plc as a Matter of Law ........................................................................... 25

         1.    Attribution is Appropriate Because, Based on the Complaint's
            Allegations, the BAE plc Defendants Acted Within the Scope of
            Their Authority and the Alleged Bribes Benefited BAE plc ........ 25

        2.    The Adverse Interest Exception Does Not Apply.......................... 26

    C.    Dismissal Under Rule 12(b)(6) Is Warranted Because the Elements of
         the *In Pari Delicto* Defense Are Evident from the Complaint ................. 27

Conclusion ......................................................................................................................... 28

Defendants The PNC Financial Services Group, Inc. ("PNC") and Joe, Barbara, and Robert Allbritton ("the Allbrittons") submit this Memorandum of Points and Authorities in support of their Motion to Dismiss the claims against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. [1]

## Background and Summary

This is a purported derivative action brought by the holder of American Depository Receipts of defendant BAE Systems plc ("BAE plc"), a United Kingdom corporation, on behalf of BAE plc against over 30 defendants. The defendants include BAE plc's current board of directors and many of its former officers and directors (the "BAE plc Defendants"). Also named as defendants are Prince Bandar bin Sultan;  PNC, as the successor by merger to Riggs National Corporation ("Riggs");[2] and the Allbrittons, who were former executives and controlling shareholders of Riggs.

The Complaint claims that, for over 20 years, Prince Bandar received "bribes [and] payoffs" from BAE plc while he was Saudi Arabia's ambassador to the United States. It alleges that those payments were "funnel[ed]" through accounts at Riggs in Washington, D.C. The payments were supposedly made to secure a large aircraft contract for BAE plc, a leading defense company, from the Saudi Ministry of Defense. The Complaint claims the alleged payment scheme injured BAE plc, and it seeks damages and other relief on BAE plc's behalf. ECF Dkt. No.1 ("Complaint").

---

[1] PNC and the Allbrittons are separate, separately represented, parties. Their respective positions and submissions on other matters in this case may also be separate. Nonetheless, because the limited allegations in the Complaint against them differ only slightly, and because the issues affecting all of them are, in this instance, basically the same, they are submitting this joint brief to avoid the Court's having to read the same arguments twice.

[2] PNC is a bank holding company. In 2005, Riggs, the holding company for Riggs Bank N.A., was merged into PNC. The assets of Riggs Bank, N.A., which conducted Riggs's banking operations, were at that time acquired by various subsidiaries of PNC, including PNC Bank, N.A. PNC Bank, N.A. is the entity that currently carries on most of the business of the former Riggs Bank.

The claims against PNC and the Allbrittons should be dismissed for three separate reasons:

First, the plaintiff lacks standing to bring this suit. PNC and the Allbrittons are charged with "aiding and abetting" alleged conduct by the BAE plc Defendants (Complaint at ¶ 158), but plaintiff's claims against those officers and directors – which are brought derivatively, on BAE plc's behalf – do not meet the requirements for a derivative action involving an English corporation. A long-standing rule originating in an English case called Foss v. Harbottle prohibits a shareholder of an English company from suing derivatively to redress injury to the corporation, unless one of a few narrow exceptions applies. The plaintiff here cannot meet any of those exceptions. The BAE plc defendants have filed a motion to dismiss on that basis. If that motion is granted, as PNC and the Allbrittons believe it should be, then the claims against them should also be dismissed.

Second, even if there were standing, the Complaint fails to state a claim against PNC or any of the Allbrittons. To plead aiding and abetting adequately, the Complaint must allege facts permitting the inferences that those defendants knew they were playing a role in facilitating a breach of fiduciary duty by the BAE plc Defendants, and that they substantially assisted that breach. Halberstam v. Welch, 705 F.2d 472, 477, 227 U.S. App. D.C. 167 (D.C. Cir. 1983). But the Complaint does not do that: Its allegations against PNC and the Allbrittons consist primarily of "labels and conclusions, and a formulaic recitation of the elements of a cause of action" – an approach the Supreme Court recently held "will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). In fact, among the Complaint's few allegations providing any detail about the bank's supposed involvement are claims entirely *in*consistent with aiding and abetting liability. The Complaint thus fails to state a claim against PNC or the Allbrittons, and so it should be dismissed under Rule 12(b)(6).

Third, the alleged misconduct of the BAE plc Defendants, supposedly committed in the course of their work for BAE plc, must be imputed to BAE plc itself as a matter of law. As a result, BAE plc is barred from recovery against PNC and the Allbrittons by the doctrine of *in pari delicto*, which provides that those who engage in wrongdoing forfeit any recovery from their accomplices, real or alleged – and the plaintiff, which seeks to stand in the shoes of BAE plc, is barred also.

## Facts

A motion to dismiss under Rule 12 depends primarily on what the Complaint does, and does not, allege. In this case, and especially for PNC and the Allbrittons, close scrutiny of those allegations is essential. The 90-page Complaint here is a grab bag of accusation, editorializing, and second-hand journalism. It is important to disentangle allegations actually related to the plaintiff's claims against PNC and the Allbrittons from the larger mass of irrelevancy.

### The Primary Allegations Against the BAE plc Defendants and Prince Bandar

The focus of this lawsuit is an alleged series of payments by BAE plc to Prince Bandar bin Sultan, who, until 2005, was the Saudi Ambassador to the United States. See generally, Complaint ¶¶ 1, 6–13, 15, 49, 50, 61, 66–72, 82, 85, 86, 105–23, 142-43. The Complaint claims that, in the "mid-1980's," Id. ¶ 6, these payments were "secretly bargained for" (Id. ¶ 9) as part of BAE plc's successful effort to secure an $80 billion dollar contract (referred to as "al Yamamah") – reputedly "the biggest and most lucrative arms deal in history" – for the supply of military aircraft to Saudi Arabia. Id. ¶ 6, Ex. A at 3. The payments, supposedly provided for in "secret schedules to the contract" (Id. ¶ 9), are said to have been made over the next 20 years and to have totaled about $2 billion. Id. ¶ 8. The Complaint claims that authorizing and making these payments was illegal, inconsistent with BAE plc's public statements and reporting requirements, and *ultra vires* the

authority of BAE plc's officers and directors. Id. ¶¶ 147, 152, 156. The Complaint goes on to say

that BAE plc was harmed by the alleged payment scheme and is entitled to damages and injunctive

relief. Id. at pp. 88-89.

Of course, the Complaint says much, much more: It is heavily padded with descriptions of

Prince Bandar's family and their spending habits, accounts of BAE plc's supposed behavior in other

countries, charts of BAE plc director compensation, and long quotations from BAE plc reports. But

the actual conduct on which the claims for relief are based amounts to no more than this summary.

Notably, when the Complaint describes the formulation of the alleged al Yamamah payment

program, it never mentions Riggs or the Allbrittons. There is nothing to suggest that the "secret"

bargaining or "secret" contract schedules were anything but secrets withheld from those defendants,

too. There are no allegations that Riggs or the Allbrittons were aware of BAE plc's efforts to secure

the al Yamamah contract, of Prince Bandar's role in the deal, or of the extent of BAE plc officers'

and directors' authority to seek and secure business for the company.

### The Allegations Against Riggs and the Allbrittons

In a Complaint of 90 pages and over 150 paragraphs (plus a nine page attachment), the

allegations that concern Riggs or the Allbrittons are limited, and more than half of them do not relate

to the claims in this case.

In all, only about 34 paragraphs mention Riggs, PNC, or the Allbrittons. Of those, 13 recount

past government examination of Riggs's banking practices, but have no connection with BAE plc or

the al Yamamah deal. Complaint ¶¶ 50, 53, 58-62, 123, 126-130. Four concern Riggs's former

banking relationships with Chile and Equatorial Guinea, which ended years ago and are not alleged to

relate to BAE plc. Id. ¶¶ 51, 52, 124, 125. One provides background information on the history of

Riggs and PNC. Id. ¶ 12. And another three paragraphs generally describe the Allbrittons. Id. ¶¶ 54-

56. In all, only 12 paragraphs (Id. ¶¶ 1, 8, 13, 50, 57, 113, 114, 117, 118, 120, 122, 158) contain

allegations supposedly linking Riggs to al Yamamah.[3] Even that overstates the case, since several paragraphs duplicate one another.[4]

According to the few Riggs-specific allegations, after the payment arrangement between BAE plc and Prince Bandar was agreed on, which happened "at the outset of the Al-Yamamah contract" (Complaint ¶ 115), Riggs was "selected" (Id. ¶¶ 8 and 114) or "chosen" (Id. ¶ 122) as the "intermediary" or "conduit" (Id. ¶¶ 1, 117, 122) through which payments would move from BAE plc to Bandar. After this "selection," other "defendants caused BAE plc to funnel these illegal payments in significant part through Riggs . . . via accounts that, while nominally in the name of Saudi Arabia, were controlled by Bandar . . . ." (Id. ¶ 8, 113). Allegedly, the payments were sent to "two Saudi embassy accounts with Riggs" which were "actually a conduit to Bandar" (Id. ¶ 117); they continued for 20 years; and they totaled as much as 120 million dollars (or pounds)[5] annually. (Id. ¶¶ 116, 117).

The Complaint says Riggs was "chosen" because Prince Bandar had "ready access" to Riggs accounts in Washington, D.C., and because "Riggs had a reputation in international commercial circles as a bank willing to facilitate questionable, if not illegal, currency transfers for international transactions." Id. ¶¶ 8, 114. This claim seems to be based on allegations concerning Riggs's dealings with other foreign governments (e.g., Chile and Equatorial Guinea) Id. ¶¶ 50-53, 58-62, 123-130. There is no allegation that Riggs was ever aware that it had been "chosen" as a "funnel" for funds related to al Yamamah, or that it knew that the source of the funds at issue was BAE plc.

---

[3] Some allegations aimed at the Allbrittons also mention Riggs and its supposed actions, but they add nothing substantial to those just listed. See id. ¶¶ 54-58.

[4] For example, as to PNC, paragraphs 1 and 113, and paragraphs 8 and 114, say the same thing. Paragraphs 13 and 120 offer the same quotation from a *Newsweek* article.

[5] The Complaint uses both currency units without explanation. See id. ¶¶ 49, 113.

Despite its disparaging picture of Riggs, the Complaint acknowledges that the bank eventually "identified" accounts through which BAE plc payments were supposedly funneled as involving "suspicious" or "questionable" activity. It then filed a Suspicious Activity Report to that effect with the U.S. government in 2003, and "took steps to shut . . . down" the accounts. Id. ¶¶ 8, 13, 114, 120, Ex. A at 2. The Complaint's description of these steps is grudging and dismissive, however: It stresses that they happened near the end of the alleged payment period (Id. ¶ 8), and it speculates that they were meant to "stave off actions to close Riggs." Id. ¶114. But, despite such efforts to minimize Riggs's investigation and reporting, two things the Complaint says about them merit special emphasis.

First, prominently featured among media reports that the Complaint says describe the "making of these improper payments" (Id. ¶ 11) is an article from *Newsweek* magazine. (Id. ¶ 13). The portion of the article quoted in the Complaint describes dealings between BAE plc and Prince Bandar, the flow of funds through Riggs, and the bank's November 2003 filing of a Suspicious Activity Report with Treasury Department concerning funds paid from a "Saudi defense account." The article refers to a supposed $30 million quarterly payment from a London bank to that account – and, then (in almost the only language in the paragraph *not* highlighted by the plaintiff) it says that "*the bank [Riggs] never knew the source of the funds.*" Id. (emphasis supplied).

Second, in Exhibit A to the Complaint, the plaintiff offers the transcript of a BBC broadcast concerning Prince Bandar and BAE plc. One of those interviewed is a man named David Caruso, a supposed "expert on money laundering," who is identified as a Compliance and Security Officer for Riggs from about 2003 to 2005, and on whom the Complaint relies elsewhere for some of its allegations. In the transcript, Mr. Caruso describes the activities that led to Riggs's filing a Suspicious Activity Report. Among other things, he says "*we discovered . . . large movements of money . . .*

*that we could not understand.*"  He goes on to say that Riggs was *"never able to get . . . answers"* from Prince Bandar or anyone else about what was "at the root" of the payments. Complaint Ex. A at 2 (emphasis supplied).[6]

Given the fact that the plaintiff accuses PNC and the Allbrittons of "aiding and abetting," these are remarkable statements: Far from establishing that either defendant knowingly assisted the alleged bribery scheme – which is an essential element of aiding and abetting liability – these reports, which say Riggs did *not* know the source of, or reason for, the transfers of funds, support exactly the opposite inference. And the Complaint offers no other basis for inferring that Riggs or the Allbrittons aided and abetted the alleged payment scheme.

In fact, the Complaint is notable as much for what it does *not* allege as for what it does. It never says, for instance, that Riggs or the Allbrittons knew about the alleged al Yamamah agreement between BAE plc and Prince Bandar. It never says that those defendants were aware of the alleged "secret" discussions in the mid-1980's leading to the payments in question. It does not allege that Riggs or the Allbrittons knew that anyone at BAE plc was acting illegally or beyond his or her authority. It does not say that, when Riggs was "selected" as a "conduit," anyone at the bank was told about the al Yamamah payments, or got that information at any later date during the alleged 20 year payment period. The Complaint does not even claim that Riggs knew money moving into Saudi

---

[6] The Complaint's remaining references to Riggs are not factual allegations but are simply labels – conclusory characterizations of Riggs's behavior. Thus, according to the Complaint, Riggs "encouraged, facilitated, and advanced" the BAE plc Defendants' alleged misdeeds, and also "aided and abetted, and conspired and schemed" with them. Id. ¶ 158; see also id. ¶ 57. Elsewhere, the Complaint uses other verbs, saying that Riggs "laundered" and "actively conceal[ed]" payments by BAE plc (Id. ¶ 1), or that it "actively participated in, facilitated, and advanced the illegal bribe payments to Bandar" and "hid" them (Id. ¶ 8), or that it "cooperate[d] in secreting the fund transfers" (Id. ¶ 122). None of these pejorative labels is supported by any allegations of specific facts.

accounts came from BAE plc. In fact, as noted, the Complaint includes affirmative claims that Riggs did *not* know where the payments came from or what they were for.

The allegations specific to the Allbrittons are especially meager and inadequate. Other than alleging that Joe Allbritton and members of his family supposedly "scoured the globe" to obtain embassy business for Riggs (Complaint at ¶58) – something neither unlawful nor surprising for a Washington, D.C. based bank – the only other allegation of specific conduct leveled at any of the Allbrittons is a "draft letter" supposedly written by Joe Allbritton thanking the leader of Chile, General Pinochet, for his hospitality and a gift. Id. What such things have to do with the claims in this case is a mystery.

In short: Riggs and the Allbrittons stand accused of "aiding and abetting" a conspiracy that they are not alleged to have known about, involving money from a source Riggs "never knew," which was sent to the bank for reasons it "could not understand." While the Complaint makes conclusory assertions that Riggs and the Allbrittons "aided and abetted" or "facilitated" or "encouraged" alleged bribes, it fails to plead any facts showing that Riggs or the Allbrittons were aware of the alleged scheme and knowingly participated in it. Thus, as now will be shown, the Complaint fails to state a claim for relief against PNC, as successor to Riggs, or the Allbrittons.


## Argument

### I. The Plaintiff Lacks Standing to Bring Claims Against PNC or the Allbrittons on BAE plc's Behalf

The BAE plc Defendants have filed a Motion to Dismiss showing that, under English law (which governs the management of BAE plc's internal affairs), the plaintiff does not have standing to bring the derivative claims in this case. This is so for two reasons: First, the plaintiff is not a BAE plc

shareholder. Second, even if the plaintiff were a shareholder, a well-settled principle of English law known as the rule in Foss v. Harbottle establishes that shareholders generally cannot sue directors, officers, or other third parties on behalf of an English company for wrongs to the company. The proper plaintiff in such suits is the company itself. English courts rarely permit derivative actions. There are narrow exceptions to the rule in Foss v. Harbottle, but, as the BAE plc Defendants show, the claims here do not fit any of them. Under English law, those claims belong to BAE plc alone, and not to the plaintiff.[7]

PNC and the Allbrittons believe that the BAE plc Defendants' Motion to Dismiss should be granted. If it is, then the claims against PNC and the Allbrittons should also be dismissed. Under the rule in Foss v. Harbottle, only BAE plc – the allegedly injured party – has standing to seek relief for alleged misconduct by its officers and directors. If BAE plc thought there were any truth to the claims in the Complaint, *it* could sue those it believed were responsible, including supposed aiders and abettors. *This* plaintiff, however, cannot. In similar circumstances, courts have held that where the plaintiff lacks standing to sue the primary wrongdoers, its claims against alleged aiders and abettors should also be dismissed.[8]

---

[7] The nature of plaintiff's derivative claims in this case make them especially vulnerable to Foss v. Harbottle. The Complaint repeatedly alleges "*ultra vires*" actions by the BAE plc Defendants and seeks damages for past actions. However, U.S. courts have held that, under English law, when a derivative action seeks damages for past *ultra vires* conduct, it must satisfy the "fraud on the minority" exception to Foss v. Harbottle. See Winn v. Schafer, 499 F. Supp. 2d 390, 398 (S.D.N.Y. 2007); In re Tyco Int'l Ltd. Multidistrict Litig., 340 F. Supp. 2d 94, 101-02 (D.N.H. 2004). As the BAE plc Defendants' motion shows, that is an extremely narrow exception, and the plaintiff does not qualify for it.

[8] See Mann v. GTCR Golder Rauner LLC, 483 F. Supp. 2d 884, 899 (D. Ariz. 2007) (because the plaintiffs did not have standing to bring derivative claims for breach of fiduciary duty, they also could not pursue counts for aiding and abetting those breaches); In re First Interstate Bancorp Consol. S'holder Litig., 729 A.2d 851, 864 (Del. Ch. 1998), aff'd sub nom. Bradley v. First Interstate Bancorp., 748 A.2d 913 (Del. 2000).

Therefore, if this Court dismisses the breach of fiduciary duty claims against the BAE plc

Defendants – which PNC and the Allbrittons believe it should do – it should also dismiss the aiding

and abetting claims against PNC and the Allbrittons under Rule 12(b)(1) or Rule 12(b)(6)[9] for lack of

standing.

## II.    The Complaint Does Not Adequately Plead an Aiding and Abetting Claim Against PNC or the Allbrittons

Rule 12(b)(6) provides for dismissal of a complaint that fails "to state a claim upon which

relief can be granted." The Complaint here plainly fails to state a claim against either PNC or the

Allbrittons, and so it should be dismissed.

In evaluating a 12(b)(6) motion, the court must treat the complaint's factual allegations as

true, drawing reasonable factual inferences in the plaintiff's favor. Macharia v. United States, 334

F.3d 61, 64, 67, 357 U.S. App. D.C. 223, 229 (D.C. Cir. 2003); Holy Land Foundation v. Ashcroft,

333 F.3d 156, 165, 357 U.S. App. D.C. 35, 44 (D.C. Cir. 2003). But, as the Supreme Court recently

made clear, to survive a 12(b)(6) motion, the facts alleged "must be enough to raise a right to relief

above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). There must

be "allegations plausibly suggesting (not merely consistent with)" the existence of all the necessary

elements of a cause of action. Id. at 1966. Equally important, the allegations establishing this

plausibility must concern *facts* sufficient to support a cause of action: The plaintiff must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." Id. at 1964-65. The court need not accept as true inferences unsupported by facts set out in

---

[9] There is no doubt that absence of standing can be raised in a Rule 12 motion, but courts differ somewhat over which subsection of the Rule applies to dismissal for that reason. See 5C Wright & Miller, Federal Practice and Procedure 3d § 1360 at 78-83 (3d ed. 1994 & Supp. 2007); Ludvigson v. United States, No. 07-652(RMC), 2007 WL 4172071 (D.D.C. Nov. 27, 2007) (dismissing for lack of standing under 12(b)(1)); Al-Owhali v. Ashcroft, 279 F. Supp. 2d 13 (D.D.C. 2003) (same).

the complaint or legal conclusions cast as factual allegations. Browning v. Clinton, 292 F.3d 235, 242 352 U.S. App. D.C. 4 (D.C. Cir 2002). In applying these principles, a court should consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002). [10]

## A. The Aiding and Abetting Claims Against PNC and the Allbrittons Are Governed by the Law of the District of Columbia

In considering whether the Complaint adequately pleads a cause of action against PNC or the Allbrittons for aiding and abetting, the first step is determining what jurisdiction's law defines the elements of that tort. In a case based on diversity jurisdiction like this one (Complaint ¶ 16), a federal court follows the choice of law rules of the jurisdiction in which it sits. Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co., 129 F.3d 143, 148, 327 U.S. App. D.C. 60 (D.C. Cir. 1997); Jin v. Ministry of State Security, 254 F. Supp. 2d 61, 68 (D.D.C. 2003). Aiding and abetting a breach of fiduciary duty is a tort claim, see Restatement (Second) of Torts § 876 (1979), and, for tort claims, District of Columbia courts "appl[y] the substantial interest test, focusing on the place of the injury, the place where the injurious conduct occurred, the residency of the parties, and the place the parties' relationship is centered." Edwards v. Okie Dokie, Inc., 473 F. Supp. 2d 31, 39 (D.D.C. 2007) (Collyer, J.).

For PNC and the Allbrittons, these factors point to the application of District of Columbia law. As the Complaint alleges (Complaint ¶¶ 8, 17, 50), Riggs Bank was located and had its principal place of business in Washington, D.C. The Allbrittons are alleged to be residents of the District of Columbia. Id. ¶¶ 54-56. The Riggs accounts allegedly used for BAE plc payments were also in the District of Columbia (Id. ¶¶ 8, 17, 114, 116), as is "important physical and documentary

---

[10] See also Keller v. Embassy of the United States, No. Civ. 06-816 (RMC), 2007 WL 4180459, at *2 (D.D.C Nov. 28, 2007); Kamen v. IBEW, 505 F. Supp. 2d 66, 71-72 (D.D.C. 2007).

evidence." Id. ¶ 17. Withdrawals for Prince Bandar's benefit allegedly came from Riggs's offices here. Id. ¶¶ 17, 49, 116-20. In fact, every "aiding and abetting" action of which Riggs or the Allbrittons are accused supposedly occurred here in Washington, D.C. As important, none of their alleged actions had any connection with any other jurisdiction. For the claims against these defendants, the jurisdiction with the most substantial interest – indeed, the *only* jurisdiction with *any* real interest – is Washington, D.C., and so District of Columbia law should apply.

This conclusion is directly supported by Meng v. Schwartz, 305 F. Supp.2d 49 (D.D.C. 2004), aff'd, 48 Fed. App'x 1 (D.C. Cir. 2002). Relying on the substantial interest doctrine in a derivative action, Judge Lamberth applied the law of Bermuda (where the corporation was formed) to claims against corporate fiduciaries, but applied District of Columbia law to conspiracy claims against defendants that included many corporate outsiders. 305 F. Supp at 58, 60.[11] A similar result is appropriate here.

---

[11] See also, Solow v. Stone, 994 F. Supp. 173, 177 (S.D.N.Y. 1998) (aiding and abetting claims, unrelated to corporate duties, raise "garden variety tort issues" and should be subject to traditional tort choice of law analysis), aff'd on the opinion below, 163 F.3d 151 (2d Cir. 1998); La Sala v. Bank of Cyprus Pub. Co., 510 F. Supp. 2d 246, 266 n.7 (S.D.N.Y. 2007) (law of Cyprus applied to claim against a bank for aiding and abetting money laundering by insiders of a U.S. company in light of Cyprus's significant interest in policing its own banks); Granite Partners, L.P. v. Bear, Stearns & Co., 17 F. Supp. 2d 275, 306 n.16 (S.D.N.Y. 1998) (declining to apply law of the state of incorporation to claims against third parties for inducing a breach of fiduciary duty in view of the forum's greater interest in policing the financial industry). Here, the aiding and abetting claims against PNC and the Allbrittons concern only actions by a U.S. bank in the District of Columbia. They have no connection with England, where BAE plc is incorporated.

**B.      The Complaint Fails to Plead Essential Elements of Aiding and Abetting, and Some of Its Allegations Rebut Such a Claim**

According to the District of Columbia Circuit Court of Appeals, a cause of action for aiding

and abetting in this jurisdiction has three elements:

> (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation.

Halberstam v. Welch, 705 F.2d 472, 477, 227 U.S. App. D.C. 167, 172 (D.C. Cir. 1983).[12] In other

words, a defendant can be liable for aiding and abetting another's actions when "he knows that the

other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the

other so to conduct himself . . . ." Id. See also Hancock v. Homeq Servicing Corp., No. Civ. 05-

0307(PLF), 2007 WL 1238746 (D.D.C. Apr. 27, 2007). A complaint accusing a defendant of aiding

and abetting a breach of a fiduciary duty thus must allege facts supporting an inference that "the

alleged aider and abettor knowingly participated in and substantially assisted the fiduciary's breach of

trust" through some affirmative conduct (and not just inattention or failure to act). See Overseas

Private Inv. Corp. v. Industria de Pesca, N.A., 920 F. Supp. 207, 210 (D.D.C. 1996) (citations

---

[12] In Halberstam, the Court of Appeals found little or no District of Columbia law on whether aiding and abetting a tort was itself a tort, but it predicted that the D.C. Court of Appeals would adopt such a cause of action. However, the D.C. Court of Appeals still has not spoken on aiding and abetting, and a recent opinion from that court casts doubt on the viability of such a claim. In Flax v. Schertler, 935 A.2d 1091 (D.C. 2007), the Court of Appeals wrote "[a]lthough the Halberstam court predicted that this court would recognize a tort of aiding and abetting tortious conduct, we have not done so to date, and we are not bound by that court's ruling." Id. at 1108 n.15. If, as Flax says, aiding and abetting has not yet been recognized as a cause of action in the District of Columbia, then there is no viable claim against PNC or the Allbrittons, and those defendants seek dismissal on that basis. But, because Halberstam remains binding on this Court, and because the Flax observation is dictum, PNC and the Allbrittons preserve this point for appeal.

omitted); Alberts v. Tuft (In Re Greater Southeast Cmty. Hosp. Corp.), 353 B.R. 324, 360 (Bankr.
D.D.C. 2006).

As the BAE plc Defendants' Motion shows, the plaintiff here lacks standing to pursue, much
less to prove, the alleged primary violations by the BAE plc Defendants, which means it cannot
satisfy the first Halberstam element. In addition, as shown below, the Complaint fails to allege facts
permitting an inference that either of the other two Halberstam elements can be established. In fact,
some of the Complaint's allegations are directly inconsistent with aiding and abetting liability.

## 1. The Complaint Does Not Allege That Riggs or the Allbrittons Knew About the Alleged Bribery Scheme, and In Fact It Contains Allegations That Riggs Did *Not* Have Such Knowledge

To state a claim for aiding and abetting a breach of fiduciary duty, a complaint must allege
facts indicating that the defendant knew about the alleged improper course of conduct and was aware
of the specific duty allegedly breached. This requires an allegation of actual knowledge and not just
suspicions of possible wrongdoing.[13] In other words, a complaint must allege facts showing that the
defendant "knows that the other's conduct constitutes a breach of duty and gives substantial
assistance or encouragement . . . nonetheless." Alberts v. Tuft (In re Greater Southeast Cmty. Hosp.
Corp.), 353 B.R. 324, 359-60 (Bankr. D.D.C. 2006) (citations and internal quotations omitted).

In Alberts, the plaintiff alleged that defendant law firms had aided and abetted the directors
and officers of a bankrupt health care corporation in breaching their fiduciary duties by allowing the
corporation and its subsidiaries to incur excessive debt and by misusing their assets. The complaint
alleged that the law firms "knowingly assisted and participated in the [ ] breaches [of fiduciary duty]

---

[13] See, e.g., Terrydale Liquidating Trust v. Barness, 611 F. Supp. 1006, 1027 (S.D.N.Y.
1984), aff'd, 846 F.2d 845 (2d Cir. 1988) ("Actual knowledge, not mere notice or unreasonable
awareness, is therefore essential"); Design Strategies v. Davis, 384 F. Supp. 2d 649, 670-71
(S.D.N.Y. 2005), aff'd, 469 F.3d 284 (2d Cir. 2006); Pension Committee v. Banc of America
Securities, 446 F. Supp. 2d 163, 202-03 (S.D.N.Y. 2006); Mazzaro de Abreu v. Bank of America
Corp., No. 06 Civ. 673 (LMM),  2007 WL 2609535 at *9 - *11 (S.D.N.Y Sept. 10, 2007).

14

through their representation of and action taken on behalf of [the debtors] whom they represented."
353 B.R. at 360. The court held that was insufficient; it granted the law firms' motion to dismiss
partly because "that allegation falls short of alleging that the [law firms] knew that the [directors and
officers] were breaching their fiduciary duties" when they signed off on their clients' allegedly
harmful loans and agreements. Id. [14]

The Supreme Court's recent decision in Twombly underscores the need for a complaint to
have factual allegations that support general claims of knowledge by a defendant, and that provide a
basis for the repeated use of words like "aid and abet," "conspire," "scheme," "actively participated,"
or "actively conceal." Complaint ¶¶ 8, 57, 158. As the Supreme Court said in Twombly, "[w]hile a
complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . .
. a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than
labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .
." 127 S.Ct. at 1964-65 (citations omitted). Rather, as noted, the Court said a plaintiff must support its
claims with allegations "plausibly suggesting (not merely consistent with)" all the necessary elements
of its cause of action. Id. at 1966.

The Complaint here fails to meet these requirements. It never alleges that any Riggs
employees or officials knew that anyone from BAE plc had arranged for payments to Prince Bandar.

_____

[14] Where knowledge is an element of a cause of action brought against a bank because funds
flowed through its accounts, courts have held that the complaint must say more than simply alleging
the bank "knew" about the primary wrong. See, e.g., In Re Terrorist Attacks on September 11, 2001,
462 F. Supp. 2d 561, 564 (S.D.N.Y. 2006) (allegation that a bank "'knowingly provided material
support and resources to al Qaida'" is "nothing more than a legal conclusion couched as fact" and
insufficient under Rule 12(b)(6) without allegations of fact "supporting an inference that [the bank]
knew or should have known that the funds they purportedly provided" for construction projects aided
al Qaeda); In Re Terrorist Attacks on September 11, 2001, 464 F. Supp. 2d 335, 340 (S.D.N.Y. 2006)
(allegation that a bank provided banking services and investments "with knowledge of the
downstream support these activities provide al Qaida" is insufficient because it is "conclusory and
purely speculative" when "unsupported by factual assertions").

It never alleges that anyone at Riggs knew about the al Yamamah contract or any of its financial details. It never alleges that anyone at Riggs knew that BAE plc officers or directors had breached their fiduciary duties, or what they were doing at all. And the Complaint nowhere alleges that anyone at Riggs even knew that BAE plc was the source of funds coming into accounts available to Prince Bandar or the Saudi Embassy. In fact, apart from its occasional use of verbs that imply knowledge on Riggs's part[15] (the kind of "formulaic recitation of the elements of [the] cause of action" that Twombly says is not sufficient) the Complaint says almost nothing at all about what Riggs or the Allbrittons knew as to BAE plc and Prince Bandar.[16]

The word "almost" in the preceding paragraph is important. In two places mentioned previously, the Complaint *does* contain allegations about Riggs's knowledge – but both thoroughly undercut plaintiff's aiding and abetting claims. In one instance, the Complaint relies on a magazine report which says Riggs *"never knew the source of the funds"* wired each quarter from an account in London to a Saudi government account at Riggs. Complaint ¶¶ 13, 120 (emphasis supplied). In the other, it incorporates the recollections of a former Riggs employee/consultant (Mr. Caruso), who says *"we discovered ... large movements of money ... that we could not understand"* and adds that the bank was *"never able to get ... answers"* about those transfers. Id. Ex. A at 2 (emphasis supplied).

---

[15] E.g., "Aid and abet," "conspire," "encouraged," "scheme," "actively participated," and "actively conceal." Complaint ¶¶ 8, 57, 158. Of course, the Complaint alleges no facts suggesting that any such labels are plausible. Notably, some of the other words used to describe Riggs's role, such as "assisted," "facilitated," "acted as a conduit [or funnel]" and "advanced" (Id. ¶¶ 8, 158) could be true even if, as the Complaint seems to suggest, Riggs was unknowingly selected and used by others for its banking services.

[16] To the extent that the Complaint identifies behavior by Prince Bandar that Riggs supposedly should have known about, it involves the alleged diversion of Saudi government funds for his personal use. Complaint ¶¶ 8, 113, 116, 117, 121, 122. Even if that were true, however, it would be a matter between Bandar and his government. It has no necessary or even logical connection to a bribery scheme supposedly devised by a UK corporation that was not a Riggs customer. Furthermore, the fact that a Saudi government official with signature authority withdrew funds from a Saudi government account is scarcely indicative of an illegal bribe scheme.

Thus, the only specific allegations about Riggs's state of mind clearly state that it did *not* know about the supposed al Yamamah bribery plan.

The allegations that Riggs *lacked* knowledge of the source or purpose of funds are especially significant in light of the Twombly requirement that a complaint must allege facts making its claims "plausible." As noted, the aiding and abetting claims here require actual knowledge of the primary wrongdoing. How can such claims be "plausible" when the Complaint itself says such knowledge was absent? The answer is that they cannot be – and they could not be even if the Complaint had any other allegations about Riggs's and the Allbrittons' knowledge of the supposed Bandar bribe scheme, which it does not. Under the circumstances, the claims against PNC and the Allbrittons are completely **im**plausible.

In short, as to PNC and the Allbrittons, the Complaint actually rebuts itself. It fails to allege facts tending to show Riggs was "aware of [its] role as part of an overall illegal or tortious activity at the time [it allegedly] provid[ed] the assistance," Halberstam, 705 F.2d at 477, and instead includes allegations that show just the opposite. For this reason alone, the claims against PNC and the Allbrittons should be dismissed.

### 2. The Complaint Does Not Allege Substantial, Knowing Assistance By Riggs or the Allbrittons

The final element of aiding and abetting liability – "knowing" and "substantial" assistance for the primary violation – is also not adequately pled.

"Substantial" assistance means "more than just a little aid" Barker v. Henderson, 797 F.2d 490, 496 (7th Cir.1986), and also more than the routine provision of professional or business services.[17] Instead, there must be factual allegations indicating that the accused aider and abettor was

---

[17] Silverman v. Weil, 662 F. Supp. 1195, 1201 (D.D.C. 1987) (claims that amounted to allegations that accountants were lax in not discovering financial improprieties "cannot be transformed into allegations . . . that *these* accountants knew of and substantially assisted [the] . . .

actually involved in the supposed scheme and took significant affirmative steps to promote or help it.

See Overseas Private Inv. Corp., 920 F. Supp. at 210; Dubai Islamic Bank v. Citibank N.A., 256 F.

Supp. 2d 158, 167-68 (S.D.N.Y. 2003). Unless the defendant has a fiduciary duty to the plaintiff

(which is not the case here), it is not enough to allege acquiescence, inattention,[18] or a failure to

prevent the plan from happening. See Alberts, 353 B.R. at 360 (quoting Overseas Private Inv. Corp.,

920 F. Supp. at 210). As one court has put it, "The law does not aim at moral perfection. Assisting,

and failing to prevent, are not the same thing." EEOC v. Illinois, 69 F.3d 167, 170 (7th Cir. 1995).

Finally, the assistance knowingly provided must be specific to the misconduct alleged and not simply

general support for the wrongdoer. Ungar v. Islamic Republic of Iran, 211 F. Supp. 2d 91, 99

(D.D.C. 2002).

The many cases applying these principles to banks hold that, to be adequately charged with

aiding and abetting, a bank must do more than simply receive money from, or disburse it to, alleged

---

schemes"), aff'd, 839 F.2d 824 (D.C. Cir. 1988); Lingenfelter v. Stoebner, No. 03- CV-5544, 2005
WL 1225950, at *6 - *7 (D. Minn. May 23, 2005), aff'd, 188 Fed. App'x 554 (8th Cir. 2006).

[18] At points, the Complaint's aim seems to be to depict Riggs as sloppy or lax – but not as a
knowledgeable participant in supposed bribery. Thus, it alleges that Riggs never identified the
transactions as suspicious until 2003, never filed reports to that effect, and never determined the
source and purpose of payments. Complaint ¶ 8. If that is the plaintiff's strategy, it goes nowhere.
Aiding and abetting – the tort with which PNC and the Allbrittons are charged – inherently requires
intent and knowledge. "Negligent" aiding and abetting is a non sequitur. United States v. Hitachi
America Ltd., 172 F.3d 1319, 1337–38 (Fed. Cir. 1999); Camp v. Dema, 948 F.2d 455, 459 (8th Cir.
1991) ("negligence . . . is never sufficient" as a basis for aiding and abetting liability). In addition, for
negligence-related charges to have any substance, a bank like Riggs would have to owe a duty to
third parties harmed by money flowing through its accounts, but the cases are legion holding that is
not so. See, e.g., Eisenberg v. Wachovia Bank, N.A., 301 F.3d 220, 225 (4th Cir. 2002) ("[A] bank's
failure to investigate a customer's suspicious activity . . . does not give rise to liability to the third
party who is injured by the customer's fraud.") (citation omitted); Athey Prods. Corp. v. Harris Bank
Roselle, 89 F.3d 430, 435 (7th Cir. 1996); Eubanks v. FDIC, 977 F.2d 166, 170 n.3 (5th Cir. 1992);
Tzaras v. Evergreen Int'l Spot Trading, Inc., No. 01 Civ. 10726 (LAP), 2003 WL 470611, at *6
(S.D.N.Y. Feb. 25, 2003) (bank "owed no duty of care to" non-customer defrauded by bank's
customer); Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *13
(S.D.N.Y. Feb. 3, 1999) ("it is well settled that a bank owes no such duty to a non-customer third
party"); Shaw v. Santa Monica Bank, 920 F. Supp. 1080, 1087 (D. Haw. 1996).

wrongdoers. In Williams v. Bank Leumi Trust Co., 96 Civ. 6695 (LMM), 1997 WL 289865, at *5 (S.D.N.Y. May 30, 1997), for example, the court held that the "mere fact that the participants in the alleged scheme used accounts at [a bank] to perpetrate it, without more, does not rise to the level of substantial assistance necessary to state a claim for aiding and abetting liability." See also Dubai Islamic Bank, 256 F. Supp. 2d at 167 (the acts of "opening accounts, approving transfers, and then closing accounts on the basis of suspected fraud" do not by themselves constitute substantial assistance).

It is important to note that knowledge and substantial assistance are independent requirements, and both must be satisfied. This means that even if a bank had "actual knowledge of the fraud," a complaint containing no allegation that the bank "was doing anything more than providing its usual banking services," does not adequately plead substantial assistance. Rosner v. Bank of China, No. 06 cv 13562, 2007 WL 4468654, at *7 (S.D.N.Y. Dec. 19, 2007); See also Cromer Fin. Ltd. v. Berger, 137 F. Supp. 2d 452, 470-72 (S.D.N.Y. 2001) (unless a broker's alleged financial activities go beyond its normal services – unless they are "atypical" or "non-routine" – the complaint does not allege substantial assistance, even if the broker had actual knowledge of the underlying wrongs); Overseas Private Inv. Corp., 920 F. Supp. at 210 (claims about a lender's approval of the actions constituting the alleged breach concerned "the kind of behavior a lender would ordinarily be expected to take," and so substantial assistance was not adequately pled).

Measured against these standards, the Complaint does not come close to alleging that Riggs or the Allbrittons provided substantial assistance – that is, that they took "significant affirmative steps" that were "non-routine" and went beyond normal banking services. The plaintiff fails utterly to allege any specific action by Riggs or the Allbrittons – other than the kind of normal banking services which have repeatedly been held insufficient to amount to substantial assistance. Again, the Complaint's

19

unsupported use of terms like "assisted," "facilitated" "advanced," "conspired," or "acted as a conduit [or funnel]" do not pass muster under the Federal Rules' pleading requirements. See e.g., Twombly 127 S. Ct. at 1965 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .")

In fact, when it describes what Riggs or the Allbrittons actually did (as opposed to simply labeling their conduct) the Complaint can largely be boiled down to this: "Riggs Bank provided ordinary banking services for Prince Bandar and the Saudi Embassy." The Complaint points to the fact that Riggs maintained accounts, received deposits and wire transfers, and disbursed funds. But those are normal bank services, and, as the overwhelming weight of case authority shows, providing such services is not substantial assistance for aiding and abetting purposes.

The Complaint does claim that Riggs failed to file Suspicious Activity Reports for transactions involving Prince Bandar. Complaint ¶¶ 59-60, 62, 120, 128, 129, Ex. A. However, most of those allegations do not concern the supposed payments here, but instead relate to other transactions involving Saudi accounts. Even if the Complaint could be construed to allege that Riggs should have filed Suspicious Activity Reports about money transfers from BAE plc, that would not repair the plaintiff's pleading defects. If the U.S. government were to conclude Riggs should have filed more, or more timely, Suspicious Activity Reports for transfers into Saudi accounts or accounts to which Prince Bandar had access, that would be a matter for the government alone.[19] The failure to comply with "domestic and international bank secrecy, know-your-customer, and anti money laundering laws, decrees, and regulations" do not elevate a bank's actions "into the realm of

_____

[19] There is no private right of action for a bank's failure to file reports on certain transactions or to comply with anti-money laundering laws and regulations. See, e.g. Arroyo-Torres v. Ponce Fed. Bank F.B.S., 918 F.2d 276, 279 (1st Cir. 1990); Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000); Martinez Colon v. Santander Nat'l Bank, 4 F. Supp. 2d 53 (D.P.R. 1998).

'substantial assistance'". Rosner, 2007 WL 4468654, at *7; Mazzaro de Abreu v. Bank of Am.

Corp., No. 06 Civ. 673, 2007 WL 2609535 at *7 (S.D.N.Y. Sept. 10, 2007). There is nothing in the

Complaint to suggest that Prince Bandar or anyone from BAE plc asked Riggs or the Allbrittons to

handle BAE plc payments differently from other transactions, or that they agreed to do so. There is

no claim that Riggs or the Allbrittons long regarded the payments as suspicious, or actually knew

they were improper and nonetheless decided not to tell anyone. Lacking such allegations, the

Complaint fails adequately to plead "substantial assistance."

Besides requiring more than allegations of ordinary banking services, "the *defendant's state of

mind* [can have] special importance" in determining whether substantial assistance has been

adequately pled. Halberstam, 705 F.2d at 488 (emphasis in original). There must be allegations to

indicate that the defendant provided assistance with "deliberate . . . intention to participate in an

ongoing illicit enterprise." Id. See id. 477 (the defendant must "knowingly and substantially assist the

principal violation") See also Foltz v. U.S. News & World Report, Inc., 627 F. Supp. 1143, 1162-63

(D.D.C. 1986) ("Knowing assistance means just that: that the party charged (1) has knowingly

undertaken certain actions, (2) which it knows will provide (3) assistance to the party committing the

primary violation."). As some courts have put it, aiders and abettors "may be liable only if they have

the same mental state required for primary liability." Barker, 797 F.2d at 495; WAIT Radio v. Price

Waterhouse, 691 F. Supp. 102, 108 (N.D. Ill. 1988). As shown, the Complaint alleges nothing of the

kind. It offers nothing to indicate that Riggs or the Allbrittons even were aware of the alleged bribery

scheme, much less that they were providing knowing assistance to the BAE plc Defendants in

perpetrating it.

In the end, the most the Complaint alleges about Riggs's behavior is the following: (1) Riggs

provided ordinary banking services to the Saudi government and Prince Bandar; (2) Riggs did not

pay enough attention to large deposits and to Prince Bandar's withdrawals; (3) Riggs "never knew the source" of the funds and "could not understand" their purpose; and (4) Riggs may have been late in filing Suspicious Activity Reports with the U.S. government. Those allegations do not come close to stating a claim for aiding and abetting against Riggs or the Allbrittons.

## III.    The Doctrine of *In Pari Delicto* Bars Plaintiff's Claims Against PNC and the Allbrittons

According to the Complaint, the alleged scheme to bribe Prince Bandar and other Saudi government officials was devised and orchestrated by the individual BAE plc Defendants. Under the doctrine of *in pari delicto*, those who deliberately engage in wrongdoing forfeit any recovery from their accomplices. Because the BAE plc Defendants were acting on behalf of the company and within the scope of their apparent authority when they allegedly engaged in the bribery scheme, any such misconduct must be imputed to BAE plc itself. BAE plc is consequently barred by the *in pari delicto* doctrine from seeking relief from PNC or the Allbrittons for damages arising from the alleged bribes. For that reason, the plaintiff – standing in BAE plc's shoes – is forestalled as well.

### B.    The Doctrine of *In Pari Delicto* Bars Claims by Those Involved in the Alleged Misconduct

*In pari delicto*[20] (which means "in equal fault") is a doctrine applied in tort cases to prevent a deliberate wrongdoer from seeking recourse against his accomplices or co-perpetrators. Wager v. Pro, 575 F.2d 882, 884-85, 188 U.S. App. D.C. 1, 3-4 (D.C. Cir. 1976). The doctrine is rooted in two distinct policy goals: (i) "courts should not lend their good offices to mediating disputes among wrongdoers"; and (ii) "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306 (1985). For the *in pari delicto* defense to apply, the plaintiff must bear at least equal responsibility for its injuries,

---

[20]      The phrase is short for "*in pari delicto potior est conditio possidentis [defendentis]*," or "[i]n a case of equal or mutual fault . . . the position of the [defending] party is the better one." Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 306 (1985).

and the parties' culpability must arise from the same set of illegal acts. See Pinter v. Dahl, 486 U.S. 622, 632 (1988). Both requirements are satisfied here.

Federal courts have repeatedly accepted the *in pari delicto* defense as a bar to claims against third parties, such as attorneys, accountants and banks, for facilitating frauds committed by a company's directors and officers. See, e.g., Baena v. KPMG LLP, 453 F.3d 1, 4 (1st Cir. 2006); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 346 (3d Cir. 2001). In fact, the First Circuit's decision in Baena parallels this case, and it aptly demonstrates how the *in pari delicto* defense bars the plaintiff's claims against PNC and the Allbrittons. In Baena, the bankruptcy trustee for a defunct company sued the company's former accountants because they had "knowingly tolerated and abetted" an accounting fraud perpetrated by the company's top officers and directors. Baena, 453 F.3d at 3. The trustee alleged that the accountants had facilitated a fraudulent scheme to overstate the company's revenues by certifying inaccurate balance sheets and operating statements, among other things. Id. at 4. The district court granted the accountants' motion to dismiss based on the *in pari delicto* defense, and the First Circuit affirmed. Id. at 6. Observing that "under [the plaintiff's] own version of events," the defunct company's senior management were the "primary wrongdoers," the First Circuit concluded that the *in pari delicto* defense prohibited the trustee from suing the accountants "for helping in the wrong." Id. at 7.

Equally pertinent is Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.), 353 B.R. 324, 359-60 (Bankr. D.D.C. 2006), discussed earlier (supra,14-15) in connection with aiding and abetting. In that case, a bankruptcy trustee sued an insolvent corporation's officers and directors for breaches of fiduciary duty which allegedly contributed to the corporation's collapse. He also sued the corporation's attorneys for malpractice in connection with opinion letters about financial transactions that went bad. The law firms noted that the corporate insider defendants allegedly were aware that the

23

company was in trouble while loading on more debt, and that their misconduct was imputable to the

corporation and thus to the trustee. As a result, the firms argued, the lawsuit was an effort by an

alleged wrongdoer to recover from its alleged accomplices. After an extensive discussion, the court

agreed and granted the law firms' motion to dismiss the malpractice claims based on the *in pari*

*delicto* defense. 353 B.R. at 361-69.

The *in pari delicto* defense mandates dismissal of the plaintiff's claims against PNC and the

Allbrittons, too. Based on the Complaint's allegations, BAE plc is responsible for any injuries it may

have suffered as a result of its officers' and directors' alleged implementation of a bribery scheme.

Specifically, the complaint alleges the following:

- "To advance their own positions with BAE . . . [the individual BAE plc Defendants] undertook illegal and improper conduct . . . including paying huge bribes or kickbacks . . . to [Prince] Bandar . . . ." Complaint ¶¶ 8, 113.
- "These illegal kickback payments were explicitly bargained for and recognized at the outset of the [arms sale to the Saudi Arabian government] between BAE and the Saudis involved." Id. ¶ 115.
- "[British authorities are] investigating BAE for improper or illegal payments of corruption and bribery activities in South Africa, Tanzania, Romania, Chile, the Czech Republic, Qatar, Bosnia, Nigeria, Zambia, Costa Rica and Egypt." Id. ¶ 135.

These allegations depict the BAE plc defendants as the primary authors of the alleged bribery

scheme. They do not claim that Riggs or the Allbrittons had any part in the negotiations that

supposedly led to the bribes. Further, the Complaint claims that the alleged bribes were merely one

aspect of a much larger bribery campaign in which neither Riggs nor the Allbrittons are alleged to

have played a role. Consistent with this, the Complaint states that the BAE plc Defendants "selected"

Riggs as part of their plans. Complaint ¶ 114.

The Complaint thus portrays Riggs and the Allbrittons as minor accomplices (and unwitting

ones at that) in a much larger bribery scheme that was allegedly conceived and initiated by the BAE

plc Defendants. Because the BAE plc Defendants are alleged to have been the instigators and

principal wrongdoers, the *in pari delicto* doctrine applies, and the plaintiff's claims against PNC and the Allbrittons are barred. See Banco Industrial de Venezuela v. Credit Suisse, 99 F.3d 1045, 1051 (11th Cir. 1996) (noting that the court will not "help the equal or major wrongdoer who first caused the problem to recoup its losses"). The plaintiff simply cannot escape the fundamental unfairness that ensues when "a corporation [brings suit against] a third party for injuries caused by the corporation's own employees on its behalf." In re Crazy Eddie Secs. Litig., 802 F. Supp. 804, 818 (E.D.N.Y. 1992).

## C.    The Alleged Misconduct of the BAE plc Defendants is Imputed to BAE plc as a Matter of Law

### 1.    Attribution is Appropriate Because, Based on the Complaint's Allegations, the BAE plc Defendants Acted Within the Scope of Their Authority and the Alleged Bribes Benefited BAE plc

Because the plaintiff's aiding and abetting claims arise under District of Columbia law, questions relating to an *in pari delicto* defense to such claims – including whether an agent's actions or knowledge can be attributed to a corporation – are also governed by District of Columbia law. See O'Melveny & Myers v. FDIC, 512 U.S. 79, 84-85 (1994). In the District of Columbia, the actions of a corporation's officer or agent are attributed to the corporation so long as the officer or agent acted within the scope of his or her apparent authority. See Alberts, 353 B.R. 359-60; see also Restatement (Second) of Agency § 257 (1958). This remains true even in the case of misconduct. Alberts, 353 B.R. 359-60 (management's financial fraud imputed to the company); see also Bowen v. Mt. Vernon Savings Bank, 105 F.2d 796, 799 (D.C. Cir. 1939) (bank directors' knowledge of usury imputed to the bank).

The Complaint alleges that BAE plc's directors and senior officers were complicit in, and fully aware of, the alleged bribery scheme. Complaint ¶¶ 8, 113, 115. It further alleges that the impetus for the alleged bribery scheme was a desire to "to boost BAE plc's reported results." Id. ¶ 4.

25

Fostering BAE plc's sales surely falls within the ambit of the individual BAE plc Defendants' apparent authority to conduct business on behalf of the company. This case is therefore no different from the numerous fraud cases in which courts in this circuit and elsewhere have attributed misconduct by senior management to the companies under their stewardship. See, e.g., United States v. Sun-Diamond Growers of California, 138 F.3d 961, 970-71, 329 U.S. App. D.C. 149, 158-59 (D.C. Cir. 1998) (attributing a senior employee's criminal fraud to the company); Baena, 453 F.3d at 7 ("A fraud by top management to overstate earnings . . . profits the company in the first instance and the company is still civilly and criminally liable."); Banco Industrial, 99 F.3d at 1050 (affirming imputation of a senior officer's fraud when the company "benefit[ed] . . . during the fraud's life"). As a result, the misconduct alleged in the complaint must be imputed to BAE plc, and the plaintiff, which is suing on BAE plc's behalf, cannot recover against PNC or the Allbrittons.

## 2. The Adverse Interest Exception Does Not Apply

The general principle of imputation has one exception: an employee's misconduct will not be attributed to the corporation when the wrongdoing was adverse to the corporation's interests. See BCCI Holdings (Luxembourg) v. Clifford, 964 F. Supp. 468, 478 (D.D.C. 1997). This exception is limited in scope, however. It applies only in cases of fraud against the corporation (e.g., embezzlement), and not when the fraud is committed on behalf of the corporation, as is the case with the alleged wrongs here. See BCCI, 964 F. Supp. at 478; Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.), 353 B.R. 324, 367-68 (Bankr. D.D.C. 2006), quoting 3 William M. Fletcher, Fletcher Cyclopedia of Corporate Law § 829 (perm. ed. 1986) ("[T]he shareholders of a corporation whose officers commit fraud for the benefit of the corporation are beneficiaries of the fraud."). As noted, the Complaint claims that the alleged bribery scheme benefited BAE plc: The $2 billion in bribes supposedly paid by BAE plc is dwarfed by the **$80 billion** contract the company secured allegedly as a result of those payments. See Complaint ¶¶ 13, 120. Accordingly, the adverse interest

exception should not apply, and the BAE plc Defendants' alleged conduct should be imputed to the company.[21]

## D.   Dismissal Under Rule 12(b)(6) Is Warranted Because the Elements of the *In Pari Delicto* Defense Are Evident from the Complaint

This case is at an early stage, but it should be dismissed nonetheless, because the Complaint makes clear that the plaintiff cannot prevail. When facts set forth in a complaint unambiguously and conclusively demonstrate the applicability of an affirmative defense, the complaint should be dismissed without further proceedings. See Smith-Haynie v. District of Columbia, 155 F.3d 575, 578, 332 U.S. App. D.C. 182  (D.C. Cir. 1998) (affirmative defenses may be raised in a Rule 12(b)(6) motion when "the facts that give rise to the defense are clear from the face of the complaint"); Nisselson v. Lernout, 469 F.3d 143 (1st Cir. 2006) (noting that Rule 12(b)(6) motions may be granted based on "the inevitable success of an affirmative defense"). In fact, federal courts have routinely granted 12(b)(6) motions when, as here, the complaint affirmatively establishes the applicability of the *in pari delicto* defense. See Nisselson, 469 F.3d at 158 (affirming dismissal pursuant to Rule 12(b)(6) because "uncontroverted facts sufficient to establish the *in pari delicto* defense are definitively ascertainable from the amended complaint"); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 164 (2d Cir. 2003) (noting that the Second Circuit historically "has affirmed the dismissal of breach of fiduciary duty claims on the pleadings upon findings that *in pari delicto* had been established in the complaints"); see also In re

---

[21] In BCCI, the court declined to impute the defendant officers' misconduct to the corporation because the complaint adequately alleged that their actions had harmed the corporation. 964 F. Supp. at 478-80. But conduct in issue in that case had led to the corporation's "financial collapse and eventual demise." Id. at 480. Here, by contrast, the Complaint's allegations show that BAE enjoyed a major financial benefit from the alleged bribery scheme. In return for a supposed \$2 billion in payments, it secured \$80 billion in business – allegedly "the most lucrative arms deal in history." Complaint Ex. A at 3.

Dublin Securities, Inc. v. Hurd, 133 F.3d 377, 380 (6th Cir. 1997); Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.), 353 B.R. at 369.

The Complaint here alleges that the BAE plc Defendants unilaterally conceived of the alleged bribery scheme and selected Riggs and the Allbrittons to help facilitate that scheme. The conduct of the BAE plc officers and directors – the principal alleged malefactors – must be imputed to BAE plc as a matter of law, and the doctrine of *in pari delicto* thus bars BAE plc – and the plaintiff on its behalf – from seeking damages against the PNC or the Allbrittons for its own misconduct.

## Conclusion

As the BAE plc Defendants' Motion to Dismiss shows, the plaintiff lacks standing to bring the claims in this case. In addition, the Complaint fails to state a claim for aiding and abetting against PNC or the Allbrittons. Finally, even if the Complaint pled facts sufficient to state a cause of action, and even if the plaintiff had standing to assert it, the plaintiff would still be barred from recovery against PNC or the Allbrittons on behalf of BAE plc by the doctrine of *in pari delicto*. For any of these reasons, or all together, the claims against PNC and the Allbrittons should be dismissed.

Respectfully submitted,

STEPTOE & JOHNSON LLP

Christopher T. Lutz (D.C. Bar No. 204008)
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:    (202) 429-6440
Facsimile:     (202) 429-3902

Of Counsel:

WACHTELL, LIPTON, ROSEN & KATZ
Eric M. Roth
Adir G. Waldman
51 West 52nd Street
New York, New York 10019

Telephone:    (212) 403-1000
Facsimile:    (212) 403-2000

Counsel for The PNC Financial Services Group, Inc.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

_Richard L. Brusca_

Richard L. Brusca (D.C. Bar No. 366746)
1440 New York Ave., N.W.
Washington, D.C. 20005

Telephone:    (202) 371-7140
Facsimile:    (202) 661-8209

Of Counsel:

Michael W. Mitchell
Four Times Square
New York, New York 10036

Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

Counsel for the Allbrittons

Dated: January 31, 2008

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on behalf of BAE SYSTEMS PLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD (DICK) L. OLVER, et al.<br><br>Defendants.<br><br>- and -<br><br>BAE SYSTEMS PLC, an England and Wales Corporation,<br><br>Nominal Defendant. | Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer |

**ORDER**

Having considered the Motion to Dismiss filed by Defendants The PNC Financial Services Group, Inc. ("PNC"), Joe L. Allbritton, Robert L. Allbritton, and Barbara Allbritton ("the Allbrittons") , and all supporting and opposing filings and arguments, it is ORDERED that

All claims in this case against PNC and the Allbrittons shall be dismissed.

_____
Rosemary M. Collyer
United States District Judge

Dated: _____, 2008

## CERTIFICATE OF SERVICE

I certify that, besides having been filed and distributed electronically on the ECF system,

copies of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

OF PNC's AND THE ALLBRITTONS' JOINT MOTION TO DISMISS were sent on January

31, 2008, by First Class Mail, to the following counsel of record:

Roger M. Adelman
1100 Connecticut Avenue, N.W. – Suite 730
Washington, D.C. 20036

Counsel for Plaintiff

Darren J. Robbins
Mary K. Blasy
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway – Suite 1900
San Diego, CA 92101

Counsel for Plaintiff

Jonathan W. Cuneo
William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C St., N.E.
Washington, D.C. 20002

Counsel for Plaintiff

Michael J. Vanoverbeke
Thomas C. Michaud
Vanoverbeke Michaud & Timmony PC
79 Alfred St.
Detroit, MI 48201

Counsel for Plaintiff

Lawrence Byrne
Mary Warren
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105

       Counsel for BAE Systems plc Defendants

Wm. Bradford Reynolds
Howrey, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

       Counsel for Defendant Prince Bandar bin Sultan