# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD (DICK) L. OLVER et al.,<br><br>Defendants,<br><br>- and –<br><br>BAE SYSTEMS PLC, an England and Wales corporation,<br><br>Nominal Defendant. | Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer<br><br>**ORAL HEARING REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION OF BAE SYSTEMS PLC AND THE INDIVIDUAL BAE SYSTEMS PLC DEFENDANTS TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ..................................................................... 2

I.    PLAINTIFF LACKS STANDING TO ASSERT A DERIVATIVE CLAIM ON BAE
      PLC's BEHALF AND HAS FAILED TO STATE A COGNIZABLE CLAIM
      UNDER ENGLISH LAW ................................................................. 5

      A.    The Laws of England Apply to the Claims Involving BAE plc and the
            Individual BAE plc Defendants ........................................... 7

      B.    The Complaint Fails to Satisfy the Requirements of English Law for
            Maintaining a Shareholder Derivative Action ......................... 13

            1.    Plaintiff is Not a "Member" Entitled to Bring a Derivative Action Under
                  the Laws of England ................................................ 13

            2.    The Recently Enacted U.K. Companies Act 2006 Does Not Apply to
                  This Case ........................................................... 14

            3.    Plaintiff's Allegations Do Not Satisfy the Rule in *Foss v. Harbottle* or
                  Any Exceptions to the Rule ......................................... 15

      C.    U.S. District Courts Have Uniformly Dismissed Similar Derivative Actions
            Based on the Failure to Satisfy the Exceptions to the Rule in *Foss v. Harbottle* ...... 21

II.   IN THE ALTERNATIVE, PLAINTIFF's COMPLAINT SHOULD BE DISMISSED
      ON GROUNDS OF *FORUM NON CONVENIENS* ........................................ 22

      A.    An Adequate Forum is Available in England ............................ 22

      B.    The Private and Public Interest Factors Favor Dismissal ............. 24

            1.    The Private Interest Factors Favor Dismissal ...................... 25

            2.    The Public Interest Factors Favor Dismissal ...................... 27

III.  IN THE ALTERNATIVE, THE COURT LACKS PERSONAL JURISDICTION
      OVER BAE PLC AND THE INDIVIDUAL BAE PLC DEFENDANTS .................... 32

      A.    The Complaint Fails to Allege Contacts Supporting This Court's Personal
            Jurisdiction over BAE plc ............................................ 35

      B.    The Complaint Fails to Allege Contacts Supporting This Court's Personal
            Jurisdiction over the Individual BAE plc Defendants ................. 40

CONCLUSION ................................................................................ 43

# TABLE OF AUTHORITIES

## *Cases*

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.,* 346 F. Supp. 2d 64 (D.D.C. 2004) .................. 37, 40

*Allen v. Russian Fed'n*, 522 F. Supp. 2d 167 (D.D.C. 2007) .................................................. 37, 39

*Arab Monetary Fund v. Hashim and Others* [1993] 1 Lloyd's Rep. 543 ..................................... 21

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987) ...................... 33, 34

*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003) ............... 31, 33, 35, 39, 41

*Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998) ....................................................... 14, 32

*BCCI Holdings (Lux.), S.A. v. Mahfouz*, 828 F. Supp. 92 (D.D.C. 1993) ................. 23, 26, 28, 29

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................. 5

*BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73 (D.D.C. 2003) .......................... *passim*

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221 (D.D.C. 2005) ................................................ 34, 35

*Burger King v. Rudzewicz,*  471 U.S. 462 (1985) ........................................................................ 35

*Calder v. Jones*, 465 U.S. 783 (1984) ........................................................................................ 34

*Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) ................................................ 37

*Capital Currency Exchange, N.V. v. Nat'l Westminster Bank, PLC*,
    155 F.3d 603 (2d Cir. 1998) ................................................................................................. 25

*City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006) .............................................................................. 11, 12

*Council for Responsible Nutrition v. Hartford Cas. Ins. Co.*, No. 06-1590 (RMC), 2007 WL
    2020093 (D.D.C. July 12, 2007) ............................................................................................. 7

*Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) ........................................................................ 9

*Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987) .......................................................................... 33

*Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454 (D.C. Cir. 1990) ............................................... 33

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30
    (D.D.C. 2002) ................................................................................................................... 28, 34

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987) ......................................................... 8

*Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980*, 540 F. Supp. 1141
(D.D.C. 1982) ...................................................................................................... 27

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ............................................................ 8

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996).................... 23, 25

*Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448
(S.D.N.Y. Sept. 11, 2007)................................................................................ 10, 22

*First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375 (D.C. Cir. 1988) ......... 36

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) .......... 8

*Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147 (D.C. 2000) ........................ 9

*Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494 (D.D.C. 1987) .............. 9

*Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552 (D.D.C. 2001) ........................ 40

*Foss v. Harbottle*, (1843) 2 Hare 461 .............................................................. *passim*

*Gardner v. United States*, 213 F.3d 735 (D.C. Cir. 2000) ......................................... 38

*Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474 (S.D.N.Y. 2006)........................... 25, 30

*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) .................... 34, 38

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9
(D.D.C. 2001) .......................................................................................................... 6

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)................................................. *passim*

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ................................................... 6

*Hausman v. Buckley*, 299 F.2d 696 (2d Cir. 1962)................................................... 12

*Hbouss v. Coca-Cola Enterprises, Inc.*, No. 05 Civ. 7965 (DLC), 2006 WL 2285598
(S.D.N.Y. Aug. 9, 2006).......................................................................................... 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ............ 34, 39

*Huertas v. Kingdom of Spain*, 2006 WL 785302 (D.D.C. 2006)................................ 32

*Hughes v. A.H. Robins Co. Inc.*, 490 A.2d 1140 (D.C. 1985) ................................ 34, 39

*In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302 (S.D.N.Y. 2007) ........... 10, 11, 12, 22

*In re: BP P.L.C. Derivative Litigation*, No. 3-AN06-11959CI
   (Alaska Sup. Ct. May 17, 2007) ........................................................................ 10

*In re: BP P.L.C. Derivative Litigation*, No. S-12747 (Alaska July 19, 2007) ..............................10

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376
   (S.D.N.Y. 2002) .......................................................................................30

*In re Tyco Int'l., Ltd.*, 340 F.Supp.2d 94 (D.N.H. 2004) .................................... 8, 11, 22

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)................................................ 33, 37

*Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29 (D.D.C. 2006) ...................................... 31

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ........................................ 5

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) .................. 35

*Kaur v. Chertoff*, 489 F. Supp. 2d 52 (D.D.C. 2007).......................................................... 5

*Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984)............................................... 37

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941) ............................................ 7

*Konamaneni v. Rolls Royce (India) Ltd.* [2002] 1 WLR 1267 (Chancery Division).................... 18

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947). ..................................... 23, 25, 26, 29

*Labovitz  v. Wash.  Times Corp.,* 900 F. Supp. 500 (D.D.C. 1995).................................. 9

*Locals 302 and 612 of Intern. Union of Operating Engineers – Employers Const. Industry
   Retirement Trust v. Blanchard*, No. 04 Civ. 5954 (LAP) 2005 WL 2063852 (S.D.N.Y. Aug.
   25, 2005) ............................................................................................ 11

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13
   (D.D.C. 1999) ........................................................................................ 39

*Meng v. Schwartz*, 305 F. Supp. 2d 49 (D.D.C.) .................................................... 9, 30

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C. 2006) ...................................................... 33

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) ...................................................... 37

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983)............................................. 36

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)................................................. *passim*

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999)...................................... 11

*Prudential Assurance v. Newman Industries* [1982] 1 Ch 204.................................................... 17

*Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554 (D.D.C. 1981) ...................................... 33

*Richard v. Bell Atl. Corp.,* 946 F. Supp. 54 (D.D.C. 1996) .................................................... 34, 38

*Rush v. Savchuk*, 444 U.S. 320 (1980).......................................................................................... 41

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839 (D.C. Cir. 2002)...................... 37

*Scottish Air Int'l, Inc. v. British Caledonian Group*, *PLC*, 81 F.3d 1224 (2d Cir. 1996)............. 29

*Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521
    (D.C. Cir. 2001) ..................................................................................................... 33, 41

*Seghers v. Thompson*, No. 06 Civ. 308 (RMB) (KNF), 2006 WL 2807203
    (S.D.N.Y. Sept. 27, 2006) ...................................................................................... 10, 22

*Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL 737502
    (S.D.N.Y. Mar. 12, 2007) ...................................................................................... 10, 11

*Shaw v. Marriott Int'l, Inc.,* 474 F. Supp. 2d 141 (D.D.C. 2007)................................................. 32

*Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57 (D.D.C. 2007).............................. 23, 24, 25

*Tomran, Inc. v. Passano*, 891 A.2d 336 (Md. 2006) ............................................................. 14, 32

*U.S. v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) ........................................................................... 34

*Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259 (D.C. Cir. 1972)................................................ 9

*Wiggins v. Equifax Inc.*, 853 F. Supp. 500 (D.D.C. 1994)........................................................... 42

*Winn v. Schafer*, 499 F.Supp. 2d 390 (S.D.N.Y. 2007) ................................................... 6, 10, 22

*YWCA v. Allstate Ins. Co.*, 275 F.3d 1145 (D.C. Cir. 2002)......................................................... 7

**Statutes**

D.C. Code § 13-334 ....................................................................................................................... 4

D.C. Code § 13-422 ..................................................................................................................... 34

D.C. Code § 29-1052 ..................................................................................................................... 8

Federal Rule of Civil Procedure 12 ......................................................................................... 5, 6

Federal Rule of Civil Procedure 4 ............................................................................................. 37

Companies Act 2006...................................................................................... 4, 7, 15, 22

Companies Act of 1985 ..................................................................................... 17, 20, 24

Title, 2007, S.I, 2007/2194 art. 9, sch. 3 ¶ 20.3 (U.K.) ............................................... 15

## PRELIMINARY STATEMENT

This Complaint alleges breach of fiduciary duty and waste of corporate assets by current and former directors of an English company, BAE Systems plc, and seeks to remedy the wrongs allegedly done to the English company by those directors, the majority of whom are in England. Accordingly, this is a case about the corporate governance of an English company. Plaintiff fails to allege any legitimate links between its allegations and the United States. Plaintiff merely asserts that nominal defendant BAE Systems plc does business in the U.S., but neglects to distinguish between the nominal defendant English parent and its separate and independent U.S. operating subsidiary, which is not named as a defendant or otherwise mentioned in the Complaint. Plaintiff alleges that Washington, D.C. has a significant interest in this litigation, but fails to plead any supporting facts for this allegation, other than the purported transfer of funds from one foreign national to another through the bank formerly operating under the name Riggs Bank. Based on Plaintiff's unsupported and unsupportable allegations, this case has no place in this Court or in the U.S. The Complaint should be dismissed on at least three separate and independently dispositive grounds. First, under English law which governs the claims against the BAE Systems plc Defendants in this case, Plaintiff lacks standing to bring a shareholder derivative lawsuit against defendant BAE Systems plc, an English company, and has failed to state a cognizable claim under the rule in *Foss v. Harbottle*, (1843) 2 Hare 461. Second, this case should be dismissed on *forum non conveniens* grounds. Not only is the real party in interest a foreign corporation, but the relevant corporate books and records, and nearly all of the individual defendants and witnesses identified in the Complaint, are located in the United Kingdom rather than in the U.S. Finally, this case should be dismissed because the Court lacks personal jurisdiction over BAE Systems plc and the individual defendants.

**FACTUAL BACKGROUND**

On approximately September 19, 2007, Plaintiff City of Harper Woods Employees' Retirement Systems filed a purported shareholder derivative complaint on behalf of BAE Systems plc ("BAE plc" or the "Company") against current[1] and former[2] BAE plc directors or executives (collectively, the "Individual BAE plc Defendants").  (Compl. ¶ 1.) Plaintiff, a holder of approximately 3,500 BAE plc American Depositary Receipts ("ADRs"), describes itself as a "shareholder[] and/or beneficial owner" of BAE plc.  (Id. ¶ 83.)   Although not specified in the text of the Complaint, Plaintiff states in the caption that it is located in Michigan, specifically at 19617 Harper Avenue, Harper Woods, Michigan 48225.

The Complaint asserts two causes of action against the Individual BAE plc Defendants: a purported derivative claim for breach of fiduciary duties and a purported derivative claim for waste of corporate assets.  (Id. ¶¶ 144-56.)  The Complaint also names as defendants Saudi Arabian Prince Bandar bin Sultan, The PNC Financial Services Group, Inc. ("PNC"), as successor to Riggs National Corporation and Riggs Bank, and Joe, Robert, and Barbara Allbritton, individuals who formerly held a controlling interest in Riggs Bank.  (Id. ¶¶ 1, 58.)  Those defendants are alleged to have aided and abetted the Individual BAE plc Defendants in their breach of fiduciary duties.  (Id. ¶¶ 157-58.)

---

[1]    Plaintiff names BAE plc as a nominal defendant and also names as defendants the following BAE plc directors who were members of the board at the time that Plaintiff filed the Complaint: Philip J. Carroll, Ulrich Cartellieri, Christopher V. Geoghegan, Michael J. Hartnall, Walter P. Havenstein, Andrew George Inglis, Ian G. King, James Mason, Richard (Dick) L. Olver, Roberto Quarta, George W. Rose, Sir Anthony Nigel Russell Rudd, Michael J. Turner, Sir Peter A. Weinberg.

[2]    Plaintiff also names as defendants the following BAE plc directors who were former members of the board at the time that Plaintiff filed the Complaint: Sir Robin Biggam, Sue Birley, Keith Clark Brown, Sir Richard Harry Evans, Lord Alexander Hesketh, Michael Lester, Sir Charles Beech Gordon Masefield, Steve Lewis Mogford, Michael Denzil Xavier Portillo, Mark H. Ronald, Paolo Scaroni, and John Pix Weston.  With the exceptions of Sue Birley and Paolo Scaroni, these defendants are collectively referred to along with the individuals listed in footnote 1 as the "Individual BAE plc Defendants").  As Sue Birley and Paolo Scaroni have not been served by Plaintiff or agreed to accept service, they are not required to respond to the Complaint and therefore do not join this Motion.

The Complaint does not name as defendants any subsidiaries or affiliates of BAE plc, only the nominal defendant English parent.

The Complaint's 89 pages of allegations consist primarily of excerpts from media stories and the annual reports of BAE plc. (*Id.* ¶¶ 11, 12, 13, 14, 20, 72-80, 92, 95, 98-99, 102-103, 120, 121, 137, 139). Despite its length, it can be summarized succinctly. As stated in the Complaint, nominal defendant BAE plc is an English defense contracting company headquartered in London. (*Id.* ¶¶ 19, 21.) The nominal defendant English company, and its separate U.S. subsidiary, BAE Systems Inc. ("BAE Inc."), are parties to a Special Security Agreement with the U.S. Government that allows BAE Inc. to supply products and services of a highly sensitive nature to the U.S. Department of Defense, the U.S. intelligence community, and various other parts of the U.S. government. (*Id.* ¶ 19.) The Complaint does not, however, assert claims arising from the Special Security Agreement or the activities of BAE Inc. in the U.S. Rather, the Complaint asserts claims on behalf of BAE plc against current and former directors for breach of fiduciary duties and waste of corporate assets related to three supposed patterns of conduct allegedly connected with the Company's international defense contracting.

*First*, Plaintiff alleges that, commencing in the mid-1980s, the Individual BAE plc Defendants permitted BAE plc to make a series of payments to Prince Bandar bin Sultan of Saudi Arabia in connection with the U.K.'s Al-Yamamah military programme with the Kingdom of Saudi Arabia, in which BAE plc was also involved. (*Id.* ¶¶ 6-10, 111-130.) Plaintiff asserts that the payments constituted not legitimate remuneration for services rendered, but improper bribes to Prince Bandar, who was the son of the then-head of the Saudi Ministry of Defense, to secure the Company's role in the programme. (*Id.* ¶¶ 7-8.) The payments are alleged to have been deposited for Bandar's benefit "in significant part" in an account at Washington, D.C.'s

3

Riggs Bank.  (*Id.* ¶¶ 1, 8, 50,  111-130.)  In 2004, Riggs Bank was acquired by PNC and the

Allbrittons ceased to control the bank.  (*Id.* ¶¶ 54, 126.)  Plaintiff claims that the payments to

Bandar eventually reached two billion dollars.  (*Id*. ¶ 113.)  Plaintiff claims that the Individual

BAE plc Defendants permitted or encouraged the payments in order to increase the Company's

"success and profitability – in the short term" and to enhance their own "power,  prestige and

profit."  (*Id.* ¶¶ 3-4.)  In support of its allegation that the Individual BAE plc Defendants

jeopardized the Company's financial health by exposing the Company to damanges, Plaintiff

asserts that the Al-Yamamah payments breached the U.S. Foreign Corrupt Practices Act

("FCPA")  and the Anti-Corruption Convention of the Organization for Economic Cooperation

and Development ("OECD Convention").  (*Id.* ¶¶ 4-5.)

   *Second*, Plaintiff alleges a broader pattern of illegal and/or improper payments by

BAE plc in connection with its business in various countries including Tanzania, Chile, the

Czech Republic, Qatar, Romania, Slovakia, and South Africa.  (*Id.* ¶¶ 131-141.)  Plaintiff also

alleges "secret agent" payments administered by the Company from offices in Geneva,

Switzerland, and the British Virgin Islands.  (*Id.* ¶¶ 131-133.)  In support of those claims,

Plaintiff cites reports that foreign governments are "investigating," or "reviewing" allegations of

such improper activities.  (*Id.* ¶¶ 131-141.)  Plaintiff appears to allege that these reports evidence

conduct by the Company that violated the FCPA and/or the OECD Convention.  (*Id.* ¶¶ 142-43.)

   *Third*, Plaintiff claims the Individual BAE plc Defendants made misleading

public statements to the effect that the Company operated in accordance with applicable rules

and laws, including Section 463 of the U.K.'s Companies Act 2006.  (*Id.* ¶¶ 5, 86-110.)  The

Complaint quotes extensively from annual reports and other statements issued by BAE plc in

claiming that the Individual BAE plc Defendants undertook their alleged campaign of bribery in secret while publicly affirming BAE plc's concern for the rule of law.  (*Id.* ¶¶ 87-104.)

Plaintiff does not allege that the wrongful activities described in the Complaint are continuing, and to the extent that Plaintiff specifies a time period for any of its allegations, the time period ranges from the 1980s to several years ago.  As to the payments to Prince Bandar, Plaintiff states that Bandar has returned to Saudi Arabia (*Id.* ¶ 114) and that Riggs Bank was acquired by PNC in 2004.  (*Id.* ¶ 126.)

Plaintiff concedes that it did not attempt to approach the BAE plc board of directors with a demand concerning its allegations, and asserts that such a demand would have been futile.  (*Id.* ¶ 85.)

## ARGUMENT

## I.    PLAINTIFF LACKS STANDING TO ASSERT A DERIVATIVE CLAIM ON BAE PLC'S BEHALF AND HAS FAILED TO STATE A COGNIZABLE CLAIM UNDER ENGLISH LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  The Court "need not… accept inferences that are unsupported by the facts set forth in the complaint… [or] legal conclusions cast in the form of factual allegations."  *Kaur v. Chertoff,* 489 F. Supp. 2d 52, 60 (D.D.C. 2007), (quoting *Islamic Am. Relief Agency v. Gonzales,* 477 F.3d 728, 732 (D.C. Cir. 2007)).

Even if the allegations in the Complaint are presumed to be true for the purposes of this Motion, Plaintiff lacks standing to pursue its claim against the BAE plc Defendants under

English law and has failed to state a claim under English law. [3]  Turning first to choice of law, it

is clear – and Plaintiff has conceded – that this Court should apply the internal affairs doctrine,

which mandates the application of English law to the claims against the BAE plc Defendants in

this dispute, as BAE plc is incorporated under English law.  Moreover, any argument that a local

law exception to this doctrine obtains has been rejected by other courts in similar circumstances

and is no more meritorious in the instant case.

As a threshold matter, Plaintiff as a holder of ADRs is not a shareholder as

defined in English law, and its purported shareholder derivative action can be dismissed on that

basis alone.  Even if Plaintiff were to cure that obvious defect, it faces other, insurmountable

obstacles.  While the English Companies Act 2006 broadened the circumstances under which

shareholders can pursue derivative litigation, its provisions are not retroactive to alleged

wrongdoing that took place before 1 October  2007, and thus it is inapplicable to Plaintiff's

Complaint.  If the Companies Act 2006 does not apply, English law dictates that any shareholder

derivative action must comply with the rule in *Foss v. Harbottle,* which permits such lawsuits

---

[3]     Although District of Columbia courts have held in the context of actions seeking declaratory or injunctive
relief that standing is a question of subject matter jurisdiction that can be challenged by means of a Fed. R.
Civ. P. 12(b)(1) motion to dismiss, *e.g. Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), there is no
reported precedent in this District discussing the applicability of Rule 12(b)(1) in the context of  standing to
bring a shareholder derivative claims governed by foreign law.  Other courts have observed that the
question of a plaintiff's standing to bring a derivative claim under foreign law can be regarded as a matter
either of subject matter jurisdiction or the sufficiency of the claim.  *See Winn v. Schafer,* 499 F. Supp. 2d
390, 395 (S.D.N.Y. 2007) ("The case law . . . is unclear as to whether standing to bring a derivative action
is analyzed under Rule 12(b)(1) or 12(b)(6)").  Should this Court determine that it wishes to consider the
arguments in this Part I as matters of subject matter jurisdiction in addition to matters of pleading
sufficiency, the Individual BAE plc Defendants also move to dismiss under Rule 12(b)(1), as the Complaint
fails to establish Plaintiff's standing to bring these derivative claims.  Plaintiff lacks the prudential standing
that would justify this Court's subject matter jurisdiction.  *See Grand Lodge of the Fraternal Order of
Police v. Ashcroft,* 185 F. Supp. 2d 9, 15 (D.D.C. 2001).  First, Plaintiff admits that it is an ADR holder, and
as such it has no right under English law to assert a derivative claim on BAE plc's behalf.  (*See* Part I.B.1.,
*infra.*)  Second, Plaintiff's allegations do not satisfy the exceptions to the rule in the English case *Foss v.
Harbottle* governing the entitlement of a shareholder to bring a derivative claim.  Thus Plaintiff seeks to
"proffer grievances not relevant to the 'zone of interests' intended to be protected" by those exceptions
under English law.  *Grand Lodge,* 185 F. Supp. 2d  at 15 (quoting *Navegar, Inc. v. United States*, 103 F.2d
994, 998 (D.C. Cir. 1997)).  (*See* Part I.B.3., *infra.*)  Therefore the Complaint can be dismissed pursuant to
Rule 12(b)(1) as well as Rule 12(b)(6).

only in narrow circumstances.  Plaintiff has failed to demonstrate that its allegations satisfy any

of the exceptions to the rule in *Foss v. Harbottle* that would allow its case to proceed.  In

addition, the Complaint fails to state a claim under Section 463 of the Companies Act 2006.

Defendants respectfully submit the Declaration of Martin Moore QC, an expert on English law,

who discusses these pertinent matters in detail.  The overwhelming weight of precedent in U.S.

federal courts favors dismissal of derivative actions brought against English companies or others

incorporated under commonwealth laws where the plaintiff fails to satisfy the *Foss v. Harbottle*

exceptions, as Plaintiff has failed to do.

> **A.    The Laws of England Apply to the Claims Involving BAE plc and the Individual BAE plc Defendants**

Plaintiff asserts that the Court has subject matter jurisdiction over this case on the

basis of diversity of citizenship.  (Compl. ¶ 16.)  A federal court sitting in diversity must apply

the conflicts of law rules of the forum in which it sits.  *Klaxon Co. v. Stentor Electric Mfg. Co.,*

313 U.S. 487, 496 (1941).  Therefore, federal courts in the District of Columbia apply the

District of Columbia's choice of law framework to determine what law to apply.  *Council for*

*Responsible Nutrition v. Hartford Cas. Ins. Co.*, No. 06-1590 (RMC), 2007 WL 2020093, at *3

(D.D.C. July 12, 2007) (citing *YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002)).

> **1.    The Internal Affairs Doctrine Mandates That English Law Applies To The Claims Against the BAE plc Defendants**

Courts in the District of Columbia generally apply a modified "interest analysis"

approach to resolve choice of law issues in tort actions.  *District of Columbia v. Coleman*, 667

A.2d 811, 816 (D.C. 1995).  When faced with derivative claims of improper corporate

governance, however, courts typically follow the internal affairs doctrine and apply the law of

the state of incorporation of the nominal defendant corporation.  The internal affairs doctrine

provides that "[as] a general matter, the law of the state of incorporation normally determines

issues relating to the internal affairs of a corporation." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (emphasis omitted); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) (noting that "[t]his beneficial free market system depends at its core upon the fact that a corporation - except in the rarest situations - is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation"); *Edgar v. MITE Corp.*, 457 U.S. 624, 625 (1982) (describing the doctrine as "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs").

Indeed, it could not be otherwise.  A corporation could not be governed rationally if its board of directors were held to different duties to the corporation depending solely on the forum in which a plaintiff elected to sue.  Directors' duties in supervising a corporation should be clear and consistent, and this end is best achieved by uniformly applying the laws of the jurisdiction that govern the organization of the corporation.[4]  In litigation challenging the actions of corporate directors, consequently, a long line of precedent in this District favors application of the internal affairs doctrine to the choice of law question.  *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 151 (D.C. 2000) (applying the law of the state of incorporation, Illinois, in determining viability of derivative action); *Cowin v. Bresler*, 741 F.2d 410, 414 n.4 (D.C. Cir. 1984) (applying the law of the state of incorporation, finding that "[b]ecause Bresler & Reiner is incorporated in Delaware, the substantive law of the state governs our disposition of Cowin's

---

[4]    The internal affairs doctrine is also embedded in District of Columbia Code § 29-1052, which states that "the laws of the state or other jurisdiction under which a foreign limited liability company is formed govern its formation and internal affairs and the liability of its members and managers."  A "foreign limited liability company" is defined in the D.C. Code as a limited liability company formed under the laws of a state other than the District, and "state" is defined as "any state, territory, colony, dependency, or possession of the United States of America, or any foreign country or other foreign jurisdiction." (emphasis added).  D.C. Code § 29-1001.  In *In re Tyco Int'l, Ltd.,* a similar provision in New Hampshire law which specified that "a shareholder's ability to bring a derivative action is determined by using the law of the corporation's place of incorporation" was a basis for the court's application of Bermudian law to a derivative suit involving Tyco International, Ltd.  340 F. Supp. 2d 94, 96n.2 (D.N.H. 2004).

common law claims of corporate mismanagement, fraud, and self-dealing"); *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1268 (D.C. Cir. 1972) (applying the law of the state of incorporation, stating "Kay, being a Delaware corporation, the fiduciary obligations of its officers and directors are to be determined upon the ascertainment and proper application of the law of Delaware"); *Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494, 1520 n.35 (D.D.C. 1987) (finding that Delaware law governed questions concerning the corporate governance of Delaware corporation under applicable conflicts of law rules). As simply put by the court in *Labovitz v. Wash. Times Corp.*, "[w]hen a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated, and the District of Columbia follows suit." 900 F. Supp. 500, 503 (D.D.C. 1995) (citations omitted), *aff'd,* 172 F.3d 897 (D.C. Cir. 1999).[5] Indeed, even Plaintiff implicitly concedes that this Court should apply the internal affairs doctrine to this case. (Compl. ¶ 21 ("under the local law exception to the internal affairs doctrine, the laws of Washington, D.C. (or another appropriate U.S. jurisdiction) may, if necessary, be applied")).

       In the instant case, England clearly has a much greater interest than any other jurisdiction in the governance decisions of a corporation organized under its laws and based within its territory. That interest is even more pressing given that Plaintiff's allegations concerning the Al-Yamamah programme, which is "classified pursuant to the laws of both the

---

[5]      When courts in the District of Columbia faced with derivative claims undertake an "interest analysis" without referring to the internal affairs doctrine, the same presumption that underlies the internal affairs doctrine mandates that the law of the state of incorporation virtually always has the strongest interest. In *Meng v. Schwartz*, for example, the court held that because "plaintiffs' breach of fiduciary duty and negligence claims deal substantially with matters of corporate governance and the internal organizational affairs," the place of incorporation (Bermuda) had the more substantial interest in having its laws applied to the derivative claims against the directors. 305 F. Supp. 2d 49, 58 (D.D.C. 2004)

United Kingdom and the Kingdom of Saudia Arabia." (Parkes Decl. ¶ 11.) The District of

Columbia's choice of law rules therefore require that this derivative action involving a

corporation incorporated under the laws of England, must be governed by the laws of England.

  A consistent line of precedent from other jurisdictions provides further support for

the application of English law to the present dispute.[6] When faced with derivative claims or

suits involving foreign corporations in other jurisdictions such as the U.K., district courts have

uniformly applied the law of the state of incorporation. *See Feiner Family Trust v. VBI Corp.*,

No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *5 (S.D.N.Y. Sept. 11, 2007) (applying Cayman

Islands law); *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302, 311 (S.D.N.Y. 2007)

(applying law of England and Wales); *Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y.

2007) (applying Cayman Islands law); *Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL

737502, at *6 (S.D.N.Y. Mar. 12, 2007) (applying Dutch law); *Seghers v. Thompson*, No. 06

Civ. 308 (RMB) (KNF), 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (applying British

Virgin Islands law); *Hbouss v. Coca-Cola Enterprises, Inc.,* No. 05 Civ. 7965 (DLC), 2006 WL

2285598, at *4 (S.D.N.Y. Aug. 9, 2006) (applying Quebecois law); *City of Sterling Heights

Police and Fire Retirement System v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y.

2006) (applying law of England and Wales); *Locals 302 and 612 of Intern. Union of Operating

Engineers – Employers Const. Industry Retirement Trust v. Blanchard*, No. 04 Civ. 5954 (LAP),

2005 WL 2063852, at *3-4 (S.D.N.Y. Aug. 25, 2005) (applying Canadian law); *In re Tyco Int'l.,*

---

[6]  To the extent it is raised by Plaintiff, the decision of an Alaska state court in *In re: BP P.L.C. Derivative Litigation*, No. 3-AN06-11959CI (Alaska Sup. Ct. May 17, 2007) should not disturb this well established and long standing body of precedent. There, the trial court applied Alaska law to a derivative claim involving BP plc, a U.K. company, and four United States subsidiaries. The decision is factually distinguishable - the Alaska court relied heavily on events (an oil spill) occurring in Alaska - and legally suspect, as demonstrated by the Alaska Supreme Court's grant of a petition for interlocutory review. *See In re: BP P.L.C. Derivative Litigation*, No. S-12747 (Alaska July 19, 2007) (order granting petition for review). The petition is currently before the Alaska Supreme Court.

*Ltd.*, 340 F. Supp. 2d 94, 96 (D.N.H. 2004) (applying Bermudian Law); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 (S.D.N.Y. 1999) (applying law of England and Wales). This case should be no different.

  **2.**  **No "Local Law Exception" to the Internal Affairs Doctrine Applies to this Case**

  Plaintiff apparently intends to ask the Court to employ a "local law exception to the internal affairs doctrine" (Compl. ¶ 21), but this argument has repeatedly been rejected by other courts in similar circumstances, and is equally deficient in this case.  Indeed, no recent decision of a court in this District has applied or even discussed such an exception.  Other jurisdictions have held that a local law exception to the internal affairs doctrine is available either when "the pertinent laws of the jurisdiction of incorporation are objectively 'immoral' or 'unjust'" or "where 'application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided.'"  *In re BP p.l.c.*, 507 F. Supp. 2d at 308-9 (citations omitted).   But the weight of precedent disfavors the local law exception where the defendants are primarily foreign nationals with only tangential contacts with the forum.  *Id.* at 308-10 (rejecting local law exception to internal affairs doctrine in shareholder derivative action on grounds that foreign defendants had "minimal contacts with New York" and there was a true conflict between New York and English law); *Seybold*, 2007 WL 737502 at *6-7 (rejecting local law exception to internal affairs doctrine in shareholder derivative action even where foreign jurisdiction's laws did not recognize shareholder derivative suits); *Hausman v. Buckley*, 299 F.2d 696, 705 (2d Cir. 1962).

   In this case, it is clear that neither prong of the local law exception obtains.  First, the laws of England are not immoral or fundamentally unjust, as they provide a variety of remedies to shareholders pursuing complaints about corporate governance.  Those remedies are

discussed in the Declaration of Martin Moore QC ("Moore Decl.") ¶¶ 75-79. Numerous other decisions of U.S. courts have found that the remedies offered to shareholders under English law are fair and satisfactory. *In re BP p.l.c.,* 507 F. Supp. 2d at 309-10 (English law offers suitable remedies to shareholders); *City of Sterling Heights*, 423 F. Supp. 2d 348 (same).

Nor is there any basis in the present case to invoke the unusual "overriding interest" exception. To the extent that the overriding interest exception has been applied in other cases, it has been in instances where a corporation had "little contact, apart from the fact of its incorporation, with the state of [its] incorporation," and had the great majority of its contacts with the state whose local law applied. Restatement (Second) of Conflict of Laws § 302 cmt. b and c; *In re BP p.l.c.,* 507 F. Supp. 2d at 308-10 (discussing limited instances in which local law exception was applied). That is plainly not the situation in the present case. BAE plc is incorporated and has its principal offices in the U.K.; the great majority of its present and former board members reside in England; and the board's support functions are administered in England. Indeed, if any "overriding interest" were to be recognized here, it would be the overriding interest of the U.K. in adjudicating this dispute involving [a military programme that is classified for national security reasons.] (Parkes Decl. ¶ 11.)

Presumably in support of its argument that a U.S. state's laws should apply, Plaintiff loads the Complaint with allegations about the Company's purported activities in the U.S. But Plaintiff fails to inform the Court that those activities are undertaken by a separate corporate subsidiary, incorporated in Delaware, which has its own board and management pursuant to a Special Security Agreement with the United States Government (*Id.* ¶¶ 19-20),  and which, not incidentally, Plaintiff omits to name as a defendant, nominal or otherwise. BAE plc

does not have a presence in or do business in the U.S. (*Id.* ¶¶ 9-10), and so its activities do not provide a basis for application of a U.S. state's laws.

Plaintiff may assert that the alleged receipt of payments from BAE plc at Riggs Bank in Washington, D.C. confers an overriding interest on Washington, D.C., but that tail-wagging-the-dog argument should be rejected as well.  Taking Plaintiff's allegations as true only for purposes of this Motion, the fact that money passed from one foreign national (BAE plc) to another foreign national (Prince Bandar) through this District is only an offshoot of the "broader pattern and course of conduct of improper payments" that Plaintiff alleges took place all over the world.  (Compl. ¶¶ 131- 41.)  The gravamen of Plaintiff's Complaint is its breach of fiduciary duty and corporate waste claims premised on decision-making by the English board of directors of an English company – not the alleged flow of funds into a bank in this District through the Company's use of its bank accounts abroad.  Finally, Plaintiff admits that Riggs Bank was acquired by PNC and is no longer controlled by the Allbrittons (*Id.* ¶¶ 54-56), and that Bandar is now resident in Saudi Arabia (*Id.* ¶ 8).  There is no continuing conduct, even in Plaintiff's view of the case, that would justify an onslaught of attention to these claims from the Washington, D.C. court system.  It is England which has an overriding interest in the corporate governance, internal controls, board decision-making, and contracting activity of this English company.  Plainly, English law should apply to the claims against the BAE plc Defendants in this case.

**B.**    **The Complaint Fails to Satisfy the Requirements of English Law for Maintaining a Shareholder Derivative Action**

**1.**    **Plaintiff is Not a "Member" Entitled to Bring a Derivative Action Under the Laws of England**

As a threshold matter, Plaintiff does not satisfy English law conditions to bring a shareholder derivative lawsuit because Plaintiff is not a shareholder.  As explained in the Declaration of Martin Moore QC, under English law, in order to sue derivatively on behalf of a

company, a person must be a "member" of the company. (Moore Decl. ¶ 26.) A member of a company is defined under English law as an actual holder of shares, appearing on the company register, and does not include one holding only a beneficial interest. (*Id*. ¶¶ 26-27). The Complaint asserts that Plaintiff is a holder of approximately 3,500 BAE plc ADRs. (Compl. ¶ 18.) Consistent with Plaintiff's pleading, the shares underlying Plaintiff's ADRs are held by a custodian, Guaranty Nominees Limited, for the depositary JPMorgan Chase. (Compl. ¶ 20(i); Parkes Decl. ¶ 22.) It is the custodian, Guaranty Nominees Limited, that appears on the BAE plc company register, not Plaintiff. (Parkes Decl. ¶ 22.). English law confers no right on this Plaintiff to bring a derivative claim on the Company's behalf. (Moore Decl. ¶¶ 26-28.)

U.S. courts have consistently held that similar foreign law standing requirements prevent mere beneficial owners, such as ADR holders, from suing derivatively on behalf of foreign corporations. *Batchelder v. Kawamoto*, 147 F.3d 915, 921-22 (9th Cir. 1998) (holding that an ADR holder could not sue derivatively under Japanese law as only shareholders appearing on the company's shareholders' register may institute a derivative action); *Tomran, Inc. v. Passano*, 891 A.2d 336, 348 (Md. 2006) (holding that an ADR holder could not sue derivatively under Irish law in light of the dearth of any statutory or common law authority indicating that Irish courts recognize the right of beneficial owners to sue derivatively). This Court should hold the same, as Plaintiff has admitted in the Complaint that it is only a holder of ADRs, not a shareholder.

### 2. The Recently Enacted U.K. Companies Act 2006 Does Not Apply to This Case

To the extent that Plaintiff argues that English law "will permit this action to be maintained based on the allegations made in this Complaint" (Compl. ¶ 21), that argument is wholly inaccurate. While the requirements under English law for a shareholder derivative suit

were altered by Section 260 of the Companies Act 2006, the Act came into force on 1 October 2007, does not have retroactive effect, and does not apply to the allegations of the Complaint. (Moore Decl. ¶¶ 8-12.)   There is no ambiguity here.  An English law statutory instrument enacted in 2007 states:

> If, or to the extent that, the claim arises from acts or omissions that occurred before 1st October 2007, the court must exercise its powers under those sections so as to secure that the claim is allowed to proceed as a derivative claim only if, or to the extent that, it would have been allowed to proceed as a derivative claim under the law in force immediately before that date.

(*Id.* ¶ 12) (citing SI 2007/2194 Article 9, Schedule 3, para 20(3).)  The allegations of conduct in the Complaint are either pleaded nonspecifically as to date, or concern events clearly occurring prior to 1 October 2007.  (*Id.* ¶¶ 16-25 (allegations of Complaint do not suffice to invoke application of 2006 Act.))  For instance, with respect to the allegations of bribes to Prince Bandar, Plaintiff states that Prince Bandar has returned to Saudi Arabia (Compl. ¶ 114) and that Riggs Bank was acquired by PNC in 2004.  (*Id.* ¶ 126.)  Therefore, the standards applying to derivative claims in the 2006 Act are inapplicable to this case.  (Moore Decl. ¶¶ 8-25, 29-30.)

### 3.   Plaintiff's Allegations Do Not Satisfy the Rule in *Foss v. Harbottle* or Any Exceptions to the Rule

Even if Plaintiff were to cure its defective standing as a beneficial owner, Plaintiff still has not pleaded facts sufficient to state a derivative claim.  Under English law, shareholder derivative suits have been governed by the rule in *Foss v. Harbottle*, which prevents shareholders from commencing derivative actions except in extremely limited instances.  (Moore Decl. ¶¶ 29-32.)  The rule is derived from the distinct legal personality of a company.  (*Id.* ¶ 30.)  The principle is that "when a wrong is done to a company, whether by a director or anyone else, the proper plaintiff is the company, just as if the injured party were an individual."  (*Id.*)

The rule in *Foss v. Harbottle* first requires a court to examine whether the alleged wrongdoing is capable of ratification by a simple majority of shareholders. (Moore Decl. ¶ 36.) If the alleged wrong is capable of ratification, then the decision whether to bring an action is the proper province of the company through its majority of members, and the action cannot proceed derivatively unless it falls within one of the exceptions to the rule in *Foss v. Harbottle*. (*Id*.) "It is not necessary that actual ratification take place; it is only necessary that the acts are capable of ratification." (*Id*. ¶ 38.)

As a matter of English law, the alleged wrongs in the Complaint are capable of ratification. (Moore Decl. ¶¶ 36-40.) The Complaint avers that the conduct of the directors was "illegal" and "ultra vires", and as such "cannot be ratified or approved by BAE's shareholders." (Compl. ¶ 15.) But Plaintiff confuses the alleged wrongs done <u>by</u> BAE plc, namely breach of regulatory, civil or criminal laws, with the alleged wrongs done <u>to</u> BAE plc, namely, the directors' supposed failure to supervise and ensure that BAE plc did not commit such wrongs in the first place. (Moore Decl. ¶ 39.) It is only an alleged wrong that harms the company that can be the subject of a derivative action. (*Id.*) Under English law, the alleged failures of the duty to supervise and ensure that BAE plc did not commit such wrongs "are all capable of ratification in the sense that the shareholders can by ordinary resolution ensure that the acts of the directors are no longer breaches of duty by ratifying them. (*Id.* ¶ 38.) Accordingly, Plaintiff must rely on the exceptions to the rule in *Foss v. Harbottle* in order for its case to survive.

The three exceptions to the rule in *Foss v. Harbottle* are: (i) that the wrong alleged amounts to fraud and the wrongdoers are themselves in control of the company, and could thus procure ratification (the "Fraud on the Minority Exception"); (ii) that the alleged wrong is *ultra vires* (the "*Ultra Vires* Exception"); and (iii) that the validity of the transaction is dependent on a

16

majority greater than a simple majority (the "Super Majority Exception").  (*Id.* ¶¶ 31-33 (citing

*Prudential Assurance v. Newman Industries* [1982] 1 Ch 204 at 210, 211).)  The last exception is

not at issue in this case, so this analysis focuses on the first two exceptions.[7]  A plaintiff seeking

to rely on one of the exceptions must make a *prima facie* case that: (a) "the company is entitled

to the relief claimed," and (b) "that the action falls within the proper boundaries of the

exceptions to the rule in *Foss v. Harbottle*."  (*Id.* ¶¶ 34-35.)

a)    **The Fraud on the Minority Exception**

Plaintiff has failed to plead facts supporting application of the Fraud on the

Minority Exception. (Moore Decl. ¶¶ 53-64.)  In order for this exception to apply, it must be the

case that there was both fraud benefiting the Individual BAE plc Defendants personally (*i.e.,* the

wrong enabled the defendants to make a profit at the expense of the company) and wrongdoer

control (*i.e.,* control of the company in general meetings) — neither of which has been

established by Plaintiff.  (*Id.* ¶¶ 55-58.)

Plaintiff has not alleged fraudulent conduct involving self-dealing by any

Individual BAE plc Defendant, as is required under the first limb of the Fraud on the Minority

exception.  Under English law, fraud in this context is more narrowly defined than the American

understanding of the term, as it requires self-dealing at the company's expense.  "[T]he exception

will apply only if the wrong enabled the defendants to make a profit at the expense of the

company."  (*Id.* ¶ 53); *see, e.g., Konamaneni v. Rolls Royce (India) Ltd.*, [2002] 1 WLR 1267,

1278 (Chancery Division) ("Fraud includes all cases where the wrongdoers are endeavouring,

---

[7]    Of the three exceptions, the Super Majority Exception is not at issue in this case because Plaintiff has not pleaded it.  Nowhere in the Complaint is there any allegation of a transaction that is outside the objects of the company within the meaning of Section 35 of the 1985 Act or of any other transaction that could only be sanctioned by a special resolution.  (Moore Decl. ¶ 52.)  Consequently, this exception cannot apply.

directly or indirectly, to appropriate themselves money, property or advantages which belong to the company or in which the other shareholders are entitled to participate").

In the instant case, the Complaint does not allege that the purported wrongdoing benefited the Defendants personally at the expense of the company. (Moore Decl. ¶¶ 58-61.) At most, Plaintiff alleges that the Individual BAE plc Defendants failed to perform their jobs properly and were overpaid with lucrative compensation and bonuses. (*E.g.*, Compl. ¶¶ 6, 155; *see* Moore Decl. ¶¶ 59-60.) For example, the Complaint states that the officers and directors knew that if the Al Yamamah programme "could be obtained, they could point to it as concrete evidence of their successful stewardship of BAE, which would in turn help them hold onto their positions of power, prestige and profit with BAE, so they could receive lucrative payments and bonuses in connection with those positions for many, many years going forward." (Compl. ¶ 6.) The Complaint later claims that the officers and directors "have awarded themselves and their allies excessively lucrative compensation and payments which have no reasonable basis, but instead are designed only to enrich them[selves]." (*Id.* ¶ 155.) Under English law, however, merely "being paid a previously agreed compensation" or being paid in spite of "deficient performance" is "very far from the necessary self-dealing by a director sufficient to underpin the Fraud on the Minority Exception." (Moore Decl. ¶¶ 59-60.)

Finally, the Complaint fails to satisfy the second part of the Fraud on the Minority Exception, namely "wrongdoer control." "'Wrongdoer control' means control of the company in general meeting, because it is on ratification by the company in general meeting that the Rule and its exceptions are based." (*Id.* ¶ 55.) The Complaint includes no allegations at all about whether the Individual BAE plc Defendants can exercise control over BAE plc in general

meetings.  (*Id.* ¶¶ 62-63.)[8]  Accordingly, Plaintiff cannot satisfy either prong of the fraud on the

minority exception.  (*Id.* ¶ 57.)

        b)    **The *Ultra Vires* Exception**

Despite Plaintiff's lavish use of the phrase "ultra vires" throughout the Complaint

(S*ee, e.g.,* Compl. ¶¶ 1, 4, 8, 15, 113, 146, 147, 158), Plaintiff fatally misunderstands the

meaning of the term under English company law, with the result that Plaintiff has not in fact

pleaded any *ultra vires* acts.  As Mr. Moore states: "Although the Complaint employs the term

'ultra vires' frequently, there is no allegation anywhere in the Complaint of a wrong which

would be considered ultra vires under English law."  (Moore Decl. ¶ 42.)

For the purpose of the exception to the rule in *Foss v. Harbottle*, the term "*ultra

vires*" narrowly refers to a transaction that is either beyond the capacity of the company as

established by its memorandum of association or a transaction prohibited by statute to which the

company owes its existence.  (Moore Decl. ¶ 41).  The meaning of "*ultra vires*" has been further

narrowed by English statutory amendment.  (*Id.* ¶¶ 47-49.)  For instance, *ultra vires* transactions

include the "prohibition against a company giving financial assistance for the purpose of the

acquisition of its shares contrary to Section 151 et seq. of the 1985 Act" or "making a return of

capital otherwise than through the statutorily prescribed procedure."  (*Id.* ¶ 41.)  In contrast,

English case law has used the phrase "*ultra vires*" loosely to describe abuses of authority, *i.e.*

"acts of directors which are outside the scope of the directors' powers because, for example, they

act from some improper motive."  (*Id.* ¶ 42.)  As Mr. Moore emphasizes, it is important to keep

the two usages distinct, as the *Foss v. Harbottle Ultra Vires* Exception narrowly includes only

---

[8]    Nor could Plaintiff credibly allege control, as at any given time the directors of BAE plc hold a tiny amount of the outstanding shares of the company.  For example, the 2006 BAE plc annual report, which is cited by Plaintiff  throughout the Complaint (*e.g.*, Compl. ¶¶ 20, 72, 103), states that as of February 21, 2007, the directors held approximately 1.39 million ordinary shares, or 0.04 percent of the approximately 3.25 *billion* outstanding ordinary shares on December 31, 2006.  (Parkes Decl. ¶ 18.)

lack of corporate capacity to do a given act, while the broader use of the term *ultra vires* is occasionally used to describe lack of authority.  (*Id.* ¶¶ 42-44.)

Plaintiff confuses lack of authority with lack of capacity, and as a result the Complaint does not plead any *ultra vires* acts as required by the exception to the rule in *Foss v. Harbottle*.  First and most importantly, the Complaint contains no allegation of a transaction that is beyond the capacity of BAE plc as established by its memorandum of association or a transaction prohibited by a statute to which BAE plc owes its existence.  (Moore Decl. ¶ 45.) Instead, the Complaint asserts that alleged payments to Prince Bandar and others were illegal and improper and therefore beyond the scope of the proper exercise of the directors' powers. However, as Mr. Moore explains, "[t]he payment by a company of commission to agents of third parties in carrying out its business is clearly capable of being within the objects specified in a company's memorandum." (*Id.* ¶ 45.)  Indeed, Mr. Moore points out that English courts have specifically held that bribes paid by a company, while admittedly unauthorized and improper, are not *ultra vires* acts of the company.  (*Id.* ¶ 46) (citing *Arab Monetary Fund v. Hashim and Others* [1993] 1 Lloyd's Rep. 543.)  The court in *Arab Monetary Fund* emphasized that the distinction between *ultra vires* or lack of capacity on the one hand, and lack of authority on the other, was "fundamental" to the question of whether a bribe could be considered *ultra vires* a company.  [1993] 1 Lloyd's Rep. 543.  The court concluded that it is "established that a company has capacity to carry out a transaction which falls within its objects even though carried out by the wrongful exercise of its powers." (*Id.*)  As Mr. Moore concludes, if faced with the allegations in this Complaint, "an English Court would not proceed as if the allegation were *ultra vires* in its true sense of an act beyond the capacity of the corporation, but as an allegation of abuse of the powers of the directors of the corporation."  (Moore Decl. ¶ 45.)

Under English law, the question whether an act by a company is *ultra vires* for the purpose of the exception to the rule in *Foss v. Harbottle* is separate and apart from the question of what liability a company may incur by that act under the general law, whether civil or criminal. (*Id.* ¶¶ 49-50.)   The fact that an act is a violation of civil or criminal law does not make the act *ultra vires*. (*Id.* ¶ 49.)   Consequently, if the Complaint's allegations of bribes by BAE plc were true, the fact that such acts may expose BAE plc to civil or criminal liability does not mean that the acts are therefore *ultra vires* within the meaning of the *Foss v. Harbottle* exception.  Plaintiff's pleading of alleged criminal acts and civil liability, therefore, is irrelevant to the question whether BAE plc's payments were *ultra vires*.  It is clear that Plaintiff  has failed to plead any *ultra vires* acts under English law.

### C.    U.S. District Courts Have Uniformly Dismissed Similar Derivative Actions Based on the Failure to Satisfy the Exceptions to the Rule in *Foss v. Harbottle*

While there is no reported precedent in this District addressing shareholder derivative claims under English law, there is ample precedent outside the District for this Court to consider.  In recent years, numerous district courts in other cases governed by English law, or by common law legal systems based on English law, have dismissed derivative claims for failure to satisfy the exceptions to the rule in *Foss v. Harbottle*.  *See Feiner Family Trust*, 2007 WL 2615448, at*6  (dismissing derivative claim under Cayman Islands law for "fail[ure] to allege fraud on the minority properly"); *In re BP p.l.c.,* 507 F. Supp. 2d at 311 (dismissing derivative action under the law of England and Wales for failure to "plead facts sufficient to sustain this action pursuant to one of the three narrow exceptions enumerated in England's Companies Act 1985"); *Winn v. Schafer*, 499 F. Supp. at 398 (dismissing derivative action under Cayman Islands law for failure to "establish either of the requirements to invoke the fraud on the minority exception"); *Seghers*, 2006 WL 2807203, at *4 (dismissing derivative claim under British Virgin

Islands law for failure to meet the two preconditions to the Fraud on the Minority Exception); *In re Tyco*, 340 F. Supp. 2d at 103 (dismissing derivative action under Bermudian Law for failure to demonstrate that the case came within "an exception to the rule in *Foss v. Harbottle*").  This Court should make a similar ruling in the instant case, as Plaintiff has failed to establish its standing to bring this case and has failed to state a shareholder derivative claim under English law. [9]

## II.    IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*

The Court should exercise its discretion to dismiss this case on the grounds of *forum non conveniens* because "considerations of convenience, efficiency, and justice" overwhelmingly favor England as the proper forum for this case.  *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 528 (1947).  Under a *forum non conveniens* analysis, a court must: (1) determine whether there is an adequate alternative forum; and (2) balance the public and private interests at stake to determine whether a motion to dismiss should be granted.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-61 (1981); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677-78 (D.C. Cir. 1996).  In the instant case, all of the factors overwhelmingly favor England and Plaintiff's claims against the Individual BAE plc Defendants should accordingly be dismissed.

### A.    An Adequate Forum is Available in England

---

[9]    It should be noted that Plaintiff also claims that the Individual BAE plc Defendants harmed the Company by violating Section 463 of the Companies Act 2006. (Compl. ¶¶ 5, 151.)  Section 463 permits a company to bring a cause of action against a director who makes untrue, misleading, or incomplete statements in certain statutorily required reports.  It applies only to reports sent to company members after 20 January 2007.  (Moore Decl. ¶¶ 65-66.)  The statute does not grant a right of action to shareholders, and therefore a member may bring a Section 463 action against a director only in compliance with the rule in *Foss v. Harbottle* and its exceptions.  (*Id.* ¶ 67.)  As discussed in this Part I.B.3, Plaintiff does not meet any of the *Foss v. Harbottle* exceptions.  And even regardless of that, the Complaint has not alleged a *prima facie* case under Section 463.  The Complaint does not assert any causal link between BAE plc's alleged losses and the two solitary statements made after January 20, 2007 that are identified in the Complaint at paragraph 103(d).  (*Id.* ¶¶ 68-72.)

England provides an adequate alternative forum. Generally, a foreign forum is considered adequate when the defendant is subject to the jurisdiction of that forum. *Piper Aircraft*, 454 U.S. at 254 n.22; *Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57, 60 (D.D.C. 2007). BAE plc, an English company with its principal office in London, and its current and former officers and directors (the great majority of whom reside and do business in the U.K.), are undeniably subject to the jurisdiction of English courts. (Parkes Decl. ¶¶ 4-5, 14-15). It is also well established that English courts provide an adequate alternative forum for adjudication. *See e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (noting the court's "high regard for [English] courts' fairness and commitment to the rule of law"); *BCCI Holdings (Lux.), S.A. v. Mahfouz*, 828 F. Supp. 92, 96 (D.D.C. 1993) (English court with the authority to resolve all of the claims provided it is an adequate alternative forum).

Further, this Court is not presented with the "rare circumstance[]" where the remedy offered by the foreign forum is "clearly unsatisfactory." *Piper Aircraft*, 454 U.S. at 254 n.22. While English law recognizes that a cause of action for breach of fiduciary duty generally lies with the company and not the shareholders unless one of the exceptions to the rule in *Foss v. Harbottle* applies, other remedies are available to aggrieved shareholders. (Moore Decl. ¶¶ 75-79.) Under English law, shareholders can assert various statutory rights including requiring the company to hold meetings of shareholders, removing directors by ordinary resolution, and directing the company to bring proceedings against delinquent directors. (*Id.* ¶ 76). Under Section 459 of the Companies Act of 1985, shareholders can petition the High Court in England "for an order that the affairs, business or property of the company are being managed in a way that is unfairly prejudicial to their interests as shareholders." (*Id.* ¶ 77) Under certain circumstances, shareholders also may assert a direct claim against a board member or members.

(*Id.* ¶ 78.)  The BAE plc Defendants certainly do not concede that this Plaintiff or its claims

would succeed in or even be heard by an English court under one of those legal theories.  The

point, as expressed by Mr. Moore, is that "English law as a developed and sophisticated

jurisdiction provides a wide range of remedial options to shareholders dissatisfied with the

conduct of directors."  (*Id.* ¶ 79.)

   Moreover, this District's courts have affirmed that an alternative forum is not

inadequate merely because the plaintiff's claims would not be viable in that forum.  *Stromberg*,

474 F. Supp. 2d at 62 (holding that plaintiff's argument that Mexico was an inadequate forum

was unpersuasive, as under the District's choice of law rules "Mexican law would limit his

remedies to the same extent in this court as it would in Mexico").  As discussed in Part I.A of

this Argument, District of Columbia choice of law rules mandate that English law would apply to

Plaintiff's claims against the BAE plc Defendants in this Court.  Because Plaintiff's claims

would be analyzed under the same law in either this Court or a court in England, Plaintiff cannot

defeat a *forum non conveniens* motion by asserting that its claims could not proceed in England

under the legal theory that it chose to utilize.  *Stromberg*, 474 F. Supp. 2d. at 61-62; *El-Fadl*, 75

F.3d at 678 (a foreign forum is not inadequate merely because it has less favorable substantive

law or because it employs different adjudicative procedures).

  **B.**  **The Private and Public Interest Factors Favor Dismissal**

   If the foreign forum is adequate - as England clearly is - the Court must then

balance the private interests of the litigants and the public interests in favor of the respective

forums.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *BPA Int'l, Inc. v. Kingdom

of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003).  If the balance of the private and public

interest factors suggest that "trial in the chosen forum would be unnecessarily burdensome for

the defendant or the court, dismissal is proper."  *Piper Aircraft*, 454 U.S. at 256.  Notably, the

weight of either the private interest factors or the public interest factors alone may be grounds for dismissal. *BPA Int'l*, 281 F. Supp. 2d at 85.

Although a plaintiff's choice of forum is ordinarily entitled to some deference, that presumption applies with significantly less force when the real party in interest is a foreign corporation, as it is in the present case. *See Piper Aircraft*, 454 U.S. at 256 (plaintiff's choice of forum is entitled to less weight when the real party in interest is foreign); *Koster*, 330 U.S. at 524-525 (presumption in favor of plaintiff's choice of forum is "considerably weakened" in derivative action); *Capital Currency Exchange, N.V. v. Nat'l Westminster Bank, PLC*, 155 F.3d 603, 612 (2d Cir. 1998) (no strong presumption in favor of plaintiff's forum when real party in interest is a foreign corporation); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (plaintiff's choice of forum entitled to less deference when suing in a representative capacity). Because this is a derivative action brought on behalf of an English company, Plaintiff's choice of the District as the forum is entitled to little or no weight.

### 1.     The Private Interest Factors Favor Dismissal

In evaluating the respective forums, the private interest factors that this Court should consider include the relative ease of access to proof, the availability of compulsory process to obtain the attendance of hostile witnesses, costs of transporting witnesses, and other expenses or inefficiencies. *See Gilbert*, 330 U.S. at 508; *BPA Int'l*, 281 F. Supp. 2d at 85. In the instant case, all of those factors weigh heavily in favor of England.

First, the relative ease of access to proof favors England as the most convenient forum. Most evidence relevant to Plaintiff's claims will be located in England. The vast majority of documents Plaintiff would presumably request – including board minutes, board materials, drafts of annual reports and other public statements, and other corporate books and records – are located at BAE plc's offices in London, Farnborough, and Worthing, United

Kingdom.  (Parkes Decl. ¶¶ 5-6, 12-13); *see Koster*, 330 U.S. at 526 ("[I]n the derivative action

it is more likely that only the corporation's books, records and transactions will be important and

only the defendant will be affected by the choice of the place of production of records."); *see*

*also BCCI Holdings*, 828 F. Supp. at 97 (finding that the location of millions of documents in

England was one of "the more telling" facts establishing England as the most convenient forum).

            In addition, nearly all of the potentially relevant witnesses, including 20 of the

total 26 Individual BAE plc Defendants, are residents of the United Kingdom.  (Parkes Decl. ¶

14; Individual BAE plc Defendants' Declarations.[10])  Two others reside in continental Europe.

(*Id*.)  In contrast, none of the Individual BAE plc Defendants reside or have offices in the District

of Columbia, and only four of them even reside in the United States. (Parkes Decl. ¶ 15.)

Finally, for all of the Complaint's length, Plaintiff fails to allege the existence of any witness in

Washington,  D.C. who is relevant to the primary violations of the Complaint. (Plaintiff

identifies the Allbritton Defendants as residents of this District (Compl. ¶¶ 54-56), but their

relevance as alleged aiders and abettors is obviously subsidiary to that of witnesses to the

purported breach of fiduciary duties and corporate waste of BAE plc's assets that constitute the

crux of the Complaint.)  Because the vast majority of the witnesses that Plaintiff can identify are

located in England, it is clearly a more convenient forum than the District of Columbia.  *See*

*Piper Aircraft*, 454 U.S. at 258 (upholding dismissal in part because "[a] large portion of the

relevant evidence is located in Great Britain"); *BPA Int'l*, 281 F.Supp. 2d at 85-86 (finding

Sweden the more convenient forum where "many, if not most, of the potential witnesses and

much of the evidence" were likely located there).

---

[10]      Each Individual BAE plc Defendant has submitted a sworn declaration in connection with this Motion
setting forth basic jurisdictional facts.  For convenience, this evidence is referred to collectively as the
"Individual BAE plc Defendants' Declarations" except where it is necessary to refer to facts concerning a
particular director.

Second, the cost of transporting witnesses and the ability of the Court to obtain the attendance of witnesses likewise favors England. The Individual BAE plc Defendants reside or do business in the U.K. and are within the jurisdiction of the English courts. In contrast, the cost of obtaining the witnesses' presence in a Washington, D.C. court, even assuming this Court could assert jurisdiction over them, would be significant. *See In re Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980*, 540 F. Supp. 1141, 1148-49 (D.D.C. 1982) (finding that the cost of attendance of many witnesses located abroad favors foreign forum). And as discussed *infra* in Part III of the Argument, Plaintiff has failed to make a *prima facie* case that this Court has personal jurisdiction over any of the Individual BAE plc Defendants. *See BPA Int'l*, 281 F. Supp. 2d at 86 (potential witnesses located abroad are likely beyond reach of the court's compulsory process).

In sum, the private interest factors overwhelmingly favor England as the most convenient and appropriate forum for this case. Litigating this matter in the District of Columbia would require significant and unnecessary difficulty, time, and expense for the Court and the parties. *See Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 39 (D.D.C. 2002) (litigation with a heavy emphasis on Brazilian law and Brazilian sources of proof likely to be "expensive, cumbersome and time consuming" if conducted in the District of Columbia).

### 2. The Public Interest Factors Favor Dismissal

The relevant public interest factors that this Court should consider include the local interest in having localized controversies decided at home, each forum's familiarity with the governing law in the case so that unnecessary conflict of laws and application of foreign law problems can be avoided, and any unnecessary burdens associated with trying the case in a particular forum, such as docket congestion, court administrative difficulties and the burden on

the local jury pool. *See Gilbert,* 330 U.S. at 508-09; *BCCI Holdings,* 828 F. Supp. at 98. These factors also weigh heavily in favor of England.

First, England has by far the greatest interest in this case. BAE plc, the real party in interest in this derivative action, is an English company with its principal office in London. (Parkes Decl. ¶¶ 4-5.) A foreign forum has a "much more significant interest" where the case involves a corporation organized under that forum's law. *BPA Int'l*, 281 F. Supp. 2d at 86; *see also Koster*, 330 U.S. at 531-32 (upholding dismissal of derivative action on *forum non conveniens* grounds in part because real party of interest was a foreign corporation). Indeed, U.S. federal courts have routinely recognized that cases concerning foreign corporations are particularly well-suited for dismissal on *forum non conveniens* grounds. *See, e.g., Koster*, 330 U.S. at 526 (in derivative actions "it is more likely that only the corporation's books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records"); *Scottish Air Int'l, Inc. v. British Caledonian Group*, *PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996) (Great Britian had the most significant interest and dismissal on *forum non conveniens* grounds was appropriate where British law applied and matters of internal corporate governance of a Scottish corporation were at issue); *BPA Int'l*, 281 F. Supp. 2d at 86. In the instant case, England clearly has a much greater interest than any other jurisdiction in the governance decisions of a corporation organized under its laws and based within its territory. That interest is even more pressing given that Plaintiff's allegations concern the Al-Yamamah programme which is "classified pursuant to the laws of both the United Kingdom and the Kingdom of Saudia Arabia." (Parkes Decl. ¶ 11.)

To the extent that Plaintiff maintains that the District of Columbia has an interest in this litigation based on the location of the former Riggs Bank (Compl. ¶ 21), that pales in

comparison to England's interest in this case. The "central focus of this case" as it pertains to

BAE plc is that the Individual BAE plc Defendants breached fiduciary duties and committed

corporate waste by permitting or causing improper or wrongful payments to boost the

Company's results, and making false or misleading statements in annual reports. (Compl. ¶¶ 1-

5, 145, 154); *BCCI Holdings*, 828 F. Supp. at 99 (although the United States and the District of

Columbia had an interest in allegations that defendants committed illegal acts relating to the

District, England's interests were overriding where the overwhelming majority of the activities

were undertaken or controlled from England); *See Gilstrap*, 443 F. Supp. 2d at 490. The events

and parties that the Complaint claims to be involved in those decisions are all located where

BAE plc's board of directors meetings are customarily held—in the United Kingdom. (Parkes

Decl. ¶¶ 12-16.) As noted by the court in *Meng v. Schwartz*, because the crux of "breach of

fiduciary duty and negligence claims deal with issues of corporate governance and internal

accountability, there is no policy of D.C. that would be vindicated by application of its laws."

305 F. Supp. 2d 49, 58 (D.D.C. 2004). Plaintiff's allegation of payments passing through a bank

account in the District of Columbia and utilized by a foreign national does not shift the focus of

these derivative claims, nor does it suffice to outweigh England's significant interest in this

matter. *Compare Gilstrap*, 443 F. Supp. 2d at 490 (finding that the "local interest" of England

"far exceeds" that of New York even though defendant was headquartered in New York)

(citation omitted), *with Shaw v. Marriott Int'l, Inc.,* 474 F. Supp. 2d 141, 146 (D.D.C. 2007)

(Finding that the public interest factors weighed in favor of the District because the District of

Columbia had an interest in a matter brought by one of its residents under its consumer

protection laws).

Further, Plaintiff's assertions of federal investigations by the DOJ and SEC (Compl. ¶ 11, 85(b)) have no bearing on the balance of interests between England and the District of Columbia.  The existence of related proceedings is not listed as a relevant factor in the *forum non conveniens* analysis laid out in *Gilbert*, "and therefore should not be given much consideration" by this Court in weighing the public interests of respective forums.  *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376, 391 (S.D.N.Y. 2002) (discussing the effect of ongoing criminal proceedings on forum non conveniens analysis).  The existence of a federal investigation does nothing to provide the "local community" with a "special interest in this litigation." *BPA Int'l*, 281 F. Supp. at 86.  In fact, in other derivative suits involving foreign corporations, there is no reported instance of a District of Columbia federal court considering the existence of a federal investigation as an additional factor grafted onto the *forum non conveniens* analysis set forth in *Gilbert*.  That comports with common sense.  A federal investigation should not confer on either the District or its citizens a significant interest in litigation concerning an English company, just as "government contacts" do not generally afford the courts of the District of Columbia personal jurisdiction over persons or a company from another jurisdiction who have contacts with the federal government.  *Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34, 44-45 (D.D.C. 2003).  Consequently, the Complaint's allegations concerning federal investigations are not a relevant factor in this Court's *forum non conveniens* analysis.

In addition to the far greater local interest of England in this litigation, as compared to Washington, D.C., English law applies to Plaintiff's claims against the BAE plc Defendants, which also weighs in favor of dismissal.  *See, e.g., Piper Aircraft*, 454 U.S. at 260 (the need to apply foreign law points towards dismissal); *Croesus EMTR Master Fund L.P.*, 212

F. Supp. 2d at 40 (the court's "lack of familiarity with the governing substantive law [] weighs in favor of dismissal). Disputes should be resolved in a court "that is at home with the forum's law that must govern the case." *Gilbert,* 330 U.S. at 509. English courts are "in the best position to interpret and apply" English law. *See Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 36 (D.D.C. 2006).

The District of Columbia does possess one very important interest in this case – namely, its interest in not being burdened with what is essentially a foreign controversy dealing with the corporate governance of an English company. Litigation with a potential jury trial concerning a foreign controversy of minimum local interest is certainly "best cleared from the busy docket" of the District of Columbia courts. *Huertas v. Kingdom of Spain*, 2006 WL 785302, at *4 (D.D.C. 2006); *see also Stromberg*, 474 F. Supp. 2d at 63 (where case relates only slightly to the District of Columbia and its citizens, the District's "highly burdened" jury pool should not bear the responsibility of hearing the case). Thus, the public interest factors also weigh heavily in favor of England as the appropriate forum for this case.

Finally, this case is an attempt to pursue shareholder derivative claims that are unavailable in the company's home jurisdiction, a tactic that U.S. courts soundly reject. As described in Part I.B., *supra*, Plaintiff lacks standing under English law to bring a derivative action on behalf of BAE plc, and it should not be permitted to litigate in this Court that which is prohibited by the law governing the nominal defendant corporation. *See, e.g., Batchelder*, 147 F.3d at 922 (upholding dismissal because plaintiff lacked standing as an ADR holder to sue derivatively under Japanese law); *In re BP p.l.c.*, 507 F. Supp. 2d at 311(dismissing shareholder derivative action because plaintiffs could not sustain the case under English law); *Tomran*, 891 A.2d at 348 (upholding dismissal because Irish law did not recognize a beneficial owner's ability

to sue derivatively).  English courts should hear claims concerning fiduciary duties owed to an English company under English law, particularly where the vast majority of the evidence is located in England.  The Court should dismiss Plaintiff's claims on *forum non conveniens* grounds.

### III.    IN THE ALTERNATIVE, THE COURT LACKS PERSONAL JURISDICTION OVER BAE PLC AND THE INDIVIDUAL BAE PLC DEFENDANTS

The Court should also dismiss the claims against BAE plc and the Individual BAE plc Defendants for lack of personal jurisdiction.  On a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each individual defendant.  *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *Moore v. Motz*, 437 F. Supp. 2d 88, 90-91 (D.D.C. 2006).  A plaintiff must establish that a court has personal jurisdiction "over each individual defendant."  *Atlantigas Corp,* 290 F. Supp. 2d at 42.  In every instance, the plaintiff must satisfy the court that the defendant's "minimum contacts" permit the court to exercise personal jurisdiction consistent with the requirements of constitutional due process.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The plaintiff must allege specific facts connecting each defendant with the forum; it cannot rely on bare allegations and conclusory statements.  *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

When a federal court's subject matter jurisdiction is predicated on the diversity of the parties, as it is in this case (Compl. ¶ 16), the court looks to the law of the forum in which it sits to determine whether it has personal jurisdiction over a defendant.  *See Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  A forum's laws defining the scope of personal jurisdiction must be consistent with the "traditional notions of fair play and substantial justice" required by the

Due Process Clause of the Constitution. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe*, 326 U.S. at 316). The Supreme Court's ordinary due process concerns are particularly acute when, as in *Asahi* and the instant matter, an international defendant is haled into an American court. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

The broadest form of personal jurisdiction is general personal jurisdiction, which allows a court to hear any claim against a defendant. Section 13-442 of the District of Columbia Code permits a court in the District to exercise general personal jurisdiction over a defendant "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia," D.C. Code § 13-422, or a defendant foreign corporation "doing business" in the District, *id.* § 13-334(a). *See Richard v. Bell Atl. Corp.,* 946 F. Supp. 54, 68 (D.D.C. 1996). The "doing business" provision aligns the general personal jurisdiction of the District's courts "with the reach of constitutional due process." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510 (D.C. Cir. 2002) (citing *Hughes v. A.H. Robins Co Inc.*, 490 A.2d 1140, 1148 (D.C. 1985)). Thus, a plaintiff must demonstrate that a foreign corporation's contacts with the District are "continuous and systematic" before a court may exercise general personal jurisdiction in a suit "not arising out of or related to the defendant's contacts with the" District. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

Specific personal jurisdiction, by contrast, permits a court to hear a claim against a defendant because the defendant "expressly aimed" its conduct at the forum, and that conduct is the basis for the plaintiff's claim. *U.S. v. Ferrara*, 54 F.3d 825, 828-30 (D.C. Cir. 1995)

(quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see Brunson v. Kalil & Co.*, 404 F. Supp.

2d 221, 230-36 (D.D.C. 2005) (discussing the transacting business standard under the D.C.

Code).  Specific personal jurisdiction is consistent with constitutional due process when a foreign

defendant engages in "some act by which the defendant purposefully avails itself of the privilege

of conducting activities within the forum State, thus invoking the benefits and protections of its

laws." *Burger King v. Rudzewicz,*  471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357

U.S. 235, 253 (1958)); *see Brunson*, 404 F. Supp. 2d at 237 (discussing due process

requirements).

        Section 13-423 of the District of Columbia Code is the long-arm statute that

permits a court in the District to exercise specific personal jurisdiction over a foreign defendant

based on, among other factors:

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or
> omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or
> omission outside the District of Columbia if he regularly does or solicits
> business, engages in any other persistent course of conduct, or derives
> substantial revenue from goods used or consumed, or services rendered, in
> the District of Columbia.

D.C. Code § 13-423(a)(1) – (4).  Unlike the contacts supporting general personal jurisdiction,

due process and the long-arm statute itself require that the contacts giving rise to specific

personal jurisdiction be related to the basis for the complaint.  *Id.* § 13-423(b); *Atlantigas*, 290 F.

Supp. 2d at 44 (to merit application of the long-arm statute, "plaintiff's jurisdictional allegations

must arise from the same conduct of which it complains"); *see also Jungquist v. Sheikh Sultan*

*Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031-32 (D.C. Cir. 1997) (discussing long-arm jurisdiction under the D.C. Code).

Plaintiff has failed to allege facts sufficient for this Court to exercise either general or specific personal jurisdiction over BAE plc or the Individual BAE plc Defendants. The Complaint's allegations relating to jurisdiction are either inaccurate, in the case of the Company, or conclusory, as in the case of the Individual BAE plc Defendants. The weight of authority leads to the conclusion that the Complaint's allegations fall short of even "'the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.'" *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

### A.    The Complaint Fails to Allege Contacts Supporting This Court's Personal Jurisdiction over BAE plc

Despite its plenitude of citations to BAE Systems Group public statements, the Complaint provides no basis for this Court to exercise personal jurisdiction over BAE plc, either generally or pursuant to D.C. Code § 13-423(a)(1) – (4).  BAE plc is an English company, incorporated under the laws of England, which does not have a presence in the United States. (Parkes Decl. ¶¶ 4-6, 9-10.)  BAE Inc., a Delaware incorporated company, is the main operating entity responsible for doing business in the United States, and it in turn owns other U.S. subsidiaries.  (*Id.* ¶ 20.)  BAE Inc. provides goods and services of a highly sensitive nature to the United States Government pursuant to a Special Security Agreement.  (*Id.* ¶¶ 20-21.)  Because of the sensitive and confidential nature of defense contracting to the United States Government, the Special Security Agreement was intended to, and does, ensure that BAE Inc. is managed separately from the English parent BAE plc.  (*Id.*)  BAE plc and BAE Inc. have separate boards of directors and separate management, save for very limited overlap.  (*Id.* ¶ 20.)

Throughout the Complaint, Plaintiff describes BAE plc and its subsidiaries as one agglomerated, indistinguishable entity, presumably to establish that the English company either is present generally in the District, or transacts business or contracts to supply services in this District under D.C. Code § 13-423(a)(1) or (a)(2).  That characterization is inaccurate and misleading.  Plaintiff fails to distinguish between activities conducted by BAE plc and activities conducted by its separate U.S. subsidiaries.  The result, typified in Plaintiff's assertion that "BAE does substantial business in Washington, D.C. and the United States, including operating a major office in Washington, D.C." (Compl. ¶ 17), is an attempt both to ignore the separate identity of BAE plc's U.S. subsidiaries, and to aggregate contacts with the entire United States. [11]  The Court should reject both of these impermissible pleading tactics.

A plaintiff bears the burden of overcoming the ordinary rule that a foreign corporation is not "amenable to suit in the federal court of another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein."  *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925); *see Keeton v. Hustler Magazine, Inc.,*  465 U.S. 770,  781 n.13 (1984); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 195 (D.D.C. 2007) ("The acts of a subsidiary operating within a particular forum, however, are not ordinarily attributable to a foreign parent corporation."); *AGS Int'l. Servs. S.A. v. Newmont USA Ltd.,* 346 F. Supp. 2d 64, 89-90 (D.D.C. 2004) (discussing alter-ego analysis).  A court will treat separately incorporated companies as "one entity in the eyes of the law" only

---

[11]     Federal Rule of Civil Procedure 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant whose aggregate contacts with the United States satisfy the "minimum contacts" requirement announced in *Int'l Shoe Co. v. Washington*, 326 U.S. at 316.  A plaintiff must, however, raise a claim arising under federal law in order to assert the court's jurisdiction under the rule.  *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005).  Here, the Plaintiff invokes only this Court's diversity jurisdiction.  (Compl. ¶ 16.)  Its claims are not based on statute; they are common law claims for breach of fiduciary duty, corporate waste, and aiding/abetting same.  (Compl. ¶¶ 144-58.)  Rule 4(k)(2) cannot therefore save the Plaintiff's claims against BAE Systems plc and the Individual BAE Systems plc Defendants from dismissal.

when the parent exerts a certain level of control over the subsidiary.  *Scandinavian Satellite Sys.,*

*AS v. Prime TV Ltd.*, 291 F.3d 839, 846 (D.C. Cir. 2002).

        Notably, the Complaint does not make any alter-ego allegations, nor does it plead

any facts suggesting that the Court should impute to BAE plc the contacts of its separate

subsidiaries, and for reasons of that insufficient pleading alone, the Court should find that

Plaintiff has failed to establish a *prima facie* case for jurisdiction.  To the extent that the Court

wishes to indulge Plaintiff by considering a theory that the Plaintiff did not bother to articulate,

the allegations in the Complaint fail to establish any reason why assumption or alter-ego should

apply.  Plaintiff cites primarily the fact of BAE plc's ownership of BAE Inc. and the statements

contained in BAE plc's annual reports highlighting the BAE Systems Group's activities in the

North American market, yet neither set of allegations demonstrates that the English parent

controls the U.S. subsidiary as is required under the case law of this District.  *See Material*

*Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13, 20-21 (D.D.C. 1999) (parent's

ownership of subsidiary does not conclusively establish alter-ego relationship); *c.f. Richard v.*

*Bel. Atl. Corp.,* 946 F. Supp. at 62-63 (discussing the "integrated enterprise" test for determining

whether a parent company is considered the employer of its subsidiary's employees under Title

VII).  The Court should not, therefore, impute BAE Inc.'s alleged contacts with the District to

BAE plc.[12]

        The Complaint's remaining asserted contacts between BAE plc and the District of

Columbia relate to the Special Security Agreement with the United States Government (Compl. ¶

---

[12]    Even if somehow the U.S. subsidiaries' contacts could be imputed to the English parent, the aggregation of a defendant's contacts with the whole of the United States cannot support the personal jurisdiction of a federal court sitting in diversity.  *See Gorman*, 293 F.3d at 509-10 (explaining the nature of contacts necessary to establish personal jurisdiction under D.C. Code); *Gardner v. U.S.,*  213 F.3d 735, 737 n.1 (D.C. Cir. 2000) (noting that plaintiff must allege contacts between defendant and the District to assert long-arm jurisdiction).

19) and alleged payments to a foreign national, Prince Bandar, via an account held at Riggs

Bank.  (Compl. ¶¶ 8, 9, 50, 113, 117.)  As to the Special Security Agreement, as explained

previously, that agreement permits the U.S. subsidiary, BAE Inc., to supply goods and services

of a highly sensitive nature to the U.S. Government.  The Complaint's allegations of BAE plc's

wrongdoing bear no relation to the U.S. subsidiary or defense contracting with the U.S.  Rather,

the focus of the Complaint is the decision-making of the board of directors of the English parent

company.  Consequently, Plaintiff's pleading of the Special Security Agreement fails to meet the

essential requirement of the D.C. long-arm statute – that "plaintiff's jurisdictional allegations

must arise from the same conduct of which it complains." *Atlantigas*, 290 F. Supp. 2d at  44;

D.C. Code § 13-423(b).[13]

        Plaintiff therefore is left with the alleged funds flow to Prince Bandar through

Riggs Bank as its tenuous link to this District.  But those transactions do not establish

"continuous and systematic" contacts supporting general jurisdiction over the English parent,

BAE plc.  *See, e.g., Helicopteros*, 466 U.S. at 418 (determining that sending personnel to the

forum, purchasing equipment in the forum, accepting checks drawn on a bank in the forum, and

traveling to the forum to negotiate a contract do not establish general personal jurisdiction).[14]

---

[13]    Moreover, Plaintiff does not allege that the Special Security Agreement was negotiated or executed in this District.  *See Atlantigas*, 290 F. Supp. at 47 (rejecting plaintiff's claim of personal jurisdiction over defendant based on defendant's contracts with a Washington D.C. public utility, as the agreements were negotiated and executed outside the District).

[14]    Nor can Plaintiff premise personal jurisdiction on the fact that certain committees of the Board of BAE plc have met on occasion in this District within the past four years.  *See* Parkes Decl. ¶ 17.  A handful of such meetings over the course of several years, during which the other 93 committee meetings occurred elsewhere, does not rise to the level of continuous and systematic contacts required for general jurisdiction, *see, e.g., Helicopteros*, 466 U.S. at 418; *Allen*, 522 F. Supp. 2d at 195-196 (discussing contacts necessary for general jurisdiction); *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1148-51 (D.C. 1985) (same). Conversely, these committee meetings do not support specific jurisdiction over BAE plc, as they are not relevant to Plaintiff's allegations of improper decisions by the Board dating back to the mid-1980s, and Plaintiff has pleaded no specific Board or committee meetings at which the alleged wrongdoing was discussed.  *See Atlantigas*, 290 F. Supp. 2d at 44 ("plaintiff's jurisdictional allegations must arise from the same conduct of which it complains").

Nor are the specific jurisdiction provisions of the Washington long-arm statute satisfied by Plaintiff's allegations about Riggs Bank. First, the Complaint nowhere asserts that the alleged payments to Prince Bandar through Riggs Bank on account of the Al-Yamamah programme with Saudi Arabia caused injury to a person or entity in Washington, D.C. Rather, the Complaint asserts injury to BAE plc in respect of purported violations of law and waste of corporate assets. (Compl. ¶¶ 144-56.) Therefore a basis for specific personal jurisdiction cannot be found in D.C. Code § 13-423(a)(3) or (a)(4), as both require a tortious injury in this District. So Plaintiff must try to meet the requirements of D.C. Code § 13-423(a)(1), which it cannot do either. In order for a plaintiff's claim to arise from business transacted in the District by a defendant so as to satisfy the requirements of D.C. Code 13-423(a)(1), there must be a "discernible relationship" between the wrongs complained of and the business transacted in the District. *AGS,* 346 F. Supp. 2d at 78 (quotations omitted). "A discernible relationship exists when the non-resident defendant has minimum contacts with the District such that [the non-resident] should reasonably anticipate being haled into court [here]." *Id.* (quotations omitted).

> In assessing the reasonableness of the factors that a plaintiff claims merit a court exercising personal jurisdiction over an alien defendant, due process requires a court to assess whether the defendant could reasonably anticipate litigation with the plaintiff in the District as a result of its activities, whether the plaintiff is a resident of the District, and whether it would be fair and reasonable to force the alien defendant to litigate here.

*Id.* at 79 (quotations omitted). A notable application of this doctrine is *Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552 (D.D.C. 2001). There, the district court concluded that it had no personal jurisdiction over the non-resident defendant. The court found that the defendant did not own property in the District, did not have offices, employees, or agents in the District, and did not solicit business in the District. *Id*. at 554-55. The court further found that as the plaintiff was not a resident of the forum, "the District's interest in having [the] case litigated within its

borders is minimal." *Id.* at 556.  The same is true in this case of the nonresident Plaintiff, which

is a Michigan pension fund. (Compl. caption).

      Also important to the AGS court were "[t]he unique burdens placed upon one

who must defend oneself in a foreign legal system should have significant weight in assessing

the reasonableness of stretching the long arm of personal jurisdiction over national borders."

*AGS*, 346 F. Supp. 2d at 79 (quoting *Asahi*, 480 U.S. at 114.)  The same reasoning should apply

to Plaintiff's efforts to hale BAE plc into court in the case at hand.  The (alleged) fact of

payments pursuant to a foreign arrangement to a Saudi national in Washington, D.C. is a

virtually random offshoot of Plaintiff's breach of fiduciary duty and corporate waste claims

embracing BAE plc's defense contracting worldwide.  Plaintiff has not named BAE plc's U.S.

subsidiaries as defendants or otherwise pleaded their relevance to the Complaint's allegations.  It

is not reasonable nor foreseeable for this matter to be litigated in Washington, D.C.  Finally, this

District's interest is significantly lessened by the fact that Plaintiff is a resident of Michigan.  For

all of the foregoing reasons, this Court should not exercise personal jurisdiction over BAE plc.

    **B.**    **The Complaint Fails to Allege Contacts Supporting This Court's Personal Jurisdiction over the Individual BAE plc Defendants**

      General allegations made against a group of defendants are insufficient to meet

the Plaintiff's burden of demonstrating this Court's personal jurisdiction.  *See Rush v. Savchuk*,

444 U.S. 320, 331-32 (1980); *Atlantigas*, 290 F. Supp. 2d at 42; *Second Amendment Found.*, 274

F.3d at 524.  But that is precisely what this Complaint does.  In one conclusory statement,

Plaintiff alleges that "[e]ach individual defendant has had substantial and continuous contacts

with Washington, D.C. and the United States."  (Compl. ¶ 17.)  That statement is unsupported by

any factual allegations in the Complaint and should be summarily rejected as a basis for

jurisdiction.

As Plaintiff concedes, 22 of the total 26 Individual BAE plc Defendants live and work outside the United States.  (Compl. ¶¶ 23, 24, 26-28, 30-33, 35-38, 40-48; Individual BAE plc Defendants' Declarations for Messrs. Biggam, Brown, Cartellieri, Geoghegan, Evans, Hartnall, Hesketh, Inglis, King, Lester, Masefield, Mason, Mogford, Olver,  Portillo, Quarta, Rose, Rudd, Scaroni, Turner, and Weston.)  Of the four Individual BAE plc Defendants who live in the United States, none reside or have a principal place of business in the District of Columbia.  Mr. Carroll is a resident of Houston, Texas, where he also maintains his office. (Carroll Decl. ¶¶ 3-4.)  Mr. Weinberg lives in Connecticut and works in New York City. (Weinberg Decl. ¶¶ 3-4.)   Mr. Ronald lives in Maryland and maintains a home office there. (Ronald Decl. ¶¶ 3-4.)  Mr. Havenstein, the director who is also Chief Executive Officer of BAE Inc., has his primary residence in New Hampshire, with a secondary residence in Bethesda, Maryland; his office is in BAE Inc.'s headquarters in Rockville, Maryland.  (Havenstein Decl. ¶¶ 3-4.)  Plaintiff has shown no basis for asserting jurisdiction over these individuals.

In addition, the Complaint's allegations about the Individual BAE plc Defendants concern only their roles as current or former officers or directors of BAE plc and thus fail on grounds of the fiduciary shield doctrine to establish the Court's personal jurisdiction over these individuals.  Plaintiff pleads no personal, non-corporate contacts between the individuals and this District.  It is well established in this District that claims of personal jurisdiction based on an individual's contacts pursued in the individual's corporate capacity cannot lie.  *See Richard v. Bell Atl Corp.*, 976 F. Supp. at 73-74; *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994) ("Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity. Thus, the corporation ordinarily insulates the

individual employee from the court's personal jurisdiction.") (emphasis omitted); *Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981).  Therefore, even if in the Complaint Plaintiff had pleaded any injury resulting from an Individual BAE plc Defendant's contacts with this District arising from his or her service as a BAE plc director, such allegations would fail to establish personal jurisdiction.  This principle would, of course, apply to any BAE plc related meetings attended by any Individual BAE plc Defendant in this District.  And it should be noted again that the Complaint does not make even a *prima facie* showing that *any* Individual BAE plc Defendant has had *any* contacts with the District.  Therefore, the Court should dismiss the claims against each of the Individual BAE plc Defendants on the grounds that no *prima facie* case has been made as to personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the BAE Systems plc Defendants respectfully request

that the Court dismiss the Complaint in its entirety and with prejudice.


DATED:  January 31, 2008
        New York, New York

Respectfully submitted,

LINKLATERS LLP

BY:  LAWRENCE BYRNE (DC Bar # 4761)


_LAWRENCE BYRNE_

Of Counsel:
Mary K. Warren
Jeffery Commission
Kristopher Kerstetter

1345 Avenue of the Americas
New York, NY 10105
Telephone: 212-903-9105
Facsimile: 212-903-9100

Attorneys for Nominal Defendant BAE Systems plc
and Individual Defendants Sir Robin Biggam, Keith
Clark Brown, Philip J. Carroll, Ulrich Cartellieri, Sir
Richard Harry Evans, Christopher V. Geoghegan,
Michael J. Hartnall, Walter P. Havenstein, Lord
Alexander Hesketh, Andrew George Inglis, Ian G.
King, Michael Lester, Sir Charles Beech Gordon
Masefield, Sir Peter James Mason, Steve Lewis
Mogford, Richard (Dick) L. Olver, Michael Denzil
Xavier Portillo, Roberto Quarta, Mark H. Ronald,
George W. Rose, Sir Anthony Nigel Russell Rudd,
Michael J. Turner, Peter A. Weinberg, and John Pix
Weston