## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORAL HEARING REQUESTED** |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

### MOTION BY BAE SYSTEMS PLC AND THE INDIVIDUAL
### BAE SYSTEMS PLC DEFENDANTS TO DISMISS THE COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(1), (b)(2), and (b)(6) and the doctrine of *forum non conveniens*, and upon the Memorandum of Points and Authorities in Support of the Motion of BAE Systems plc and the Individual BAE Systems plc Defendants to Dismiss the Complaint; the Declaration of Martin Moore QC dated January 30, 2008, and exhibits attached thereto; the Declaration of David Parkes dated January 31, 2008; the 24 Declarations of the Individual BAE Systems plc Defendants; and all other papers and proceedings herein, Nominal Defendant BAE Systems plc and the Individual BAE Systems plc Defendants Sir Robin Biggam, Keith Clark Brown, Philip J. Carroll, Ulrich Cartellieri, Sir Richard Harry Evans, Christopher V. Geoghegan, Michael J. Hartnall, Walter P. Havenstein, Lord Alexander Hesketh, Andrew

George Inglis, Ian G. King, Michael Lester, Sir Charles Beech Gordon Masefield, Sir Peter

James Mason, Steve Lewis Mogford, Richard (Dick) L. Olver, Michael Denzil Xavier Portillo,

Roberto Quarta, Mark H. Ronald, George W. Rose, Sir Anthony Nigel Russell Rudd, Michael J.

Turner, Peter A. Weinberg, and John Pix Weston respectfully move to dismiss the complaint

against them.

DATED:  January 31, 2008
        New York, New York

                                      Respectfully submitted,

                                       LINKLATERS LLP

                                       BY:  LAWRENCE BYRNE (DC Bar # 4761)

                                       *Lawrence Byrne / E.O.*
                                          LAWRENCE BYRNE

                                       Of Counsel:
                                       Mary K. Warren
                                       Jeffery Commission
                                       Kristopher Kerstetter

                                       1345 Avenue of the Americas
                                       New York, NY  10105
                                       Telephone: 212-903-9105
                                       Facsimile: 212-903-9100

                                       Attorneys for Nominal Defendant BAE Systems plc
                                       and Individual Defendants Sir Robin Biggam, Keith
                                       Clark Brown, Philip J. Carroll, Ulrich Cartellieri, Sir
                                       Richard Harry Evans, Christopher V. Geoghegan,
                                       Michael J. Hartnall, Walter P. Havenstein, Lord
                                       Alexander Hesketh, Andrew George Inglis, Ian G.
                                       King, Michael Lester, Sir Charles Beech Gordon
                                       Masefield, Sir Peter James Mason, Steve Lewis
                                       Mogford, Richard (Dick) L. Olver, Michael Denzil
                                       Xavier Portillo, Roberto Quarta, Mark H. Ronald,
                                       George W. Rose, Sir Anthony Nigel Russell Rudd,
                                       Michael J. Turner, Peter A. Weinberg, and John Pix
                                       Weston

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | Civil No. 1:07-cv-01646 |
| Defendants, | ) ) | Assigned to: Judge Rosemary M. Collyer |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## **DECLARATION OF DAVID PARKES**

Pursuant to 28 U.S.C. § 1746, I, David Parkes, declare as follows:

1.      I am a citizen of the United Kingdom and the Company Secretary of BAE Systems plc. I submit this Declaration in support of the motion by BAE Systems plc and the individual defendants to dismiss this action.

2.      I have reviewed the VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR INTENTIONAL, RECKLESS OR NEGLIGENT BREACH OF FIDUCIARY DUTY, CORPORATE WASTE AND *ULTRA VIRES* CONDUCT filed in *City of Harper Woods Employees' Retirement System v. Olver et al.,* No. 1:07-cv-01646 (D.D.C. filed Sept. 19, 2007).

3.      I make the statements set forth herein based on personal knowledge or knowledge that I have obtained from business records maintained in the ordinary course of business.

Company History and Business

4.    BAE Systems plc is a defence and aerospace company incorporated under the laws of England and Wales.  Its business lines include defence products and services for air, land, and naval forces, as well as advanced electronics, information technology solutions, and customer support services.

5.    The registered and principal office of BAE Systems plc is located at 6 Carlton Gardens, London, United Kingdom.

6.    The books and records of BAE Systems plc are maintained in London, United Kingdom; Farnborough, United Kingdom; and Worthing, United Kingdom.

7.    BAE Systems plc was originally British Aerospace, a corporation established under the Aircraft and Shipbuilding Industries Act 1977 to acquire by nationalization the United Kingdom's principal aircraft manufacturing and guided missile companies.  British Aerospace was privatized pursuant to the British Aerospace Act, 1980, and became a public company, British Aerospace plc, on 1 January 1981.  On 11 February 1981, ordinary shares of British Aerospace plc began to be listed on the London Stock Exchange.  On 29 November 1999, British Aerospace plc acquired the Marconi Electronic Systems business, part of The General Electric Company p.l.c., and subsequently in 2000 changed its name to BAE Systems plc.

8.    In September 1998, BAE Systems plc launched a Level 1 American Depositary Receipts programme traded on an Over The Counter ("OTC") basis which still continues today. The OTC market refers to the trading of securities directly between two parties rather than on an open exchange.  An American Depositary Receipt is a security tradable in the United States that represents a certain number of shares in a foreign company.  Under an ADR programme, each ADR is issued by a depositary, which in the case of BAE Systems plc is JPMorgan Chase Bank. JPMorgan Chase Bank in turn employs Guaranty Nominees Limited as custodian to hold the

depositary's shares.  Under its Level 1 ADR programme, the ADRs of BAE Systems plc are not

registered with the Securities and Exchange Commission ("SEC") and BAE Systems plc is not

subject to SEC filing requirements other than to file that which it files in its home market in the

United Kingdom.  (By contrast, Level 2 and 3 ADRs can be listed on United States exchanges but

require the filing of a registration statement and further regular filings.)

9.    BAE Systems plc acts principally as a holding company for the BAE Systems group

of companies, its activities being limited to certain holding and parent company activities managed

through head office employees located in London and Farnborough.  Operational activities are

conducted by subsidiary companies located principally in the United Kingdom, United States,

Australia, Sweden and South Africa.

10.    BAE Systems plc does not manufacture, distribute or sell products in the United

States.  It does not offer or provide services to customers located in the United States.  It does not

solicit business in the United States.  It has no offices in the United States.  It does not own or lease

real estate in the United States.

11.    In 1985 the governments of the United Kingdom and the Kingdom of Saudi Arabia

entered into arrangements for the provision of military hardware and services known as the Al

Yamamah programme.  BAE Systems plc entered into contracts with the government of the U.K. to

enable the U.K. to discharge its obligations under those arrangements.  The details of the Al

Yamamah programme are classified pursuant to the laws of both the United Kingdom and the

Kingdom of Saudi Arabia.

<u>The Board of Directors of BAE Systems plc</u>

12.    The business and affairs of BAE Systems plc are managed by the Board of Directors,

which currently consists of 12 directors, of which 4 are executive and 8 are non-executive directors.

3

13.    The administrative functions necessary to support the Board of Directors are performed in London, United Kingdom, and Farnborough, United Kingdom, including but not limited to the transcription and filing of minutes, the preparation and storage of paperwork and documents, and other preparations for the Board's meetings.

14.    22 of the 26 current and former directors and officers of BAE Systems plc who are named as individual defendants in the Derivative Complaint reside outside the United States.  The following are citizens and residents of the United Kingdom:  Sir Robin Biggam, Ms. Birley, Mr. Brown, Sir Richard Evans, Mr. Geoghegan, Mr. Hartnall, Lord Hesketh, Mr. Inglis, Mr. King, Mr. Lester, Sir Charles Masefield, Sir Peter Mason, Mr. Mogford, Mr. Olver, Mr. Portillo, Mr. Rose, Sir Nigel Rudd, Mr. Turner, and Mr. Weston.  Mr. Cartellieri is a citizen and resident of Germany.  Mr. Scaroni is a citizen and resident of Italy.  Mr. Quarta is a dual citizen of the United States and Italy and a resident of the United Kingdom.

15.    4 of the 26 current and former directors and officers of BAE Systems plc who are named as individual defendants in the Derivative Complaint reside in the United States.  Mr. Weinberg is a citizen of both the United Kingdom and the United States and is a resident of Connecticut.  Mr. Carroll is a citizen of the United States and a resident of Texas.  Mr. Havenstein is a citizen of the United States and a resident of New Hampshire; and Mr. Ronald is a citizen of the United States and a resident of Maryland.

16.    The Board of Directors generally holds scheduled meetings eight times per year and convenes additional, ad hoc meetings, for a total of as many as 13 meetings per year.  Of those meetings, nearly all are held in the United Kingdom.  Commencing in November 2002, the Board has met in the United States 9 times out of its 64 total meetings during those years.  None of those Board meetings occurred in Washington, D.C.

17.    Commencing in November 2003, certain committees of the Board of Directors have from time to time held meetings in the United States. Since 2003, the committees have met approximately 101 times in total. Eight of those committee meetings were held in Washington D.C. The remaining 93 committee meetings took place either outside the United States (83 meetings) or in areas of the U.S. outside of Washington, D.C. (10 meetings).

18.    According to the BAE Systems Annual Report 2006, which was approved on 21 February 2007, the total number of outstanding ordinary shares in BAE plc on 31 December 2006 was approximately 3,246.2 million. The individual members of the Board of Directors collectively held on 21 February 2007 approximately 1.39 million ordinary shares, or approximately 0.04 percent of the outstanding ordinary shares.

<u>United States Companies</u>

19.    I understand that the plaintiff has not named any United States subsidiary of BAE Systems plc as a defendant in the Derivative Complaint. Nevertheless, because the plaintiff makes assertions in the Derivative Complaint concerning United States business and activities, I provide the following information to describe the separate corporate entities that operate in the United States.

20.    BAE Systems plc owns several United States holding and operating companies. The main operating company, BAE Systems Inc., is a separate corporate entity which is incorporated in Delaware and headquartered in Rockville, Maryland. BAE Systems plc and BAE Systems Inc. are parties to a Special Security Agreement with the U.S. Government that allows BAE Systems Inc. to supply products and services of a highly sensitive nature to the U.S. Department of Defense, the U.S. intelligence community, and various other parts of the U.S. Government. BAE Systems Inc. manages the businesses headquartered in the United States.

21.    The Special Security Agreement with the United States Government requires BAE Systems Inc. to be managed separately from and independently of BAE Systems plc. Accordingly, the two corporate entities have separate boards of directors (save that there are three individuals who are members of both boards) and separate management (save for one common executive). The board of directors of BAE Systems plc consists of 12 members. The board of directors of BAE Systems Inc. consists of 13 members. A majority of the directors of BAE Systems Inc. were recruited from outside BAE Systems and appointed because of their independence and their experience with national security issues. BAE Systems plc does not manage the day to day business and operations of BAE Systems Inc. BAE Systems plc does not prepare the financial statements of BAE Systems Inc.

The Plaintiff

22.    As of 14 January 2008, the plaintiff City of Harper Woods Employees' Retirement System did not appear on the share register of BAE Systems plc. Guaranty Nominees Limited, as the custodian for JPMorgan Chase under the American Depositary Receipts programme, appears on the share register of BAE Systems plc.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on _31_ January 2008.

_____

David Parkes

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD (DICK) L. OLVER et al.,<br><br>Defendants,<br><br>- and –<br><br>BAE SYSTEMS PLC, an England and Wales corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer |

## DECLARATION OF SIR ROBIN BIGGAM

Pursuant to 28 U.S.C. § 1746, I, Sir Robin Biggam, declare as follows:

1.    I was a non-executive member of the BAE Systems plc Board of Directors from 1993 to 2003.

2.    I am a citizen of the United Kingdom.

3.    I reside in Leighton Buzzard, United Kingdom.

4.    I am retired but undertake some pro-bono work in the United Kingdom.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on ̇2̇0̇ January 2008.

_____

Sir Robin Biggam

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| RICHARD (DICK) L. OLVER et al., | ) ) |
| Defendants, | ) ) |
| - and - | ) ) |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

**DECLARATION OF KEITH C. BROWN**

Pursuant to 28 U.S.C. § 1746, I, Keith C. Brown, declare as follows:

1.  I was a non-executive member of the BAE Systems plc Board of Directors from 1989 to 2003.

2.  I am a citizen of the United Kingdom.

3.  I reside in Ingatestone, United Kingdom.

4.  I am now retired.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 31 January 2008.

_____

Keith C. Brown

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and - | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

### DECLARATION OF PHILIP J. CARROLL

Pursuant to 28 U.S.C. § 1746, I, Philip J. Carroll, declare as follows:

1.    I am currently a non-executive member of the BAE Systems plc Board of Directors and have been on the Board since 2005.

2.    I am a citizen of the United States.

3.    I reside in Houston, Texas, United States.

4.    My business office is located in Houston, Texas, United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 28 January 2008.

_____
Philip J. Carroll

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF DR. ULRICH CARTELLIERI

Pursuant to 28 U.S.C. § 1746, I, Dr. Ulrich Cartellieri, declare as follows:

1. I was a non-executive member of the BAE Systems plc Board of Directors from 1999 to 2007.

2. I am a citizen of Germany.

3. I reside in Bad Tölz, Germany.

4. I am retired.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___ January 2008.

_____

Dr. Ulrich Cartellieri

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF SIR RICHARD H. EVANS

Pursuant to 28 U.S.C. § 1746, I, Sir Richard H. Evans, declare as follows:

1.     I was an executive member of the BAE Systems plc Board of Directors from 1987 to 1998 and remained on the Board in the non-executive role of Chairman until 2004.

2.     I am a citizen of the United Kingdom.

3.     I reside in London, United Kingdom.

4.     My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 14ᵗʰ January, 2008.

_____
Sir Richard H. Evans

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## DECLARATION OF CHRISTOPHER V. GEOGHEGAN

Pursuant to 28 U.S.C. § 1746, I, Christopher V. Geoghegan, declare as follows:

1.  I was an executive member of the BAE Systems plc Board of Directors from 2002 until 2007.

2.  I am a citizen of the United Kingdom.

3.  I reside in Somerset, United Kingdom.

4.  My business office is located in the United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____

Christopher V. Geoghegan

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | |
| Plaintiff, | ) ) | Assigned to: Judge Rosemary M. Collyer |
| | ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| | ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF MICHAEL J. HARTNALL

Pursuant to 28 U.S.C. § 1746, I, Michael J. Hartnall, declare as follows:

1.    I am currently a non-executive member of the BAE Systems plc Board of Directors and have been on the Board since 2003.

2.    I am a citizen of the United Kingdom.

3.    I reside in Godalming, United Kingdom.

4.    My business office is located in Godalming, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 2**6** January 2008.

Michael J. Hartnall

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| vs. | ) ) |
| RICHARD (DICK) L. OLVER et al., | ) ) |
| Defendants, | ) ) |
| - and -- | ) ) |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) |
| Nominal Defendant. | ) ) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

## DECLARATION OF WALTER P. HAVENSTEIN

Pursuant to 28 U.S.C. § 1746, I, Walter P. Havenstein, declare as follows:

1.  I am currently the Chief Operating Office of BAE Systems plc and a member of the Board of Directors. I have been on the Board since January 2007.

2.  I am a citizen of the United States.

3.  My primary residence is in Alton, New Hampshire. I also maintain an apartment in Bethesda, Maryland.

4.  My business office is located in Rockville, Maryland.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 31 January 2008.

Walter P. Havenstein

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| RICHARD (DICK) L. OLVER et al., | )<br>) |
| Defendants, | )<br>) |
| - and – | )<br>) |
| BAE SYSTEMS PLC, an England and Wales corporation, | )<br>) |
| Nominal Defendant. | )<br>) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

**DECLARATION OF LORD ALEXANDER HESKETH**

Pursuant to 28 U.S.C. § 1746, I, Lord Alexander Hesketh, declare as follows:

1. I was a non-executive member of the BAE Systems plc Board of Directors from 1994 to 2005.

2. I am a citizen of the United Kingdom.

3. I reside in London, United Kingdom.

4. My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 15ᵗʰ January, 2008.

_____

Lord Alexander Hesketh

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| RICHARD (DICK) L. OLVER et al., | ) ) |
| Defendants, | ) ) |
| - and – | ) ) |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) |
| Nominal Defendant. | ) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

## DECLARATION OF ANDREW INGLIS

Pursuant to 28 U.S.C. § 1746, I, Andrew Inglis, declare as follows:

1.  I am currently a non-executive member of the BAE Systems plc Board of Directors, and I have been on the Board since 2007.

2.  I am a citizen of the United Kingdom.

3.  My primary residence is in London, United Kingdom. I currently maintain a secondary home in Houston, Texas, United States.

4.  My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 30th January 2008.

_____
Andrew Inglis

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF IAN G. KING

Pursuant to 28 U.S.C. § 1746, I, Ian G. King, declare as follows:

1. I am currently Chief Operating Officer for the UK and Rest of World organization of BAE Systems plc and a member of the Board of Directors. I have been on the Board since January 2007.

2. I am a citizen of the United Kingdom.

3. I reside in the Borough of Fareham, Hampshire County, United Kingdom.

4. My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 27th January 2008.

Ian G. King

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## DECLARATION OF MICHAEL LESTER

Pursuant to 28 U.S.C. § 1746, I, Michael Lester, declare as follows:

1.     I was an executive member of the BAE Systems plc Board of Directors from 1999 to 2006.

2.     I am a citizen of the United Kingdom.

3.     I reside in London, United Kingdom.

4.     My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____

Michael Lester

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## DECLARATION OF SIR CHARLES B.G. MASEFIELD

Pursuant to 28 U.S.C. § 1746, I, Sir Charles B.G. Masefield, declare as follows:

1. I was a member of the BAE Systems plc Board of Directors from 1999 to 2003.

2. I am a citizen of the United Kingdom.

3. I reside in Hertfordshire, United Kingdom.

4. My business office is located in the United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____
Sir Charles B.G. Masefield

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF SIR PETER J. MASON

Pursuant to 28 U.S.C. § 1746, I, Sir Peter J. Mason, declare as follows:

1.    I am currently a non-executive member of the BAE Systems plc Board of Directors and have been on the Board since 2003.

2.    I am a citizen of the United Kingdom.

3.    I reside in London, United Kingdom.

4.    My business office is located in Reading, Berkshire, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28th January, 2008.

_____

Sir Peter J. Mason

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

## DECLARATION OF STEVE L. MOGFORD

Pursuant to 28 U.S.C. § 1746, I, Steve L. Mogford, declare as follows:

1.    I was an executive member of the BAE Systems plc Board of Directors from 2000 to May 2007.

2.    I am a citizen of the United Kingdom.

3.    I reside in Chorley, United Kingdom.

4.    My business office is located in Basildon, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____

Steve L. Mogford

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | Civil No. 1:07-cv-01646 |
| | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | |
| vs. | |
| RICHARD (DICK) L. OLVER et al., | |
| Defendants, | |
| - and – | |
| BAE SYSTEMS PLC, an England and Wales corporation, | |
| Nominal Defendant. | |

## DECLARATION OF RICHARD L. OLVER

Pursuant to 28 U.S.C. § 1746, I, Richard L. Olver, declare as follows:

1.  I am currently Chairman of BAE Systems plc and have been on the Board of Directors since 2004.

2.  I am a citizen of the United Kingdom.

3.  I reside in Essex, United Kingdom.

4.  My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 29 January 2008.

_____

Richard L. Olver

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, )<br><br>Plaintiff, )<br><br>vs. )<br><br>RICHARD (DICK) L. OLVER et al., )<br><br>Defendants; )<br><br>- and – )<br><br>BAE SYSTEMS PLC, an England and Wales corporation, )<br><br>Nominal Defendant. ) | Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer |

**DECLARATION OF THE RT. HON. MICHAEL D.X. PORTILLO**

Pursuant to 28 U.S.C. § 1746, I, The Rt. Hon. Michael D.X. Portillo, declare as follows:

1.    I was a non-executive member of the BAE Systems plc Board of Directors from 2002 to 2006.

2.    I am a citizen of the United Kingdom.

3.    I reside in London, United Kingdom.

4.    My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____

Rt. Hon. Michael D.X. Portillo

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES'<br>RETIREMENT SYSTEM, Derivatively on<br>Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales<br>corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF ROBERTO QUARTA

Pursuant to 28 U.S.C. § 1746, l, Roberto Quarta, declare as follows:

1. I am currently a non-executive member of the BAE Systems plc Board of Directors, and I have been on the Board since 2005.

2. I am a dual citizen of Italy and the United States.

3. I reside in London, United Kingdom.

4. My principal business office is located in London, United Kingdom, and I also maintain an office in New York, New York, United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28th January 2008.

_____

Roberto Quarta

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## DECLARATION OF MARK H. RONALD

Pursuant to 28 U.S.C. § 1746, I, Mark H. Ronald, declare as follows:

1.  I was a non-executive member of the BAE Systems plc Board of Directors from 2002 to 2006.

2.  I am a citizen of the United States.

3.  I reside in Chevy Chase, Maryland, United States.

4.  My business office is located in my residence, in Chevy Chase, Maryland, United States. I do not have clients or derive income from business in the District of Columbia.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 2ᵗ January 2008.

_____

Mark H. Ronald

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, ) ) ) | Civil No. 1:07-cv-01646 |
| ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, ) ) | |
| vs. ) | |
| RICHARD (DICK) L. OLVER et al., ) ) | |
| Defendants, ) ) | |
| - and – ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, ) ) ) | |
| Nominal Defendant. ) | |

## DECLARATION OF GEORGE W. ROSE

Pursuant to 28 U.S.C. § 1746, I, George W. Rose, declare as follows:

1.    I am currently Finance Director of the BAE Systems plc Board of Directors and have been on the Board since 1998.

2.    I am a citizen of the United Kingdom.

3.    I reside in Lancashire, United Kingdom.

4.    My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 28 January 2008.

_____

George W. Rose

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD (DICK) L. OLVER et al.,<br><br>Defendants,<br><br>- and –<br><br>BAE SYSTEMS PLC, an England and Wales corporation,<br><br>Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

**DECLARATION OF SIR NIGEL RUDD**

I, SIR NIGEL RUDD, declare and state pursuant to 28 U.S.C. § 1746 as follows:

1.    I am a non-executive member of the BAE Systems plc Board of Directors.  I became a director in 2006.

2.    I am a citizen of the United Kingdom.

3.    I reside in Derbyshire County, United Kingdom.

4.    My business office is located in London, United Kingdom.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __16th__ January 2008.

_____
Sir Nigel Rudd

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

**DECLARATION OF MICHAEL J. TURNER**

Pursuant to 28 U.S.C. § 1746, I, Michael J. Turner, declare as follows:

1.      I am currently the Chief Executive Officer of BAE Systems plc and a member of the Board of Directors.  I joined in 1994 the Board of British Aerospace plc, which was renamed BAE Systems plc in 1999 following the merger with Marconi Electronic Systems.

2.      I am a citizen of the United Kingdom.

3.      I reside in Cobham, Surrey, United Kingdom.

4.      My business office is located in London, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 21 January 2008.

_____

Michael J. Turner

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD (DICK) L. OLVER et al.,<br><br>Defendants,<br><br>- and –<br><br>BAE SYSTEMS PLC, an England and Wales corporation,<br><br>Nominal Defendant. | Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer |

## DECLARATION OF PETER A. WEINBERG

Pursuant to 28 U.S.C. § 1746, I, Peter A. Weinberg, declare as follows:

1.     I am currently a non-executive member of the BAE Systems plc Board of Directors and have been on the Board since 2005.

2.     I am a dual citizen of the United States and the United Kingdom.

3.     I reside in Greenwich, Connecticut, United States.

4.     My business office is located in New York, New York, United States.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **25** January 2008.

_____

Peter A. Weinberg

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

### DECLARATION OF JOHN P. WESTON

Pursuant to 28 U.S.C. § 1746, I, John P. Weston, declare as follows:

1.    I was an executive member of the BAE Systems plc Board of Directors from 1994 to 2002.

2.    I am a citizen of the United Kingdom.

3.    I reside in Oxshott, Surrey, United Kingdom.

4.    My business office is located in Surrey, United Kingdom.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 15th January 2008.

_John Weston_

John P. Weston

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) ) | Civil No. 1:07-cv-01646 |
| Plaintiff, | ) ) ) | Assigned to: Judge Rosemary M. Collyer |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

## <u>DECLARATION OF MARTIN MOORE QC</u>

Pursuant to 28 U.S.C. § 1746, I, Martin Luke Moore QC of Erskine Chambers, 33 Chancery Lane, London WC2A 1EN, declare as follows:

## BACKGROUND

1    I am a barrister in private practice in London. I was called to the Bar of England and Wales in 1982 and, on completion of my pupillage,[1] became a member of Erskine Chambers in 1983. Erskine Chambers, a set of Barristers Chambers, is widely regarded as the foremost company law Chambers in England and Wales. I was appointed Queens Counsel[2] in 2002. During the course of my practice as a barrister, I have focused on company law litigation and advice, corporate finance, mergers and acquisitions, financial services, insolvency and corporate reorganisations, including the reorganisation of the businesses of banks and insurance and reinsurance companies. I have extensive experience advising companies ranging in size from major multinational public companies to small family companies. As I have become more senior, however, the focus of my practice has moved firmly toward acting for public limited companies, more often than not companies whose securities are publicly traded.

---

[1]    My pupil masters were Lord Justice Longmore, as he became, and Oliver Weaver QC.

[2]    The Bar Council of England and Wales' website describes Queen's Counsel as follows: "A limited number of senior barristers are made Queen's Counsel as a mark of outstanding ability. They are normally instructed in very serious or complex cases. Most senior judges once practiced as QCs."

2    Exhibit 1 hereto includes a true copy of my profile maintained on Erskine Chambers' website and extracts from *Chambers UK: A Client's Guide to the UK Legal Profession 2008* published by Chambers & Partners and *The Legal 500 2007* published by Legalease.

3    BAE SYSTEMS plc ("BAE PLC") has asked me to make this Declaration on aspects of English company law in so far as they apply to the VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR INTENTIONAL, RECKLESS OR NEGLIGENT BREACH OF FIDUCIARY DUTY, CORPORATE WASTE AND *ULTRA VIRES* CONDUCT, dated 13 September 2007 and filed 19 September 2007 in the United States District Court for the District of Columbia (the "Complaint"). I have studied the Complaint in detail, although I have not been supplied with the transcript of the BBC Documentary referred to in Paragraph 11 as Ex.A.

4    Save for acting for BAE PLC many years ago in relation to an annual general meeting, I have no other prior connection to BAE PLC.

5    It is an important requirement of the Court in England and Wales that persons giving expert evidence owe their duties to the Court to which their evidence is to be tendered and not to the party appointing them. Regardless of whether such a requirement exists in the United States District Court for the District of Columbia, I have made this declaration on the same basis as I would were it made in English proceedings.

6    I have been asked to give my view as to the circumstances in which, as a matter of English law, a shareholder in an English incorporated company, such as BAE PLC, can bring proceedings derivatively on behalf of that company to remedy alleged harm caused to the company concerned. I have also been asked to consider from an English law standpoint whether the Plaintiff's allegations in this action are sufficient to establish its right to bring the claims asserted in the Complaint derivatively on behalf of BAE PLC against the named defendants.

7    Following a description of the Companies Act 2006 and the Plaintiff's Complaint, this Declaration discusses the requirements under English law for a derivative action. I conclude that the Complaint fails on the facts pleaded to state a valid basis for the maintenance of a derivative action. For this reason, it is my view that the Complaint does not assert a valid claim under English law.

## THE COMPANIES ACT 2006

8    For many years the circumstances in which a shareholder of an English company could maintain a derivative action were laid down by the rule in *Foss v. Harbottle* (1843) 2 Hare 461 and its exceptions, as developed by the Courts. However, since the coming into force of the Companies Act 2006 ("the 2006 Act") a new statutory derivative action has replaced the common law remedy.

9    The new statutory derivative action is contained in Part 11 of the 2006 Act, Sections 260-269. The ability to bring the new statutory derivative action is like the old common law

derivative action subject to the Court's permission but the new provisions have wrought considerable change to the previously established position. For example, the new action includes within its ambit negligent breaches of duty not involving personal benefit to the wrongdoer and it is no longer necessary to establish wrongdoer control which was, save in certain circumstances, a pre-requisite of entitlement to sue derivatively. Now, save in cases of actual ratification, the Court has a discretion as to whether or not to allow a claim to proceed unless it is satisfied that bringing proceedings is not in the interests of the company concerned.

10    However, it remains the case that a derivative action may only be brought by a member of the company concerned; that is to say, a person who has agreed to become a member and whose name is entered on the register of members.[3] The 2006 Act has, in addition, by S.260(5)(b) extended the definition of member to include a person to whom the shares have been transferred or transmitted by operation of law.

11    The provisions of Section 260 came into force on the 1st October 2007[4] so that any derivative action commenced thereafter is subject to the new procedure.

12    However, Paragraph 20(3) of the statutory instrument bringing it into force provides as follows:

> "If, or to the extent that, the claim arises from acts or omissions that occurred before 1st October 2007, the court must exercise its powers under those sections so as to secure that the claim is allowed to proceed as a derivative claim only if, or to the extent that, it would have been allowed to proceed as a derivative claim under the law in force immediately before that date."[5]

In the light of Paragraph 20(3) it will be necessary to examine the Complaint to ascertain whether an English Court in considering the matter would apply the law as it stood prior or subsequent to commencement.  For reasons which will become plain an English Court will, in my view, apply the law as it stood prior to commencement of the 2006 Act.

---

[3]    Section 22 of the Companies Act 1985 ("the 1985 Act").

[4]    SI 2007/2194 Article 2(1)(e).

[5]    SI 2007/2194 Article 9, Schedule 3, Paragraph 20(3).  This position was foreshadowed by the Government in a statement issued on 26 June 2007 by Margaret Hodge, Minister for Industry and the Regions:

> "We also consulted specifically on transitionals in respect of the provisions on derivative claims and proceedings in part 11 of the 2006 Act. In the light of the consultation responses, we have concluded that the new, clearer procedures should be used for all claims started on or after 1 October 2007; but the courts should ensure that the outcome of any claim based on acts or omissions by a director before 1 October 2007 will be what it would have been under the old, common law that applied at the time."

**THE COMPLAINT**

13    The Complaint asserts that it is a derivative action seeking to remedy wrongs alleged to have been done to BAE PLC:

> "*This is a stockholder derivative action on behalf of BAE Systems plc… against the entire current BAE Board of Directors… and several of its present or former officers and directors… for intentional, reckless and/or negligent breaches of their fiduciary duties of care, control and candor, involving illegal, improper and/or ultra vires conduct, including causing BAE to violate the laws of the United States and international business conduct codes and conventions relating to honest trade and business practices by making, or permitting to be made, improper and/or illegal bribes, kickbacks and other payments.*" (Opening sentence of Paragraph 1 of the Complaint).

14    The Complaint names as defendants BAE PLC's current Board of Directors as well as certain former members of the BAE PLC Board (collectively, the "Director Defendants"). The Plaintiffs also name as defendants Prince Bandar Bin Sultan, The PNC Financial Services Group, Inc. (as successor to Riggs National Corporation/Riggs Bank N.A.), Joe L. Allbritton, Robert L. Allbritton, and Barbara Allbritton (Paragraph 1 of the Complaint).

15    The Complaint asserts claims on behalf of BAE PLC against current and former Directors for breach of fiduciary duty and waste of corporate assets along with claims against others for aiding and abetting these infringements.  The factual basis of the Complaint divides into three areas of primary fact: (i) the alleged payment of bribes, kickbacks and other improper payments to/for the benefit of Prince Bandar Bin Sultan and his family in order to secure BAE PLC's role in the Al-Yamamah programme between the United Kingdom and the Kingdom of Saudi Arabia; (ii) an alleged broader pattern and course of conduct by BAE PLC of illegal and/or improper payments to politicians and officials in various countries including Tanzania, Chile, the Czech Republic, Romania and South Africa; and, (iii) alleged misleading statements made by the Director Defendants to the effect that BAE PLC operated in accordance with applicable rules and laws. Although the Complaint starts with the third category, it seems to me more logical to deal with the substantive claims first rather than a claim which can only ever be consequential upon establishing the substantive claims.

  **-- Claims of Failure of Oversight**

16    The particular allegations against the Director Defendants are put in terms of, or derived from, their

> "*resorting to, or encouraging and/or permitting BAE's managers to resort to, improper, illegal and ultra vires activities to boost BAE's reported results, including paying bribes and kickbacks and making other improper payments… to obtain contracts to make their stewardship of BAE appear more successful*" (Paragraph 4 of the Complaint)

and that they

"*repeatedly misrepresented how they were overseeing, managing and operating BAE in a lawful and ethical manner.*" (Paragraph 5 of the Complaint).

At the end of paragraph 4 it is said:

"*The BAE directors' and officers' false statements and representations and negligent, reckless or intentional failure to properly oversee the operation and conduct of this enterprise have exposed BAE to millions of dollars in damages and potentially hundreds of millions of dollars in remedial costs and possible disbarment in the U.S., and have badly damaged BAE's corporate image and reputation*".

At the end of Paragraph 5 it is stated:

"*Under their stewardship, the BAE Defendants have caused BAE to engage in a pattern and practice of making illegal and improper payments to secure contracts and false and misleading statements to conceal and cover them up…*"

17    The essence of the claim against the BAE PLC Defendants is one of mismanagement and failure of oversight. That this is so is clear from the way in which the directors' duties are formulated in the Complaint. In Paragraph 66 it is stated

"*By reason of their positions as officers and/or fiduciaries of BAE and because of their ability to control the business and corporate affairs of BAE, the BAE Defendants owed BAE and its shareholders fiduciary obligations of fidelity, trust, loyalty and due care, and were and are required to use their utmost ability to control and manage BAE in a fair, just and honest and equitable manner, and were and are required to act in furtherance of the best interests of BAE and its shareholders.*"

In Paragraph 70 the duty is particularised in these terms:

"*to discharge their duties, the officers and directors of BAE were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial and operational affairs of BAE.  By virtue of such duties, the officers and directors of BAE were required, among other things, to:*

*(a) manage, conduct, supervise and direct the business and internal affairs of BAE in accordance with the laws and regulations of England, the United States, and every country in which BAE conducts business, and pursuant to the charter and bylaws of BAE;*

*(b) neither violate nor knowingly permit any officer, director or employee of BAE to violate applicable laws, rules and regulations;*"

**-- The Al-Yamamah Programme**

18    Although fore-shadowed earlier in the Complaint, Paragraphs 111-130 under the heading "The Ultra Vires, Illegal and Improper Conduct" contain the allegations in relation to the Al-Yamamah programme.   The nature of the allegations is set out in Paragraph 113 as follows:

> "*In order to advance their own positions with BAE by winning the Al-Yamamah contract the then officers and directors of BAE named as defendants herein undertook a course of illegal and improper conduct (engaging in ultra vires activities) in breach of their fiduciary duties to BAE, including paying huge bribes or kick backs (a/k/a "backhanders") to Bandar, which payments have amounted to over $2 billion over the last 20 years".*

19    The actions complained of in relation to Prince Bandar and Riggs Bank are not asserted to have continued after February 2005 following the acquisition of Riggs Bank by PNC.  The other complaint in relation to the kickbacks allegedly paid in connection with the Al-Yamamah programme relates to the honeymoon of a relative of Prince Bandar, which appears to have taken place in 1996.

20    It follows that the relevant acts and omissions occurred before the 1st October 2007 and therefore the English court would apply the law as it stood prior to commencement of the 2006 Act. Indeed, it would be odd if it were otherwise given that the Complaint is expressed in the past tense and is dated 13th September 2007.

## -- The Alleged Worldwide Pattern and Practice of Illegal/Improper Bribes

21    This relatively short section of the Complaint (Paragraphs 131-141) contains allegations of diverse instances of corrupt payments. Some instances are dated but many are not. The dated events all precede the 1st October 2007 and, in so far as they are not given dates, for the reason given in Paragraph 20 above must pre-date the 1st October 2007.

## -- The BAE PLC Directors' Alleged False and Misleading Reports

22    These allegations (Paragraph 86-110) are in substance consequential upon the previous two broad topics since the allegations consist of a series of extracts from the annual reports of BAE PLC between 2000 and 2006 said to be inconsistent with the reality. The substance of these allegations falls into three parts.

> "*105     The statements in BAE's 2001 -2006 Annual Reports were false and misleading when made and known to be false by the directors and officers of BAE when those statements were made. The repeated positive and reassuring statements about BAE's controls, procedures and practices to comply with anti-bribery laws, rules and conventions, BAE's actual compliance with them, and BAE's dedication to high ethical standards were false...*

*106    BAE's 2001-2006 financial statements, published by, and the responsibility of, its directors, were false and misleading in failing to disclose the existence of the illegal and improper payments and/or failing to make provision for the money fines and penalties likely to result from those payments…*

*107………*

*108    To the extent BAE was engaging in conduct that would result in fines and penalties, it was required to disclose these under IFRS. Since the amount was capable of a reasonable estimate—at least $50 million—and the liability was probable, the Company was required to record a provision for them".*

23    The most recent accounts to 31st December 2006 were distributed to members on 7th April 2007, so I am instructed, although the Complaint itself refers to March 2007 in Paragraph 103, and thus, as with the other allegations it is plain that they fall within Paragraph 20(3) of the commencement order.

24    In consequence the English Court is mandated to apply the law as it stood prior to 1st October 2007[6] and to decline to apply the new standards of the Companies Act 2006.

25    Bringing these threads together the nature of the claim against the BAE PLC Defendants is summarised in Paragraphs 146 and 147 as follows:

*"146    The BAE Defendants, in their roles as executives and/or directors of the Company, made false and misleading statements in Annual Reports and participated in the acts of mismanagement alleged herein and/or acted in gross disregard of the facts and/or failed to exercise due care to prevent the unlawful and ultra vires conduct complained of.*

*147    The BAE Defendants are responsible for the gross mismanagement of BAE, for abdicating their corporate responsibilities and mismanaging the Company in at least the following ways:*

*(a)    They caused BAE to violate applicable law, disregarding their duties as fiduciaries and directors and officers.*

*(b)    They have caused BAE to violate anti-bribery/corruption laws and conventions and exposed the Company to criminal liability and*

---

[6]    I add that so far as I am aware there has been no case in which the Court has had to consider the new statutory derivative action so there is no body of post-commencement law.

*unnecessary costs, fines and penalties – by engaging in ultra vires and illegal conduct*

*(c)        They exposed the Company and its shareholders to massive fines and penalties."*

## MEMBERSHIP OF THE COMPANY

26    As a threshold matter, the Complaint states at Paragraph 83 that the Plaintiff has standing to bring the claim *"as it is a shareholder and/or beneficial owner of BAE and was shareholder and/or beneficial owner of BAE at relevant times."* I disagree. Under the previous procedure it was a pre-requisite of standing that the plaintiff be a member (see <u>Birch v. Sullivan</u> [1957] 1 WLR 1247).  A member has for many years been statutorily defined[7] as a person who has agreed to become a member and whose name is entered on the register of members. Under the new procedure it remains the case that the plaintiff must be a member[8].

27    The Complaint states at Paragraph 18 that the Plaintiff holds approximately 3,500 ADRs or American Depositary Receipts. As is clear from Paragraph 20(i) of the Complaint, these ADRs only represent the shares in BAE PLC and JPMorgan Chase Bank NA is the depositary of the shares. I am instructed that, as I would expect, the custodian of the Depositary is registered as the member in relation to all BAE PLC shares in the ADR programme.   An ADR holder has no legal interest in the shares but a contractual agreement with the Depositary and to the extent that the law of that agreement gives an ADR holder a beneficial interest it is not one required to be recognised by BAE PLC. It is axiomatic in English law that a company is not bound to recognise a trust in respect of registered shares[9].

28    Accordingly, the Plaintiff's name is not entered on the BAE PLC register of members and as a result it does not have standing at present to pursue this claim. I add that the extended definition of member in S.260 (5) (b) does not extend to ADR holders.

## THE RULE IN *FOSS v. HARBOTTLE*

29    The Complaint at Paragraph 21 suggests that English law permits or will permit this action to be maintained based on the allegations made in the Complaint.  Again, for the reasons I set out below I disagree.

30    Based upon my analysis of the Complaint, in my view the English Court will apply the law as it stood prior to commencement of the new statutory derivative action set out in the 2006 Act.  Accordingly, I have not considered the approach a Court may take under those

---

[7]    S.22 of the 1985 Act; S.112 of the 2006 Act.

[8]    S.261(1) of the 2006 Act.

[9]    S.360 of the 1985 Act; S.126 of the 2006 Act.

new provisions and the extent, if any, to which it might lead to a different outcome[10]. It follows that the Court will therefore apply the famous rule in *Foss v. Harbottle*. The principle encapsulated by the rule in *Foss v. Harbottle* is derived from the separate legal personality of a company and the methods by which the will of that company is expressed under its constitution. The principle is simply that when a wrong is done to a company, whether by a director or anyone else[11], the proper plaintiff is the company, just as if the injured party were an individual. However, judges have developed exceptions to the rule or determined that in certain circumstances the rule is not applicable.

31    It is only to be expected with a body of case law which has developed over 165 years that not every case in which *Foss v. Harbottle* has been considered is consistent with every other one or that judges have described the underpinnings of the rule with complete uniformity. However, the Court of Appeal authoritatively restated the rule in *Prudential Assurance v. Newman Industries* [1982] 1 Ch 204 *("Prudential")* at 210, 211[12] where the nature of a derivative action, and its origin, was described as follows:-

> "*A derivative action is an exception to the elementary principle that A cannot, as a general rule, bring an action against B to recover damages or secure other relief on behalf of C for an injury done by B to C. C is the proper plaintiff because C is the party injured, and, therefore, the person in whom the cause of action is vested. This is sometimes referred to as the rule in Foss v. Harbottle (1843) 2 Hare 461 when applied to corporations, but it has a wider scope and is fundamental to any rational system of jurisprudence. The rule in Foss v. Harbottle also embraces a related principle, that an individual shareholder cannot bring an action in the courts to complain of an irregularity (as distinct from an illegality) in the conduct of the company's internal affairs if the irregularity is one which can be cured by a vote of the company in general meeting. We are not concerned with this aspect of the rule.*
>
> *The classic definition of the rule in Foss v. Harbottle is stated in the judgment of Jenkins L.J. in Edwards v. Halliwell [1950] 2 All E.R. 1064 as follows. (1) The proper plaintiff in an action in respect of a wrong alleged to be done to a corporation is, prima facie, the corporation. (2) Where the alleged wrong is a transaction which might be made binding on the corporation and on all its members by a simple majority of the members, no individual member of the corporation is allowed to maintain an action in respect of that matter because, if the majority confirms the transaction, cadit quaestio; or, if the majority challenges the transaction, there is no valid reason why*

---

[10]  See Footnote 6 above.

[11]  Under English case law, derivative actions typically involve only the directors of the company on whose behalf the suit is brought and not, as is the case here, additional defendants as well. However, the requirements for bringing a derivative suit under English law are not affected by whether a plaintiff sues only the directors of the company or whether he sues the directors and other individuals as well. Consequently, the fact that various non-director defendants have also been named in the Complaint does not affect any of my conclusions with respect to the requirements of English law for bringing a derivative action.

[12]  The general principles governing derivative actions were described in similar terms by the Court of Appeal in *Barrett v. Duckett* [1995] 1BCLC 243.

*the company should not sue. (3) There is no room for the operation of the rule if the alleged wrong is ultra vires the corporation, because the majority of members cannot confirm the transaction. (4) There is also no room for the operation of the rule if the transaction complained of could be validly done or sanctioned only by a special resolution or the like, because a simple majority cannot confirm a transaction, which requires the concurrence of a greater majority. (5) There is an exception to the rule where what has been done amounts to fraud and the wrongdoers are themselves in control of the company. In this case the rule is relaxed in favour of the aggrieved minority, who are allowed to bring a minority shareholders' action on behalf of themselves and all others. The reason for this is that, if they were denied that right, their grievance could never reach the court because the wrongdoers themselves, being in control, would not allow the company to sue.*"

32    The first and second propositions set out in Prudential amount to a statement of what is the substance of the rule in *Foss v. Harbottle* ("the Rule"). The remaining three propositions set out what are conventionally described as the exceptions to the Rule; although in truth only the third is an exception.

## -- The Exceptions to the Rule in *Foss v. Harbottle*

33    The three exceptions to the Rule are as follows:

33.1    The alleged wrong is ultra vires ("the Ultra Vires Exception");

33.2    The validity of the transaction is dependent upon a majority greater than a simple majority ("the Super Majority Exception"); and

33.3    The wrong alleged amounts to fraud and the wrongdoers are themselves in control of the company, and could thus procure ratification ("the Fraud on the Minority Exception").

## WHAT THE PLAINTIFF MUST SHOW TO BRING A DERIVATIVE ACTION

34    The course of the proceedings in *Prudential* (discussed above in Paragraph 31) raised in an acute form the question of what a plaintiff had to do in order to bring a derivative claim in reliance on the exceptions, in that case the Fraud on the Minority Exception[13]. Was it sufficient simply to allege facts which, if accepted as correct, brought his case within the exception?

---

[13]    It has been argued that the "interests of justice" could provide a fourth exception to the rule in *Foss v. Harbottle*, but the Court of Appeal has firmly rejected this contention. See *Prudential* at p.221; *Konamaneni v. Rolls Royce Industrial Power (India) Ltd* [2002] 1 BCLC 336 at para. 47. In *Prudential*, the court stated "[t]he second observation which we wish to make is merely a comment on Vinelott J.'s decision that there is an exception to the rule in *Foss v. Harbottle* whenever the justice of the case so requires.  We are not convinced that this is a practical test, particularly if it involves a full dress-trial before the test is applied".  The court then reiterated that the plaintiff must show a prima facie case that its claim falls within the boundaries of the existing exceptions to the rule in *Foss v. Harbottle* before proceeding with a derivative lawsuit.  In *Konamaneni*, Mr Justice Lawrence Collins stated that the assumption that there was an interests of justice exception to the rule in *Foss v. Harbottle* "was no longer justified since the *Prudential Assurance* case". Although Australian law recognizes such an exception see *Biala* v. *Mallina* [1993] 11 A.C.S.R. 785 at 847 referring with approval to *Hawksbury Development Company v. Landmark Finance Ltd* [1969] 2 N.S.W.R. 782, English law does not.

**35**     The Court concluded that the plaintiff ought at least to be required to establish a two part prima facie case:-

**35.1**     that the company is entitled to the relief claimed; and

**35.2**     that the action falls within the proper boundaries of the exceptions to the rule in *Foss v. Harbottle*.

## -- Ratification

**36**     The Rule as set out above requires a court first to examine whether the alleged wrongs are capable of ratification by a simple majority of shareholders. If the alleged wrongs are capable of ratification, then the decision as to whether to pursue an action can and should be taken by the members of the company and the action cannot proceed as a derivative action unless it falls within one of the exceptions to the Rule.

**37**     According to the Plaintiff's case, various acts of the company occurring during the Defendant Directors' tenures on the Board gave rise to or will give rise to regulatory, civil and criminal penalties to the detriment of the company. No doubt in so far as the events which give rise to regulatory, civil or criminal penalties are concerned, they are not ratifiable in the sense that the shareholders cannot by resolution change the fact that they gave rise to such penalties. However, that is not what is meant by ratification in this context.   Ratification here applies to the acts giving rise to the claimed liability of the directors for harm to the Company.

**38**     Where the claims are for various breaches of duty which have occasioned loss to the company, such breaches of duty are all capable of ratification in the sense that the shareholders can by ordinary resolution ensure that the acts of the directors are no longer breaches of duty by ratifying them. If ratified by the shareholders, such conduct ceases to be wrongful as against the company and its corporators.[14] It is not necessary that actual ratification take place; it is only necessary that the acts of the directors are capable of ratification.

**39**     The Complaint makes allegations of unratifiability in Paragraph 15, but those allegations do not suffice under English law. The wrong which can form a subject of a derivative action is a wrong which harms the company. In this Complaint, however, the wrongs which have allegedly been done to BAE PLC are not the breaches of regulatory, civil or criminal law — those are the wrongs done by BAE PLC — but the failures of duty of the directors in causing BAE PLC to commit such wrongs and in failing to supervise and ensure that BAE PLC did not commit such wrongs. As it is put in the Complaint it is the directors' conduct which is said to be ultra vires and therefore unratifiable. Paragraph 15 states of the Defendant Directors *"their conduct cannot be ratified or approved by BAE's shareholders,*

---

[14]   This is distinct from the point discussed at paragraph 64 below which deals with the concept of waiving claims arising from ultra vires acts, in circumstances where a majority of independent shareholders resolves, or would resolve, not to prosecute a claim in respect of the ultra vires act.

*as that conduct was illegal and ultra vires and also violates Section 463".*  But as a matter of law, such breaches of duty are not ultra vires and are therefore capable of ratification by an ordinary resolution of the shareholders.

40    Accordingly, the Plaintiffs cannot prosecute the action against the Director Defendants on behalf of BAE PLC unless they can bring the Complaint within one of the exceptions to the Rule.

### --- The Ultra Vires Exception

41    The expression "*ultra vires*" in English company law refers to a transaction which is either beyond the capacity of the company as established by its memorandum of association or a transaction prohibited by the statute to which the company owed its existence. This is what is meant by "an illegality" in the passage from the judgment in *Prudential* quoted at Paragraph 31 above. An example of such a breach is the prohibition against a company giving financial assistance for the purpose of the acquisition of its shares contrary to Section 151 et seq. of the 1985 Act (as was the case in *Smith v. Croft (No2 )* [1988] 1 Ch 114) or in making a return of capital otherwise than through the statutorily prescribed procedure (as in *Drown v. Gaumont British Picture Corp* [1937] Ch 402).

42    Although the Complaint employs the term "*ultra vires*" frequently, there is no allegation anywhere in the Complaint of a wrong which would be considered ultra vires under English law. In this context it is important to appreciate the sense in which ultra vires is used for the purpose of the exception because in the company law field one sees the phrase "*ultra vires*" not infrequently used in two senses.  In its narrow, and proper, sense it means acts beyond the capacity of the company concerned in the sense described in Paragraph 41 above. It is also used, somewhat loosely, to describe acts of directors which are outside the scope of the directors' powers because, for example, they act from some improper motive.  The distinction is well illustrated in a passage from *Smith v. Croft* when Knox J said at p. 159:

> "*I take as the fundamental rule in considering the scope of what is properly called ultra vires, by which I mean beyond the capacity of the company as opposed to that of its officers, the following passage in the judgment of Slade L.J. in Rolled Steel Products (Holdings) Ltd. V. British Steel Corporation [1986] Ch. 246, 295:*
>
>> "*if a particular act … is of a category which, on its true construction of the company's memorandum, is <u>capable</u>[15] of being performed as reasonably incidental to the attainment or pursuit of its objects, it will not be rendered ultra vires the company merely because in a particular instance its directors, in performing the act in its name, are in truth doing so for purposes other than those set out in its memorandum.  Subject to any express restrictions on the relevant power which may be contained in the memorandum, the state of mind of knowledge of the persons managing the company's affairs or of the persons dealing with it is irrelevant in considering the questions of corporate capacity*"

---

[15]  Emphasis in original text.

> *On that basis, whereas excessive remuneration of a director may well be an abuse of power where, as here, the power to decide on remuneration is vested in the Board, it cannot be ultra vires the company."*

**43**    Also in <u>Rolled Steel</u> Browne-Wilkinson LJ observed at p. 303 that:-

> *"It is therefore established that a company has capacity to carry out a transaction which falls within its objects even though carried out by the wrongful exercise of its powers."*

**44**    Thus, it is important to keep the two senses in which ultra vires is used firmly separate. To do otherwise and conflate the two is to fall into the fallacy identified by Oliver J[16] in <u>Re Halt Garage (1964) Ltd</u> [1982] 3 All ER 1016 that because a power must not be abused therefore beyond the limit of propriety it does not exist[17].

**45**    The payment by a company of commission to agents of third parties in carrying out its business is clearly capable of being within the objects specified in a company's memorandum. The alleged payments described in the Complaint take their character as improper payments because they are alleged to be bribes; i.e. payments to an agent that are not disclosed to the principal (although I note that the Complaint does not actually allege non-disclosure). The suggestion is that the payments were illegal and improper and thus beyond the scope of the proper exercise by the directors of their powers. Although the term ultra vires is used in the Complaint, in my view, an English Court would not proceed as if the allegation were ultra vires in its true sense of an act beyond the capacity of the corporation, but as an allegation of abuse of the powers of the directors of the corporation. It is noteworthy that there is no suggestion in the Complaint that BAE PLC as a company lacked the capacity to make the payments under its memorandum of association or the statute to which BAE PLC owes its existence.

**46**    This principle is specifically demonstrated in English law with respect to assertions of bribery. In <u>Arab Monetary Fund v. Hashim and Others</u> [1993] 1 Lloyd's Rep. 543 the plaintiffs claimed that a payment made for the purposes of securing a construction contract was a bribe and as such was ultra vires. Mr Justice Evans observed that the distinction between ultra vires or lack of capacity on the one hand, and want of authority on the other, was "*fundamental*" to the question of whether a bribe could be considered ultra vires a company. He stated that it was "*established that a company has capacity to carry out a transaction which falls within its objects even though carried out by the wrongful exercise of its powers*". The submission that a bribe was ultra vires a company "*involves distinguishing between a bribe and a lawful commission, which would involve questions as to knowledge and state of mind of the persons who purported to act on behalf of the company; yet these are irrelevant to the construction of the memorandum [of association] and therefore to corporate capacity*" (citing Lord Justice Brown Wilkinson in <u>Rolled Steel</u>).

---

[16]   Later Lord Oliver a member of the House of Lords.

[17]   p1029g-1030a.

Therefore a payment is not considered ultra vires in its proper sense under English law of being beyond the capacity of the company even if established to have been a bribe.

**47**    When _Edwards v. Halliwell_ (the case cited in _Prudential_ stating the Rule and its exceptions), was decided, a transaction beyond the capacity of the company as established by the memorandum of association was incapable of ratification even by all the shareholders. However, by reason of changes in the law reflected in Section 35 of the Companies Act 1985 ("the 1985 Act"), a past transaction outside the objects of the company is no longer prima facie ultra vires because it can be ratified by a special resolution, so that it falls within the Super Majority Exception. It remains the case that any shareholder can bring an action to restrain the company from entering into such a transaction (see Section 35(2) of the 1985 Act).

**48**    However, a transaction which is "ultra vires" in the sense that it is prohibited by the 1985 Act or 2006 Act is still clearly incapable of ratification, even by all the shareholders, with the result that any member can bring an action to restrain an act which is "ultra vires" in that sense.

**49**    In this case, the Complaint contains many allegations of illegality by reason of the references to breaches of regulatory, civil or criminal law, but illegality of that kind is not within the ultra vires exception, which by virtue of S.35 of the 1985 Act is now limited to acts prohibited by the statute to which the company owes its existence. The fact that an act or omission by a company involves an infringement of the general law does not make that act or omission ultra vires within the meaning set out in Paragraph 41. Ultra vires refers to an action that is beyond the capacity of the company and not merely in violation of the general law. Here, there is no allegation of a transaction that is beyond the capacity of BAE PLC as established by its memorandum of association or a transaction prohibited by a statute to which BAE PLC owes its existence.[18]

**50**    Conversely, the mere fact that conduct _is_ ultra vires does not necessarily prevent the company from incurring liability under the general law, whether civil or criminal. This is now established in relation to a company incorporated under the 1985 Act by Section 35(1) of the 1985 Act, which provides that, subject to exceptions immaterial to this point, the validity of an act done by a company shall not be called into question on the ground of capacity by reason of anything in the company's memorandum.

---

[18]    For the sake of completeness, I should mention a well-known academic article from 1957 by Lord Wedderburn entitled "Shareholders' Rights and the Rule in Foss v Harbottle", at 1957 Cambridge Law Journal 194, in which he sought to argue at pp 204, 205 that the "_ultra vires_" exception extends not only to acts which are prohibited by the law to which the company owes its existence but also to acts which are prohibited under the general law. The Court of Appeal of the Northern Territory of Australia discussed Lord Wedderburn's theory in _Australian Agricultural Co. v Oatmont Pty_ [1992] 8 A.C.S.R. 255 at 263 to 265 and dismissed it. Lord Wedderburn's theory has received scant consideration in the English courts and has never been adopted here. Additionally, the cases cited by Lord Wedderburn in support of the theory, do not in my opinion support an extension of the exception to the Rule to infringements of the general law, which exception has consistently been stated by the English courts in terms of transactions which are ultra vires in the sense described in Paragraph 41 above.

51      It follows, in my view, that where directors of a company incorporated under the Companies Acts or its predecessors cause a company to carry on activities which, while within the power of the company as a matter of capacity and not made unlawful by the those Acts, involve breach of the general law, whether civil or criminal, a minority shareholder will not be able to bring a claim against the directors on the company's behalf in reliance on either of the non-Fraud Exceptions (that is to say the ultra vires exception or the super majority exception). He will only be able to bring a claim against the directors on the company's behalf if the conduct of the directors involved a breach of their duty to the company and he can bring himself within the Fraud on the Minority Exception.

## -- The Super Majority Exception

52      The Complaint contains no allegation of any transaction which is outside the objects of the company within the meaning of Section 35 of the 1985 Act or of any other transaction which could only be sanctioned by a special resolution. Accordingly, this exception cannot apply.

## -- The Fraud on the Minority Exception

53      Most of the decided cases are concerned with this exception. It is important to note that the exception is not confined to "fraud" in the common law sense involving dishonesty, but extends to any transaction or a series of transactions where the defendants, in breach of their fiduciary duty, take advantage of their position to commit the company to a transaction or a series of transactions which benefits themselves at the expense of the company[19]. Thus, if the wrong consists of negligence on the part of the defendants, even if categorised as "gross" negligence, the exception will apply only if the wrong enabled the defendants to make a profit at the expense of the company[20].

54      It is of the essence for application of the exception that if the company were to pass a resolution either ratifying the transaction or deciding that the company should not pursue a claim against the wrongdoers, such a resolution would be passed only as a result of votes cast by the wrongdoers and persons acting in concert with them (frequently referred to as "wrongdoer control") and whether or not this is the case may itself be a matter in dispute[21]. It is for this reason that the exception is called "fraud on the minority" because, by passing a resolution not to sue, the majority vote would be a fraud on the minority who vote to sue, although some commentators suggest that the exception is misnamed as the fraud is on the company. The truth is that the acts complained of must be a fraud both on the company and the minority.

---

[19]   See, for example, _Daniels v. Daniels_ [1978] 1 Ch 406 at 413, 414.

[20]   _Pavlides v. Jensen_ [1956] Ch 565 at 576; _Daniels v. Daniels_ [1978] 1 Ch 406 at 413.

[21]   _Prudential_ at p 219.

**55**   "Wrongdoer control" means control of the company in general meeting, because it is on ratification by the company in general meeting that the Rule and its exceptions are based. English law requires a public company to hold at least one general shareholder meeting per year. General meetings can be called either by the board of directors or a quorum of shareholders. Courts have not clearly stated what a plaintiff must show as a factual matter to establish control of a general meeting of shareholders, either annual or extraordinary. Nevertheless, it is clear that it is not enough to satisfy the wrongdoer control requirement to allege that the incumbent board would not commence proceedings, whether by reason of culpability, cupidity or affinity.

**56**   It thus must always be borne in mind that for the exception to apply it must be the case <u>both</u> that there was fraud within the meaning of Paragraph 58 below <u>and</u> that there is "wrongdoer control" as described in Paragraph 55 above and further in Paragraph 62 below.

**57**   In my view, the Plaintiffs have not brought themselves within either necessary limb of the Fraud on the Minority Exception.

## No Fraudulent Conduct

**58**   The Complaint does not sufficiently allege fraud or fraudulent conduct by any Director Defendant, which is what is required to come within the first limb of the exception. In particular, there is no allegation that the breaches of duty have, in the relevant sense, benefited the Defendants personally at the expense of the company.

**59**   There is a reference in Paragraph 6 of the Complaint to the Director Defendants' "*lucrative payments and bonuses*". This is in the context of an averment as to why it would be futile to demand that the Board commence proceedings and is in any event not something directly connected to any alleged wrong by a director. Under English law, merely being paid a previously agreed compensation is very far from the necessary self-dealing by a director sufficient to underpin the Fraud on the Minority Exception.

**60**   There is also an allegation in Paragraph 155 of the Complaint that "*these* [Director] *defendants have awarded themselves and their allies excessively lucrative compensation and payments which have no reasonable basis, but instead are designed only to enrich themselves.*" Again this allegation is conclusory and appears to be unsupported by any pleaded facts. At most, this allegation essentially says that the Defendants failed to perform their jobs properly and, at the same time, were overpaid. Even a grossly negligent or reckless employee is not engaged in "self-dealing" simply because he is being paid by his employer in spite of his deficient performance. Conclusory allegations of the kind referred to above could and would be made in virtually every derivative action. A rule of law cannot be so easily circumvented.

**61**   In summary, there is no allegation of fraudulent conduct by any Defendant of the nature required to come within the first limb of the exception. The allegations of breach of duty do

not disclose the existence of a case of fraud or its functional equivalent.

No Wrongdoer Control

**62**     Even if one were to assume that the Plaintiffs have sufficiently alleged fraudulent conduct under the first limb of the Fraud on the Minority Exception (and I do not believe they have), the Complaint fails to satisfy the second limb of that exception, namely, "wrongdoer control". In fact, the Complaint says nothing about whether the Defendants can exercise control over BAE PLC in general meeting. With respect to the Director Defendants, the Complaint is silent on this question.

**63**     Thus, even if the Court were to accept as sufficient the Plaintiff's allegations of "fraud" in the Complaint, the derivative claims still would fail to fall within the Fraud on the Minority Exception because the wrongdoer control requirement has not been met. This is fatal to Plaintiff's derivative claims under English law regardless of whether the Plaintiffs have adequately alleged self-dealing by the Defendants.

**64**     I should add for completeness that the English courts have developed a further consideration even where a plaintiff has shown an ultra vires act, properly so called, or even wrongdoer control. Generally, where a majority of the independent shareholders resolve not to prosecute the company's claims against the directors arising out of ultra vires conduct the Court will not permit the plaintiff to proceed. In _Smith v. Croft (No2)_ [1988] 1 Ch 114, Mr Justice Knox held that a derivative suit involving ultra vires conduct inconsistent with the statute to which the company in question owed its existence could not proceed because an independent majority of the minority shareholders had resolved not to pursue the company's rights against the directors, in effect allowing an independent majority to forgive the breach of duty arising out of the conduct, which involved ultra vires, properly so called, with the same consequence as if the conduct itself had been legally ratified.  He based his decision on _Taylor v. NUM_ [1985] BCLC 237, where a plaintiff was refused permission to continue proceeding against officers of a union in a claim arising out of ultra vires acts because of the probability of a decision not to proceed against the officers by a majority of independent members.  Since neither an ultra vires act, properly so-called, nor wrongdoer control has been alleged I have not lengthened this declaration with a consideration of the ramifications of this aspect of the rules relating to potential derivative actions.

## SECTION 463 OF THE 2006 ACT AND ALLEGEDLY MISLEADING ACCOUNTS

**65**     I should add some remarks concerning Section 463 of the 2006 Act. It is alleged at Paragraphs 5 and 15 of the Complaint that the Director Defendants breached Section 463 of the 2006 Act. First, it appears that virtually all of the Plaintiff's allegations are outside the temporal scope of this provision as I discuss in more detail below.  Further, in my view, there appears to be a misunderstanding as to the importance of this section. Directors are,

quite independently of Section 463, under statutory and common law duties to their companies to comply with the extensive obligations relating to the preparation of accounts and reports[22]. It is well settled that such duties are owed to the company concerned and not individually to shareholders (see _Devlin v. Slough Estates Ltd_ [1983] BCLC 497; _Caparo Industries plc v. Dickman_ [1990] 2 A.C. 605).

66    Section 463 does not in truth add very much to the existing law. Section 463 provides:-

"(1)    The reports to which this section applies are -

(a)    the directors' report,

(b)    the directors' remuneration report, and

(c)    a summary financial statement so far as it is derived from either of those reports.

(2)    A director of a company is _liable to compensate the company for any loss suffered by it as a result of_—

(a)    any untrue or misleading statement in a report to which this section applies, or

(b)    the omission from a report to which this section applies of anything required to be included in it.

(3)    He is so liable only if—

(a)    he knew the statement to be untrue or misleading or was reckless as to whether it was untrue or misleading, or

(b)    he knew the omission to be dishonest concealment of a material fact.

(4)    No person shall be subject to any liability to a person other than the company resulting from reliance, by that person or another, on information in a report to which this section applies.

(5)    The reference in subsection (4) to a person being subject to a liability includes a reference to another person being entitled as against him to be granted any civil remedy or to rescind or repudiate an agreement.

(6)    This section does not affect—

(a)    liability for a civil penalty, or

(b)    liability for a criminal offence." (emphasis added)

## -- Standing to bring a claim under Section 463

67    As a threshold matter, I note that no right of action is vested in the shareholders or any third party under Section 463. As such, any shareholder who wishes to bring a claim under Section 463 on behalf of a company in respect of acts/omissions prior to October 2007 must do so under the rule in _Foss v. Harbottle_, or the exceptions thereto, which are

---

[22] Ss. 226 & 227 of the 1985 Act.

analysed above. In my opinion, the allegations concerning misleading statements could not support a derivative claim on behalf of BAE PLC under that rule for the reasons outlined above.

## -- Scope of Section 463

**68**    Notwithstanding the above, I will address here whether the Complaint states a claim for misstatement under Section 463 in case it should be relevant. Section 463 creates a statutory tort, actionable only at the instance of the company, in relation to certain statutory reporting requirements under the 2006 Act. The reports to which Section 463 applies are limited solely to directors' reports, directors' remuneration reports and summary financial statements, so far as they are derived from either of those director reports.

**69**    Section 463 came into force on 20 January 2007 and only applicable reports sent to members after that date can form the basis for an action under Section 463[23]. All references to statements made in applicable reports and sent to members before 20 January 2007 are therefore outside of its scope.

**70**    With the exception of two small sections set out at Paragraph 103(d) under "Business Review", none of the allegedly misleading statements cited in the Complaint are found in reports post-dating 20 January 2007 for the purposes of Section 463. Therefore virtually all of the Complaint's allegations in this regard are outside the temporal scope of Section 463 and cannot form the basis for a violation of the statute.

**71**    I next turn to the two claimed misstatements described in the Complaint which do fall within the time period to which Section 463 applies. These two sections are found in the Directors' Report included in BAE PLC's 2006 Annual Report which, I am instructed, was circulated to shareholders on 7 April 2007.

**72**    Section 463(2) provides that compensation is payable to the company for any loss suffered "as a result" of untrue or misleading statements. A causal link must therefore be shown to exist between an alleged misleading statement and the loss that it is said was caused by that misleading statement.

## -- Causal link between statements and loss

**73**    The Complaint does not specify what loss, if any, is directly attributable to the alleged misleading statements themselves. It is insufficient for the purposes of a claim under Section 463 merely to allege that losses have flowed from dereliction of fiduciary duty and unlawful dissipation of corporate assets. These are, in effect, direct consequences of the Defendants' alleged conduct itself rather than consequences of any statements made about that conduct in relevant directors' reports. The Plaintiffs therefore fail to establish the

---

[23] Companies Act 2006 (Commencement No. 1, Transitional Provisions and Savings) Order 2006, Schedule 5, Paragraph 3: "*Section 463 of the Companies Act 2006 (liability for false or misleading statements in reports) does not apply to a directors' report, directors' remuneration report or summary financial statement first sent to members and others under section 238 or 251 of the 1985 Act, or Article 246 or 259 of the 1986 Order, before 20th January 2007.*"

necessary causal link between the "false and misleading" statements and the loss alleged in the Complaint.

74   The Plaintiff cannot prosecute the action against the Director Defendants on behalf of BAE PLC under Section 463 unless it has pleaded a causal link between the alleged misrepresentations and the loss pleaded. It is my view that this has not been set out in the Complaint and is an insuperable barrier to the claim under Section 463.

## REMEDIES FOR DIRECTOR MISCONDUCT GENERALLY

75   The focus of this declaration has been upon the ability of the Plaintiffs to sue derivatively on behalf of BAE PLC in relation to the alleged breaches by the directors of their fiduciary duties and duties to exercise the requisite degree of skill and care.  However, the derivative action is but one avenue open to regulate and remedy conduct of directors of English companies that is below acceptable standards.

76   Shareholders in English companies can assert statutory rights to require the company to hold meetings of shareholders and submit resolutions for consideration at general meetings. They also have a statutory right to remove directors by ordinary resolution. There are a number of conditions to the exercise of these rights, which broadly require there to be a minimum, but generally low, level of support for such initiatives before they can be considered at a general meeting.  One such initiative may be a resolution requiring and directing the company to bring proceedings against delinquent directors. If such an initiative was to be considered at a general meeting it would, in common with any other such initiative, not become binding on the company unless it commanded the approval of the requisite majority of shareholders.

77   In addition, a member can petition[24] the High Court in England for relief on the grounds that the affairs of the company have been, are being or will be conducted in a way that was, is or will be unfairly prejudicial to their interests as members. The English Court, which has exclusive jurisdiction to grant this extensive statutory remedy, when granting relief from unfair prejudice has wide flexibility in fashioning a remedy short of winding up the company.  This section is applied most often to disputes between majority and minority shareholders in closely held companies with the remedy most often applied being the directed buyout of the minority shareholders at a fair price set by the court. Such disputes often involve cases of directors' misconduct involving breaches of their duties to the relevant company.

78   There may also be circumstances in which a director's misconduct gives rise to a direct claim by a shareholder. This is most likely to be the case if the director has breached some duty owed directly to the shareholder or where a statutory right of compensation has

---

[24]   S.459 of the 1985 Act; S.994 of the 2006 Act.

arisen, for example, under Section 90 of the Financial Services and Markets Act 2000 for misleading statements in offering documents.

79      Clearly, the foregoing is but a very brief and by no means definitive description of the various remedies available to shareholders to regulate and remedy misconduct of directors. It simply illustrates the fairly obvious proposition that English law as a developed and sophisticated jurisdiction provides a wide range of remedial options to shareholders dissatisfied with the conduct of directors which, depending on the circumstances, may be available to them.

## CONCLUSION

80      It is my view that the Complaint does not contain sufficient averments which as a matter of English law are necessary to bring it within those classes of cases in which a member of a company can maintain an action on behalf of the company of which he is a member.

81      It is also my view that, irrespective of the lack of standing, the Complaint fails to establish a prima facie case under Section 463 of the 2006 Act due to the failure of the Plaintiffs to establish a causal link between the allegedly misleading statements made after 20 January 2007 and the loss it is claimed the company has suffered.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 30th January 2008.

Martin Luke Moore QC

**EXHIBIT 1**

# ERSKINE CHAMBERS



## Martin Moore QC

▦ **Called:** 1982   ▦ **Silk:** 2002



**Members of Chambers**

John Cone
Thomas Stockdale Bt
David Oliver QC
Leslie Kosmin QC
Michael Todd QC
David Mabb QC
Martin Moore QC
David Chivers QC
Ceri Bryant
Richard Snowden QC
Catherine Roberts
Philip Gillyon
Andrew Thompson
Dan Prentice
Nigel Dougherty
Leon Kuschke
James Potts
Andrew Thornton
Edward Davies
Stephen Horan
Benjamin Shaw
Ben Griffiths
Matthew Parfitt
Richard Nolan(Door Tenant)

**Further Inform**

🖶  Print Full
🖷  Case List

**Utilities**

▢  Make an Er
✉  Email this li

### Profile:

Martin concerns himself with company law litigation and advice, corporate finance, financial services, insolvency, corporate reorganisations and insurance company schemes. Martin has experience of litigation relating to all aspects of company law ranging from petitions under section 459 of the Companies Act, breaches of fiduciary duty and issues arising in insolvencies. Martin has acted in many corporate and capital reorganisations and transactions. Advisory work has a particular emphasis upon transactional work; the non-contentious litigation is centred on capital reductions, schemes of arrangement and schemes for the transfer of long-term business between life assurance companies.

### Education

Education: Winchester College 1973-1977; Lincoln College, Oxford 1978-1981.

Called to the bar: 1982 Lincoln's Inn

Practice: Joined Erskine Chambers in 1983

Member: COMBAR; Chancery Bar Association; South Eastern Circuit; Insolvency Lawyers' Association.

### CV
**PRACTICE REVIEW:**

Martin's work has continued to be a mix of transactional and litigious matters, and in each case a mixture of advisory and Court work.

Martin has advised and appeared for (amongst others)

·   GUS plc on its demerger of the Experian Group

·   London Merchant Securities plc on demerger of its investment

division.

· Pilkington plc on its acquisition by Nippon Sheet Glass.

· The Peninsular and Oriental Steam Navigation Company on its acquisition by DP World.

· Exel plc on its acquisition by Deutsche Post.

· Banco Santander on its takeover of Abbey National Plc

· Safeway Plc on its acquisition by Wm Morrison Supermarkets Plc

· Securicor Plc in relation to the merger of their security business with Group 4 Falck

Martin has also advised upon a very large number of corporate transactions. He advised companies and individuals on all aspects of company law from potential acquisitions, financial assistance, insider dealing and market abuse to the conduct of general meetings. He has given expert evidence of English Company Law proceedings in the United States.

Martin has continued to play a leading part in applying and clarifying the Court's jurisdiction under Part VII of the Financial Services and Markets Act 2000 in relation to the transfer of banking business and insurance business (both general and long-term). He has advised and appeared for (amongst others)

· The Resolution Life group of companies on that group's reorganisation of its long-term insurance business.

· The transfer to Swiss Reinsurance Company of the GE Frankona general and long-term reinsurance businesses.

· Royal Sun Alliance plc on its rationalisation of its inwards reinsurance book.

· The Aviva group of companies on that group's reorganisation of its general business carriers

· The General Electric Company on its reorganisation of its European business·

· Bristol & West plc on the transfer of its retail banking to the Britannia Building Society.

· Merrill Lynch International Bank Limited on its rationalisation

of its European Operations.

· Standard Chartered Bank in connection with incorporation in Hong Kong of its Hong Kong branch

In relation to corporate reconstructions Martin acted and appeared for SFI Group plc in its debt for equity swap and also for a group of bondholders in Telewest Communications Plc.

Martin has also given talks on company law and financial services to conferences and to solicitors.

Martin is in the list of the top six company law silks in The Legal 500 (2006) and in Chambers Guide to the Legal Profession (2007) is referred to in company matters as "advising and litigating with equal aplomb," "Renowned for his corporate law work and expertise on restructuring law, he undertakes cases in many jurisdictions" and "the silk of choice for regulated procedures such as transfers of business under Part 7 of FSMA"

---

**Case List**
Click here to view the Case list for Martin Moore QC

© Erskine Chambers. Tel: 020 7242 5532. Fax: 020 7831 0125.
Email: clerks@erskine-chambers.co.uk
Site Hosted by Nasstar

# COMPANY

www.ChambersandPartners.com

## LONDON

| Company London Leading Sets | Ranked QCs · Jnrs |
| --- | --- |
| **Band 1** | |
| Erskine Chambers | 11 |
| **Band 2** | |
| 4 Stone Buildings (George Bompas QC) | 6 · 6 |
| **Band 3** | |
| Maitland Chambers (Lyndon Stanford & Aldous) | 6 · 3 |
| Serle Court (Lord Neill of Bladen QC) | 5 · 4 |
| 3-4 South Square (Michael Crystal QC) | 4 · 3 |
| **Band 4** | |
| Enterprise Chambers (Bernard Weatherill QC) | 1 · 2 |
| One Essex Court (Lord Grabiner QC) | 2 · 0 |
| New Square Chambers (Rodney Stewart Smith) | 1 · 1 |
| XXIV Old Buildings (Mann QC & Steinfeld QC) | 2 · 0 |

### Erskine Chambers
See full details p.1895

This leading set for company work is the only one to specialise in the area and is particularly recommended for more technical and rare matters. "What really marks it out is its depth," remarked one interviewee; "even if you can't get the leaders you'll be satisfied with anyone there." Another remarked: "They are like Brighton Rock, quality from one end to the other." Aside from its unwavering quality of advice, clients also rave about the set's "accessibility and pragmatism – it uses modern communication methods and has none of the stuffiness traditionally associated with barristers' sets." Universally hailed as "exactly what the modern barrister should aspire to be," David Chivers QC is "accessible, happy to get his hands dirty and, most importantly, commercially astute." As one interviewee put it: "He has that perfect combination of knowing the law inside and out whilst also realising how to apply it in a commercial context – when you find someone like that you stick with them." Hailed as "the world expert on poison pills," Leslie Kosmin QC (see p.1782) is another silk valued for his commercial approach. In addition, solicitors admire his people skills: "He's very sensitive to client situations – you can bring clients before him and he always seems to know how best to handle them." "Stratospherically clever and a 'can-do' sort of guy," Richard Snowden QC (see p.1839) is one of the finest litigators in the company sphere. He is an expert on the potential fallout subsequent to the all-important new Companies Act. A "fantastic advocate and an expert on schemes of arrangement," David Mabb QC "knows his subject area inside-out." A great favourite among M&A solicitors, Martin Moore QC (see p.1803) "really knows how to get you out of a scrape." "A big personality," he has a "great presence in court, where his punchy approach is extremely effective." Solicitors also enjoy his "willingness to sit down and talk through issues, rather than coming across as a tutor." "A great litigator and big hitter with wonderful insight into company law," David Oliver QC has a track record in the area that demands respect. "He's great at addressing problems quickly, paring down the issues and then coming up with a commercial review," remarked one interviewee. Another silk consistently lauded by the City's best corporate lawyers is Michael Todd QC (see p.1850), who splits his practice between litigation and advisory work. "Extremely sensible" and a provider of "commercially robust advice," he is tipped by some as "the next big one at Erskine." "When it comes to the very technical points, there is no one better than John Cone (see p.1730)," according to commentators. "An outstanding adviser," he has a spotless and stellar reputation in the field. "A real expert

when it comes to very specialised areas," Sir Thomas Stockdale (see p.1843) is "at the top of his game." The "wonderfully bright" Ceri Bryant (see p.1717) is "very much in the Erskine mould when offering advice on complex, non-contentious issues." She has the full support of the market, as does Nigel Dougherty (see p.1740) who is "very clear in the way he expresses himself" and "really knows his way around shareholder disputes and directors' duties cases." Interviewees regard him as "a formidable opponent when it comes to long paper battles." "A very able advocate who is extremely user-friendly," James Potts (see p.1819) is a firm favourite with solicitors who feel that "he really gets involved" in cases on which he is instructed. Catherine Roberts (see p.1827) "consistently comes up with sensible and reasoned advice," and "puts up quite a fight in court," while the "confidence-inspiring" Andrew Thompson (see p.1849) possesses a "calm and measured delivery in court that impresses judges." It seems barely possible that there is only one Andrew Thornton (see p.1849), given the vast number of high-flying City corporate lawyers who seek out his "pragmatic, down-to-earth and efficient advice." A natural port of call for schemes of arrangement, he picks up a wide range of company work. His popularity can be put down to his "affable demeanour" and his "ability to pick up a question, deal with it straight away and seemingly always find the right answer." Company and corporate insolvency expert Philip Gillyon has a "tremendous reputation in the field," while the "exceptionally able" Dan Prentice possesses – as one would expect of an Oxford Professor – a "wonderfully broad grasp of the parameters of company law." Edward Davies (see p.1736) remains a fine prospect within the corridors of Erskine Chambers and is seemingly set to follow in the footsteps of his illustrious superiors in this virtual conveyer belt of company law talent.

### 4 Stone Buildings
See full details p.1977

When it comes to company litigation of a more hostile kind, 4 Stone Buildings harbours some of the finest practitioners around. As one peer put it: "If you hear someone is from 4 Stone, your inclination is to assume that they are good." Others made reference to an "extremely talented group of juniors coming through within the set," evidence that suggests this reputation for excellence will stand for a long time to come. Head clerk David Goddard was singled out for "knowing exactly what is going on within the chambers – he always knows how to put you on the right track." "When it comes to advising on wider corporate/commercial issues rather than just strict company matters, there is no one more capable than George Bompas QC (see p.1712)," according to one source. While his commercial chancery practice tends to be litigation-heavy, his company practice is more advisory in nature, focusing in particular on section 459 matters. Clients value his "clear and authoritative opinions." As one put it, "he understands the pragmatics of a transaction and he's a great person to go to if you need to stress-test a situation." Robert Hildyard QC (see p.1769) is a "formidable practitioner" who offers both litigation and advisory expertise across the company law gamut. "He's extremely thorough, has a good court presence and has a lovely manner with clients," remarked one admirer. He and Robert Miles QC (see p.1800) are consulting editors for Oxford University Press' book on the new Companies Act. Miles' company practice revolves around litigation, though he does take on some advisory work. A "fantastic advocate," he "builds up a great rapport with judges." "Very clever and extremely astute," John Brisby QC "always gets right

to the heart of a matter." Returning to private practice following his eight-year stint as First Treasury Counsel (Chancery), the "incredibly talented" Jonathan Crow QC (see p.1734) is "something quite special – he's strong on his feet and doesn't miss a trick." "A master on technical company work with a fine eye for detail," Malcolm Davis-White QC (see p.1737) provides litigation and advisory expertise, and is particularly praised for his work on schemes of arrangement and reductions of capital. "An excellent litigator with real ability," Richard Hill (see p.1769) is the junior of choice for some of the top silks in the company field. Another popular figure is Rosalind Nicholson (see p.1810). "Extremely knowledgeable within her field especially when it comes to directors' duties," Nicholson is "very much on the ball and someone with whom it's great to sit down and thrash out a problem." Peter Griffiths (see p.1761) maintains the set's reputation and is someone who "knows company law off the top of his head," while Sarah Harman is a "tough opponent who gives no quarter – you certainly know about it when you're up against her." A talent for the future at 4 Stone Buildings is Gregory Denton-Cox (see p.1738), whose "wonderful manner with clients is a great strength." Sharif Shivji (see p.1836) joins the rankings this year on account of his "genuine promise."

### Maitland Chambers
See full details p.1942

The pre-eminent set for commercial chancery, Maitland also has a number of distinguished practitioners in the company law field. "One of the finest litigators in the company arena," Charles Aldous QC "is at the top-end of his profession and makes a success of whatever work he turns his hand to." "Always full of ideas," he "has a real talent for handling heavyweight and drawn-out cases." Matthew Collings QC (see p.1729) is a "real ideas man" whose "willingness to take on some of the tougher cases around" sets him apart from the field. Paul Girolami QC (see p.1755) is a "fantastically good advocate" whose expertise on the forthcoming Companies Act will stand him in good stead as the effects of the legislation begin to be felt. "Very straight and easy to deal with," Guy Newey QC (see p.1809) is a "very capable pair of hands in the company arena." "Tenacious, able and confident," Catherine Newman QC's (see p.1809) broad-ranging practice takes in a good deal of company work; in 2006 she led a team on a breach of contract and misrepresentation claim worth around USD1 billion. "A forceful advocate with an extensive knowledge of the area," Anthony Trace QC (see p.1851) joins the ranking this year. An advocate who "never takes a backward step" is Rebecca Stubbs (see p.1844), whose work for the Crown attracted widespread praise. Gregory Banner (see p.1705) splits his practice between commercial and company work, taking on a number of section 459 petitions, shareholder warranties and reductions of capital. Recommended as a bright prospect at the set, Thomas Grant (see p.1759) has an "enormous capacity for work and knows the law inside-out."

### Serle Court
See full details p.1973

A chancery and commercial set of true quality, Serle Court houses practitioners who get involved in big-hitting company litigation. "Extremely able and a giant of the Bar," Alan Boyle QC (see p.1713) is a major force in company litigation. "A man of many talents, he is a match for all in this field." "A forceful advocate and a worthy opponent," Philip Marshall QC (see p.1795) has a broad-based company practice, but draws especial praise for his work on shareholder disputes. 2006 saw

56

## Company
### London
### Leading Silks

**Band 1**

Aldous Charles *Maitland Chambers*
Chivers David *Erskine Chambers*
Kosmin Leslie *Erskine Chambers*
Moss Gabriel *3-4 South Square*

Bompas George *4 Stone Buildings*
Hildyard Robert *4 Stone Buildings*
Miles Robert *4 Stone Buildings*
Snowden Richard *Erskine Chambers*

**Band 2**

Boyle Alan *Serle Court*
Crow Jonathan *4 Stone Buildings*
Dicker Robin *3-4 South Square*
Marshall Philip *Serle Court*
Oliver David *Erskine Chambers*
Vos Geoffrey *3 Stone Buildings*

Brisby John *4 Stone Buildings*
Davis-White Malcolm *4 Stone Buildings*
Mabb David *Erskine Chambers*
Moore Martin *Erskine Chambers*
Todd Michael *Erskine Chambers*

**Band 3**

Arden Peter *Enterprise Chambers*
Corbett James *Serle Court*
de Garr Robinson Anthony *One Essex Court*
Hollington Robin *New Square Chambers*
Jones Philip *Serle Court*
Moverley Smith Stephen *XXIV Old Buildings*
Newey Guy *Maitland Chambers*
Rabinowitz Laurence *One Essex Court*
Trace Anthony *Maitland Chambers*

Collings Matthew *Maitland Chambers*
Crystal Michael *3-4 South Square*
Girolami Paul *Maitland Chambers*
Joffe Victor *Serle Court*
Knowles Robin *3-4 South Square*
Mowschenson Terence *Wilberforce Chambers*
Newman Catharine *Maitland Chambers*
Steinfeld Alan *XXIV Old Buildings*
Trower William *3-4 South Square*

### Leading Juniors

**Band 1**

Cone John *Erskine Chambers*

**Band 2**

Bryant Ceri *Erskine Chambers*
Hill Richard *4 Stone Buildings*
Nicholson Rosalind *4 Stone Buildings*
Roberts Catherine *Erskine Chambers*
Thompson Andrew *Erskine Chambers*

Stockdale Thomas *Erskine Chambers*

Dougherty Nigel *Erskine Chambers*
Lightman Daniel *Serle Court*
Potts James *Erskine Chambers*
Stubbs Rebecca *Maitland Chambers*
Thornton Andrew *Erskine Chambers*

**Band 3**

Banner Gregory *Maitland Chambers*
Collingwood Timothy *Serle Court*
Gillyon Philip *Erskine Chambers*
Grant Thomas *Maitland Chambers*
Griffiths Peter *4 Stone Buildings*
Machell John *Serle Court*
Shekerdemian Marcia *11 Stone Buildings*
Toube Felicity *3-4 South Square*

Blayney David *Serle Court*
Eaton Turner David *New Square Chambers*
Goldring Jeremy *3-4 South Square*
Green Michael *Fountain Court Chambers*
Harman Sarah *4 Stone Buildings*
Prentice Dan *Erskine Chambers*
Stonefrost Hilary *3-4 South Square*
Zelin Geoffrey *Enterprise Chambers*

**Up-and-coming individuals**

Davies Edward *Erskine Chambers*
McCulloch Niall *Enterprise Chambers*

Denton-Cox Gregory *4 Stone Buildings*
Shivji Sharif *4 Stone Buildings*

James Corbett QC (see p.1732) lead on two section 459 cases. He won praise alongside Victor Joffe QC (see p.1777), a barrister who brings a "wealth of experience to any company case," having authored an academic text on the subject. He is noted as being "extremely impressive in shareholder disputes." Philip Jones QC (see p.1778) will "always have a firm grasp of absolutely every aspect of a case," and is known to get on "some of the biggest and most vital company cases around." "Extremely thorough, and firm but courteous," Daniel Lightman's (see p.1788) practice often spans the company and chancery divide. "Usually in about three courts a day," as a junior "he is often the power behind the throne." "A pleasure to deal with and extremely competent," David Blayney (see p.1711) handles a good deal of company litigation, including claims against directors. "Combining a sharp mind with a wonderfully easy-going manner," Timothy Collingwood (see p.1730) is a favourite with both silks and clients. Proficient across the chancery and insolvency fields, he recently demonstrated his company law experience in two breach of directors' duty claims. John Machell (see p.1791) joins the rankings this year having been "strongly recommended" for his company work.

### 3-4 South Square
See full details p.1974

"Past masters at the company/insolvency crossover," the barristers here appear in the meatiest work in the area and prove particularly adept at schemes of arrangement work. Gabriel Moss QC (see p.1805) climbs to the top of the rankings this year on the back of commentators' unflagging praise. One went so far as to call him "the most active and pre-eminent name in company law at the moment." "You can't let your guard down against him," remarked another. Like Moss, Robin Dicker QC (see p.1739) appears in "company cases of leading authority" and is something of an expert on schemes. A "superb litigator," he is "enormously respected" by his peers. "Blessed with a thorough understanding of the commercial aspects of a case," Michael Crystal QC remains a prominent figure within the company arena. "Open, approachable and very capable," Robin Knowles CBE QC (see p.1782) came in for extended praise. "He's a master of detail and has a uniquely clinical style of advocacy," remarked one peer. Another expert on schemes of arrangement is the "extremely responsive and helpful" William Trower QC (see p.1853). Jeremy

Goldring (see p.1757) "gets some fantastic cases," and according to one source, is "everyone's favourite junior." "More than a safe pair of hands," Hilary Stonefrost (see p.1843) joins the rankings this year on account of her "excellent reputation for schemes of arrangement work." Felicity Toube (see p.1851) has a "great delivery in court," and takes on general commercial and insolvency work, as well as company matters, in a broad-ranging practice. "Phenomenally bright," she also writes extensively on her subject.

### Enterprise Chambers
See full details p.1894

"Very strong across company and corporate insolvency," Peter Arden QC impresses with his "firm handle on all the issues involved in a case." "An extremely able practitioner who really knows his stuff," Geoffrey Zelin is another fine mind within the company/insolvency crossover. A promising young barrister within the chambers is Niall McCulloch, whose company-heavy practice often takes him to the British Virgin Islands.

### One Essex Court
See full details p.1896

2006 silk Anthony de Garr Robinson QC (see p.1737) joins the rankings this year on the back of very positive peer feedback: "He's a pleasure to work with and he really knows his way around all aspects of company law," remarked one. Another silk with broad experience in the area is the "highly in demand" Laurence Rabinowitz QC (see p.1823) whose advisory work "richly deserves its excellent reputation."

### New Square Chambers
See full details p.1948

"Quiet, but competent and effective as an advocate," Robin Hollington QC (see p.1771) is "a mine of company knowledge" having written a key work on minority shareholders' rights. "A very strong opponent," David Eaton Turner (see p.1742) operates within the company/insolvency realm handling, amongst other matters, section 459 proceedings and shareholder disputes.

### XXIV Old Buildings
See full details p.1949

Titan of the Bar Alan Steinfeld QC (see p.1842) demonstrated his talent in the company field in a 2006 warrant dispute, and is a "fine litigator combining a dogged approach with lashings of talent." Joining the rankings this year is Stephen Moverley Smith (see p.1842) whose highly regarded company practice has a distinctly international flavour.

### Other Notable Practitioners

Current chairman of the Bar Geoffrey Vos QC of 3 Stone Buildings has had many superlatives attached to his name over the years. "Incredibly energetic and with a quick mind," his all-round abilities extend to the company sphere. "Very straight-up and capable," Michael Green (see p.1760) of Fountain Court Chambers takes on a broad range of company work but is best known for his expertise in directors' disqualifications. With his "silky-smooth delivery," commentators believe "he won't remain a junior for much longer." "A powerful technical lawyer," Terence Mowschenson QC (see p.1806) of Wilberforce Chambers is a leading mind in the area of directors' liabilities. He advises on an array of corporate matters, including takeovers and share schemes. "A pleasure to work with and extremely competent," Marcia Shekerdemian (see p.1835) of 11 Stone Buildings is well versed in the law surrounding directors' disqualifications and shareholder disputes.

# THE LONDON BAR

## Commodities – Leading Juniors

Edmund Broadbent[†] 20 Essex Street
Siobán Healy[†] 7 King's Bench Walk
Charles Priday[†] 7 King's Bench Walk

**1**

Michael Coburn[†] 20 Essex Street
Charles Kimmins[†] 20 Essex Street

**2**

Clare Ambrose[†] 20 Essex Street
Michael Ashcroft[†] 20 Essex Street
Guy Blackwood[†] Quadrant Chambers
Claire Blanchard[†] Essex Court Chambers
Paul Downes[†] 2 Temple Gardens
Philip Edey[†] 20 Essex Street
Charles Holroyd[†] 7 King's Bench Walk
Susannah Jones[†] 20 Essex Street
Julian Kenny[†] 20 Essex Street
Peter MacDonald Eggers[†] 7 King's Bench Walk
Sara Masters[†] 20 Essex Street
Sean O'Sullivan[†] 4 Pump Court

**3**

*silks and leading juniors are listed A–Z within tiers*

David Quest[†] and others at 3 Verulam Buildings are 'efficient and thorough', with particular strength in trade finance disputes from the banking perspective.

'Very bright and user-friendly' Sean O'Sullivan's reputation at 4 Pump Court continues to grow with handling Commercial Court actions involving rice and crude oil cargoes and fuel oil sales. He acted successfully for an appellant in an LMAA arbitration regarding the carriage of palm oil.

One Essex Court's Ian Glick QC[†] is described as 'ultra-reliable, very clever and extremely well organised' and Laurence Rabinowitz QC[†] 'lives up to his hype' according to solicitors.

## Company

Few would dispute the contention that Erskine Chambers remains the leading set for company law, although some suggest the gap between the set, and other Chancery Bar rivals, is narrowing, particularly at the junior end. City comment that the set is 'probably the best set for pure Companies Act work' and that 'I have only ever used Erskine Chambers for corporate work' are typical. All seven of the silks are high up in our list. They include Leslie Kosmin QC[†] ('very approachable, full of common sense and fills you with confidence'), and Richard Snowden QC[†], 'extremely bright' 'one of the nicest and brightest of the newer silks', who recently concluded the mammoth Court of Appeal case of *Ultraframe (UK) Ltd*, a technical and procedural *tour de force*. Martin Moore QC[†] is seen to have 'a market-leading reputation which is more than justified' and is praised for being 'polite and, where occasion demands it, firm... he is very good at managing expectations, and gives extremely clear explanations'. Michael Todd QC[†] was almost universally celebrated for his legal acumen; his work in *Anglo Petroleum Ltd* as well as his Privy Council cases, stand out. David Chivers QC[†] is seen as is 'immensely impressive... he is clear, to the point and constructive' and as being a 'remarkable advocate, unflappable under pressure'. David Mabb QC[†] is 'immensely experienced in company law'; he acted for the Co-op in *Stansell Ltd v Co-operative Group (CWS) Ltd* on appeal in a case 'in an area where no previous clear authority had existed for 130 years (on transfers of engagement), as well as acting for the WRU on company law issues following coach Mike Ruddock's departure.

Senior juniors Sir Thomas Stockdale[†], John Cone[†] and Ceri Bryant[†] possess a wealth of experience in major restructurings and schemes of arrangement: Cone and Bryant are seen as 'excellent juniors'. Andrew Thornton[†], Andrew Thompson[†] (who 'writes excellent opinions, untangling very complex facts and law with clarity and economy') and James Potts[†] are all identified as juniors who 'perform to high expectations.' Thornton acted on many of the leading takeover transactions throughout 2006 and 2007; Thompson has acted on the long-running directors' duties case of *DEG v Koshy*; Potts' work on schemes of arrangement are enviable by any standard. Philip Gillyon[†], and Nigel Dougherty[†] are also recommended.

4 Stone Buildings maintains a strong focus on company law, with an emphasis on litigation, and is seen as 'a good, all-round commercial Chancery set with particular experience in Companies Act issues'. 'Accessible and user friendly' a silk who has often 'delivered some very good results,' said solicitors of Robert Hildyard QC[†] whose work in the pending Privy Council appeal of *Oracle Fund*

## Company – Leading Sets

**ERSKINE CHAMBERS** John Cone

**1**

**4 STONE BUILDINGS** George Bompas QC
**MAITLAND CHAMBERS** Michael Lyndon-Stanford QC,
    Charles Aldous QC and Michael Driscoll QC
**SERLE COURT** Lord Neill of Bladen QC

**2**

**XXIV Old Buildings** Martin Mann QC and Alan Steinfeld QC
**3-4 South Square** Michael Crystal QC
**Wilberforce Chambers** Jules Sher QC

**One Essex Court** Lord Grabiner QC
**New Square Chambers** Rodney Stewart Smith
**3 Stone Buildings** Geoffrey Vos QC

**3**

*Sets and individuals are listed A–Z within tiers*

# THE LONDON BAR

## Company — Leading Silks

**GEORGE BOMPAS QC**[†] 4 Stone Buildings
**ALAN BOYLE QC**[†] Serle Court
**ROBERT HILDYARD QC**[†] 4 Stone Buildings
**LESLIE KOSMIN QC**[†] Erskine Chambers
**MARTIN MOORE QC**[†] Erskine Chambers
**GUY NEWEY QC**[†] Maitland Chambers
**DAVID OLIVER QC**[†] Erskine Chambers
**MICHAEL TODD QC**[†] Erskine Chambers

*1*

**Charles Aldous QC**[†] Maitland Chambers
**John Brisby QC**[†] 4 Stone Buildings
**David Chivers QC**[†] Erskine Chambers
**Paul Girolami QC**[†] Maitland Chambers
**David Mabb QC**[†] Erskine Chambers
**Gabriel Moss QC** 3-4 South Square
**Richard Snowden QC**[†] Erskine Chambers
**Geoffrey Vos QC**[†] 3 Stone Buildings

*2*

**Michael Crystal QC**[†] 3-4 South Square
**Malcolm Davis-White QC**[†] 4 Stone Buildings
**Robin Dicker QC**[†] 3-4 South Square
**Robin Hollington QC**[†] New Square Chambers
**Victor Joffe QC**[†] Serle Court
**Philip Marshall QC**[†] Serle Court
**Robert Miles QC**[†] 4 Stone Buildings
**Terence Mowschenson QC**[†] Wilberforce Chambers
**Christopher Pymont QC**[†] Maitland Chambers
**Jules Sher QC**[†] Wilberforce Chambers
**Alan Steinfeld QC**[†] XXIV Old Buildings
**Anthony Trace QC**[†] Maitland Chambers

*3*

**Richard Adkins QC**[†] 3-4 South Square
**Peter Arden QC**[†] Enterprise Chambers
**Edward Bannister QC**[†] 3 Stone Buildings
**Lawrence Cohen QC**[†] XXIV Old Buildings
**Matthew Collings QC**[†] Maitland Chambers
**James Corbett QC**[†] Serle Court
**Mark Cunningham QC**[†] Maitland Chambers
**Anthony de Garr Robinson QC**[†]
   One Essex Court
**Philip Jones QC**[†] Serle Court

**Richard Gillis QC**[†] One Essex Court
**Jane Giret QC**[†] Ii Stone Buildings
**John McDonnell QC**[†] Thirteen Old Square
**John Nicholls QC**[†] Maitland Chambers
**Stephen Moverley Smith QC**[†]
   XXIV Old Buildings
**Martin Pascoe QC**[†] 3-4 South Square
**Francis Tregear QC**[†] XXIV Old Buildings
**John Wardell QC**[†] Wilberforce Chambers
**Antony Zacaroli QC**[†] 3-4 South Square

Sets and individuals are listed A–Z within tiers

| London Bar | |
|---|---|
| Masters of the Inns of Court | 690 |
| Barristers' charges and earnings | 691 |
| Overview | 692 |
| Administrative and public law | 697 |
| Agriculture | 702 |
| Aviation | 703 |
| Banking and finance | 705 |
| Charities | 709 |
| Civil liberties and human rights | 710 |
| Clinical negligence and healthcare | 713 |
| Commercial arbitration | 716 |
| Commercial litigation | 718 |
| Commodities | 722 |
| **Company** | **724** |
| Construction | 727 |
| Consumer | 730 |
| Costs | 732 |
| Crime | 733 |
| Defamation and privacy | 735 |
| EU and competition | 737 |
| Education | 740 |
| Employment | 742 |
| Energy | 745 |
| Environment | 747 |
| Family | 750 |
| Fraud: civil | 752 |
| Fraud: crime | 755 |
| Health and safety | 758 |
| Immigration and nationality | 759 |
| Information technology | 761 |
| Insolvency | 764 |
| Insurance and reinsurance | 767 |
| Intellectual property | 770 |
| Licensing | 773 |
| Media and entertainment | 774 |
| Partnership | 777 |
| Pensions | 778 |
| Personal injury | 780 |
| Planning | 783 |
| Police law | 786 |
| Private client: personal tax | 788 |
| Private client: trusts and probate | 789 |
| Product liability | 792 |
| Professional negligence | 793 |
| Property litigation | 798 |
| Public inquiries | 801 |
| Public international law | 803 |
| Shipping | 804 |
| Sport | 807 |
| Tax: corporate | 808 |
| Tax: VAT | 810 |
| Regional Bar | 813 |
| Scottish Bar | 831 |
| Other sections: solicitors | |
| London | 171 |
| UK regions | 397 |
| Offshore firms | 651 |
| Foreign firms | 677 |
| **Detailed national index** | **3** |

continues. George Bompas QC[†] – active in cases like *Johnson v UBS*- and *Re. Watford Petroleum* - leads a set whose members were consistently praised as 'high quality, knowledgeable in their chosen fields and user friendly. They deal with work quickly and efficiently, qualities very much required by demanding clients.' Malcolm Davis-

White QC[†] has extensive experience of directors' disqualification cases; recent cases include *Transtec Plc*, and *Re. Blackspur* on the impact of EHCR decisions on completed disqualification proceedings. Several juniors are noted for their company law work. Rosalind Nicholson[†], who is 'very hard working' and acted for

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and - | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | |

# NOTICE REGARDING BULKY PLEADING
## (APPENDIX OF FOREIGN AUTHORITIES CITED IN THE DECLARATION OF MARTIN MOORE QC)

Pursuant to the procedures for filing documents electronically, as outlined in the previous Order of the Court, this Notice serves as notification that a Bulky pleading has been filed in paper form in the Clerk's Office.  It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| RICHARD (DICK) L. OLVER et al., | ) ) ) |
| Defendants, | ) ) ) |
| - and – | ) ) |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) |
| Nominal Defendant. | ) |

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

**ORAL HEARING REQUESTED**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THE MOTION OF BAE SYSTEMS PLC AND THE INDIVIDUAL
BAE SYSTEMS PLC DEFENDANTS TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................... 1

FACTUAL BACKGROUND ..................................................... 2

I.    PLAINTIFF LACKS STANDING TO ASSERT A DERIVATIVE CLAIM ON BAE
      PLC's BEHALF AND HAS FAILED TO STATE A COGNIZABLE CLAIM
      UNDER ENGLISH LAW ................................................. 5

      A.    The Laws of England Apply to the Claims Involving BAE plc and the
            Individual BAE plc Defendants ................................ 7

      B.    The Complaint Fails to Satisfy the Requirements of English Law for
            Maintaining a Shareholder Derivative Action ................. 13

            1.    Plaintiff is Not a "Member" Entitled to Bring a Derivative Action Under
                  the Laws of England .................................. 13

            2.    The Recently Enacted U.K. Companies Act 2006 Does Not Apply to
                  This Case ............................................ 14

            3.    Plaintiff's Allegations Do Not Satisfy the Rule in *Foss v. Harbottle* or
                  Any Exceptions to the Rule ........................... 15

      C.    U.S. District Courts Have Uniformly Dismissed Similar Derivative Actions
            Based on the Failure to Satisfy the Exceptions to the Rule in *Foss v. Harbottle* ...... 21

II.   IN THE ALTERNATIVE, PLAINTIFF's COMPLAINT SHOULD BE DISMISSED
      ON GROUNDS OF *FORUM NON CONVENIENS* ......................... 22

      A.    An Adequate Forum is Available in England ................... 22

      B.    The Private and Public Interest Factors Favor Dismissal ...... 24

            1.    The Private Interest Factors Favor Dismissal ......... 25

            2.    The Public Interest Factors Favor Dismissal ......... 27

III.  IN THE ALTERNATIVE, THE COURT LACKS PERSONAL JURISDICTION
      OVER BAE PLC AND THE INDIVIDUAL BAE PLC DEFENDANTS ......... 32

      A.    The Complaint Fails to Allege Contacts Supporting This Court's Personal
            Jurisdiction over BAE plc .................................. 35

      B.    The Complaint Fails to Allege Contacts Supporting This Court's Personal
            Jurisdiction over the Individual BAE plc Defendants ......... 40

CONCLUSION ............................................................. 43

# TABLE OF AUTHORITIES

*Cases*

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.,* 346 F. Supp. 2d 64 (D.D.C. 2004) .................. 37, 40

*Allen v. Russian Fed'n*, 522 F. Supp. 2d 167 (D.D.C. 2007)................................... 37, 39

*Arab Monetary Fund v. Hashim and Others* [1993] 1 Lloyd's Rep. 543 .................................. 21

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102 (1987)..................... 33, 34

*Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34 (D.D.C. 2003)................ 31, 33, 35, 39, 41

*Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998)........................................ 14, 32

*BCCI Holdings (Lux.), S.A. v. Mahfouz*, 828 F. Supp. 92 (D.D.C. 1993) ................ 23, 26, 28, 29

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .............................................. 5

*BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73 (D.D.C. 2003).......................... *passim*

*Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221 (D.D.C. 2005)................................... 34, 35

*Burger King v. Rudzewicz,* 471 U.S. 462 (1985) ....................................................... 35

*Calder v. Jones*, 465 U.S. 783 (1984)................................................................ 34

*Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)................................... 37

*Capital Currency Exchange, N.V. v. Nat'l Westminster Bank, PLC*,
    155 F.3d 603 (2d Cir. 1998) ...................................................................... 25

*City of Sterling Heights Police and Fire Retirement System v. Abbey Nat., PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006) ......................................................... 11, 12

*Council for Responsible Nutrition v. Hartford Cas. Ins. Co.*, No. 06-1590 (RMC), 2007 WL
    2020093 (D.D.C. July 12, 2007)..................................................................... 7

*Cowin v. Bresler*, 741 F.2d 410 (D.C. Cir. 1984) ....................................................... 9

*Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987) ......................................................... 33

*Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454 (D.C. Cir. 1990)..................................... 33

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30
    (D.D.C. 2002) ................................................................................. 28, 34

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69 (1987) ......................................... 8

*Disaster at Riyadh Airport, Saudi Arabia, on August 19, 1980*, 540 F. Supp. 1141
(D.D.C. 1982) ................................................................................................................... 27

*Edgar v. MITE Corp.*, 457 U.S. 624 (1982) ............................................................................. 8

*El-Fadl v. Central Bank of Jordan*, 75 F.3d 668 (D.C. Cir. 1996) ........................................ 23, 25

*Feiner Family Trust v. VBI Corp.*, No. 07 Civ. 1914 (RPP), 2007 WL 2615448
(S.D.N.Y. Sept. 11, 2007) ........................................................................................... 10, 22

*First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375 (D.C. Cir. 1988) ......................... 36

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) .......... 8

*Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147 (D.C. 2000) ...................................... 9

*Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494  (D.D.C. 1987) ............................ 9

*Formica v. Cascade Candle Co.*, 125 F. Supp. 2d 552 (D.D.C. 2001) ...................................... 40

*Foss v. Harbottle*, (1843) 2 Hare 461 .............................................................................. *passim*

*Gardner v. United States*, 213 F.3d 735 (D.C. Cir. 2000) .......................................................... 38

*Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474 (S.D.N.Y. 2006) ............................................ 25, 30

*Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506 (D.C. Cir. 2002) ................................... 34, 38

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9
(D.D.C. 2001) .................................................................................................................... 6

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ................................................................. *passim*

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ...................................................................... 6

*Hausman v. Buckley*, 299 F.2d 696 (2d Cir. 1962) .................................................................... 12

*Hbouss v. Coca-Cola Enterprises, Inc.*, No. 05 Civ. 7965 (DLC), 2006 WL 2285598
(S.D.N.Y. Aug. 9, 2006) .................................................................................................. 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ............................ 34, 39

*Huertas v. Kingdom of Spain*, 2006 WL 785302 (D.D.C. 2006) ............................................... 32

*Hughes v. A.H. Robins Co. Inc.*, 490 A.2d 1140 (D.C. 1985) ................................................ 34, 39

*In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302 (S.D.N.Y.  2007) ............ 10, 11, 12, 22

*In re: BP P.L.C. Derivative Litigation*, No. 3-AN06-11959CI
(Alaska Sup. Ct. May 17, 2007) ....................................................................... 10

*In re: BP P.L.C. Derivative Litigation*, No. S-12747 (Alaska July 19, 2007)...............................10

In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000, 230 F. Supp. 2d 376
(S.D.N.Y. 2002) ...............................................................................................30

*In re Tyco Int'l., Ltd.*, 340 F.Supp. 2d 94 (D.N.H. 2004) .................................. 8, 11, 22

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)............................................. 33, 37

*Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29 (D.D.C. 2006) ...................................... 31

*Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728 (D.C. Cir. 2007) ....................................... 5

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020 (D.C. Cir. 1997) ................. 35

*Kaur v. Chertoff*, 489 F. Supp. 2d 52 (D.D.C. 2007)........................................................... 5

*Keeton v. Hustler Magazine, Inc.*,  465 U.S. 770 (1984)............................................... 37

*Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941) ............................................ 7

*Konamaneni v. Rolls Royce (India) Ltd.* [2002] 1 WLR 1267 (Chancery Division)................... 18

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947). ..................................... 23, 25, 26, 29

*Labovitz  v. Wash.  Times Corp.,* 900 F. Supp. 500 (D.D.C. 1995).................................. 9

*Locals 302 and 612 of Intern. Union of Operating Engineers – Employers Const. Industry
Retirement Trust v. Blanchard*, No. 04 Civ. 5954 (LAP) 2005 WL 2063852 (S.D.N.Y. Aug.
25, 2005) ....................................................................................................... 11

*Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13
(D.D.C. 1999) .................................................................................................. 39

*Meng v. Schwartz*, 305 F. Supp. 2d 49 (D.D.C.) .................................................... 9, 30

*Moore v. Motz*, 437 F. Supp. 2d 88 (D.D.C. 2006) ...................................................... 33

*Mwani v. bin Laden*, 417 F.3d 1 (D.C. Cir. 2005) ...................................................... 37

*Naartex Consulting Corp. v. Watt*, 722 F.2d 779 (D.C. Cir. 1983) .............................. 36

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)................................................... *passim*

*Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108 (S.D.N.Y. 1999)........................ 11

*Prudential Assurance v. Newman Industries* [1982] 1 Ch 204.................................................. 17

*Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554 (D.D.C. 1981) ...................................... 33

*Richard v. Bell Atl. Corp.,* 946 F. Supp. 54 (D.D.C. 1996) ................................................... 34, 38

*Rush v. Savchuk*, 444 U.S. 320 (1980).......................................................................................... 41

*Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839 (D.C. Cir. 2002)...................... 37

*Scottish Air Int'l, Inc. v. British Caledonian Group*, *PLC*, 81 F.3d 1224 (2d Cir. 1996)............. 29

*Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521
     (D.C. Cir. 2001) ...................................................................................................... 33, 41

*Seghers v. Thompson*, No. 06 Civ. 308 (RMB) (KNF), 2006 WL 2807203
     (S.D.N.Y. Sept. 27, 2006) ...................................................................................... 10, 22

*Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL 737502
     (S.D.N.Y. Mar. 12, 2007) ....................................................................................... 10, 11

*Shaw v. Marriott Int'l, Inc.,* 474 F. Supp. 2d 141 (D.D.C. 2007)................................................. 32

*Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57 (D.D.C. 2007).............................. 23, 24, 25

*Tomran, Inc. v. Passano*, 891 A.2d 336 (Md. 2006) ............................................................ 14, 32

*U.S.  v. Ferrara*, 54 F.3d 825 (D.C. Cir. 1995) ............................................................................ 34

*Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259 (D.C. Cir. 1972).............................................. 9

*Wiggins v. Equifax Inc.*, 853 F. Supp. 500 (D.D.C. 1994)........................................................... 42

*Winn v. Schafer*, 499 F.Supp. 2d 390 (S.D.N.Y. 2007) ................................................... 6, 10, 22

*YWCA v. Allstate Ins. Co.*, 275 F.3d 1145 (D.C. Cir. 2002)......................................................... 7

**Statutes**

D.C. Code § 13-334 ....................................................................................................................... 4

D.C. Code § 13-422 ..................................................................................................................... 34

D.C. Code § 29-1052 ..................................................................................................................... 8

Federal Rule of Civil Procedure 12 ......................................................................................... 5, 6

Federal Rule of Civil Procedure 4 ........................................................................................... 37

Companies Act 2006....................................................................................................... 4, 7, 15, 22

Companies Act of 1985 ................................................................................................ 17, 20, 24

Title, 2007, S.I,  2007/2194 art. 9, sch. 3 ¶ 20.3 (U.K.) ............................................................. 15

## PRELIMINARY STATEMENT

This Complaint alleges breach of fiduciary duty and waste of corporate assets by current and former directors of an English company, BAE Systems plc, and seeks to remedy the wrongs allegedly done to the English company by those directors, the majority of whom are in England. Accordingly, this is a case about the corporate governance of an English company. Plaintiff fails to allege any legitimate links between its allegations and the United States. Plaintiff merely asserts that nominal defendant BAE Systems plc does business in the U.S., but neglects to distinguish between the nominal defendant English parent and its separate and independent U.S. operating subsidiary, which is not named as a defendant or otherwise mentioned in the Complaint. Plaintiff alleges that Washington, D.C. has a significant interest in this litigation, but fails to plead any supporting facts for this allegation, other than the purported transfer of funds from one foreign national to another through the bank formerly operating under the name Riggs Bank. Based on Plaintiff's unsupported and unsupportable allegations, this case has no place in this Court or in the U.S. The Complaint should be dismissed on at least three separate and independently dispositive grounds. First, under English law which governs the claims against the BAE Systems plc Defendants in this case, Plaintiff lacks standing to bring a shareholder derivative lawsuit against defendant BAE Systems plc, an English company, and has failed to state a cognizable claim under the rule in *Foss v. Harbottle*, (1843) 2 Hare 461. Second, this case should be dismissed on *forum non conveniens* grounds. Not only is the real party in interest a foreign corporation, but the relevant corporate books and records, and nearly all of the individual defendants and witnesses identified in the Complaint, are located in the United Kingdom rather than in the U.S. Finally, this case should be dismissed because the Court lacks personal jurisdiction over BAE Systems plc and the individual defendants.

**FACTUAL BACKGROUND**

On approximately September 19, 2007, Plaintiff City of Harper Woods Employees' Retirement Systems filed a purported shareholder derivative complaint on behalf of BAE Systems plc ("BAE plc" or the "Company") against current[1] and former[2] BAE plc directors or executives (collectively, the "Individual BAE plc Defendants"). (Compl. ¶ 1.) Plaintiff, a holder of approximately 3,500 BAE plc American Depositary Receipts ("ADRs"), describes itself as a "shareholder[] and/or beneficial owner" of BAE plc. (*Id.* ¶ 83.) Although not specified in the text of the Complaint, Plaintiff states in the caption that it is located in Michigan, specifically at 19617 Harper Avenue, Harper Woods, Michigan 48225.

The Complaint asserts two causes of action against the Individual BAE plc Defendants: a purported derivative claim for breach of fiduciary duties and a purported derivative claim for waste of corporate assets. (*Id.* ¶¶ 144-56.) The Complaint also names as defendants Saudi Arabian Prince Bandar bin Sultan, The PNC Financial Services Group, Inc. ("PNC"), as successor to Riggs National Corporation and Riggs Bank, and Joe, Robert, and Barbara Allbritton, individuals who formerly held a controlling interest in Riggs Bank. (*Id.* ¶¶ 1, 58.) Those defendants are alleged to have aided and abetted the Individual BAE plc Defendants in their breach of fiduciary duties. (*Id.* ¶¶ 157-58.)

---

[1]     Plaintiff names BAE plc as a nominal defendant and also names as defendants the following BAE plc directors who were members of the board at the time that Plaintiff filed the Complaint: Philip J. Carroll, Ulrich Cartellieri, Christopher V. Geoghegan, Michael J. Hartnall, Walter P. Havenstein, Andrew George Inglis, Ian G. King, James Mason, Richard (Dick) L. Olver, Roberto Quarta, George W. Rose, Sir Anthony Nigel Russell Rudd, Michael J. Turner, Sir Peter A. Weinberg.

[2]     Plaintiff also names as defendants the following BAE plc directors who were former members of the board at the time that Plaintiff filed the Complaint: Sir Robin Biggam, Sue Birley, Keith Clark Brown, Sir Richard Harry Evans, Lord Alexander Hesketh, Michael Lester, Sir Charles Beech Gordon Masefield, Steve Lewis Mogford, Michael Denzil Xavier Portillo, Mark H. Ronald, Paolo Scaroni, and John Pix Weston. With the exceptions of Sue Birley and Paolo Scaroni, these defendants are collectively referred to along with the individuals listed in footnote 1 as the "Individual BAE plc Defendants"). As Sue Birley and Paolo Scaroni have not been served by Plaintiff or agreed to accept service, they are not required to respond to the Complaint and therefore do not join this Motion.

The Complaint does not name as defendants any subsidiaries or affiliates of BAE plc, only the nominal defendant English parent.

The Complaint's 89 pages of allegations consist primarily of excerpts from media stories and the annual reports of BAE plc. (*Id.* ¶¶ 11, 12, 13, 14, 20, 72-80, 92, 95, 98-99, 102-103, 120, 121, 137, 139). Despite its length, it can be summarized succinctly. As stated in the Complaint, nominal defendant BAE plc is an English defense contracting company headquartered in London. (*Id.* ¶¶ 19, 21.) The nominal defendant English company, and its separate U.S. subsidiary, BAE Systems Inc. ("BAE Inc."), are parties to a Special Security Agreement with the U.S. Government that allows BAE Inc. to supply products and services of a highly sensitive nature to the U.S. Department of Defense, the U.S. intelligence community, and various other parts of the U.S. government. (*Id.* ¶ 19.) The Complaint does not, however, assert claims arising from the Special Security Agreement or the activities of BAE Inc. in the U.S. Rather, the Complaint asserts claims on behalf of BAE plc against current and former directors for breach of fiduciary duties and waste of corporate assets related to three supposed patterns of conduct allegedly connected with the Company's international defense contracting.

*First*, Plaintiff alleges that, commencing in the mid-1980s, the Individual BAE plc Defendants permitted BAE plc to make a series of payments to Prince Bandar bin Sultan of Saudi Arabia in connection with the U.K.'s Al-Yamamah military programme with the Kingdom of Saudi Arabia, in which BAE plc was also involved. (*Id.* ¶¶ 6-10, 111-130.) Plaintiff asserts that the payments constituted not legitimate remuneration for services rendered, but improper bribes to Prince Bandar, who was the son of the then-head of the Saudi Ministry of Defense, to secure the Company's role in the programme. (*Id.* ¶¶ 7-8.) The payments are alleged to have been deposited for Bandar's benefit "in significant part" in an account at Washington, D.C.'s

Riggs Bank.  (*Id.* ¶¶ 1, 8, 50,  111-130.)  In 2004, Riggs Bank was acquired by PNC and the

Allbrittons ceased to control the bank.  (*Id.* ¶¶ 54, 126.)  Plaintiff claims that the payments to

Bandar eventually reached two billion dollars.  (*Id*. ¶ 113.)  Plaintiff claims that the Individual

BAE plc Defendants permitted or encouraged the payments in order to increase the Company's

"success and profitability – in the short term" and to enhance their own "power,  prestige and

profit."  (*Id.* ¶¶ 3-4.)  In support of its allegation that the Individual BAE plc Defendants

jeopardized the Company's financial health by exposing the Company to damanges, Plaintiff

asserts that the Al-Yamamah payments breached the U.S. Foreign Corrupt Practices Act

("FCPA")  and the Anti-Corruption Convention of the Organization for Economic Cooperation

and Development ("OECD Convention").  (*Id.* ¶¶ 4-5.)

> *Second*, Plaintiff alleges a broader pattern of illegal and/or improper payments by
BAE plc in connection with its business in various countries including Tanzania, Chile, the
Czech Republic, Qatar, Romania, Slovakia, and South Africa.  (*Id.* ¶¶ 131-141.)  Plaintiff also
alleges "secret agent" payments administered by the Company from offices in Geneva,
Switzerland, and the British Virgin Islands.  (*Id.* ¶¶ 131-133.)  In support of those claims,
Plaintiff cites reports that foreign governments are "investigating," or "reviewing" allegations of
such improper activities.  (*Id.* ¶¶ 131-141.)  Plaintiff appears to allege that these reports evidence
conduct by the Company that violated the FCPA and/or the OECD Convention.  (*Id.* ¶¶ 142-43.)

> *Third*, Plaintiff claims the Individual BAE plc Defendants made misleading
public statements to the effect that the Company operated in accordance with applicable rules
and laws, including Section 463 of the U.K.'s Companies Act 2006.  (*Id.* ¶¶ 5, 86-110.)  The
Complaint quotes extensively from annual reports and other statements issued by BAE plc in

claiming that the Individual BAE plc Defendants undertook their alleged campaign of bribery in secret while publicly affirming BAE plc's concern for the rule of law.  (*Id.* ¶¶ 87-104.)

Plaintiff does not allege that the wrongful activities described in the Complaint are continuing, and to the extent that Plaintiff specifies a time period for any of its allegations, the time period ranges from the 1980s to several years ago.  As to the payments to Prince Bandar, Plaintiff states that Bandar has returned to Saudi Arabia (*Id.* ¶ 114) and that Riggs Bank was acquired by PNC in 2004.  (*Id.* ¶ 126.)

Plaintiff concedes that it did not attempt to approach the BAE plc board of directors with a demand concerning its allegations, and asserts that such a demand would have been futile.  (*Id.* ¶ 85.)

## ARGUMENT

## I. PLAINTIFF LACKS STANDING TO ASSERT A DERIVATIVE CLAIM ON BAE PLC'S BEHALF AND HAS FAILED TO STATE A COGNIZABLE CLAIM UNDER ENGLISH LAW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).  The Court "need not… accept inferences that are unsupported by the facts set forth in the complaint… [or] legal conclusions cast in the form of factual allegations."  *Kaur v. Chertoff,* 489 F. Supp. 2d 52, 60 (D.D.C. 2007), (quoting *Islamic Am. Relief Agency v. Gonzales,* 477 F.3d 728, 732 (D.C. Cir. 2007)).

Even if the allegations in the Complaint are presumed to be true for the purposes of this Motion, Plaintiff lacks standing to pursue its claim against the BAE plc Defendants under

English law and has failed to state a claim under English law. [3]  Turning first to choice of law, it is clear – and Plaintiff has conceded – that this Court should apply the internal affairs doctrine, which mandates the application of English law to the claims against the BAE plc Defendants in this dispute, as BAE plc is incorporated under English law.  Moreover, any argument that a local law exception to this doctrine obtains has been rejected by other courts in similar circumstances and is no more meritorious in the instant case.

As a threshold matter, Plaintiff as a holder of ADRs is not a shareholder as defined in English law, and its purported shareholder derivative action can be dismissed on that basis alone.  Even if Plaintiff were to cure that obvious defect, it faces other, insurmountable obstacles.  While the English Companies Act 2006 broadened the circumstances under which shareholders can pursue derivative litigation, its provisions are not retroactive to alleged wrongdoing that took place before 1 October  2007, and thus it is inapplicable to Plaintiff's Complaint.  If the Companies Act 2006 does not apply, English law dictates that any shareholder derivative action must comply with the rule in *Foss v. Harbottle,* which permits such lawsuits

---

[3]      Although District of Columbia courts have held in the context of actions seeking declaratory or injunctive relief that standing is a question of subject matter jurisdiction that can be challenged by means of a Fed. R. Civ. P. 12(b)(1) motion to dismiss, *e.g. Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987), there is no reported precedent in this District discussing the applicability of Rule 12(b)(1) in the context of  standing to bring a shareholder derivative claims governed by foreign law.  Other courts have observed that the question of a plaintiff's standing to bring a derivative claim under foreign law can be regarded as a matter either of subject matter jurisdiction or the sufficiency of the claim.  *See Winn v. Schafer,* 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007) ("The case law . . . is unclear as to whether standing to bring a derivative action is analyzed under Rule 12(b)(1) or 12(b)(6)").  Should this Court determine that it wishes to consider the arguments in this Part I as matters of subject matter jurisdiction in addition to matters of pleading sufficiency, the Individual BAE plc Defendants also move to dismiss under Rule 12(b)(1), as the Complaint fails to establish Plaintiff's standing to bring these derivative claims.  Plaintiff lacks the prudential standing that would justify this Court's subject matter jurisdiction.  *See Grand Lodge of the Fraternal Order of Police v. Ashcroft,* 185 F. Supp. 2d 9, 15 (D.D.C. 2001).  First, Plaintiff admits that it is an ADR holder, and as such it has no right under English law to assert a derivative claim on BAE plc's behalf.  (*See* Part I.B.1., *infra.)*  Second, Plaintiff's allegations do not satisfy the exceptions to the rule in the English case *Foss v. Harbottle* governing the entitlement of a shareholder to bring a derivative claim.  Thus Plaintiff seeks to "proffer grievances not relevant to the 'zone of interests' intended to be protected" by those exceptions under English law.  *Grand Lodge,* 185 F. Supp. 2d  at 15 (quoting *Navegar, Inc. v. United States*, 103 F.2d 994, 998 (D.C. Cir. 1997)).  (*See* Part I.B.3., *infra.)*  Therefore the Complaint can be dismissed pursuant to Rule 12(b)(1) as well as Rule 12(b)(6).

only in narrow circumstances.  Plaintiff has failed to demonstrate that its allegations satisfy any

of the exceptions to the rule in *Foss v. Harbottle* that would allow its case to proceed.  In

addition, the Complaint fails to state a claim under Section 463 of the Companies Act 2006.

Defendants respectfully submit the Declaration of Martin Moore QC, an expert on English law,

who discusses these pertinent matters in detail.  The overwhelming weight of precedent in U.S.

federal courts favors dismissal of derivative actions brought against English companies or others

incorporated under commonwealth laws where the plaintiff fails to satisfy the *Foss v. Harbottle*

exceptions, as Plaintiff has failed to do.

### A.     The Laws of England Apply to the Claims Involving BAE plc and the Individual BAE plc Defendants

Plaintiff asserts that the Court has subject matter jurisdiction over this case on the

basis of diversity of citizenship.  (Compl. ¶ 16.)  A federal court sitting in diversity must apply

the conflicts of law rules of the forum in which it sits.  *Klaxon Co.  v.  Stentor Electric Mfg. Co.,*

313 U.S. 487, 496 (1941).  Therefore, federal courts in the District of Columbia apply the

District of Columbia's choice of law framework to determine what law to apply.  *Council for*

*Responsible Nutrition v. Hartford Cas. Ins. Co.*, No. 06-1590 (RMC), 2007 WL 2020093, at *3

(D.D.C. July 12, 2007) (citing *YWCA v. Allstate Ins. Co.*, 275 F.3d 1145, 1150 (D.C. Cir. 2002)).

### 1.     The Internal Affairs Doctrine Mandates That English Law Applies To The Claims Against the BAE plc Defendants

Courts in the District of Columbia generally apply a modified "interest analysis"

approach to resolve choice of law issues in tort actions.  *District of Columbia v. Coleman*, 667

A.2d 811, 816 (D.C. 1995).  When faced with derivative claims of improper corporate

governance, however, courts typically follow the internal affairs doctrine and apply the law of

the state of incorporation of the nominal defendant corporation.  The internal affairs doctrine

provides that "[as] a general matter, the law of the state of incorporation normally determines

issues relating to the internal affairs of a corporation." *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) (emphasis omitted); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) (noting that "[t]his beneficial free market system depends at its core upon the fact that a corporation - except in the rarest situations - is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation"); *Edgar v. MITE Corp.*, 457 U.S. 624, 625 (1982) (describing the doctrine as "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs").

Indeed, it could not be otherwise. A corporation could not be governed rationally if its board of directors were held to different duties to the corporation depending solely on the forum in which a plaintiff elected to sue. Directors' duties in supervising a corporation should be clear and consistent, and this end is best achieved by uniformly applying the laws of the jurisdiction that govern the organization of the corporation.[4] In litigation challenging the actions of corporate directors, consequently, a long line of precedent in this District favors application of the internal affairs doctrine to the choice of law question. *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 151 (D.C. 2000) (applying the law of the state of incorporation, Illinois, in determining viability of derivative action); *Cowin v. Bresler*, 741 F.2d 410, 414 n.4 (D.C. Cir. 1984) (applying the law of the state of incorporation, finding that "[b]ecause Bresler & Reiner is incorporated in Delaware, the substantive law of the state governs our disposition of Cowin's

---

[4]    The internal affairs doctrine is also embedded in District of Columbia Code § 29-1052, which states that "the laws of the state or other jurisdiction under which a foreign limited liability company is formed govern its formation and internal affairs and the liability of its members and managers." A "foreign limited liability company" is defined in the D.C. Code as a limited liability company formed under the laws of a state other than the District, and "state" is defined as "any state, territory, colony, dependency, or possession of the United States of America, or any foreign country or other foreign jurisdiction." (emphasis added). D.C. Code § 29-1001. In *In re Tyco Int'l, Ltd.,* a similar provision in New Hampshire law which specified that "a shareholder's ability to bring a derivative action is determined by using the law of the corporation's place of incorporation" was a basis for the court's application of Bermudian law to a derivative suit involving Tyco International, Ltd. 340 F. Supp. 2d 94, 96n.2 (D.N.H. 2004).

common law claims of corporate mismanagement, fraud, and self-dealing"); *Weiss v. Kay Jewelry Stores, Inc.*, 470 F.2d 1259, 1268 (D.C. Cir. 1972) (applying the law of the state of incorporation, stating "Kay, being a Delaware corporation, the fiduciary obligations of its officers and directors are to be determined upon the ascertainment and proper application of the law of Delaware"); *Foltz v. U.S. News & World Report, Inc.*, 663 F. Supp. 1494, 1520 n.35 (D.D.C. 1987) (finding that Delaware law governed questions concerning the corporate governance of Delaware corporation under applicable conflicts of law rules).  As simply put by the court in *Labovitz v. Wash. Times Corp.*, "[w]hen a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated, and the District of Columbia follows suit."  900 F. Supp. 500, 503 (D.D.C. 1995) (citations omitted), *aff'd,* 172 F.3d 897 (D.C. Cir. 1999).[5] Indeed, even Plaintiff implicitly concedes that this Court should apply the internal affairs doctrine to this case.  (Compl. ¶ 21 ("under the local law exception to the internal affairs doctrine, the laws of Washington, D.C. (or another appropriate U.S. jurisdiction) may, if necessary, be applied")).

In the instant case, England clearly has a much greater interest than any other jurisdiction in the governance decisions of a corporation organized under its laws and based within its territory.  That interest is even more pressing given that Plaintiff's allegations concerning the Al-Yamamah programme, which is "classified pursuant to the laws of both the

---

[5]    When courts in the District of Columbia faced with derivative claims undertake an "interest analysis" without referring to the internal affairs doctrine, the same presumption that underlies the internal affairs doctrine mandates that the law of the state of incorporation virtually always has the strongest interest.  In *Meng v. Schwartz*, for example, the court held that because "plaintiffs' breach of fiduciary duty and negligence claims deal substantially with matters of corporate governance and the internal organizational affairs," the place of incorporation (Bermuda) had the more substantial interest in having its laws applied to the derivative claims against the directors.  305 F. Supp. 2d 49, 58 (D.D.C. 2004)

United Kingdom and the Kingdom of Saudia Arabia." (Parkes Decl. ¶ 11.) The District of

Columbia's choice of law rules therefore require that this derivative action involving a

corporation incorporated under the laws of England, must be governed by the laws of England.

A consistent line of precedent from other jurisdictions provides further support for

the application of English law to the present dispute.[6] When faced with derivative claims or

suits involving foreign corporations in other jurisdictions such as the U.K., district courts have

uniformly applied the law of the state of incorporation. *See Feiner Family Trust v. VBI Corp.*,

No. 07 Civ. 1914 (RPP), 2007 WL 2615448, at *5 (S.D.N.Y. Sept. 11, 2007) (applying Cayman

Islands law); *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302, 311 (S.D.N.Y. 2007)

(applying law of England and Wales); *Winn v. Schafer*, 499 F. Supp. 2d 390, 393 (S.D.N.Y.

2007) (applying Cayman Islands law); *Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL

737502, at *6 (S.D.N.Y. Mar. 12, 2007) (applying Dutch law); *Seghers v. Thompson*, No. 06

Civ. 308 (RMB) (KNF), 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006) (applying British

Virgin Islands law); *Hbouss v. Coca-Cola Enterprises, Inc.,* No. 05 Civ. 7965 (DLC), 2006 WL

2285598, at *4 (S.D.N.Y. Aug. 9, 2006) (applying Quebecois law); *City of Sterling Heights

Police and Fire Retirement System v. Abbey Nat., PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y.

2006) (applying law of England and Wales); *Locals 302 and 612 of Intern. Union of Operating

Engineers – Employers Const. Industry Retirement Trust v. Blanchard*, No. 04 Civ. 5954 (LAP),

2005 WL 2063852, at *3-4 (S.D.N.Y. Aug. 25, 2005) (applying Canadian law); *In re Tyco Int'l.,*

---

[6]    To the extent it is raised by Plaintiff, the decision of an Alaska state court in *In re: BP P.L.C. Derivative Litigation*, No. 3-AN06-11959CI (Alaska Sup. Ct. May 17, 2007) should not disturb this well established and long standing body of precedent. There, the trial court applied Alaska law to a derivative claim involving BP plc, a U.K. company, and four United States subsidiaries. The decision is factually distinguishable - the Alaska court relied heavily on events (an oil spill) occurring in Alaska - and legally suspect, as demonstrated by the Alaska Supreme Court's grant of a petition for interlocutory review. *See In re: BP P.L.C. Derivative Litigation*, No. S-12747 (Alaska July 19, 2007) (order granting petition for review). The petition is currently before the Alaska Supreme Court.

*Ltd.*, 340 F. Supp. 2d 94, 96 (D.N.H. 2004) (applying Bermudian Law); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 (S.D.N.Y. 1999) (applying law of England and Wales). This case should be no different.

      2.      **No "Local Law Exception" to the Internal Affairs Doctrine Applies to this Case**

      Plaintiff apparently intends to ask the Court to employ a "local law exception to the internal affairs doctrine" (Compl. ¶ 21), but this argument has repeatedly been rejected by other courts in similar circumstances, and is equally deficient in this case. Indeed, no recent decision of a court in this District has applied or even discussed such an exception. Other jurisdictions have held that a local law exception to the internal affairs doctrine is available either when "the pertinent laws of the jurisdiction of incorporation are objectively 'immoral' or 'unjust'" or "where 'application of the local law of some other state is required by reason of the overriding interest of that other state in the issue to be decided.'" *In re BP p.l.c.*, 507 F. Supp. 2d at 308-9 (citations omitted). But the weight of precedent disfavors the local law exception where the defendants are primarily foreign nationals with only tangential contacts with the forum. *Id.* at 308-10 (rejecting local law exception to internal affairs doctrine in shareholder derivative action on grounds that foreign defendants had "minimal contacts with New York" and there was a true conflict between New York and English law); *Seybold*, 2007 WL 737502 at *6-7 (rejecting local law exception to internal affairs doctrine in shareholder derivative action even where foreign jurisdiction's laws did not recognize shareholder derivative suits); *Hausman v. Buckley*, 299 F.2d 696, 705 (2d Cir. 1962).

      In this case, it is clear that neither prong of the local law exception obtains. First, the laws of England are not immoral or fundamentally unjust, as they provide a variety of remedies to shareholders pursuing complaints about corporate governance. Those remedies are

discussed in the Declaration of Martin Moore QC ("Moore Decl.") ¶¶ 75-79.  Numerous other

decisions of U.S. courts have found that the remedies offered to shareholders under English law

are fair and satisfactory.  *In re BP p.l.c.,* 507 F. Supp. 2d at 309-10 (English law offers suitable

remedies to shareholders); *City of Sterling Heights*, 423 F. Supp. 2d 348 (same).

        Nor is there any basis in the present case to invoke the unusual "overriding

interest" exception.  To the extent that the overriding interest exception has been applied in other

cases, it has been in instances where a corporation had "little contact, apart from the fact of its

incorporation, with the state of [its] incorporation," and had the great majority of its contacts

with the state whose local law applied.  Restatement (Second) of Conflict of Laws § 302 cmt. b

and c; *In re BP p.l.c.,* 507 F. Supp. 2d at 308-10 (discussing limited instances in which local law

exception was applied).  That is plainly not the situation in the present case.  BAE plc is

incorporated and has its principal offices in the U.K.; the great majority of its present and former

board members reside in England; and the board's support functions are administered in

England.  Indeed, if any "overriding interest" were to be recognized here, it would be the

overriding interest of the U.K. in adjudicating this dispute involving [a military programme that

is classified for national security reasons.]  (Parkes Decl. ¶ 11.)

        Presumably in support of its argument that a U.S. state's laws should apply,

Plaintiff loads the Complaint with allegations about the Company's purported activities in the

U.S.  But Plaintiff fails to inform the Court that those activities are undertaken by a separate

corporate subsidiary, incorporated in Delaware, which has its own board and management

pursuant to a Special Security Agreement with the United States Government (*Id.* ¶¶ 19-20),  and

which, not incidentally, Plaintiff omits to name as a defendant, nominal or otherwise.  BAE plc

does not have a presence in or do business in the U.S. (*Id*. ¶¶ 9-10), and so its activities do not provide a basis for application of a U.S. state's laws.

Plaintiff may assert that the alleged receipt of payments from BAE plc at Riggs Bank in Washington, D.C. confers an overriding interest on Washington, D.C., but that tail-wagging-the-dog argument should be rejected as well.  Taking Plaintiff's allegations as true only for purposes of this Motion, the fact that money passed from one foreign national (BAE plc) to another foreign national (Prince Bandar) through this District is only an offshoot of the "broader pattern and course of conduct of improper payments" that Plaintiff alleges took place all over the world.  (Compl. ¶¶ 131- 41.)  The gravamen of Plaintiff's Complaint is its breach of fiduciary duty and corporate waste claims premised on decision-making by the English board of directors of an English company – not the alleged flow of funds into a bank in this District through the Company's use of its bank accounts abroad.  Finally, Plaintiff admits that Riggs Bank was acquired by PNC and is no longer controlled by the Allbrittons (*Id.* ¶¶ 54-56), and that Bandar is now resident in Saudi Arabia (*Id*. ¶ 8).  There is no continuing conduct, even in Plaintiff's view of the case, that would justify an onslaught of attention to these claims from the Washington, D.C. court system.  It is England which has an overriding interest in the corporate governance, internal controls, board decision-making, and contracting activity of this English company.  Plainly, English law should apply to the claims against the BAE plc Defendants in this case.

**B.     The Complaint Fails to Satisfy the Requirements of English Law for Maintaining a Shareholder Derivative Action**

**1.     Plaintiff is Not a "Member" Entitled to Bring a Derivative Action Under the Laws of England**

As a threshold matter, Plaintiff does not satisfy English law conditions to bring a shareholder derivative lawsuit because Plaintiff is not a shareholder.  As explained in the Declaration of Martin Moore QC, under English law, in order to sue derivatively on behalf of a

company, a person must be a "member" of the company. (Moore Decl. ¶ 26.) A member of a company is defined under English law as an actual holder of shares, appearing on the company register, and does not include one holding only a beneficial interest. (*Id*. ¶¶ 26-27). The Complaint asserts that Plaintiff is a holder of approximately 3,500 BAE plc ADRs. (Compl. ¶ 18.) Consistent with Plaintiff's pleading, the shares underlying Plaintiff's ADRs are held by a custodian, Guaranty Nominees Limited, for the depositary JPMorgan Chase. (Compl. ¶ 20(i); Parkes Decl. ¶ 22.) It is the custodian, Guaranty Nominees Limited, that appears on the BAE plc company register, not Plaintiff. (Parkes Decl. ¶ 22.). English law confers no right on this Plaintiff to bring a derivative claim on the Company's behalf. (Moore Decl. ¶¶ 26-28.)

U.S. courts have consistently held that similar foreign law standing requirements prevent mere beneficial owners, such as ADR holders, from suing derivatively on behalf of foreign corporations. *Batchelder v. Kawamoto*, 147 F.3d 915, 921-22 (9th Cir. 1998) (holding that an ADR holder could not sue derivatively under Japanese law as only shareholders appearing on the company's shareholders' register may institute a derivative action); *Tomran, Inc. v. Passano*, 891 A.2d 336, 348 (Md. 2006) (holding that an ADR holder could not sue derivatively under Irish law in light of the dearth of any statutory or common law authority indicating that Irish courts recognize the right of beneficial owners to sue derivatively). This Court should hold the same, as Plaintiff has admitted in the Complaint that it is only a holder of ADRs, not a shareholder.

2.     **The Recently Enacted U.K. Companies Act 2006 Does Not Apply to This Case**

To the extent that Plaintiff argues that English law "will permit this action to be maintained based on the allegations made in this Complaint" (Compl. ¶ 21), that argument is wholly inaccurate. While the requirements under English law for a shareholder derivative suit

were altered by Section 260 of the Companies Act 2006, the Act came into force on 1 October

2007, does not have retroactive effect, and does not apply to the allegations of the Complaint.

(Moore Decl. ¶¶ 8-12.)   There is no ambiguity here.  An English law statutory instrument

enacted in 2007 states:

> If, or to the extent that, the claim arises from acts or omissions that occurred
> before 1st October 2007, the court must exercise its powers under those sections
> so as to secure that the claim is allowed to proceed as a derivative claim only if,
> or to the extent that, it would have been allowed to proceed as a derivative claim
> under the law in force immediately before that date.

(*Id.* ¶ 12) (citing SI 2007/2194 Article 9, Schedule 3, para 20(3).)  The allegations of conduct in

the Complaint are either pleaded nonspecifically as to date, or concern events clearly occurring

prior to 1 October 2007.  (*Id.* ¶¶ 16-25 (allegations of Complaint do not suffice to invoke

application of 2006 Act.))  For instance, with respect to the allegations of bribes to Prince

Bandar, Plaintiff states that Prince Bandar has returned to Saudi Arabia (Compl. ¶ 114) and that

Riggs Bank was acquired by PNC in 2004.  (*Id.* ¶ 126.)  Therefore, the standards applying to

derivative claims in the 2006 Act are inapplicable to this case.  (Moore Decl. ¶¶ 8-25, 29-30.)

### 3.    Plaintiff's Allegations Do Not Satisfy the Rule in *Foss v. Harbottle* or Any Exceptions to the Rule

Even if Plaintiff were to cure its defective standing as a beneficial owner, Plaintiff

still has not pleaded facts sufficient to state a derivative claim.  Under English law, shareholder

derivative suits have been governed by the rule in *Foss v. Harbottle*, which prevents shareholders

from commencing derivative actions except in extremely limited instances.  (Moore Decl. ¶¶ 29-

32.)  The rule is derived from the distinct legal personality of a company.  (*Id.* ¶ 30.)  The

principle is that "when a wrong is done to a company, whether by a director or anyone else, the

proper plaintiff is the company, just as if the injured party were an individual."  (*Id.*)

The rule in *Foss v. Harbottle* first requires a court to examine whether the alleged wrongdoing is capable of ratification by a simple majority of shareholders. (Moore Decl. ¶ 36.) If the alleged wrong is capable of ratification, then the decision whether to bring an action is the proper province of the company through its majority of members, and the action cannot proceed derivatively unless it falls within one of the exceptions to the rule in *Foss v. Harbottle*. (*Id.*) "It is not necessary that actual ratification take place; it is only necessary that the acts are capable of ratification." (*Id.* ¶ 38.)

As a matter of English law, the alleged wrongs in the Complaint are capable of ratification. (Moore Decl. ¶¶ 36-40.) The Complaint avers that the conduct of the directors was "illegal" and "ultra vires", and as such "cannot be ratified or approved by BAE's shareholders." (Compl. ¶ 15.) But Plaintiff confuses the alleged wrongs done <u>by</u> BAE plc, namely breach of regulatory, civil or criminal laws, with the alleged wrongs done <u>to</u> BAE plc, namely, the directors' supposed failure to supervise and ensure that BAE plc did not commit such wrongs in the first place. (Moore Decl. ¶ 39.) It is only an alleged wrong that harms the company that can be the subject of a derivative action. (*Id.*) Under English law, the alleged failures of the duty to supervise and ensure that BAE plc did not commit such wrongs "are all capable of ratification in the sense that the shareholders can by ordinary resolution ensure that the acts of the directors are no longer breaches of duty by ratifying them. (*Id.* ¶ 38.) Accordingly, Plaintiff must rely on the exceptions to the rule in *Foss v. Harbottle* in order for its case to survive.

The three exceptions to the rule in *Foss v. Harbottle* are: (i) that the wrong alleged amounts to fraud and the wrongdoers are themselves in control of the company, and could thus procure ratification (the "Fraud on the Minority Exception"); (ii) that the alleged wrong is *ultra vires* (the "*Ultra Vires* Exception"); and (iii) that the validity of the transaction is dependent on a

majority greater than a simple majority (the "Super Majority Exception").  (*Id.* ¶¶ 31-33 (citing

*Prudential Assurance v. Newman Industries* [1982] 1 Ch 204 at 210, 211).)  The last exception is

not at issue in this case, so this analysis focuses on the first two exceptions.[7]  A plaintiff seeking

to rely on one of the exceptions must make a *prima facie* case that: (a) "the company is entitled

to the relief claimed," and (b) "that the action falls within the proper boundaries of the

exceptions to the rule in *Foss v. Harbottle*."  (*Id.* ¶¶  34-35.)

a)    **The Fraud on the Minority Exception**

Plaintiff has failed to plead facts supporting application of the Fraud on the

Minority Exception. (Moore Decl. ¶¶ 53-64.)  In order for this exception to apply, it must be the

case that there was both fraud benefiting the Individual BAE plc Defendants personally (*i.e.,* the

wrong enabled the defendants to make a profit at the expense of the company) and wrongdoer

control (*i.e.,* control of the company in general meetings) — neither of which has been

established by Plaintiff.  (*Id.* ¶¶ 55-58.)

Plaintiff has not alleged fraudulent conduct involving self-dealing by any

Individual BAE plc Defendant, as is required under the first limb of the Fraud on the Minority

exception.  Under English law, fraud in this context is more narrowly defined than the American

understanding of the term, as it requires self-dealing at the company's expense.  "[T]he exception

will apply only if the wrong enabled the defendants to make a profit at the expense of the

company."  (*Id.* ¶ 53); *see, e.g., Konamaneni v. Rolls Royce (India) Ltd.*, [2002] 1 WLR 1267,

1278 (Chancery Division) ("Fraud includes all cases where the wrongdoers are endeavouring,

---

[7]    Of the three exceptions, the Super Majority Exception is not at issue in this case because Plaintiff has not pleaded it.  Nowhere in the Complaint is there any allegation of a transaction that is outside the objects of the company within the meaning of Section 35 of the 1985 Act or of any other transaction that could only be sanctioned by a special resolution.  (Moore Decl. ¶ 52.)  Consequently, this exception cannot apply.

directly or indirectly, to appropriate themselves money, property or advantages which belong to the company or in which the other shareholders are entitled to participate").

In the instant case, the Complaint does not allege that the purported wrongdoing benefited the Defendants personally at the expense of the company. (Moore Decl. ¶¶ 58-61.) At most, Plaintiff alleges that the Individual BAE plc Defendants failed to perform their jobs properly and were overpaid with lucrative compensation and bonuses. (*E.g.*, Compl. ¶¶ 6, 155; *see* Moore Decl. ¶¶ 59-60.) For example, the Complaint states that the officers and directors knew that if the Al Yamamah programme "could be obtained, they could point to it as concrete evidence of their successful stewardship of BAE, which would in turn help them hold onto their positions of power, prestige and profit with BAE, so they could receive lucrative payments and bonuses in connection with those positions for many, many years going forward." (Compl. ¶ 6.) The Complaint later claims that the officers and directors "have awarded themselves and their allies excessively lucrative compensation and payments which have no reasonable basis, but instead are designed only to enrich them[selves]." (*Id.* ¶ 155.) Under English law, however, merely "being paid a previously agreed compensation" or being paid in spite of "deficient performance" is "very far from the necessary self-dealing by a director sufficient to underpin the Fraud on the Minority Exception." (Moore Decl. ¶¶ 59-60.)

Finally, the Complaint fails to satisfy the second part of the Fraud on the Minority Exception, namely "wrongdoer control." "'Wrongdoer control' means control of the company in general meeting, because it is on ratification by the company in general meeting that the Rule and its exceptions are based." (*Id.* ¶ 55.) The Complaint includes no allegations at all about whether the Individual BAE plc Defendants can exercise control over BAE plc in general

meetings.  (*Id.* ¶¶ 62-63.)[8]  Accordingly, Plaintiff cannot satisfy either prong of the fraud on the

minority exception.  (*Id.* ¶ 57.)

        b)     **The *Ultra Vires* Exception**

        Despite Plaintiff's lavish use of the phrase "ultra vires" throughout the Complaint

(S*ee, e.g.,* Compl. ¶¶ 1, 4, 8, 15, 113, 146, 147, 158), Plaintiff fatally misunderstands the

meaning of the term under English company law, with the result that Plaintiff has not in fact

pleaded any *ultra vires* acts.  As Mr. Moore states: "Although the Complaint employs the term

'ultra vires' frequently, there is no allegation anywhere in the Complaint of a wrong which

would be considered ultra vires under English law."  (Moore Decl. ¶ 42.)

        For the purpose of the exception to the rule in *Foss v. Harbottle*, the term "*ultra*

*vires*" narrowly refers to a transaction that is either beyond the capacity of the company as

established by its memorandum of association or a transaction prohibited by statute to which the

company owes its existence.  (Moore Decl. ¶ 41).  The meaning of "*ultra vires*" has been further

narrowed by English statutory amendment.  (*Id.* ¶¶ 47-49.)  For instance, *ultra vires* transactions

include the "prohibition against a company giving financial assistance for the purpose of the

acquisition of its shares contrary to Section 151 et seq. of the 1985 Act" or "making a return of

capital otherwise than through the statutorily prescribed procedure."  (*Id.* ¶ 41.)  In contrast,

English case law has used the phrase "*ultra vires*" loosely to describe abuses of authority, *i.e.*

"acts of directors which are outside the scope of the directors' powers because, for example, they

act from some improper motive."  (*Id.* ¶ 42.)  As Mr. Moore emphasizes, it is important to keep

the two usages distinct, as the *Foss v. Harbottle Ultra Vires* Exception narrowly includes only

---

[8]      Nor could Plaintiff credibly allege control, as at any given time the directors of BAE plc hold a tiny amount
of the outstanding shares of the company.  For example, the 2006 BAE plc annual report, which is cited by
Plaintiff  throughout the Complaint (*e.g.* Compl. ¶¶ 20, 72, 103), states that as of February 21, 2007,
the directors held approximately 1.39 million ordinary shares, or 0.04 percent of the approximately 3.25 *billion*
outstanding ordinary shares on December 31, 2006.  (Parkes Decl. ¶ 18.)

lack of corporate capacity to do a given act, while the broader use of the term *ultra vires* is occasionally used to describe lack of authority.  (*Id.* ¶¶ 42-44.)

Plaintiff confuses lack of authority with lack of capacity, and as a result the Complaint does not plead any *ultra vires* acts as required by the exception to the rule in *Foss v. Harbottle*.  First and most importantly, the Complaint contains no allegation of a transaction that is beyond the capacity of BAE plc as established by its memorandum of association or a transaction prohibited by a statute to which BAE plc owes its existence.  (Moore Decl. ¶ 45.) Instead, the Complaint asserts that alleged payments to Prince Bandar and others were illegal and improper and therefore beyond the scope of the proper exercise of the directors' powers. However, as Mr. Moore explains, "[t]he payment by a company of commission to agents of third parties in carrying out its business is clearly capable of being within the objects specified in a company's memorandum." (*Id.* ¶ 45.)  Indeed, Mr. Moore points out that English courts have specifically held that bribes paid by a company, while admittedly unauthorized and improper, are not *ultra vires* acts of the company.  (*Id.* ¶ 46) (citing *Arab Monetary Fund v. Hashim and Others* [1993] 1 Lloyd's Rep. 543.)  The court in *Arab Monetary Fund* emphasized that the distinction between *ultra vires* or lack of capacity on the one hand, and lack of authority on the other, was "fundamental" to the question of whether a bribe could be considered *ultra vires* a company.  [1993] 1 Lloyd's Rep. 543.  The court concluded that it is "established that a company has capacity to carry out a transaction which falls within its objects even though carried out by the wrongful exercise of its powers." (*Id.*)  As Mr. Moore concludes, if faced with the allegations in this Complaint, "an English Court would not proceed as if the allegation were *ultra vires* in its true sense of an act beyond the capacity of the corporation, but as an allegation of abuse of the powers of the directors of the corporation."  (Moore Decl. ¶ 45.)

Under English law, the question whether an act by a company is *ultra vires* for the purpose of the exception to the rule in *Foss v. Harbottle* is separate and apart from the question of what liability a company may incur by that act under the general law, whether civil or criminal. (*Id.* ¶¶ 49-50.)   The fact that an act is a violation of civil or criminal law does not make the act *ultra vires*. (*Id.*  ¶ 49.)   Consequently, if the Complaint's allegations of bribes by BAE plc were true, the fact that such acts may expose BAE plc to civil or criminal liability does not mean that the acts are therefore *ultra vires* within the meaning of the *Foss v. Harbottle* exception.  Plaintiff's pleading of alleged criminal acts and civil liability, therefore, is irrelevant to the question whether BAE plc's payments were *ultra vires*.  It is clear that Plaintiff  has failed to plead any *ultra vires* acts under English law.

### C.    U.S. District Courts Have Uniformly Dismissed Similar Derivative Actions Based on the Failure to Satisfy the Exceptions to the Rule in *Foss v. Harbottle*

While there is no reported precedent in this District addressing shareholder derivative claims under English law, there is ample precedent outside the District for this Court to consider.  In recent years, numerous district courts in other cases governed by English law, or by common law legal systems based on English law, have dismissed derivative claims for failure to satisfy the exceptions to the rule in *Foss v. Harbottle*.  *See Feiner Family Trust*, 2007 WL 2615448, at*6  (dismissing derivative claim under Cayman Islands law for "fail[ure] to allege fraud on the minority properly"); *In re BP p.l.c.,* 507 F. Supp. 2d at 311 (dismissing derivative action under the law of England and Wales for failure to "plead facts sufficient to sustain this action pursuant to one of the three narrow exceptions enumerated in England's Companies Act 1985"); *Winn v. Schafer*, 499 F. Supp. at 398 (dismissing derivative action under Cayman Islands law for failure to "establish either of the requirements to invoke the fraud on the minority exception"); *Seghers*, 2006 WL 2807203, at *4 (dismissing derivative claim under British Virgin

Islands law for failure to meet the two preconditions to the Fraud on the Minority Exception); *In re Tyco*, 340 F. Supp. 2d at 103 (dismissing derivative action under Bermudian Law for failure to demonstrate that the case came within "an exception to the rule in *Foss v. Harbottle*"). This Court should make a similar ruling in the instant case, as Plaintiff has failed to establish its standing to bring this case and has failed to state a shareholder derivative claim under English law. [9]

## II.    IN THE ALTERNATIVE, PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED ON GROUNDS OF *FORUM NON CONVENIENS*

The Court should exercise its discretion to dismiss this case on the grounds of *forum non conveniens* because "considerations of convenience, efficiency, and justice" overwhelmingly favor England as the proper forum for this case. *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 528 (1947). Under a *forum non conveniens* analysis, a court must: (1) determine whether there is an adequate alternative forum; and (2) balance the public and private interests at stake to determine whether a motion to dismiss should be granted. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-61 (1981); *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677-78 (D.C. Cir. 1996). In the instant case, all of the factors overwhelmingly favor England and Plaintiff's claims against the Individual BAE plc Defendants should accordingly be dismissed.

### A.    An Adequate Forum is Available in England

---

[9]    It should be noted that Plaintiff also claims that the Individual BAE plc Defendants harmed the Company by violating Section 463 of the Companies Act 2006. (Compl. ¶¶ 5, 151.) Section 463 permits a company to bring a cause of action against a director who makes untrue, misleading, or incomplete statements in certain statutorily required reports. It applies only to reports sent to company members after 20 January 2007. (Moore Decl. ¶¶ 65-66.) The statute does not grant a right of action to shareholders, and therefore a member may bring a Section 463 action against a director only in compliance with the rule in *Foss v. Harbottle* and its exceptions. (*Id.* ¶ 67.) As discussed in this Part I.B.3, Plaintiff does not meet any of the *Foss v. Harbottle* exceptions. And even regardless of that, the Complaint has not alleged a *prima facie* case under Section 463. The Complaint does not assert any causal link between BAE plc's alleged losses and the two solitary statements made after January 20, 2007 that are identified in the Complaint at paragraph 103(d). (*Id.* ¶¶ 68-72.)

England provides an adequate alternative forum.  Generally, a foreign forum is considered adequate when the defendant is subject to the jurisdiction of that forum.  *Piper Aircraft*, 454 U.S. at 254 n.22;  *Stromberg v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 57, 60 (D.D.C. 2007).  BAE plc, an English company with its principal office in London, and its current and former officers and directors (the great majority of whom reside and do business in the U.K.), are undeniably subject to the jurisdiction of English courts.  (Parkes Decl. ¶¶ 4-5, 14-15).  It is also well established that English courts provide an adequate alternative forum for adjudication.  *See e.g.*, *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 75 (2d Cir. 2003) (noting the court's "high regard for [English] courts' fairness and commitment to the rule of law"); *BCCI Holdings (Lux.), S.A. v. Mahfouz*, 828 F. Supp. 92, 96 (D.D.C. 1993) (English court with the authority to resolve all of the claims provided it is an adequate alternative forum).

Further, this Court is not presented with the "rare circumstance[]" where the remedy offered by the foreign forum is "clearly unsatisfactory."  *Piper Aircraft*, 454 U.S. at 254 n.22.  While English law recognizes that a cause of action for breach of fiduciary duty generally lies with the company and not the shareholders unless one of the exceptions to the rule in *Foss v. Harbottle* applies, other remedies are available to aggrieved shareholders.  (Moore Decl. ¶¶ 75-79.)  Under English law, shareholders can assert various statutory rights including requiring the company to hold meetings of shareholders, removing directors by ordinary resolution, and directing the company to bring proceedings against delinquent directors.  (*Id.* ¶ 76).  Under Section 459 of the Companies Act of 1985, shareholders can petition the High Court in England "for an order that the affairs, business or property of the company are being managed in a way that is unfairly prejudicial to their interests as shareholders."  (*Id.* ¶ 77)  Under certain circumstances, shareholders also may assert a direct claim against a board member or members.

(*Id.* ¶ 78.)  The BAE plc Defendants certainly do not concede that this Plaintiff or its claims

would succeed in or even be heard by an English court under one of those legal theories.  The

point, as expressed by Mr. Moore, is that "English law as a developed and sophisticated

jurisdiction provides a wide range of remedial options to shareholders dissatisfied with the

conduct of directors."  (*Id.* ¶ 79.)

   Moreover, this District's courts have affirmed that an alternative forum is not

inadequate merely because the plaintiff's claims would not be viable in that forum.  *Stromberg*,

474 F. Supp. 2d at 62 (holding that plaintiff's argument that Mexico was an inadequate forum

was unpersuasive, as under the District's choice of law rules "Mexican law would limit his

remedies to the same extent in this court as it would in Mexico").  As discussed in Part I.A of

this Argument, District of Columbia choice of law rules mandate that English law would apply to

Plaintiff's claims against the BAE plc Defendants in this Court.  Because Plaintiff's claims

would be analyzed under the same law in either this Court or a court in England, Plaintiff cannot

defeat a *forum non conveniens* motion by asserting that its claims could not proceed in England

under the legal theory that it chose to utilize.  *Stromberg*, 474 F. Supp. 2d. at 61-62; *El-Fadl*, 75

F.3d at 678 (a foreign forum is not inadequate merely because it has less favorable substantive

law or because it employs different adjudicative procedures).

  **B.**  **The Private and Public Interest Factors Favor Dismissal**

   If the foreign forum is adequate - as England clearly is - the Court must then

balance the private interests of the litigants and the public interests in favor of the respective

forums.  *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947); *BPA Int'l, Inc. v. Kingdom

of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003).  If the balance of the private and public

interest factors suggest that "trial in the chosen forum would be unnecessarily burdensome for

the defendant or the court, dismissal is proper." *Piper Aircraft*, 454 U.S. at 256.  Notably, the

weight of either the private interest factors or the public interest factors alone may be grounds for dismissal. *BPA Int'l*, 281 F. Supp. 2d at 85.

Although a plaintiff's choice of forum is ordinarily entitled to some deference, that presumption applies with significantly less force when the real party in interest is a foreign corporation, as it is in the present case. *See Piper Aircraft*, 454 U.S. at 256 (plaintiff's choice of forum is entitled to less weight when the real party in interest is foreign); *Koster*, 330 U.S. at 524-525 (presumption in favor of plaintiff's choice of forum is "considerably weakened" in derivative action); *Capital Currency Exchange, N.V. v. Nat'l Westminster Bank, PLC*, 155 F.3d 603, 612 (2d Cir. 1998) (no strong presumption in favor of plaintiff's forum when real party in interest is a foreign corporation); *Gilstrap v. Radianz Ltd.*, 443 F. Supp. 2d 474, 479 (S.D.N.Y. 2006) (plaintiff's choice of forum entitled to less deference when suing in a representative capacity). Because this is a derivative action brought on behalf of an English company, Plaintiff's choice of the District as the forum is entitled to little or no weight.

## 1.     The Private Interest Factors Favor Dismissal

In evaluating the respective forums, the private interest factors that this Court should consider include the relative ease of access to proof, the availability of compulsory process to obtain the attendance of hostile witnesses, costs of transporting witnesses, and other expenses or inefficiencies. *See Gilbert*, 330 U.S. at 508; *BPA Int'l*, 281 F. Supp. 2d at 85. In the instant case, all of those factors weigh heavily in favor of England.

First, the relative ease of access to proof favors England as the most convenient forum. Most evidence relevant to Plaintiff's claims will be located in England. The vast majority of documents Plaintiff would presumably request – including board minutes, board materials, drafts of annual reports and other public statements, and other corporate books and records – are located at BAE plc's offices in London, Farnborough, and Worthing, United

Kingdom.  (Parkes Decl. ¶¶ 5-6, 12-13); *see Koster*, 330 U.S. at 526 ("[I]n the derivative action it is more likely that only the corporation's books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records."); *see also BCCI Holdings*, 828 F. Supp. at 97 (finding that the location of millions of documents in England was one of "the more telling" facts establishing England as the most convenient forum).

In addition, nearly all of the potentially relevant witnesses, including 20 of the total 26 Individual BAE plc Defendants, are residents of the United Kingdom.  (Parkes Decl. ¶ 14; Individual BAE plc Defendants' Declarations.[10])  Two others reside in continental Europe. (*Id*.)  In contrast, none of the Individual BAE plc Defendants reside or have offices in the District of Columbia, and only four of them even reside in the United States. (Parkes Decl. ¶ 15.) Finally, for all of the Complaint's length, Plaintiff fails to allege the existence of any witness in Washington,  D.C. who is relevant to the primary violations of the Complaint. (Plaintiff identifies the Allbritton Defendants as residents of this District (Compl. ¶¶ 54-56), but their relevance as alleged aiders and abettors is obviously subsidiary to that of witnesses to the purported breach of fiduciary duties and corporate waste of BAE plc's assets that constitute the crux of the Complaint.)  Because the vast majority of the witnesses that Plaintiff can identify are located in England, it is clearly a more convenient forum than the District of Columbia.  *See Piper Aircraft*, 454 U.S. at 258 (upholding dismissal in part because "[a] large portion of the relevant evidence is located in Great Britain"); *BPA Int'l*, 281 F.Supp. 2d at 85-86 (finding Sweden the more convenient forum where "many, if not most, of the potential witnesses and much of the evidence" were likely located there).

---

[10]    Each Individual BAE plc Defendant has submitted a sworn declaration in connection with this Motion setting forth basic jurisdictional facts.  For convenience, this evidence is referred to collectively as the "Individual BAE plc Defendants' Declarations" except where it is necessary to refer to facts concerning a particular director.

Second, the cost of transporting witnesses and the ability of the Court to obtain the attendance of witnesses likewise favors England. The Individual BAE plc Defendants reside or do business in the U.K. and are within the jurisdiction of the English courts. In contrast, the cost of obtaining the witnesses' presence in a Washington, D.C. court, even assuming this Court could assert jurisdiction over them, would be significant. *See In re Disaster at Riyadh Airport, Saudi Arabia, on August 19*, *1980*, 540 F. Supp. 1141, 1148-49 (D.D.C. 1982) (finding that the cost of attendance of many witnesses located abroad favors foreign forum). And as discussed *infra* in Part III of the Argument, Plaintiff has failed to make a *prima facie* case that this Court has personal jurisdiction over any of the Individual BAE plc Defendants. *See BPA Int'l*, 281 F. Supp. 2d at 86 (potential witnesses located abroad are likely beyond reach of the court's compulsory process).

In sum, the private interest factors overwhelmingly favor England as the most convenient and appropriate forum for this case. Litigating this matter in the District of Columbia would require significant and unnecessary difficulty, time, and expense for the Court and the parties. *See Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 39 (D.D.C. 2002) (litigation with a heavy emphasis on Brazilian law and Brazilian sources of proof likely to be "expensive, cumbersome and time consuming" if conducted in the District of Columbia).

### 2.     The Public Interest Factors Favor Dismissal

The relevant public interest factors that this Court should consider include the local interest in having localized controversies decided at home, each forum's familiarity with the governing law in the case so that unnecessary conflict of laws and application of foreign law problems can be avoided, and any unnecessary burdens associated with trying the case in a particular forum, such as docket congestion, court administrative difficulties and the burden on

the local jury pool.  *See Gilbert,* 330 U.S. at 508-09; *BCCI Holdings,* 828 F. Supp. at 98.  These

factors also weigh heavily in favor of England.

       First, England has by far the greatest interest in this case.  BAE plc, the real party

in interest in this derivative action, is an English company with its principal office in London.

(Parkes Decl. ¶¶ 4-5.)  A foreign forum has a "much more significant interest" where the case

involves a corporation organized under that forum's law.  *BPA Int'l*, 281 F. Supp. 2d at 86; *see*

*also Koster*, 330 U.S. at 531-32 (upholding dismissal of derivative action on *forum non*

*conveniens* grounds in part because real party of interest was a foreign corporation).  Indeed,

U.S. federal courts have routinely recognized that cases concerning foreign corporations are

particularly well-suited for dismissal on *forum non conveniens* grounds.  *See, e.g., Koster*, 330

U.S. at 526 (in derivative actions "it is more likely that only the corporation's books, records and

transactions will be important and only the defendant will be affected by the choice of the place

of production of records"); *Scottish Air Int'l, Inc. v. British Caledonian Group*, *PLC*, 81 F.3d

1224, 1234 (2d Cir. 1996) (Great Britian had the most significant interest and dismissal on *forum*

*non conveniens* grounds was appropriate where British law applied and matters of internal

corporate  governance of a Scottish corporation were at issue); *BPA Int'l*, 281 F. Supp. 2d at 86.

In the instant case, England clearly has a much greater interest than any other jurisdiction in the

governance decisions of a corporation organized under its laws and based within its territory.

That interest is even more pressing given that Plaintiff's allegations concern the Al-Yamamah

programme  which is "classified pursuant to the laws of both the United Kingdom and the

Kingdom of Saudia Arabia."  (Parkes Decl. ¶ 11.)

       To the extent that Plaintiff maintains that the District of Columbia has an interest

in this litigation based on the location of the former Riggs Bank (Compl. ¶ 21), that pales in

comparison to England's interest in this case.  The "central focus of this case" as it pertains to

BAE plc is that the Individual BAE plc Defendants breached fiduciary duties and committed

corporate waste by permitting or causing improper or wrongful payments to boost the

Company's results, and making false or misleading statements in annual reports.  (Compl. ¶¶ 1-

5, 145, 154); *BCCI Holdings*, 828 F. Supp. at 99 (although the United States and the District of

Columbia had an interest in allegations that defendants committed illegal acts relating to the

District, England's interests were overriding where the overwhelming majority of the activities

were undertaken or controlled from England); *See Gilstrap*, 443 F. Supp. 2d at 490.  The events

and parties that the Complaint claims to be involved in those decisions are all located where

BAE plc's board of directors meetings are customarily held—in the United Kingdom.  (Parkes

Decl. ¶¶ 12-16.)  As noted by the court in *Meng v. Schwartz*, because the crux of "breach of

fiduciary duty and negligence claims deal with issues of corporate governance and internal

accountability, there is no policy of D.C. that would be vindicated by application of its laws."

305 F. Supp. 2d 49, 58 (D.D.C. 2004).  Plaintiff's allegation of payments passing through a bank

account in the District of Columbia and utilized by a foreign national does not shift the focus of

these derivative claims, nor does it suffice to outweigh England's significant interest in this

matter.  *Compare Gilstrap*, 443 F. Supp. 2d at 490 (finding that the "local interest" of England

"far exceeds" that of New York even though defendant was headquartered in New York)

(citation omitted), *with Shaw v. Marriott Int'l, Inc.,* 474 F. Supp. 2d 141, 146 (D.D.C. 2007)

(Finding that the public interest factors weighed in favor of the District because the District of

Columbia had an interest in a matter brought by one of its residents under its consumer

protection laws).

Further, Plaintiff's assertions of federal investigations by the DOJ and SEC (Compl. ¶ 11, 85(b)) have no bearing on the balance of interests between England and the District of Columbia. The existence of related proceedings is not listed as a relevant factor in the *forum non conveniens* analysis laid out in *Gilbert*, "and therefore should not be given much consideration" by this Court in weighing the public interests of respective forums. *See In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 376, 391 (S.D.N.Y. 2002) (discussing the effect of ongoing criminal proceedings on forum non conveniens analysis). The existence of a federal investigation does nothing to provide the "local community" with a "special interest in this litigation." *BPA Int'l*, 281 F. Supp. at 86. In fact, in other derivative suits involving foreign corporations, there is no reported instance of a District of Columbia federal court considering the existence of a federal investigation as an additional factor grafted onto the *forum non conveniens* analysis set forth in *Gilbert*. That comports with common sense. A federal investigation should not confer on either the District or its citizens a significant interest in litigation concerning an English company, just as "government contacts" do not generally afford the courts of the District of Columbia personal jurisdiction over persons or a company from another jurisdiction who have contacts with the federal government. *Atlantigas Corp. v. Nisource, Inc.,* 290 F. Supp. 2d 34, 44-45 (D.D.C. 2003). Consequently, the Complaint's allegations concerning federal investigations are not a relevant factor in this Court's *forum non conveniens* analysis.

In addition to the far greater local interest of England in this litigation, as compared to Washington, D.C., English law applies to Plaintiff's claims against the BAE plc Defendants, which also weighs in favor of dismissal. *See, e.g., Piper Aircraft*, 454 U.S. at 260 (the need to apply foreign law points towards dismissal); *Croesus EMTR Master Fund L.P.*, 212

F. Supp. 2d at 40 (the court's "lack of familiarity with the governing substantive law [] weighs in favor of dismissal).  Disputes should be resolved in a court "that is at home with the forum's law that must govern the case."  *Gilbert*, 330 U.S. at 509.  English courts are "in the best position to interpret and apply" English law.  *See Irwin v. World Wildlife Fund, Inc.*, 448 F. Supp. 2d 29, 36 (D.D.C. 2006).

        The District of Columbia does possess one very important interest in this case – namely, its interest in not being burdened with what is essentially a foreign controversy dealing with the corporate governance of an English company.  Litigation with a potential jury trial concerning a foreign controversy of minimum local interest is certainly "best cleared from the busy docket" of the District of Columbia courts.  *Huertas v. Kingdom of Spain*, 2006 WL 785302, at *4 (D.D.C. 2006); *see also Stromberg*, 474 F. Supp. 2d at 63 (where case relates only slightly to the District of Columbia and its citizens, the District's "highly burdened" jury pool should not bear the responsibility of hearing the case). Thus, the public interest factors also weigh heavily in favor of England as the appropriate forum for this case.

        Finally, this case is an attempt to pursue shareholder derivative claims that are unavailable in the company's home jurisdiction, a tactic that U.S. courts soundly reject.  As described in Part I.B., *supra*, Plaintiff lacks standing under English law to bring a derivative action on behalf of BAE plc, and it should not be permitted to litigate in this Court that which is prohibited by the law governing the nominal defendant corporation.  *See, e.g., Batchelder*, 147 F.3d at 922 (upholding dismissal because plaintiff lacked standing as an ADR holder to sue derivatively under Japanese law); *In re BP p.l.c.*, 507 F. Supp. 2d at 311(dismissing shareholder derivative action because plaintiffs could not sustain the case under English law); *Tomran*, 891 A.2d at 348  (upholding dismissal because Irish law did not recognize a beneficial owner's ability

31

to sue derivatively). English courts should hear claims concerning fiduciary duties owed to an English company under English law, particularly where the vast majority of the evidence is located in England. The Court should dismiss Plaintiff's claims on *forum non conveniens* grounds.

## III.    IN THE ALTERNATIVE, THE COURT LACKS PERSONAL JURISDICTION OVER BAE PLC AND THE INDIVIDUAL BAE PLC DEFENDANTS

The Court should also dismiss the claims against BAE plc and the Individual BAE plc Defendants for lack of personal jurisdiction. On a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a factual basis for the Court's exercise of personal jurisdiction over each individual defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990); *Moore v. Motz*, 437 F. Supp. 2d 88, 90-91 (D.D.C. 2006). A plaintiff must establish that a court has personal jurisdiction "over each individual defendant." *Atlantigas Corp,* 290 F. Supp. 2d at 42. In every instance, the plaintiff must satisfy the court that the defendant's "minimum contacts" permit the court to exercise personal jurisdiction consistent with the requirements of constitutional due process. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff must allege specific facts connecting each defendant with the forum; it cannot rely on bare allegations and conclusory statements. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).

When a federal court's subject matter jurisdiction is predicated on the diversity of the parties, as it is in this case (Compl. ¶ 16), the court looks to the law of the forum in which it sits to determine whether it has personal jurisdiction over a defendant. *See Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). A forum's laws defining the scope of personal jurisdiction must be consistent with the "traditional notions of fair play and substantial justice" required by the

Due Process Clause of the Constitution. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe*, 326 U.S. at 316). The Supreme Court's ordinary due process concerns are particularly acute when, as in *Asahi* and the instant matter, an international defendant is haled into an American court. "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114.

The broadest form of personal jurisdiction is general personal jurisdiction, which allows a court to hear any claim against a defendant. Section 13-442 of the District of Columbia Code permits a court in the District to exercise general personal jurisdiction over a defendant "domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia," D.C. Code § 13-422, or a defendant foreign corporation "doing business" in the District, *id.* § 13-334(a). *See Richard v. Bell Atl. Corp.,* 946 F. Supp. 54, 68 (D.D.C. 1996). The "doing business" provision aligns the general personal jurisdiction of the District's courts "with the reach of constitutional due process." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d 506, 510 (D.C. Cir. 2002) (citing *Hughes v. A.H. Robins Co Inc.*, 490 A.2d 1140, 1148 (D.C. 1985)). Thus, a plaintiff must demonstrate that a foreign corporation's contacts with the District are "continuous and systematic" before a court may exercise general personal jurisdiction in a suit "not arising out of or related to the defendant's contacts with the" District. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984).

Specific personal jurisdiction, by contrast, permits a court to hear a claim against a defendant because the defendant "expressly aimed" its conduct at the forum, and that conduct is the basis for the plaintiff's claim. *U.S. v. Ferrara*, 54 F.3d 825, 828-30 (D.C. Cir. 1995)

(quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)); *see Brunson v. Kalil & Co.*, 404 F. Supp. 2d 221, 230-36 (D.D.C. 2005) (discussing the transacting business standard under the D.C. Code). Specific personal jurisdiction is consistent with constitutional due process when a foreign defendant engages in "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)); *see Brunson*, 404 F. Supp. 2d at 237 (discussing due process requirements).

Section 13-423 of the District of Columbia Code is the long-arm statute that permits a court in the District to exercise specific personal jurisdiction over a foreign defendant based on, among other factors:

> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13-423(a)(1) – (4). Unlike the contacts supporting general personal jurisdiction, due process and the long-arm statute itself require that the contacts giving rise to specific personal jurisdiction be related to the basis for the complaint. *Id.* § 13-423(b); *Atlantigas*, 290 F. Supp. 2d at 44 (to merit application of the long-arm statute, "plaintiff's jurisdictional allegations must arise from the same conduct of which it complains"); *see also Jungquist v. Sheikh Sultan*

*Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031-32 (D.C. Cir. 1997) (discussing long-arm jurisdiction under the D.C. Code).

Plaintiff has failed to allege facts sufficient for this Court to exercise either general or specific personal jurisdiction over BAE plc or the Individual BAE plc Defendants. The Complaint's allegations relating to jurisdiction are either inaccurate, in the case of the Company, or conclusory, as in the case of the Individual BAE plc Defendants. The weight of authority leads to the conclusion that the Complaint's allegations fall short of even "'the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.'" *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

**A.      The Complaint Fails to Allege Contacts Supporting This Court's Personal Jurisdiction over BAE plc**

Despite its plenitude of citations to BAE Systems Group public statements, the Complaint provides no basis for this Court to exercise personal jurisdiction over BAE plc, either generally or pursuant to D.C. Code § 13-423(a)(1) – (4). BAE plc is an English company, incorporated under the laws of England, which does not have a presence in the United States. (Parkes Decl. ¶¶ 4-6, 9-10.) BAE Inc., a Delaware incorporated company, is the main operating entity responsible for doing business in the United States, and it in turn owns other U.S. subsidiaries. (*Id.* ¶ 20.) BAE Inc. provides goods and services of a highly sensitive nature to the United States Government pursuant to a Special Security Agreement. (*Id.* ¶¶ 20-21.) Because of the sensitive and confidential nature of defense contracting to the United States Government, the Special Security Agreement was intended to, and does, ensure that BAE Inc. is managed separately from the English parent BAE plc. (*Id.*) BAE plc and BAE Inc. have separate boards of directors and separate management, save for very limited overlap. (*Id.* ¶ 20.)

35

Throughout the Complaint, Plaintiff describes BAE plc and its subsidiaries as one agglomerated, indistinguishable entity, presumably to establish that the English company either is present generally in the District, or transacts business or contracts to supply services in this District under D.C. Code § 13-423(a)(1) or (a)(2). That characterization is inaccurate and misleading. Plaintiff fails to distinguish between activities conducted by BAE plc and activities conducted by its separate U.S. subsidiaries. The result, typified in Plaintiff's assertion that "BAE does substantial business in Washington, D.C. and the United States, including operating a major office in Washington, D.C." (Compl. ¶ 17), is an attempt both to ignore the separate identity of BAE plc's U.S. subsidiaries, and to aggregate contacts with the entire United States. [11] The Court should reject both of these impermissible pleading tactics.

A plaintiff bears the burden of overcoming the ordinary rule that a foreign corporation is not "amenable to suit in the federal court of another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein." *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336-37 (1925); *see Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 n.13 (1984); *Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 195 (D.D.C. 2007) ("The acts of a subsidiary operating within a particular forum, however, are not ordinarily attributable to a foreign parent corporation."); *AGS Int'l. Servs. S.A. v. Newmont USA Ltd.,* 346 F. Supp. 2d 64, 89-90 (D.D.C. 2004) (discussing alter-ego analysis). A court will treat separately incorporated companies as "one entity in the eyes of the law" only

---

[11]    Federal Rule of Civil Procedure 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant whose aggregate contacts with the United States satisfy the "minimum contacts" requirement announced in *Int'l Shoe Co. v. Washington*, 326 U.S. at 316. A plaintiff must, however, raise a claim arising under federal law in order to assert the court's jurisdiction under the rule. *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). Here, the Plaintiff invokes only this Court's diversity jurisdiction. (Compl. ¶ 16.) Its claims are not based on statute; they are common law claims for breach of fiduciary duty, corporate waste, and aiding/abetting same. (Compl. ¶¶ 144-58.) Rule 4(k)(2) cannot therefore save the Plaintiff's claims against BAE Systems plc and the Individual BAE Systems plc Defendants from dismissal.

when the parent exerts a certain level of control over the subsidiary. *Scandinavian Satellite Sys., AS v. Prime TV Ltd.*, 291 F.3d 839, 846 (D.C. Cir. 2002).

Notably, the Complaint does not make any alter-ego allegations, nor does it plead any facts suggesting that the Court should impute to BAE plc the contacts of its separate subsidiaries, and for reasons of that insufficient pleading alone, the Court should find that Plaintiff has failed to establish a *prima facie* case for jurisdiction. To the extent that the Court wishes to indulge Plaintiff by considering a theory that the Plaintiff did not bother to articulate, the allegations in the Complaint fail to establish any reason why assumption or alter-ego should apply. Plaintiff cites primarily the fact of BAE plc's ownership of BAE Inc. and the statements contained in BAE plc's annual reports highlighting the BAE Systems Group's activities in the North American market, yet neither set of allegations demonstrates that the English parent controls the U.S. subsidiary as is required under the case law of this District. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd.*, 62 F. Supp. 2d 13, 20-21 (D.D.C. 1999) (parent's ownership of subsidiary does not conclusively establish alter-ego relationship); *c.f. Richard v. Bel. Atl. Corp.,* 946 F. Supp. at 62-63 (discussing the "integrated enterprise" test for determining whether a parent company is considered the employer of its subsidiary's employees under Title VII). The Court should not, therefore, impute BAE Inc.'s alleged contacts with the District to BAE plc.[12]

The Complaint's remaining asserted contacts between BAE plc and the District of Columbia relate to the Special Security Agreement with the United States Government (Compl. ¶

---

[12]     Even if somehow the U.S. subsidiaries' contacts could be imputed to the English parent, the aggregation of a defendant's contacts with the whole of the United States cannot support the personal jurisdiction of a federal court sitting in diversity. *See Gorman*, 293 F.3d at 509-10 (explaining the nature of contacts necessary to establish personal jurisdiction under D.C. Code); *Gardner v. U.S.,* 213 F.3d 735, 737 n.1 (D.C. Cir. 2000) (noting that plaintiff must allege contacts between defendant and the District to assert long-arm jurisdiction).

19) and alleged payments to a foreign national, Prince Bandar, via an account held at Riggs

Bank.  (Compl. ¶¶ 8, 9, 50, 113, 117.)  As to the Special Security Agreement, as explained

previously, that agreement permits the U.S. subsidiary, BAE Inc., to supply goods and services

of a highly sensitive nature to the U.S. Government.  The Complaint's allegations of BAE plc's

wrongdoing bear no relation to the U.S. subsidiary or defense contracting with the U.S.  Rather,

the focus of the Complaint is the decision-making of the board of directors of the English parent

company.  Consequently, Plaintiff's pleading of the Special Security Agreement fails to meet the

essential requirement of the D.C. long-arm statute – that "plaintiff's jurisdictional allegations

must arise from the same conduct of which it complains." *Atlantigas*, 290 F. Supp. 2d at  44;

D.C. Code § 13-423(b).[13]

Plaintiff therefore is left with the alleged funds flow to Prince Bandar through

Riggs Bank as its tenuous link to this District.  But those transactions do not establish

"continuous and systematic" contacts supporting general jurisdiction over the English parent,

BAE plc.  *See, e.g., Helicopteros*, 466 U.S. at 418 (determining that sending personnel to the

forum, purchasing equipment in the forum, accepting checks drawn on a bank in the forum, and

traveling to the forum to negotiate a contract do not establish general personal jurisdiction).[14]

---

[13]    Moreover, Plaintiff does not allege that the Special Security Agreement was negotiated or executed in this District.  *See Atlantigas*, 290 F. Supp. at 47 (rejecting plaintiff's claim of personal jurisdiction over defendant based on defendant's contracts with a Washington D.C. public utility, as the agreements were negotiated and executed outside the District).

[14]    Nor can Plaintiff premise personal jurisdiction on the fact that certain committees of the Board of BAE plc have met on occasion in this District within the past four years.  *See* Parkes Decl. ¶ 17.  A handful of such meetings over the course of several years, during which the other 93 committee meetings occurred elsewhere, does not rise to the level of continuous and systematic contacts required for general jurisdiction, *see, e.g., Helicopteros*, 466 U.S. at 418; *Allen*, 522 F. Supp. 2d at 195-196 (discussing contacts necessary for general jurisdiction); *Hughes v. A.H. Robins Co., Inc.*, 490 A.2d 1140, 1148-51 (D.C. 1985) (same). Conversely, these committee meetings do not support specific jurisdiction over BAE plc, as they are not relevant to Plaintiff's allegations of improper decisions by the Board dating back to the mid-1980s, and Plaintiff has pleaded no specific Board or committee meetings at which the alleged wrongdoing was discussed.  *See Atlantigas*, 290 F. Supp. 2d at 44 ("plaintiff's jurisdictional allegations must arise from the same conduct of which it complains").

Nor are the specific jurisdiction provisions of the Washington long-arm statute satisfied by Plaintiff's allegations about Riggs Bank. First, the Complaint nowhere asserts that the alleged payments to Prince Bandar through Riggs Bank on account of the Al-Yamamah programme with Saudi Arabia caused injury to a person or entity in Washington, D.C. Rather, the Complaint asserts injury to BAE plc in respect of purported violations of law and waste of corporate assets. (Compl. ¶¶ 144-56.) Therefore a basis for specific personal jurisdiction cannot be found in D.C. Code § 13-423(a)(3) or (a)(4), as both require a tortious injury in this District. So Plaintiff must try to meet the requirements of D.C. Code § 13-423(a)(1), which it cannot do either. In order for a plaintiff's claim to arise from business transacted in the District by a defendant so as to satisfy the requirements of D.C. Code 13-423(a)(1), there must be a "discernible relationship" between the wrongs complained of and the business transacted in the District. *AGS,* 346 F. Supp. 2d at 78 (quotations omitted). "A discernible relationship exists when the non-resident defendant has minimum contacts with the District such that [the non-resident] should reasonably anticipate being haled into court [here]." *Id.* (quotations omitted).

> In assessing the reasonableness of the factors that a plaintiff claims merit a court exercising personal jurisdiction over an alien defendant, due process requires a court to assess whether the defendant could reasonably anticipate litigation with the plaintiff in the District as a result of its activities, whether the plaintiff is a resident of the District, and whether it would be fair and reasonable to force the alien defendant to litigate here.

*Id.* at 79 (quotations omitted). A notable application of this doctrine is *Formica v. Cascade Candle Co.,* 125 F. Supp. 2d 552 (D.D.C. 2001). There, the district court concluded that it had no personal jurisdiction over the non-resident defendant. The court found that the defendant did not own property in the District, did not have offices, employees, or agents in the District, and did not solicit business in the District. *Id.* at 554-55. The court further found that as the plaintiff was not a resident of the forum, "the District's interest in having [the] case litigated within its

borders is minimal." *Id*. at 556. The same is true in this case of the nonresident Plaintiff, which is a Michigan pension fund. (Compl. caption).

Also important to the AGS court were "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *AGS*, 346 F. Supp. 2d at 79 (quoting *Asahi*, 480 U.S. at 114.) The same reasoning should apply to Plaintiff's efforts to hale BAE plc into court in the case at hand. The (alleged) fact of payments pursuant to a foreign arrangement to a Saudi national in Washington, D.C. is a virtually random offshoot of Plaintiff's breach of fiduciary duty and corporate waste claims embracing BAE plc's defense contracting worldwide. Plaintiff has not named BAE plc's U.S. subsidiaries as defendants or otherwise pleaded their relevance to the Complaint's allegations. It is not reasonable nor foreseeable for this matter to be litigated in Washington, D.C. Finally, this District's interest is significantly lessened by the fact that Plaintiff is a resident of Michigan. For all of the foregoing reasons, this Court should not exercise personal jurisdiction over BAE plc.

**B.    The Complaint Fails to Allege Contacts Supporting This Court's Personal Jurisdiction over the Individual BAE plc Defendants**

General allegations made against a group of defendants are insufficient to meet the Plaintiff's burden of demonstrating this Court's personal jurisdiction. *See Rush v. Savchuk*, 444 U.S. 320, 331-32 (1980); *Atlantigas*, 290 F. Supp. 2d at 42; *Second Amendment Found.*, 274 F.3d at 524. But that is precisely what this Complaint does. In one conclusory statement, Plaintiff alleges that "[e]ach individual defendant has had substantial and continuous contacts with Washington, D.C. and the United States." (Compl. ¶ 17.) That statement is unsupported by any factual allegations in the Complaint and should be summarily rejected as a basis for jurisdiction.

As Plaintiff concedes, 22 of the total 26 Individual BAE plc Defendants live and work outside the United States. (Compl. ¶¶ 23, 24, 26-28, 30-33, 35-38, 40-48; Individual BAE plc Defendants' Declarations for Messrs. Biggam, Brown, Cartellieri, Geoghegan, Evans, Hartnall, Hesketh, Inglis, King, Lester, Masefield, Mason, Mogford, Olver, Portillo, Quarta, Rose, Rudd, Scaroni, Turner, and Weston.) Of the four Individual BAE plc Defendants who live in the United States, none reside or have a principal place of business in the District of Columbia. Mr. Carroll is a resident of Houston, Texas, where he also maintains his office. (Carroll Decl. ¶¶ 3-4.) Mr. Weinberg lives in Connecticut and works in New York City. (Weinberg Decl. ¶¶ 3-4.) Mr. Ronald lives in Maryland and maintains a home office there. (Ronald Decl. ¶¶ 3-4.) Mr. Havenstein, the director who is also Chief Executive Officer of BAE Inc., has his primary residence in New Hampshire, with a secondary residence in Bethesda, Maryland; his office is in BAE Inc.'s headquarters in Rockville, Maryland. (Havenstein Decl. ¶¶ 3-4.) Plaintiff has shown no basis for asserting jurisdiction over these individuals.

In addition, the Complaint's allegations about the Individual BAE plc Defendants concern only their roles as current or former officers or directors of BAE plc and thus fail on grounds of the fiduciary shield doctrine to establish the Court's personal jurisdiction over these individuals. Plaintiff pleads no personal, non-corporate contacts between the individuals and this District. It is well established in this District that claims of personal jurisdiction based on an individual's contacts pursued in the individual's corporate capacity cannot lie. *See Richard v. Bell Atl Corp.*, 976 F. Supp. at 73-74; *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994) ("Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity. Thus, the corporation ordinarily insulates the

41

individual employee from the court's personal jurisdiction.") (emphasis omitted); *Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981).  Therefore, even if in the Complaint Plaintiff had pleaded any injury resulting from an Individual BAE plc Defendant's contacts with this District arising from his or her service as a BAE plc director, such allegations would fail to establish personal jurisdiction.  This principle would, of course, apply to any BAE plc related meetings attended by any Individual BAE plc Defendant in this District.  And it should be noted again that the Complaint does not make even a *prima facie* showing that *any* Individual BAE plc Defendant has had *any* contacts with the District.  Therefore, the Court should dismiss the claims against each of the Individual BAE plc Defendants on the grounds that no *prima facie* case has been made as to personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the BAE Systems plc Defendants respectfully request

that the Court dismiss the Complaint in its entirety and with prejudice.


DATED:  January 31, 2008
         New York, New York

                   Respectfully submitted,

                   LINKLATERS LLP

                   BY:  LAWRENCE BYRNE (DC Bar # 4761)

                   *Lawrence Byrne /E.D*
                        LAWRENCE BYRNE

                   Of Counsel:
                   Mary K. Warren
                   Jeffery Commission
                   Kristopher Kerstetter

                   1345 Avenue of the Americas
                   New York, NY  10105
                   Telephone:  212-903-9105
                   Facsimile: 212-903-9100

                   Attorneys for Nominal Defendant BAE Systems plc
                   and Individual Defendants Sir Robin Biggam, Keith
                   Clark Brown, Philip J. Carroll, Ulrich Cartellieri, Sir
                   Richard Harry Evans, Christopher V. Geoghegan,
                   Michael J. Hartnall, Walter P. Havenstein, Lord
                   Alexander Hesketh, Andrew George Inglis, Ian G.
                   King, Michael Lester, Sir Charles Beech Gordon
                   Masefield, Sir Peter James Mason, Steve Lewis
                   Mogford, Richard (Dick) L. Olver, Michael Denzil
                   Xavier Portillo, Roberto Quarta, Mark H. Ronald,
                   George W. Rose, Sir Anthony Nigel Russell Rudd,
                   Michael J. Turner, Peter A. Weinberg, and John Pix
                   Weston

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and - | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

# NOTICE REGARDING BULKY PLEADING
## (APPENDIX OF UNREPORTED CASES AND OTHER MATERIALS)

Pursuant to the procedures for filing documents electronically, as outlined in the previous Order of the Court, this Notice serves as notification that a Bulky pleading has been filed in paper form in the Clerk's Office. It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CITY OF HARPER WOODS EMPLOYEES'
RETIREMENT SYSTEM, Derivatively on
Behalf of BAE SYSTEMS PLC,

               Plaintiff,

    vs.

RICHARD (DICK) L. OLVER et al.,

               Defendants,

   - and –

BAE SYSTEMS PLC, an England and Wales
corporation,

            Nominal Defendant.

Civil No. 1:07-cv-01646

Assigned to: Judge Rosemary M. Collyer

## ORDER

Having considered the Motion to Dismiss filed by Nominal Defendant BAE Systems plc and the Individual BAE Systems plc Defendants Sir Robin Biggam, Keith Clark Brown, Philip J. Carroll, Ulrich Cartellieri, Sir Richard Harry Evans, Christopher V. Geoghegan, Michael J. Hartnall, Walter P. Havenstein, Lord Alexander Hesketh, Andrew George Inglis, Ian G. King, Michael Lester, Sir Charles Beech Gordon Masefield, Sir Peter James Mason, Steve Lewis Mogford, Richard (Dick) L. Olver, Michael Denzil Xavier Portillo, Roberto Quarta, Mark H. Ronald, George W. Rose, Sir Anthony Nigel Russell Rudd, Michael J. Turner, Peter A. Weinberg, and John Pix Weston, and all supporting and opposing filings and arguments, it is ORDERED that

All claims in this case against BAE Systems plc and the Individual BAE Systems plc Defendants are hereby DISMISSED.

_____

Rosemary M. Collyer
United States District Judge

Dated:  _____, 2008

The following attorneys are entitled to receive notice of this order:

Roger M. Adelman
1100 Connecticut Avenue NW – Suite 730
Washington, D.C. 20036

        Counsel for Plaintiff

Patrick Coughlin
Mary K. Blasy
Mark Solomon
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway – Suite 1900
San Diego, California  92101

        Counsel for Plaintiff

Jonathan W Cuneo
William H Anderson
Cuneo Gilbert & LaDuca LLP
507 C St N.E.
Washington, D.C. 20002

        Counsel for Plaintiff

Michael J. Vanoverbeke
Thomas C. Michaud

Vanoverbeke Michaud & Timmony PC
79 Alfred St.
Detroit, Michigan  48201

      Counsel for Plaintiff


Lawrence Byrne
Linklaters LLP
1345 Avenue of the Americas
New York, New York  10105

      Counsel for BAE Systems plc Defendants


Christopher T. Lutz
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036

      Counsel for Defendant The PNC Financial Services Group, Inc.


Eric M. Roth
Adir G. Waldman
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York  10019

      Counsel for Defendant The PNC Financial Services Group, Inc.


Larry Brusca
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave. NW
Washington, D.C.  20005

Michael W. Mitchell
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, New York  10036

      Counsel for the Allbritton Defendants


Wm. Bradford Reynolds

Howrey, LLP
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004

Counsel for Defendant Prince Bandar Bin Sultan

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) ) | |
| Nominal Defendant. | ) | |

### CERTIFICATE UNDER LCvR 7.1
### OF NOMINAL DEFENDANT BAE SYSTEMS PLC

I, the undersigned, counsel of record for BAE Systems plc, certify that to the best of my knowledge and belief, the following are parent companies, subsidiaries or affiliates of BAE Systems plc, which have any outstanding securities in the hands of the public: Saab AB.

These representations are made in order that judges of this court may determine the need for recusal.

DATED:     January 31, 2008            *Attorney of Record for Nominal Defendant BAE Systems plc*
New York, New York

*Jawrence Byrne / E.D.*
LAWRENCE BYRNE (DC Bar # 4761)
LINKLATERS LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone: 212-903-9105
Facsimile: 212-903-9100

## CERTIFICATE OF SERVICE

I certify that, besides having been filed and distributed electronically on the ECF system, copies of the foregoing Motion by BAE Systems plc and the Individual BAE Systems plc Defendants to Dismiss the Complaint; Certificate Under LCvR 7.1 of Nominal Defendant BAE Systems plc; Memorandum of Points and Authorities in Support of the Motion of BAE Systems plc and the Individual BAE Systems plc Defendants to Dismiss the Complaint; the Declaration of Martin Moore QC dated January 30, 2008, and exhibits attached thereto; the Declaration of David Parkes dated January 31, 2008; the 24 Declarations of the Individual BAE Systems plc Defendants; the Appendix of Unreported Case and Other Materials; and 2 volume Appendix of Foreign Authorities Cited In Declaration Of Martin Moore QC were sent on January 31, 2008, by First Class Mail, to the following counsel of record:

>   Roger M. Adelman
>   1100 Connecticut Avenue, N.W. - Suite 730
>   Washington, D.C. 20036
>
>       Counsel for Plaintiff
>
>
>   Patrick Coughlin
>   Darren J. Robbins
>   Mark Solomon
>   Mary K. Blasy
>   Coughlin Stoia Geller Rudman & Robbins LLP
>   655 West Broadway - Suite 1900
>   San Diego, CA 92101
>
>       Counsel for Plaintiff

Jonathan W. Cuneo
William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C St., N.E.
Washington, D.C. 20002

    Counsel for Plaintiff


Michael J. Vanoverbeke
Thomas C. Michaud
Vanoverbeke Michaud & Timmony PC
79 Alfred St.
Detroit, MI 48201

    Counsel for Plaintiff


Christopher T. Lutz
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

    Counsel for Defendant The PNC Financial
    Services Group, Inc.


Eric M. Roth
Adir G. Waldman
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

    Of Counsel for Defendant The PNC Financial
    Services Group, Inc.

Richard L. Brusca
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., N.W.
Washington, D.C. 20005

    Counsel for the Allbritton Defendants


Wm. Bradford Reynolds
Howrey, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

    Counsel for Defendant Prince Bandar bin Sultan


*Lawrence Byrne /P.O.*