# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORAL HEARING REQUESTED** |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) | |
| Nominal Defendant. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES BY
## BAE SYSTEMS PLC AND THE INDIVIDUAL BAE SYSTEMS PLC DEFENDANTS
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR
## EXPEDITED DISCOVERY LIMITED TO PERSONAL JURISDICTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT .................................................................................................................... 6

    I.     Plaintiff has Failed to Establish that Costly and Complex Jurisdictional
          Discovery is Warranted Now ............................................................................. 6

          A.    The Court Can Decide the BAE plc Defendants' Motions to Dismiss
               on English Law Grounds and *Forum Non Conveniens* Without
               Reaching Personal Jurisdiction ............................................................. 6

          B.    Engaging in Unnecessary Personal Jurisdiction Discovery Now
               Would Embroil the Court in Competing Considerations Arising from
               the Pending Criminal Investigation ....................................................... 11

    II.    Even if the Court Were to Consider Plaintiff's Request Now, Plaintiff Would
          Not Be Entitled to Jurisdictional Discovery ..................................................... 15

          A.    Plaintiff Misstates this Circuit's Precedent Regarding Jurisdictional
               Discovery ............................................................................................. 15

          B.    Plaintiff Ignores the Court's Discretion to Determine Whether
               Jurisdictional Discovery is Warranted by the Theories Asserted, Facts
               Alleged, and Discovery Sought by a Plaintiff ......................................... 17

          C.    Plaintiff has Failed to Make a Prima Facie Showing of this Court's
               Personal Jurisdiction Over the BAE plc Defendants or to Establish its
               Entitlement to Discovery ...................................................................... 18

               1.    Plaintiff has Demonstrated No Basis for This Court to Hold
                    That BAE plc is or Could Be an Alter-Ego of BAE Inc. ............... 19

               2.    Plaintiff Cannot Make a Prima Facie Showing of Personal
                    Jurisdiction over the Individual BAE plc Defendants Based
                    on Their Roles as Corporate Agents ........................................... 22

                3.    Plaintiff Has Not Alleged Substantial Business Transactions
                    in the District Such as Would Merit Specific Jurisdiction ............ 23

    CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

## CASES

*AGS Int'l Servs. S.A. v. Newmont USA Ltd.*,
346 F. Supp. 2d 64 (D.D.C. 2004) ...........................................................21

*Allen v. Russian Fed'n*,
522 F. Supp. 2d 167 (D.D.C. 2007) ...........................................................21

*Armco Steel Co., L.P. v. CSX Corp.*,
790 F. Supp. 311 (D.D.C. 1991) ...........................................................24

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
480 U.S. 102 (1987) ...........................................................24

*In re BP p.l.c. Derivative Litig.*,
507 F. Supp. 2d 302 (S.D.N.Y. 2007) ...........................................................9

*BPA Int'l, Inc. v. Kingdom of Sweden*,
281 F. Supp. 2d 73 (D.D.C. 2003) ...........................................................10, 16, 17, 20

*Bancoult v. McNamara*,
214 F.R.D. 5 (D.D.C. 2003) ...........................................................16, 17

*Cali v. E. Coast Aviation Servs. Ltd*,
178 F. Supp. 2d 276 (E.D.N.Y. 2001) ...........................................................20

*Cannon Mfg. Co. c. Cudahy Packing Co.*,
267 U.S. 333 (1925) ...........................................................21

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*,
148 F.3d 1080 (D.C. Cir. 1998) ...........................................................15, 17

*Cramer v. Wade*,
985 P.2d 467 (Alaska 1999) ...........................................................23

*Crane v. Carr*,
814 F.2d 758 (D.C. Cir. 1987) ...........................................................18

*Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*,
212 F. Supp. 2d 30 (D.D.C. 2002) ...........................................................10

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
268 F. Supp. 2d   1 (D.D.C. 2003) ...........................................................21

*Edmond v. U.S. Postal Serv. Gen. Counsel,*
949 F.2d 415 (D.C. Cir. 1991) ................................................................................ 14

*El-Fadl v. Cent. Bank of Jordan,*
75 F.3d 668 (D.C. Cir. 1996) ........................................................................ 9, 17, 18

*Fasolyak v. The Cradle Soc'y, Inc.,*
No. 06 Civ. 01126 (TFH), 2007 WL 2071644 (D.D.C. July 19, 2007) ...................... 16

*First Chi. Int'l v. United Exch. Co.,*
836 F.2d 1375 (D.C. Cir. 1988) ............................................................................. 16

*Foss v. Harbottle,*
(1843) 2 Hare 461 ............................................................................................... 8, 9

*Helmer v. Doletskaya,*
393 F.3d 201 (D.C. Cir. 2004) ............................................................................... 23

*Jung v. Ass'n of Am. Med. Colls.,*
300 F. Supp. 2d 119 (D.D.C. 2004) ....................................................................... 23

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
115 F.3d 1020 (D.C. Cir. 1997) ............................................................................. 23

*Koster v. Lumbermens Mut. Cas. Co.,*
330 U.S. 518 (1947) ............................................................................................... 9

*Med. Solutions, Inc. v. C Change Surgical LLC,*
468 F. Supp. 2d 130 (D.D.C. 2006) ............................................................ 17, 18, 22

*Mwani v. bin Laden,*
417 F.3d 1 (D.C. Cir. 2005) ................................................................................... 16

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) ............................................................................................... 9

*Quinto v. Legal Times of Wash., Inc.,*
506 F. Supp. 554 (D.D.C. 1981) ............................................................................ 23

*Richard v. Bell Atl. Corp.,*
946 F. Supp. 54 (D.D.C. 1996) ......................................................................... 22, 23

*Roz Trading Ltd v. Zeromax Group Inc.,*
517 F. Supp. 2d 377 (D.D.C. 2007) ..................................................................... 7, 16

*Ruhrgas AG v. Marathon Oil Co.*,
526 U.S. 574 (1999) ............................................................................................7

*Savage v. Bioport, Inc.*,
460 F. Supp. 2d 55 (D.D.C. 2006) ...............................................................17, 18

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
127 S. Ct. 1184 (2007) ..........................................................................7, 10, 14

*United States v. Philip Morris, Inc.*,
116 F. Supp. 2d 116 (D.D.C. 2000) .........................................................16, 18, 22

*Wenz v. Memery Crystal*,
55 F.3d 1503 (10th Cir. 1995) ..........................................................................23

*White v. Fraternal Order of Police*,
909 F.2d 512 (D.C. Cir. 1990) ..........................................................................14

*Wiggins v. Equifax Inc.*,
853 F. Supp. 500 (D.D.C. 1994) ........................................................................22

## STATUTES & RULES

28 U.S.C. § 1332(a)(1) ......................................................................................4

D.C. Code § 13-423(a)(1) ..................................................................................24

D.C. Code § 13-423(a)(4) ..............................................................................22, 23

Fed. R. Civ. P. 12(b)(1) ......................................................................................5

Fed. R. Civ. P. 12(b)(2) ..................................................................................5, 15

Fed. R. Civ. P. 12(b)(6) ......................................................................................5

## PRELIMINARY STATEMENT

This memorandum is respectfully submitted in opposition to Plaintiff's Motion dated March 12, 2008, to begin premature, unnecessary, costly, and extensive discovery on a full range of issues well beyond the personal jurisdiction issue.  Plaintiff's Motion should be denied in its entirety.

In its first face-to-face appearance before this Court, Plaintiff admitted that it lacks any evidence against the BAE plc Defendants[1] to support the Complaint's allegations, which are basically lengthy newspaper clippings.  Plaintiff told the Court: "We do not have proof right now that . . . foreign practices violations were committed."  (TRO Hr'g Tr. 4, Feb. 5, 2008.)  Plaintiff's Complaint contains not a shred of evidence of actual wrongdoing by the BAE plc Defendants and Plaintiff has now conceded that point.  Consequently, Plaintiff has also revealed the real purpose of its demand for expedited discovery on purportedly the personal jurisdiction issue:  Plaintiff wants merits discovery under the guise of "jurisdictional discovery" in a desperate attempt to bolster the Complaint before that Complaint is dismissed due to its many legal deficiencies.

The Court need only glance through the 46 pages of Plaintiff's discovery requests, including dozens of depositions, 58 document requests and 6 interrogatories to BAE plc, and 35 document requests and 28 interrogatories to each Individual BAE plc Defendant, to see what Plaintiff is attempting to do.  The topics and the extreme breadth of the requests reveal the Motion's true purpose: to obtain information that Plaintiff is not entitled to, including even materials related to an ongoing investigation by the Department of Justice.  For example, Plaintiff demands that the BAE plc Defendants "[d]escribe in detail any communication or

---

[1]    Capitalized terms, if not defined herein, are used as defined in the BAE plc Defendants' Motion to Dismiss filed January 31, 2008.

correspondence you had concerning payments made by BAE to Prince Bandar, including but not limited to communications with any United States or United Kingdom governmental or regulatory body, any bank examiner, PricewaterhouseCoopers LLP or Allen & Overy LLP." (Blasy Decl. Ex. T, at Interrog. 23.)  There is no personal jurisdiction theory or issue that would make that information relevant.  Rather, it is an attempt to obtain merits discovery.

Other requests are simply so broad as to be ridiculous, for instance the request to the Individual BAE plc Defendants to produce "[a]ll telephone records and other documents reflecting any telephone calls made or received by you to, or from telephone numbers located within the United States" (Blasy Decl. Ex. S, at Req. 15), or to "[i]dentify all communications or meetings you or others acting at your behest have had with persons located in the United States" (Blasy Decl. Ex. T, at Interrog. 1).   Moreover, the time period for response to Plaintiff's discovery requests is from January 1, 1985, to the present – in other words, a period of 23 years. These requests do nothing to help the Court decide whether it has jurisdiction over any defendant in the District of Columbia and they would be incredibly burdensome to comply with.

Most importantly, the Court does not need to resolve personal jurisdiction issue in the pending Motion to Dismiss now, or to allow Plaintiff to pursue any "jurisdictional discovery" that Plaintiff disingenuously seeks.  The BAE plc Defendants filed a Motion to Dismiss on January 31, 2008, that asserts two additional, independent legal grounds for dismissal of this case in its entirety in addition to the ground of lack of personal jurisdiction.  The two independent grounds are that (i) Plaintiff lacks standing and has failed to state a claim under English law; and (ii) dismissal is warranted under the doctrine of *forum non conveniens*, as nearly all of the relevant witnesses and proof are located in England.   The Court can simply consider those two bases for dismissal first and postpone consideration of the personal jurisdiction arguments until

after that ruling.  Should the Court grant dismissal on either of the two independent grounds, no discovery will be needed at all, and the Court will have saved itself and the parties significant expense and burden.  This Circuit's precedent does not require the Court to expend judicial resources, or the parties to engage in cumbersome and invasive discovery, on matters that do not require resolution at this point.  The Court should prevent Plaintiff from obtaining this discovery now.

Finally, even if the Court were inclined to consider Plaintiff's request for discovery at this unripe stage in the litigation, Plaintiff's Motion must fail.  First, the Motion mischaracterizes Plaintiff's entitlement to jurisdictional discovery under the law of this Circuit.  Plaintiff also fails to make a prima facie showing of personal jurisdiction over the BAE plc Defendants.  Finally, because its jurisdictional theories are fundamentally flawed, Plaintiff cannot demonstrate that the sweeping discovery that it seeks over a 23-year period will elicit any facts that will support its theories.  The Court should deny the Motion and proceed to consideration of the BAE plc Defendants' Motion to Dismiss, and the other defendants' motions to dismiss, after they are fully briefed and argued.

## STATEMENT OF FACTS

On approximately September 19, 2007, Plaintiff City of Harper Woods Employees' Retirement System, which is located in Michigan (Compl. caption), chose the District of Columbia as the forum to bring a shareholder derivative suit against BAE plc, an English company, and 26 of its current and former officers and directors.  The Complaint, based largely on reports by *The Financial Times*, a British newspaper, and other publications (*e.g.*, Compl. ¶¶ 11-13), alleges that the Individual BAE plc Defendants, with the assistance of The PNC Financial Services Group, Inc. (as successor to Riggs National Corporation), Joe, Robert, and

Barbara Allbritton, and Prince Bandar bin Sultan, breached their fiduciary duty to the Company and wasted corporate assets. (Compl. ¶¶ 144-56.) The common law claims asserted by Plaintiff formed the sole basis of the Individual BAE plc Defendants' alleged wrongdoing. The Complaint does not assert any claim under federal law and relies exclusively on the diversity of the parties to establish this Court's subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). (Compl. ¶ 16.)

Plaintiff's allegations of wrongdoing rest entirely on its assertion that alleged payments by the Company, including payments to Prince Bandar, constituted "illegal bribe payments." (Plaintiff's Motion for Expedited Discovery Limited to Personal Jurisdiction ("Motion") 1.) In the verified Complaint, Plaintiff unequivocally stated that the Individual BAE plc Defendants

> have caused BAE to engage in a pattern and practice of making illegal and improper payments to secure contracts and false and misleading statements to conceal and cover them up, thus violating the U.S. Foreign Corrupt Practices Act ("FCPA"), the anti-corruption convention of the Organization for Economic Cooperation and Development ("OECD Convention") and Section 463 of the U.K. Companies Act of 2006 ("Section 463"), all of which were applicable to BAE.

(Compl. ¶ 5.) But only months after declaring in a public document filed with this Court that the Individual BAE plc Defendants had violated the FCPA, Plaintiff conceded that it has no basis for that assertion. During the February 5, 2008, *ex parte* TRO hearing before this Court, Plaintiff conceded, "we do not have proof right now that fraudulent, I'm sorry that foreign practices violations were committed." (TRO Hr'g Tr. 4.) The contradictory positions that Plaintiff has taken, in the Complaint several months ago and before this Court a few weeks ago, undermine the basis for the claims against the BAE plc Defendants and, as relevant to Plaintiff's Motion, the possible grounds on which personal jurisdiction might be based.

Prior to Plaintiff's concession at the February 5 *ex parte* hearing, the BAE plc Defendants filed a Motion to Dismiss the Complaint on January 31, 2008 ("Motion to Dismiss").  Pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), and (6) and the doctrine of *forum non conveniens*, the Motion to Dismiss raises three independently dispositive grounds for dismissal: (1) the Plaintiff lacks standing to bring a shareholder derivative suit, and has failed to state a claim for relief, under English law; (2) the District of Columbia is an inconvenient forum to litigate a shareholder derivative suit brought against an English company; and (3) the Court lacks personal jurisdiction over BAE plc and the Individual BAE plc Defendants.  In addition to what is pleaded in Plaintiff's Complaint, the Motion to Dismiss relies on the Declaration of English companies law expert Martin Moore QC, the Declaration of BAE plc Company Secretary David Parkes, and declarations of all the Individual BAE plc Defendants.

Twenty days after the Motion to Dismiss was filed, Plaintiff delivered a request for "limited expedited personal jurisdiction discovery" to the BAE plc Defendants via facsimile on February 20, 2008.  (Blasy Decl. ¶ 26.)  Plaintiff's fax included a total of 46 pages of interrogatories and document requests, directed at BAE plc and each Individual BAE plc Defendant.  There are 58 document requests and 6 interrogatories directed to BAE plc, and 35 document requests and 28 interrogatories directed to each Individual BAE plc Defendant.  The time period for response is from January 1, 1985 to the present – in other words, a period of 23 years.  (Blasy Decl. Ex. Q – T.)  Plaintiff also seeks 26 depositions, primarily at locations in England.  (Blasy Decl. Ex. U.)

Counsel discussed the request on February 26, 2008, and the next day the BAE plc Defendants notified Plaintiff that they would not accede to expedited (or un-expedited) discovery.  (Blasy Decl. ¶ 27.)  Almost two weeks later, on March 11, 2008, Plaintiff again

contacted the BAE plc Defendants, stating that it would file a motion for expedited discovery the next day, March 12, 2008, and seeking a joint stipulation to expedite briefing on the motion so the Court could rule before Plaintiff's March 31, 2008, deadline to oppose the defendants' motions to dismiss. The BAE plc Defendants declined to agree to burden the Court with a request for expedited briefing, but proposed as a courtesy to stipulate jointly to an extension of the date for Plaintiff's opposition to the motions to dismiss. The other defendants moving to dismiss joined the stipulation, which the Court entered with alteration on March 18, 2008.

Plaintiff filed its 38-page Motion on March 12, 2008, and devotes the bulk of it to getting an extra bite at the apple; namely to briefing its opposition to the BAE plc Defendants' Motion to Dismiss for lack of personal jurisdiction before its opposition is actually due under the Pretrial Order #1 executed by this Court. Plaintiff's premature attempt to reach the merits, and to obtain merits discovery under the guise of jurisdictional discovery, is now before the Court.

## ARGUMENT

**I.     Plaintiff has Failed to Establish that Costly and Complex Jurisdictional Discovery is Warranted Now**

### A.     The Court Can Decide the BAE plc Defendants' Motions to Dismiss on English Law Grounds and *Forum Non Conveniens* Without Reaching Personal Jurisdiction

Plaintiff's lengthy Motion fails to address the vital threshold question that this Court must decide before ordering jurisdictional discovery: is it necessary now? The answer is clearly no. The BAE plc Defendants' Motion to Dismiss asserts two additional, independent legal grounds for dismissal of this case in addition to the ground of lack of personal jurisdiction. The two independent grounds are that (i) Plaintiff lacks standing and has failed to state a claim under English law; and (ii) dismissal is warranted under the doctrine of *forum non conveniens*, as nearly all of the relevant witnesses and proof are located in England. (Motion to Dismiss 1.)

The Court can simply consider those two bases for dismissal first and postpone consideration of the personal jurisdiction arguments and related discovery requests until after that ruling. Should the Court grant dismissal on either of the two independent grounds, no discovery will be needed at all, and the Court will have saved itself and the parties significant expense and burden. This Circuit's precedent does not require the Court to expend judicial resources, or the parties to engage in cumbersome and invasive discovery, on matters that do not require resolution at this initial stage of the case.

The case law is clear that this Court is free to consider in any order the three independently dispositive grounds for dismissal raised by the BAE plc Defendants in the Motion to Dismiss. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999) ("there is no unyielding jurisdictional hierarchy"). As the Supreme Court recently explained, a district court may dispose of an action on non-merits grounds, "bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1192 (2007) (holding that *forum non conveniens* may justify dismissal without resolving jurisdictional issues). If the court determines that Plaintiff lacks standing under English law to bring a shareholder derivative suit or that the District of Columbia is an inconvenient forum in which to litigate a shareholder derivative suit brought against an English company, it may dismiss the case regardless of whether it has personal jurisdiction over the BAE plc Defendants. *Ruhrgas*, 526 U.S. at 578. Plaintiff's assertion that it is entitled to expedited jurisdictional discovery ignores controlling authority and the BAE plc Defendants' independent grounds for dismissal.[2]

---

[2]    In addition, courts in this District generally either grant or deny jurisdictional discovery based on a much more developed record than Plaintiff's presentation in its Motion. *See, e.g.*, *Roz Trading Ltd v. Zeromax Group Inc.*, 517 F. Supp. 2d 377, 379 (D.D.C. 2007) (noting the court's "searching review" of the record consisting of the motion to dismiss, plaintiff's opposition, defendants' reply and various exhibits).

The English law arguments that the BAE plc Defendants raise in their Motion to Dismiss clearly do not require discovery to resolve.  The BAE plc Defendants contend that even if the allegations in the Complaint are presumed to be true, Plaintiff lacks standing to pursue its claim against the BAE plc Defendants under English law and has failed to state a claim under English law.  (Motion to Dismiss 5 *et seq*.)  As to choice of law, Plaintiff has conceded that this Court should apply the internal affairs doctrine (Compl. ¶ 21), which mandates the application of English law to Plaintiff's claims against the BAE plc Defendants, as BAE plc is incorporated under English law.  As a threshold matter, Plaintiff has admitted that it is not as a shareholder but merely a holder of ADRs in BAE plc. (Compl. ¶ 18.)  A holder of ADRs is not a "shareholder" under English law, and Plaintiff's purported shareholder derivative action can be dismissed on that basis alone.   Even if Plaintiff were to cure that obvious defect, it faces other, insurmountable obstacles to pursuing this case.  While the English Companies Act 2006 narrowly expanded the circumstances under which shareholders can pursue derivative litigation, its provisions are not retroactive to alleged wrongdoing that took place before October 1, 2007, and thus it is inapplicable to Plaintiff's Complaint.  Given that the Companies Act 2006 does not apply, English law dictates that any shareholder derivative action must comply with the rule in *Foss v. Harbottle*, (1843) 2 Hare 461, which permits such lawsuits only in narrow circumstances.  Plaintiff has failed to demonstrate that its allegations satisfy any of the exceptions to the rule in *Foss v. Harbottle* that would allow its case to proceed.  In addition, the Complaint fails to state a claim under Section 463 of the Companies Act 2006.  The BAE plc Defendants' Motion to Dismiss cites to the overwhelming weight of precedent in United States federal courts that favors dismissal of derivative actions brought against British companies or others incorporated under

commonwealth laws where a plaintiff fails to satisfy the *Foss v. Harbottle* exceptions, as

Plaintiff has failed to do. (Motion to Dismiss 10-11 (collecting cases).)

The English law grounds for dismissal of this case can be decided by the Court on the

motion papers. For instance, in *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302, 311

(S.D.N.Y. 2007), the court dismissed a derivative action under the law of England and Wales for

failure to "plead facts sufficient to sustain this action pursuant to one of the three narrow

exceptions enumerated in England's Companies Act" on legal grounds alone, without discovery,

and without reaching jurisdictional issues. This Court can do the same. In support of the Motion

to Dismiss, the BAE plc Defendants have submitted the Declaration of Martin Moore QC, an

expert on English law who discusses these pertinent matters in detail. Plaintiff may address

those arguments by means of their own briefing or declarations without need for discovery.

The BAE plc Defendants' second independent ground for dismissal of this action is the

doctrine of *forum non conveneniens*. The Motion to Dismiss contends that the Court should

exercise its discretion to dismiss Plaintiff's claims because "considerations of convenience,

efficiency, and justice" overwhelmingly favor England as the proper forum for this case. *Koster*

*v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 528 (1947). (Motion to Dismiss 22.) Under a

*forum non conveniens* analysis, a court must: (1) determine whether there is an adequate

alternative forum; and (2) balance the public and private interests at stake to determine whether a

motion to dismiss should be granted. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 & n.6, 255-

61 (1981); *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 677-78 (D.C. Cir. 1996). In the instant

case, all of the factors overwhelmingly favor England: (i) England's courts provide an adequate

alternative forum; (ii) the private interests favor dismissal as nearly all the relevant witnesses and

documents are located in England; and (iii) the public interests favor dismissal as the English

courts have a far greater interest than the District of Columbia in adjudicating a derivative matter concerning an English company with a board of directors whose members are primarily English. (Motion to Dismiss 24-32.)

These issues too can be decided on the papers without need for discovery. In support of the Motion to Dismiss, the BAE plc Defendants have submitted the Declaration of David Parkes, the Company Secretary of BAE plc. Mr. Parkes, under penalty of perjury, gives the facts about the locations of BAE plc's offices, operations, and corporate books and records (England). The BAE plc Defendants also submitted declarations of the Individual BAE plc Defendants, each of whom states under penalty of perjury his tenure on the BAE plc board of directors and the location of his residence and office (again, primarily England). Plaintiff is free to oppose application of the *forum non conveniens* doctrine by its briefing and its identification of other matters to consider under the *Piper Aircraft* factors, if it can identify any.

Plaintiff makes a half-hearted assertion that it needs discovery to oppose the *forum non conveniens* argument (Motion 2), but that is obviously incorrect. Not only is discovery not required, *see Sinochem*, 127 S. Ct. at 1192, but courts in this Circuit routinely grant *forum non conveniens* dismissal based merely on the pleadings and affidavits submitted by the parties. *See, e.g.*, *BPA Int'l Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 85 (D.D.C. 2003); *Croesus EMTR Master Fund L.P. v. Federative Republic of Brazil*, 212 F. Supp. 2d 30, 41-42 (D.D.C. 2002). Indeed, one of the purposes of the *forum non conveniens* doctrine is to foreclose the likelihood that the court and parties will be forced to engage in burdensome discovery in a forum that is inappropriate and inconvenient, as the District of Columbia is for this case given that nearly all the witnesses and documents are in England. Consequently, this Court can dismiss this

matter on the ground of *forum non conveniens* without discovery and without reaching issues of personal jurisdiction.

> **B.    Engaging in Unnecessary Personal Jurisdiction Discovery Now Would Embroil the Court in Competing Considerations Arising from the Pending Criminal Investigation**

Plaintiff's request for expedited jurisdictional discovery is all the more inappropriate and burdensome due to the ongoing Department of Justice investigation that Plaintiff carelessly discounted at the February 5 *ex parte* TRO hearing.  As this Court recognized during the hearing, the Department of Justice investigation will complicate any civil discovery at this time:

> But the long and short of it is that *this civil matter will necessarily have to trail any criminal investigation until that criminal investigation is either completed with or without prosecution?* . . . I'm assuming that you have successful defenses to those legal arguments [raised in the motions to dismiss] for purposes of my question.  And so let's say we're fast forward, we're now in April.  I've decided, the motions to dismiss are denied.  *It's still going to be very difficult to get real discovery going in the civil case because of the pending criminal matters.*

 (TRO Hr'g Tr. 19 (emphasis added).)   The Court correctly identified the problem.  Plaintiff's demand for jurisdictional discovery threatens to embroil the Court in difficult decisions and competing interests resulting from the criminal investigation.

Moreover, Plaintiff's discovery requests implicate national security matters for BAE plc and Her Majesty's Government, as well as the Kingdom of Saudi Arabia.  As stated by Mr. Parkes, BAE plc's company secretary:

> In 1985 the governments of the United Kingdom and the Kingdom of Saudi Arabia entered into arrangements for the provision of military hardware and services known as the Al Yamamah programme.  BAE Systems plc entered into contracts with the government of the U.K. to enable the U.K. to discharge its obligations under those arrangements.  The details of the Al Yamamah programme are classified pursuant to the laws of both the United Kingdom and the Kingdom of Saudi Arabia.

(Parkes Decl. ¶ 11.)  BAE plc's documents and information relating to the Al-Yamamah programme therefore involve matters of classified national security for both the United Kingdom

and the Kingdom of Saudi Arabia.  Yet Plaintiff apparently wants to steer this case into collision with national security issues before this Court has even had the opportunity to rule on the deficiencies of the Complaint.

The dangers of Plaintiff's demand for discovery are heightened because what Plaintiff essentially seeks is merits discovery, not just "jurisdictional" discovery.  Plaintiff's 46 pages of discovery requests, including 26 depositions, 58 document requests and 6 interrogatories to BAE plc, and 35 document requests and 28 interrogatories to each Individual BAE plc Defendant, go far beyond issues of jurisdiction.  The topics and the extreme breadth of the requests reveal Plaintiff's true purpose with its Motion: to obtain information about the merits of the dispute under the guise of making its jurisdictional case.  For example, Plaintiff demands that the BAE plc Defendants "[d]escribe in detail any communication or correspondence you had concerning payments made by BAE to Prince Bandar, including but not limited to communications with any United States or United Kingdom governmental or regulatory body, any bank examiner, PricewaterhouseCoopers LLP or Allen & Overy LLP."  (Blasy Decl. Ex. T, at Interrog. 23.)  There is no jurisdictional theory that would make that information relevant.  Rather, it is an attempt to obtain merits discovery and to invade the secrecy of communications between and among the United States government, the United Kingdom government, and BAE plc.

Other requests are simply so broad as to be ridiculous, for instance the request to the Individual BAE plc Defendants to produce "[a]ll telephone records and other documents reflecting any telephone calls made or received by you to, or from telephone numbers located within the United States" (Blasy Decl. Ex. S, at Req. 15), or to "[i]dentify all communications or meetings you or others acting at your behest have had with persons located in the United States" (Blasy Decl. Ex. T, at Interrog. 1).   These requests do nothing to help the Court decide whether

it has jurisdiction over any defendant in the District and they would be shockingly burdensome to comply with.

Providing the discovery that Plaintiff demands will also implicate the ongoing Department of Justice investigation.  For instance, Plaintiff's requests of BAE plc include "[a]ll documents concerning any communication between you and any United States or United Kingdom regulator or law enforcement personnel or agency concerning BAE's payments to Prince Bandar in the United States."  (Blasy Decl. Ex. S, at Req. 28.)   Several other requests are similar.  (Blasy Decl. Ex. S, at Req. 27, 29.)  Plaintiff seeks "[a]ll documents concerning communications with any United States law enforcement agency, congressional investigatory body, or any bank examiner concerning BAE's accounts at Riggs."  (Blasy Decl. Ex. Q, at Req. 44.)  Plaintiff asks the BAE plc Defendants to "[d]escribe any communication or correspondence you had concerning the alleged unlawful conduct complained of in this action, either before or after such unlawful conduct occurred."  (Blasy Decl. Ex. T, at Interrog. 17.)  Other requests include investigatory materials and even seek to invade the attorney client privilege, for example in the request for "[a]ll documents concerning BAE's preparation or assistance in preparation of high ranking BAE executives for deposition or other forms of testimony in legal proceedings." (Blasy Decl. Ex. Q, at Req. 52.)

Worse, all of this is unnecessary.  Although during the TRO hearing the Court charitably assumed Plaintiff's success in defeating the Motion to Dismiss, that assumption most definitely does not obtain in the instant dispute.  The Court need not assume anything here; all the Court needs to do is to consider the BAE plc Defendants' English law and *forum non conveniens* arguments for dismissal first, reserving decision on dismissal for lack of personal jurisdiction. Should the BAE plc Defendants prevail on just one of the two independent bases, personal

jurisdiction discovery will be irrelevant.  Plaintiff has utterly failed to show why the Court, and

the BAE plc Defendants, should bear the burden of jurisdictional discovery at this stage of the

litigation.  *See Sinochem*, 127 S. Ct. at 1194 (where personal jurisdiction is difficult to determine

and independent grounds for dismissal exist "the court properly takes the less burdensome

course").

Plaintiff has made no attempt to be efficient with its discovery requests, many of which

are so general as to be irrelevant.  For example, in its interrogatories to each Individual BAE plc

Defendant, Plaintiff requests that the individuals "[i]dentify all communications or meetings you

or others acting at your behest have had with persons in the United States" and "[i]dentify any

activities or operations, of whatever nature, in the United States."  (Blasy Decl. Ex. T, at

Interrog. 1, 3.)  Plaintiff demands depositions of each individual defendant which could

conceivably cover any of the more than 100 topics inquired about in Plaintiff's document

requests and interrogatories.  Additionally, the interrogatories, document requests, and requests

for depositions are an impermissible attempt to begin merits discovery.  For instance, Plaintiff

directs the Company to produce "all communications to BAE shareholders, and all drafts thereof

during the Relevant Period" and "[t]ranscripts of all BAE earnings conference calls."  (Blasy

Decl. Ex. Q, at Req. 55, 56.)

Judicial economy and the efficient use of the parties' resources is better served by

reserving jurisdictional discovery.  If the Court, after considering the other arguments raised in

the BAE plc Defendants' Motion to Dismiss, determines that personal jurisdiction is dispositive,

it may order limited discovery and further briefing on the issue at that future point.  *See Edmond

v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991) ("a district court has broad

discretion in structuring discovery"); *cf. White v. Fraternal Order of Police*, 909 F.2d 512, 517

(D.C. Cir. 1990) (describing court's authority to stay discovery pending the resolution of dispositive motion).   The jurisdictional facts will not change between now and the time that the Court decides the other grounds in the Motion to Dismiss, and Plaintiff loses nothing by a postponement of that discovery.   On the other hand, the BAE plc Defendants face potential severe consequences and prejudice, including issues of national security, should Plaintiff's broad discovery be allowed to proceed now.   It is clear that the most prudent course is to defer this discovery dispute until after the Court considers dismissal under English law and on *forum non conveniens* grounds.

## II.      Even if the Court Were to Consider Plaintiff's Request Now, Plaintiff Would Not Be Entitled to Jurisdictional Discovery

### A.      Plaintiff Misstates this Circuit's Precedent Regarding Jurisdictional Discovery

Because Plaintiff both misstates the law of this Circuit and ignores decisions in this Circuit granting dismissal of a case without jurisdictional discovery, we begin by correcting Plaintiff's errors.   Plaintiff asserts "[t]he law of this Circuit is clear that plaintiff is entitled to jurisdictional discovery from each Movant contesting personal jurisdiction."   (Motion 3.) Plaintiff's assertion is flat wrong.   It ignores this Circuit's requirements that a plaintiff (i) make a prima facie showing for jurisdiction over the defendant, (ii) or, if unable to do that, demonstrate that discovery is likely to produce facts supporting the plaintiff's specific jurisdictional theory.   It also ignores this Court's role as the gatekeeper to jurisdictional discovery.

Lack of personal jurisdiction is an affirmative defense that, once raised by the defendant, requires the plaintiff to demonstrate the court's jurisdiction.   *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1090 (D.C. Cir. 1998); *see* Fed. R. Civ. P. 12(b)(2).   The plaintiff may satisfy the burden of demonstrating the court's personal jurisdiction over each

defendant at this stage of the litigation by making a prima facie showing of pertinent jurisdictional facts that support the jurisdictional theory the plaintiff asserts. *See Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). When a district court is asked to exercise its diversity jurisdiction, as this Court has been, the pertinent facts are the defendant's contacts with the District. *See, e.g., Roz Trading Ltd v. Zeromax Group, Inc.*, 517 F. Supp. 2d 377, 382-83, 389 (D.D.C. 2007). In short, no entitlement to discovery arises simply because a defendant challenges personal jurisdiction. Rather, the plaintiff must prove, and the Court must find, that discovery is warranted.

Plaintiff's contention that it has satisfied its prima facie showing again mischaracterizes what this Circuit requires. The prima facie showing of personal jurisdiction "cannot be based on mere conclusory allegations," such as those that recite only the legal standard. *Fasolyak v. The Cradle Soc'y, Inc.*, No. 06 Civ. 01126 (TFH), 2007 WL 2071644, at * 3 (D.D.C. July 19, 2007); *see First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). Yet conclusory allegations are all that Plaintiff offers, and they are especially deficient when compared to the BAE plc Defendants' declarations under penalty of perjury setting forth specific jurisdictional facts. A court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Bancoult v. McNamara*, 214 F.R.D. 5, 9 (D.D.C. 2003) (quoting *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000)); *see Fasolyak*, 2007 WL 2071644, at * 3. Courts in this Circuit have therefore determined that they lacked jurisdiction, and also denied jurisdictional discovery, where a plaintiff fails to respond adequately to a defendant's affidavits refuting jurisdictional allegations. *See, e.g., BPA Int'l, Inc. v. Kingdom of Sweden*, 281 F. Supp. 2d 73, 82, 86 (D.D.C. 2003); *Bancoult*, 214 F.R.D. at 13. In *BPA*, the court denied jurisdictional discovery aimed at exploring the corporate relationship

between a defendant and its wholly-owned United States subsidiary. The court noted that the plaintiff offered no evidence "to pierce the corporate veil" between the companies, particularly in light of the defendant's affidavits detailing the separate nature of the companies. *Id.* at 83. The court also found that there was nothing in the record to support the plaintiff's claim that more discovery "would or could be helpful to establish jurisdiction." *Id.* at 86; *see Caribbean Broad. Sys.*, 148 F.3d at 1090 (proper to deny jurisdictional discovery where plaintiff responds to defendant's affidavit evidence with mere speculation). As discussed below, the BAE plc Defendants' detailed declarations should similarly control in this case.

**B.**    **Plaintiff Ignores the Court's Discretion to Determine Whether Jurisdictional Discovery is Warranted by the Theories Asserted, Facts Alleged, and Discovery Sought by a Plaintiff**

While it is correct that a plaintiff that fails to make a prima facie showing of personal jurisdiction may request jurisdictional discovery to attempt to supplement its showing, *see El-Fadl*, 75 F.3d at 676, Plaintiff's accuracy stops at that citation. Jurisdictional discovery is not granted automatically. Rather, a court is required to examine in detail whether Plaintiff has demonstrated that specific discovery inquiries will support its specific jurisdictional theory. *Bancoult*, 214 F.R.D at 10.[3] Absent such a showing, a xourt may deny the jurisdictional discovery a plaintiff seeks. *See, e.g., Caribbean Broad. Sys.*, 148 F.3d at 1089-90 (upholding denial of jurisdictional discovery because plaintiff failed to allege facts connecting the defendant to the District); *Med. Solutions, Inc. v. C Change Surgical LLC*, 468 F. Supp. 2d 130, 135-36 (D.D.C. 2006) (denying jurisdictional discovery because plaintiff failed to show that additional discovery would be beneficial to its case for personal jurisdiction); *Savage v. Bioport, Inc.*, 460

---

[3]    The court in *Bancoult* articulated three instances in which a court could deny jurisdictional discovery: (1) the plaintiff's statements are too bare to support an inference of jurisdiction; (2) the plaintiff responds to the defendant's affidavits with speculative or a complete absence of jurisdictional facts; or (3) the plaintiff fails to make counter-allegations in its own affidavits. *See* 214 F.R.D. at 10.

F. Supp. 2d 55, 62-63 (D.D.C. 2006) (same).  Similarly, a court may deny a request for

jurisdictional discovery where the plaintiff fails to make a "detailed showing of what discovery it

wishes to conduct or what results it thinks such discovery would produce." *Med. Solutions*, 468

F. Supp. 2d at 135 (quoting *Philip Morris*, 116 F. Supp. 2d at 130 n.6)).  In short, this Court is

required to examine the Plaintiff's allegations closely to determine whether Plaintiff's proposed

jurisdictional discovery is justifiable.[4]

### C.    Plaintiff has Failed to Make a Prima Facie Showing of this Court's Personal Jurisdiction Over the BAE plc Defendants or to Establish its Entitlement to Discovery

Applying the standard of precision required by this Circuit's personal jurisdiction

jurisprudence, rather than the automatic entitlement urged by Plaintiff, it is plain that the

jurisdictional theories and factual allegations asserted both in the Complaint and the Motion fail

to either a make prima facie showing of personal jurisdiction or demonstrate that jurisdictional

discovery is warranted.

The allegations in the Complaint that are intended to invoke this Court's personal

jurisdiction are as easily summarized as they are negligible.  As to the Individual BAE plc

Defendants, Plaintiff asserts a legal conclusion:  "[e]ach individual defendant has had substantial

---

[4]    The cases principally relied on by Plaintiff (Motion at 3-4), do not relieve the Plaintiff of its burden of proof.  In *Crane v. Carr*, 814 F.2d 758 (D.C. Cir. 1987), the Court of Appeals vacated the district court's dismissal on personal jurisdiction grounds only after finding that the plaintiff had "pointed to links [the defendant corporation] has with the District . . . sufficient at least to permit further inquiry regarding personal jurisdiction", noted that the defendant had acknowledged several contacts with the District, and expressed concern with the district court's blanket observation that the defendant "had no presence in D.C." *Id*. at 760, 62.  Similarly, in *El-Fadl* the Court of Appeals remanded the case for jurisdictional discovery only after it determined that the plaintiff presented "detailed factual assertions in opposition to [defendant's] assertions . . . that it was not 'doing business' in the District of Columbia within the meaning of § 13-334." 75 F.2d at 673.  The court reasoned that the plaintiff's allegations were not conclusory because they alleged specific transactions and emphasized that, as the result of unrelated litigation involving the defendant that "fortuitously ensued," the plaintiff was able to rebut several statements by the defendant denying specific contacts with the District.  *Id*. at 676.  In both cases, the plaintiff's articulation of a jurisdictional theory was clear and the existing facts tended to support that theory, meriting further discovery.  In the instant case, Plaintiff fails on both counts.

and continuous contacts with Washington, D.C. and the United States," (Compl. ¶ 17).  The rest
of the Complaint fails to identify any contact between the individuals and this District that does
not involve their roles as corporate representatives of BAE.  With regard to BAE plc, the
Complaint ignores the distinction between the English company and its American subsidiary
BAE Inc., assuming that the contacts of one can be imputed to the other without any rationale for
ignoring corporate formalities.  The remainder of the alleged contacts with the District are the
Special Security Agreement which governs BAE Inc.'s ability to provide defense contracting
services in the United States, and an unspecified number of alleged deposits made by BAE plc
into a bank account held at the former Riggs Bank.  (Motion to Dismiss 37-38.)

       Recognizing the infirmity of the Complaint's jurisdictional allegations, Plaintiff tries for
an extra inning in its Motion.  In this attempt to satisfy the prima facie showing, Plaintiff
exaggerates the jurisdictional significance of the few contacts that were pleaded in the Complaint
and belatedly introduces supposedly new "facts" revealed via a private investigator's perusal of
newspapers and magazines.  As to the Individual BAE plc Defendants, Plaintiff argues it has
made a prima facie showing of jurisdiction based on: (i) their activities in the United States on
behalf of BAE plc (Motion 4); (ii) their connection with the deposit of alleged bribe money in
the District (Motion 20-22, 26-29); and (iii) their participation in an alleged civil conspiracy that
included an overt act in the District (Motion 30-31).  As to BAE plc, Plaintiff makes similar
claims but argues most strenuously for a purported alter-ego relationship with BAE Inc.  (Motion
15-16).  We dispose of each argument in turn.

              **1.      Plaintiff has Demonstrated No Basis for This Court to Hold That
                      BAE plc is or Could Be an Alter-Ego of BAE Inc.**

       Plaintiff misstates the law and the facts presented in a sworn declaration to this Court
when it claims that BAE Inc. is an alter-ego of BAE plc under agency principles.  Plaintiff relies

heavily on a seven-year-old decision of a New York district court in a wrongful death case arising from a plane crash, *Cali v. East Coast Aviation Servs. Ltd*, 178 F. Supp. 2d 276 (E.D.N.Y. 2001).  But in that case the court, applying Pennsylvania law, was faced with materially different causes of action than the present case and materially different facts regarding BAE plc and its North American subsidiaries, including, at that time, a joint board of directors. *Id*. at 287.

In the present shareholder derivative case, however, BAE plc has firmly refuted Plaintiff's alter-ego theory by providing facts about the two companies in the declaration under penalty of perjury that BAE plc's company secretary David Parkes submitted to the Court in connection with the Motion to Dismiss.  *See BPA Int'l*, 281 F. Supp. 2d at 82-83 (relying in part of affidavit demonstrating lack of alter-ego relationship).  Mr. Parkes discusses the operations and corporate governance of the two companies:

> BAE Systems plc does not manufacture, distribute or sell products in the United States.  It does not offer or provide services to customers located in the United States.  It does not solicit business in the United States.  It has no offices in the United States.  It does not own or lease real estate in the United States.
>
> . . .
>
> BAE Systems plc owns several United States holding and operating companies.  The main operating company, BAE Systems Inc., is a separate corporate entity which is incorporated in Delaware and headquartered in Rockville, Maryland.  BAE Systems plc and BAE Systems Inc. are parties to a Special Security Agreement with the U.S. Government that allows BAE Systems Inc. to supply products and services of a highly sensitive nature to the U.S. Department of Defense, the U.S. intelligence community, and various other parts of the U.S. Government.  BAE Systems Inc. manages the businesses headquartered in the United States.
>
> The Special Security Agreement with the United States Government requires BAE Systems Inc. to be managed separately from and independently of BAE Systems plc.  Accordingly, the two corporate entities have separate boards of directors (save that there are three individuals who are members of both

boards) and separate management (save for one common executive).  The board of directors of BAE Systems plc consists of 12 members.  The board of directors of BAE Systems Inc. consists of 13 members.  A majority of the directors of BAE Systems Inc. were recruited from outside BAE Systems and appointed because of their independence and their experience with national security issues.  BAE Systems plc does not manage the day to day business and operations of BAE Systems Inc.

(Parkes Decl. ¶¶ 10, 20-21.)  This declaration under penalty of perjury shows that the

organization of the BAE Systems companies is different from what was described in *Cali* and

that BAE plc's relationship with its wholly-owned subsidiary lacks the element of control that is

central to an agency relationship.  *See Cannon Mfg. Co. c. Cudahy Packing Co.*, 267 U.S. 333,

336-37 (1925); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 89-90 (D.D.C.

2004).

Faced with the specific facts in the Parkes Declaration, Plaintiff offers nothing in rebuttal.

Plaintiff merely reiterates the deficient allegations of the Complaint concerning BAE plc's

ownership of BAE Inc., the common brand of the two companies, and that, unsurprisingly, the

parent of a wholly owned subsidiary reports to the public regarding the income it derives from its

subsidiary.  (Motion 6-12, 15-18.)  As discussed in the Motion to Dismiss, it is already well

established in this Circuit that common ownership does not alter-egos make.  *See, e.g., Allen v.

Russian Fed'n*, 522 F. Supp. 2d 167, 195 (D.D.C. 2007) ("The acts of a subsidiary operating

within a particular forum, however, are not ordinarily attributable to a foreign parent

corporation.")  Plaintiff's repeated allusions to the common branding and marketing of BAE plc

and BAE Inc. cannot advance its argument because "joint promotion without more does not

mandate the finding that a subsidiary is a mere shell for its parent."  *Diamond Chem. Co., Inc. v.

Atofina Chems., Inc.*, 268 F. Supp. 2d  1, 9 (D.D.C. 2003).  In short, Plaintiff has submitted

nothing to the Court that would contradict or rebut the declaration of Mr. Parkes, and therefore

Plaintiff has failed to demonstrate that BAE plc and BAE Inc. are alter-egos for purposes of personal jurisdiction (or any other purpose).

> **2.    Plaintiff Cannot Make a Prima Facie Showing of Personal Jurisdiction over the Individual BAE plc Defendants Based on Their Roles as Corporate Agents**

Plaintiff's allegations that the Individual BAE plc Defendants had contacts with this District are premised entirely on activities arising from their service as officers and directors of BAE plc. (Motion 4, 20-27.)[5]  Plaintiff simply cannot point to activities of the Individual BAE plc Defendants in this District that are independent of their roles for BAE plc.[6]  Plaintiff's argument is without foundation in this Circuit's precedent and, to the contrary, ignores an established body of case law that prevents agents of a corporation from being subject to a court's personal jurisdiction because of their activities on behalf of the corporation.

In this District, "[p]ersonal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity.  Thus, the corporation ordinarily insulates the individual employee from the court's personal jurisdiction." *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994); *see also Richard v. Bell Atl. Corp.*, 946 F. Supp. 54,

---

[5]    For instance, in the course of insisting that each Individual BAE plc Defendant is subject to specific jurisdiction under D.C. Code § 13-423(a)(4), Plaintiff argues that it "has shown that Movants regularly conducted business in D.C. (*via BAE*), engaged in a persistent course of conduct in D.C. (*via BAE*), and derived substantial revenue from services rendered in D.C. (*via BAE*)," (Motion 27) (emphasis added).

[6]    Plaintiff has cobbled together a list of alleged private activities in the U.S. by certain of the Individual BAE Systems plc Defendants (*e.g.*, Andrew Inglis "owns a home and three vehicles in Texas"; Sue Birley "[p]reviously served as an adjunct professor with the University of Notre Dame in South Bend, Indiana", Blasy Decl. at 2, 3) but those activities have nothing to do with the jurisdiction of this Court sitting in Washington, D.C.  Plaintiff argues that discovery into the BAE plc Defendants' "nationwide contacts" is pertinent (Motion at 11-12 & n.8), but fails to explain how.  Because Plaintiff has not identified a theory of personal jurisdiction which might rely on nationwide contacts rather than contacts with this District, the request is so broad that it fails to make a "detailed showing of what discovery it wishes to conduct or what results it thinks such discovery would produce." *Med. Solutions*, 468 F. Supp. 2d at 135 (quoting *Philip Morris*, 116 F. Supp. 2d at 130 n.6)).

73-74 (D.D.C. 1996); *Quinto v. Legal Times of Wash., Inc.*, 506 F. Supp. 554, 558 (D.D.C. 1981). That "fiduciary shield doctrine" forecloses Plaintiff's attempt to subject the Individual BAE plc Defendants to the personal jurisdiction of the District's courts based on their corporate contacts, either based on a theory of general jurisdiction, which requires that a person be domiciled, or maintain a principal place of business, in the District, or under D.C. Code § 13-423(a)(4), which requires a person have regular business, a persistent course of conduct, or substantial revenue from activities in the District.[7]

Moreover, Plaintiff's argument cannot find support in the decision of the Alaska state trial court in the *BP plc* case cited in the Motion. (Motion 28-29.) Alaska does not recognize the fiduciary shield doctrine. *See Cramer v. Wade*, 985 P.2d 467, 472 (Alaska 1999). Plaintiff's reliance on the *BP plc* case is an example of the risk of searching for support outside the jurisdiction, while at the same time disregarding the precedent of this Circuit.[8]

---

[7]    Plaintiff's argument under D.C. Code § 13-423(a)(4) fails for a second reason: the absence of an injury to BAE plc in the District. This Circuit's case law generally recognizes the principle that economic injury occurs at the location of the original event causing the injury, rather than any location where damages might be felt. *See Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004); *see also Wenz v. Memery Crystal*, 55 F.3d 1503, 1508 (10th Cir. 1995) (loss or injury resulting from "unauthorized disbursals" occurs where funds are withdrawn). Plaintiff relies on the same precedent but, ignoring its own case law, erroneously asserts that the injury to BAE plc occurred not where funds were *disbursed* but rather where they were *deposited*.

[8]    Plaintiff also invokes the theory of conspiracy jurisdiction (Motion at 6, 30-32), a theory that is disfavored in this Circuit and which Plaintiff pleads inadequately, as an afterthought, in one single paragraph of its Complaint. (*See* Compl. ¶ 158.) A plaintiff asserting the conspiracy theory of jurisdiction "must plead with 'particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy.'" *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997) (citation omitted). This heightened pleading requirement is strictly enforced, and courts in this Circuit have applied the conspiracy jurisdiction theory "'warily'" in light of concerns that it stretches the boundaries of personal jurisdiction permitted by due process. *Jung v. Ass'n of Am. Med. Colls.*, 300 F. Supp. 2d 119, 141 (D.D.C. 2004) (citation omitted). Merely asserting that entities or individuals are co-conspirators or agents of one another is insufficient. *See Jungquist*, 115 F.3d at 1031. Having failed to plead a conspiracy, Plaintiff cannot now seek discovery to buttress jurisdiction under that theory.

### 3. Plaintiff Has Not Alleged Substantial Business Transactions in the District Such as Would Merit Specific Jurisdiction

Plaintiff next asserts that BAE plc and the Individual BAE plc Defendants are subject to the Court's specific personal jurisdiction under D.C. Code § 13-423(a)(1) because they transacted business in the District, and that particular business gave rise to the Complaint. (Motion at 20-21.)  But the most that Plaintiff can muster in support of this jurisdictional theory is a series of payments made from BAE plc into an account at the former Riggs Bank for the benefit of Prince Bandar, allegedly for purposes of bribery.  (Motion at 20-22.)  This occurrence cannot alone be the basis of this court's specific jurisdiction.

This Circuit's precedent requires that Plaintiff assert business of a "substantial character" in order to warrant specific jurisdiction under D.C. Code § 13-423(a)(1).  *See Armco Steel Co., L.P. v. CSX Corp.*, 790 F. Supp. 311, 320 (D.D.C. 1991) (citation omitted).  Here, the isolated bank transactions do not rise to the level necessary to subject a foreign corporation and foreign defendants to suit in the district.  *See generally Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113-14 (1987) (describing the heightened due process concerns that attend foreign entities haled into United States courts).  Plaintiff attempts to describe the alleged deposits as substantial because they related to the alleged bribery scheme, but the argument fails to recognize that, regardless, they are not a substantial transaction in the District.  The transactions are neither the basis of an injury occurring in the District, nor a part of a larger contractual relationship that is centered in the District.  Plaintiff cannot, on the basis of the alleged bank transactions alone, assert that it is consistent with due process to require foreign individuals to litigate this dispute in the District.

## CONCLUSION

For the foregoing reasons, the BAE Systems plc Defendants respectfully request that the

Court deny Plaintiff's request for expedited jurisdictional discovery.

DATED:  March 24, 2008
         New York, New York

                       Respectfully submitted,

                       LINKLATERS LLP
                       LAWRENCE BYRNE (DC Bar # 4761)

                     *Lawrence Byrne / JD*

                       LAWRENCE BYRNE

                       Of Counsel:
                       Mary K. Warren
                       Sterling Darling
                       Kristopher Kerstetter

                       LINKLATERS LLP

                       1345 Avenue of the Americas
                       New York, NY  10105
                       Telephone:  212-903-9105
                       Facsimile: 212-903-9100

                       Attorneys for Nominal Defendant BAE Systems plc
                       and Individual Defendants Sir Robin Biggam, Sue
                       Birley, Keith Clark Brown, Philip J. Carroll, Ulrich
                       Cartellieri, Sir Richard Harry Evans, Christopher V.
                       Geoghegan, Michael J. Hartnall, Walter P.
                       Havenstein, Lord Alexander Hesketh, Andrew
                       George Inglis, Ian G. King, Michael Lester, Sir
                       Charles Beech Gordon Masefield, Sir Peter James
                       Mason, Steve Lewis Mogford, Richard (Dick) L.
                       Olver, Michael Denzil Xavier Portillo, Roberto
                       Quarta, Mark H. Ronald, George W. Rose, Sir
                       Anthony Nigel Russell Rudd, Michael J. Turner,
                       Peter A. Weinberg, and John Pix Weston

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES'<br>RETIREMENT SYSTEM, Derivatively on<br>Behalf of BAE SYSTEMS PLC, )<br><br>Plaintiff, )<br><br>vs. )<br><br>RICHARD (DICK) L. OLVER et al., )<br><br>Defendants, )<br>- and – )<br><br>BAE SYSTEMS PLC, an England and Wales<br>corporation, )<br><br>Nominal Defendant. ) | Civil No. 1:07-cv-01646<br><br>Assigned to: Judge Rosemary M. Collyer |

**<u>APPENDIX OF UNREPORTED CASES</u>**

(C) 2008 West Group
Page 2
(Cite as: 2007 WL 2071644 (D.D.C.))



Only the Westlaw citation is currently available.

United States District Court,

District of Columbia.

Dmitry FASOLYAK, Plaintiff,
v.
THE CRADLE SOCIETY, INC., Defendant.
Civil Action No. 06-01126(TFH).

July 19, 2007.

John David Quinn, Claxton, Sale & Quinn, P.C., Washington, DC, for Plaintiff.

Robert P. Lynch, Macleay, Lynch, Gregg & Lynch, PC, Washington, DC, for Defendant.

MEMORANDUM OPINION

THOMAS F. HOGAN, Chief Judge.

*1 Pending before the Court are two motions filed by the defendant, The Cradle Society, Inc., the first of which requests that this case be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and the second of which seeks a protective order prohibiting the plaintiff, Dmitry Fasolyak, from conducting any discovery, presumably until the Court makes this determination about whether it has personal jurisdiction over the defendant. Also pending before the Court is the plaintiff's Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which requests that the Court enter an order permitting discovery to proceed immediately and compelling the defendant to attend a scheduling conference. For the reasons set forth below, the Court finds that it lacks personal jurisdiction but that jurisdiction may be appropriate in the United States District Court for the Northen District of Illinois. Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631.

BACKGROUND

This case is traveling a road to resolution that involves detours through multiple jurisdictions. The plaintiff is an individual who resides in Maryland and the defendant is a not-for-profit corporation incorporated in Illinois, which also is where its principal office is located. Compl. ¶¶ 1-2. The plaintiff alleges that he and the defendant entered into a contract according to which the defendant agreed to pay the plaintiff a fee for consulting services to establish and coordinate an international adoption program in the Russian Federation for the purpose of placing Russian children with adoptive parents in the United States. [FN1] Compl. ¶¶ 8-11; Rule 16(b) Statement 1 (Plaintiff's Statement of Fact). The plaintiff claims that he set up an office in Moscow for the defendant, identified individuals the defendant could employ to process adoptions in Russia, and assisted to secure accreditation from the Russian government to authorize the defendant to conduct adoptions in that country, among other services performed. Rule 16(b) Statement 2. According to the plaintiff, however, after the Moscow office became operational the defendant engaged in a number of activities that were intended to "circumvent" the plaintiff "to avoid paying his fee" and otherwise interfere with his contract performance, which allegedly culminated in the defendant wrongfully terminating the contract and defaming the plaintiff. Id.; Compl. ¶¶ 92-100, 155. Accordingly, the plaintiff filed the instant lawsuit against the defendant seeking (1) damages for breach of contract, intentional misrepresentation (fraud and deceit), negligent misrepresentation, unjust enrichment, quantum meruit, and tortious interference with prospective economic advantage, (2) an injunction to prevent the defendant from further defaming or disparaging him, and (3) "a full accounting of the operations at the Moscow office and of defendant related to Russian adoptions." Compl. ¶¶ 101-166; Rule 16(b) Statement 3.

FN1. The Agreement between the parties, which is dated January 1, 2004, provides that the defendant would "cause" adoptive families to pay a fee in the amount of $16,500.00. Agreement ¶ 2(a) (Jan. 1, 2004). The Court presumes this fee benefited the defendant, notwithstanding the fact that the fee was to be made payable to a different name, i.e., Alexander Sukharev. Id.

*2 This is not the first jurisdiction where the plaintiff filed suit, however. The plaintiff originally filed a lawsuit against the defendant in the United States District Court for the District of Maryland, asserting what appear to be the very same claims advanced in the present case. Fasolyak v. The Cradle Society, Inc., No. 06-CV-00622-AW, slip op. at 4 (D. Md. June 14, 2006). On June 15, 2006, Judge Alexander Williams, Jr. issued a Revised Memorandum Opinion in the Maryland case granting the defendant's Motion to Dismiss for lack of personal jurisdiction and indicating the court's intent to transfer the case to the Northern District of Illinois. Id. at 1. Judge Williams determined that the contract's place of performance was Russia, the fact that the defendant sent letters, e-mails, and made telephone calls to the plaintiff in Maryland did not establish substantial contacts sufficient to exercise personal jurisdiction over the defendant, the plaintiff failed to prove "to a sufficient degree" that the defendant was ever in Maryland, the acts

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
Page 3
(Cite as: 2007 WL 2071644 (D.D.C.))

that caused the alleged injuries occurred in Russia, "the technical fact that Maryland served as the place of contracting is not a sufficient contact ... to have personal jurisdiction over the [d]efendant," and the other factors outlined in Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), favored jurisdiction in Russia and weighed against the exercise of personal jurisdiction by the court in Maryland. Judge Williams ultimately concluded that "although a choice of law provision is not a part of the contacts analysis from International Shoe or Burger King, having a choice of law provision weighs in favor of giving jurisdiction over a case to the forum specified by the contract. Here, the parties have stipulated that the contract should be governed by the law of the state of Illinois, so Illinois would be a more appropriate forum to litigate this dispute." Fasolyak, No. 06-CV-00622-AW, at 12. At the plaintiff's request, however, the court eventually dismissed the case rather than transfer it. Meanwhile, the defendant reportedly filed a lawsuit against the plaintiff in an Illinois state circuit court alleging that the plaintiff failed to perform the contract as promised. Pl.'s Mem. of Law In Opp'n to Def .'s Mot. to Dismiss 7-8 [hereinafter "Pl.'s Opp'n Br. ----"].

The case subsequently found its way to this Court on June 21, 2006, when the plaintiff essentially refiled his Complaint in this jurisdiction. The defendant responded to the instant lawsuit in the same fashion that it responded to the previous one filed in Maryland--the defendant moved for dismissal on the ground that, like the federal district court in Maryland, this Court lacks personal jurisdiction over the defendant because the defendant "is a foreign corporation organized under the laws of Illinois, its principal place of business is in the State of Illinois, and the Defendant does not have sufficient minimum contacts with the District of Columbia to establish personal jurisdiction." Def.'s Mot. to Dismiss 1. While the defendant's motion to dismiss was pending before this Court, the plaintiff secured two subpoenas from the United States District Court for the Northern District of Illinois compelling witnesses to appear for depositions and produce specified documents. These subpoenas were the subject of the defendant's pending Motion for Protective Order, which seeks an order from the Court prohibiting all discovery. Def.'s Mot. for Protective Order 3. The plaintiff countered by filing a Motion to Compel Discovery and Alternative Motion to Compel Rule 26(f) Conference and Motion for Emergency Hearing, which, as is self evident, seeks an order compelling the defendant to engage in discovery. Pl.'s Mem. of P. & A. in Supp. of Mot. to Compel 1.

### DISCUSSION
I. The Defendant's Motion To Dismiss

**\*3** Because the question of personal jurisdiction is a

threshold inquiry the resolution of which will, ipso facto, determine the outcome of the other pending discovery motions, the Court will address that issue first, as indeed it must given that "[j]urisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." [FN2] Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). The plaintiff bears the burden of establishing a factual basis for exercising personal jurisdiction over the non-resident defendant. Mwani v. Bin Laden, 417 F.3d 1, 7 (D.C.Cir.2005); Crane v. New York Zoological Soc'y, 894 F.2d 454, 456 (D.C.Cir.1990). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Crane, 894 F.2d at 456. Because no evidentiary hearing was held, the plaintiff may carry his burden by making a prima facie showing that personal jurisdiction exists. Edmond v. United States Postal Serv. Gen. Counsel, 949 F.2d 415, 424 (D.C .Cir.1991); Reuber v. United States, 750 F.2d 1039, 1052 (D.C.Cir .1984). This prima facie showing must be premised on specific facts, however, and cannot be based on mere conclusory allegations. GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C.Cir.2000).

FN2. Subject matter jurisdiction is not at issue in this case.

The plaintiff avers that the Court may exercise general jurisdiction over the non-resident defendant pursuant to D.C.Code § 13-422 and specific jurisdiction pursuant to D.C.Code § 13-423, which is the District of Columbia's long-arm statute. [FN3] Compl. ï 3. In addition, in his opposition brief filed in response to the defendant's Motion to Dismiss, the plaintiff argues that the Court also may exercise personal jurisdiction over the defendant because the defendant "is doing business here," which presumably is a reference to D.C.Code § 13-334(a), a statute that appears to involve only service of process and courts have construed to confer general jurisdiction. [FN4] Pl.'s Opp'n Br. 10; El-Fadl v. Central Bank of Jordan, 75 F.3d 668, 673 n. 7 (D.C.Cir.1996) (noting that the District of Columbia Court of Appeals ("D.C. Court of appeals") has construed § 13- 334(a) to " 'confer[ ] jurisdiction upon trial courts here over foreign corporations doing substantial business in the District of Columbia, even though the claim arose from a transaction which occurred elsewhere, and hence, outside the scope of the long-arm statute' " (quoting Guevara v. Reed, 598 A.2d 1157, 1159 (D.C.1991))). The Court will address in turn each of the plaintiff's proffered bases for exercising personal jurisdiction.

FN3. The Court's exercise of personal jurisdiction

(C) 2008 West Group
Page  4
(Cite as: 2007 WL 2071644 (D.D.C.))

over the defendant in this diversity case "turns on local (state) law, here, District of Columbia law." Crane, 814 F.2d at 762. The Constitution, however, acts as a restraint on the scope of personal jurisdiction authorized by District of Columbia law. Id. "Due process sets the outer boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit." Id.

FN4. The Court makes this presumption based on the fact that the plaintiff cited Gorman v. Ameritrade Holding Corp., 293 F.3d 506 (D.C.Cir.2002), which is a case analyzing general jurisdiction pursuant to D.C.Code § 13-334(a). Pl.'s Opp'n Br. 10.

A. D.C.Code § 13-422

Any argument that this Court may exercise general personal jurisdiction over the defendant pursuant to D.C.Code § 13-422 is easily resolved. The statute provides that "[a] District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C.Code § 13-422. Accord El-Fadl, 75 F.3d at 671-72. A review of the plaintiff's Complaint and Memorandum of Law In Opposition to Defendant's Motion to Dismiss reveals no facts showing that the defendant is organized under the laws of the District of Columbia or maintains its principal place of business here. To the contrary, the plaintiff's Complaint and Memorandum of Law both concede that the defendant is organized under the laws of the state of Illinois and has its principal office there. Compl. ï 2; Pl.'s Opp'n Br. 1. Furthermore, the plaintiff makes no mention of D.C.Code § 13-422 in its brief opposing the defendant's Motion to Dismiss, stating instead that "[t]he Court's jurisdiction is predicated ... on the District of Columbia long-arm statute," which is D.C.Code § 13-423. As mentioned above, the plaintiff's only argument in favor of exercising general personal jurisdiction is premised on the assertion that the defendant "does business" in the District of Columbia, which refers to D.C.Code § 13-334(a) and not D.C.Code § 13-422. So it appears the plaintiff has abandoned any claim that the Court may exercise general personal jurisdiction over the defendant pursuant D .C.Code § 13-422. [FN5]

FN5. Even if the plaintiff were to challenge the notion that he abandoned asserting general personal jurisdiction pursuant to D.C.Code § 13-422, the D.C. Circuit's decision in El-Fadl suggests that jurisdiction under that statute is inappropriate when the defendant is organized under the laws of another jurisdiction and maintains its principal place of business in that other jurisdiction. 75 F.3d at 672 n. 6 (affirming "the district

court's holding that it lacked jurisdiction under § 13-422 because the record shows that Petra Bank is organized under the laws of Jordan and maintains its principal place of business there").

B. D.C.Code § 13-423

*4 The plaintiff next invokes two provisions of D.C.Code § 13-423 that he asserts authorize exercising specific personal jurisdiction over the defendant in this case, namely § 13-423(a)(1), which permits personal jurisdiction over a defendant "transacting any business in the District of Columbia," and § 13-423(a)(3), which permits personal jurisdiction over a defendant "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia." [FN6] D.C.Code § 13-423; Pl.'s Opp'n Br. 1, 4; Compl. ï 3. As the plaintiff recognizes, see Pl.'s Opp'n Br. 4, when personal jurisdiction is asserted under either of these two sections of the statute, the claims for relief must arise from the very acts that establish jurisdiction. D.C.Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.").

FN6. The plaintiff inexplicably failed to identify exactly which provision(s) of D.C.Code § 13-423 relating to tort injuries he is relying on to assert personal jurisdiction. Because he claimed in his opposition brief that the "defendant's action in the District of Columbia caused harm to the plaintiff," the Court presumes that the plaintiff is asserting jurisdiction in accordance with D.C.Code § 13-423(a)(3) and will address the matter accordingly. Pl.'s Opp'n Br. 9-10 (stating that his "tort claims for negligent and intentional misrepresentation are based on the actions of Cradle Society in the District of Columbia").

To find that personal jurisdiction exists over a non-resident defendant in accordance with either of the asserted provisions of D.C.Code § 13-423 "a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the ... long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." GTE New Media Servs., 199 F.3d at 1347. The United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") has recognized that "Section (a)(1)'s 'transacting any business' clause generally has been interpreted to be coextensive with the Constitution's due process requirements" whereas "Section (a)(4) has been construed more narrowly...." [FN7] Id. Moreover, "[e]ven when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
Page 5
(Cite as: 2007 WL 2071644 (D.D.C.))

the permissible bounds of the Due Process Clause." Id. It is established beyond peradventure that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

FN7. Because D.C.Code § 13-423(a)(1) is coextensive with the Due Process Clause the Court's analysis merges into a "single inquiry" that asks whether the defendant established minimum contacts with the forum. GTE New Media Servs., 199 F.3d at 1347.

To support his claim that the defendant "transacted business" in the District of Columbia sufficient to warrant exercising specific personal jurisdiction pursuant to D.C.Code § 13-423(a)(1) the plaintiff submitted a sworn affidavit in which he states that he met with the defendant's officers and employees in the District of Columbia on numerous occasions to discuss the contract and the parties' business relationship (Pl.'s Opp'n Br. Ex. 1 at ïï 5- 7, 14-17 [hereinafter "Fasolyak Aff. ï ----"] ), [FN8] he and one of the defendant's officers met with the defendant's attorney at the attorney's office in the District of Columbia (Fasolyak Aff. ï 8); he and his agents visited the Embassy of the Russian Federation and the Russian Consulate in the District of Columbia to "perform activities" and meet with embassy officials to secure accreditation, visas, or other documentation necessary for the defendant to comply with official adoption procedures or otherwise travel to the Russian Federation (Fasolyak Aff. ïï 9-10, 18-22), he met Russian Federation officials in the District of Columbia to discuss the defendant's business (Fasolyak Aff. ïï 11-12), and he helped arrange a United States senator's visit to the Russian Federation (Fasolyak Aff. ï 13). These factual allegations are consistent with those made in the plaintiff's Complaint. Compl. ïï 14-26, 33, 35-36, 47, 50-51, 57, 93.

FN8. Although the affidavit attached as Exhibit 1 to the plaintiff's opposition brief contains a case caption for the lawsuit filed in Maryland, it is the Court's understanding that this particular affidavit was filed for the first time in this case.

**\*5** The defendant elected not to counter the plaintiff's assertions of fact with its own affidavit but relied instead on the arguments raised in its legal briefs supporting the Motion to Dismiss, which generally declare that the parties' contract anticipated performance only in the Russian Federation (Def.'s Mot. to Dismiss 4; Def.'s Reply Br. 2, -3), the defendant never engaged in any

activities in the District of Columbia sufficient to subject it to personal jurisdiction (Def.'s Mot. to Dismiss 4), none of the alleged injuries arose from contacts the defendant had with the District of Columbia (id.), the United States District Court for the District of Maryland already determined that the contract was performed in Russia and the federal court in Illinois should have jurisdiction (id.; Def.'s Reply Br. 2), "the defendant's duties and alleged wrongdoing were related to actions in Russia" (Def.'s Mot. to Dismiss 2, 4), and, generally, that the defendant "was not advertising or selling anything in Washington D.C." (Def.'s Reply Br. 4). The defendant further argues that the plaintiff's allegation that the parties' contract required him to process adoption applications at the Embassy of the Russian Federation "is blatantly false." Def.'s Reply Br. 2.

Whatever might be said about the defendant's contacts with the District of Columbia, it strikes the Court that traditional notions of fair play and substantial justice counsel against exercising specific personal jurisdiction pursuant to D.C.Code § 13-423(a)(1) under the particular circumstances presented here. "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,' " Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 775 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)), and considers whether the defendant purposely availed itself of the privilege of conducting activities in the forum such that it could anticipate being haled into court there, Burger King Corp., 471 U.S. 462, 474-75 (1985). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." Burger King Corp., 471 U.S. at 475 (internal quotations and citations omitted).

The Court notes from the outset that, with the exception of nebulous meetings with the plaintiff that are alleged to have taken place in the District of Columbia, see Discussion infra, the only "contacts" the defendant itself had with this forum are imputed from the plaintiff's unilateral activities at the Embassy of the Russian Federation and the Russian Consulate for the purpose of securing required accreditation, providing required governmental documentation regarding Russian adoptions, and obtaining visas for travel, or the contacts relate to meetings the plaintiff alone had with Russian Federation officials. See Fasolyak Aff. ïï 9-13, 18-22. District of Columbia law, however, precludes plaintiffs from "rely[ing] on [their] own activities, rather than those of a defendant, to establish the requisite minimal contacts for personal jurisdiction." Environmental Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc., 355 A.2d 808, 812 (D.C.1976) (en banc) ("The mere fact that a nonresident has retained the professional services of a District of

(C) 2008 West Group
Page 6
(Cite as: 2007 WL 2071644 (D.D.C.))

Columbia firm, thereby setting into motion the resident party's own activities within this jurisdiction, does not constitute an invocation by the nonresident of the benefits and protections of the District's laws."). See also Helicopteros Nationales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"). Accord Burger King Corp., 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State.").

*6 The plaintiff nevertheless contends that the decisions in Helmer v. Doletskaya, 393 F.3d 201 (D.C.Cir.2004), Ulico Cas. Co. v. Fleet Nat'l Bank, 257 F.Supp.2d 142 (D.D.C.2003), and Burger King Corp., supra, compel the conclusion that exercising personal jurisdiction is appropriate when the contract is substantially performed in the District of Columbia by either the plaintiff or the defendant. Pl.'s Opp'n Br. 5-6. These cases do not support that proposition. Each of the cited cases hinged to a great deal on the fact that they involved claims advanced by forum residents regarding contracts that had a substantial connection to the forum. The decision in Helmer involved a contract between a resident plaintiff and non-resident defendant for repayment of a credit card, which the court determined had a substantial connection to the District of Columbia "[b]ecause the contract was formed in the District of Columbia, the corpus of the contract involved credit cards issued to a District of Columbia resident and registered with a District of Columbia address, and the parties contemplated future repeated contacts with the District of Columbia as a condition of performance...." 393 F.3d at 206. Similarly, in Ulico Cas. Co ., our colleague on this Court expressly cited the District's substantial interest in providing a convenient forum to address its citizens' wrongs as a basis for exercising specific personal jurisdiction over a nonresident corporation that entered into a banking contract with a resident corporation. 257 F.Supp.2d at 975. The same can be said of the Supreme Court's decision in Burger King Corp., which involved claims for breach of a franchise agreement between resident and non-resident corporate parties where the non-resident defendant had no significant presence in the forum but was found to have deliberately negotiated with the resident plaintiff for the franchise, "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts" with the plaintiff in the disputed forum, and voluntarily accepted "the long-term and exacting regulation of his business" by the resident plaintiff. 471 U.S. at 479-80. In contrast, the contract in this case, which anticipates performance in the

Russian Federation, [FN9] has no substantial connection to the District of Columbia and was executed by non-resident parties. Thus, the policies served by the decisions in the cited cases lose their force when, as is the case here, both parties to the dispute are nonresidents, the contract contemplates no performance in the District of Columbia, and the defendant engaged in no act directed at District citizens or acted pursuant to a contract that anticipated future consequences here. See Helmer, 393 F.3d at 205 (indicating that "a court must evaluate the 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendant 'purposefully established minimum contacts within the forum" (quoting Burger King Corp., 471 U.S. at 479)).

FN9. This Court is inclined to agree with our sister court in Maryland that the contract anticipates performance of its obligations primarily in the Russian Federation. See Fasolyak, No. 06-CV-00622-AW, slip op. at 7-8. The contract makes no mention of any work to be performed specifically at the Embassy of the Russian Federation or generally in the District of Columbia, albeit the plaintiff's duties are broadly defined to encompass the provision of "advice and coordination to The Cradle with respect to all activities in the Russian Federation which are necessary to achieve the placement of children from the Russian Federation with adoptive parents residing in the United States." Compl. Ex. 1 (emphasis added). The contract expressly states, however, that the plaintiff shall support the program "within the Russian Federation," assist in identifying staff "in       the Russian Federation" to perform program functions, advise the defendant about "practices and procedures required by the Government of the Russian Federation" and "with respect to all actions necessary to maintain the accreditation of The Cradle by the Russian Federation," ensure that "all actions are taken in Russia which are necessary to complete adoptions under Russian law and regulations," and ensure the program "operates in compliance with all applicable Russian laws and regulations." Id. Accordingly, the Court finds unpersuasive the plaintiff's assertion that "substantial performance" took place in this forum, particularly since the affidavit the plaintiff submitted in the prior litigation indicates that he performed "a significant portion" of the contract's requirement to set up, promote, manage and coordinate the defendant's Russian Program, as well as to monitor and supervise work on the defendant's adoption cases, in Maryland. Def.'s Reply Br. Ex. A ¶ 11.

*7 At this juncture it is worthwhile to point out that, although the defendant's business involves placing children from the Russian Federation with adoptive families in the United States, the plaintiff made no allegation that any adoptions performed by the defendant

(C) 2008 West Group
Page 7
(Cite as: 2007 WL 2071644 (D.D.C.))

involve residents of the District of Columbia. Nor has the plaintiff alleged that the defendant solicits adoptive families or otherwise markets its services in the District of Columbia, whether by telephone calls into the District, advertising in publications that circulate in the District, or via an internet site used by District residents. See, e.g., id. at 476 (noting that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted"). Indeed, according to the plaintiff, the only contacts the defendant itself had with the District of Columbia involved meetings the defendant's officers and employees attended with the plaintiff, who is a resident of Maryland and runs a consulting business in Maryland. Fasolyak Aff. ï 2. See also Keeton, 465 U.S. at 780 (acknowledging that a plaintiff's residence "may well play an important role in determining the propriety of entertaining a suit against the defendant in the forum" but "lack of residence will not defeat jurisdiction established on the basis of defendant's contacts"). The plaintiff offered no indication that the decision to hold meetings in the District of Columbia related in any way to business the defendant conducts here, versus the location being a mere fortuitous convenience (the plaintiff resides in Potomac, Maryland, which is a suburb of the District of Columbia). [FN10] The plaintiff's allegations with respect to the District of Columbia meetings are conclusory and offer only generalized time frames with no explanation about what the meetings entailed other than nondescript and self-serving statements that the discussions involved "the business" of the Agreement, "performance of the Agreement," or were "to advance the purpose of the Contract." Fasolyak Aff. ï 5, 7, 14-15; Compl. ï 23; Pl.'s Opp'n Br. 9. A common sense approach dictates that the defendant could not have anticipated being haled into court in the District of Columbia when it engaged in no commerce or other activities directed at District of Columbia residents [FN11] and merely attended meetings here with another non-resident. Particularly when those meetings related to business conducted in the Russian Federation pursuant to a contract that our sister court already determined was formed in Maryland, involved performance in the Russian Federation the consequences of which would be felt in Russia, [FN12] and that by stipulation was governed by Illinois law. Fasolyak, No. 06-CV-00622-AW, slip op. at 7-12.

FN10. The plaintiff acknowledged that meetings also were held in Maryland. Fasolyak Aff. ï 7.

FN11. The D.C. Court of Appeals has stated that "[a] critical inquiry is whether [the defendant] 'has purposefully directed its activities at residents of the forum.' " Holder v. Haarmann & Reimer Corp., 779 A.2d 264, 269-70 (D.C.2001) (quoting Shoppers Food Warehouse v. Moreno, 746 A.2d 320, 331 (D.C.2000)).

FN12. The D.C. Court of Appeals has emphasized that "the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here ." Mouzavires v. Baxter, 434 A.2d 988, 992 (D.C.1981) (per curium). No

This Court also concurs with our sister court in Maryland with regard to the significance of the choice-of-law provision. In Burger King Corp., the Supreme Court admonished the lower court for failing to give "sufficient weight" to the choice-of-law provisions in the parties' franchise agreement. The Supreme Court stated that a choice-of-law provision was not sufficient on its own to confer jurisdiction but nonetheless "reinforced" the defendant's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." 471 U.S. at 481-82. It seems to this Court that the same logic also would apply inversely in this case to reinforce the Court's conclusion that the non-resident defendant did not purposely avail itself of the privilege of conducting activities in the District of Columbia such that it could anticipate being haled into court here.

*8 The Court also remains unconvinced that it may exercise specific personal jurisdiction over the defendant pursuant to D.C.Code § 13- 423(a)(3), which, as mentioned previously, permits personal jurisdiction over a defendant who causes tortious injury in the District of Columbia by an act or omission that also occurred in the District of Columbia. D.C.Code § 13- 423(a)(4). As a threshold matter, the plaintiff is unable to make out a prima facie case that jurisdiction exists under this section of the statute because he failed to identify any tortious act or injury that occurred in the District of Columbia. At best, the plaintiff argues in his opposition brief that the defendant represented to him that if he secured re-accreditation the defendant would pay him fees for every Russian adoption the defendant processed. Pl.'s Opp'n Br. 10. But the plaintiff never asserted any facts showing that the misrepresentation was made in the District of Columbia, for example during one of the meetings he claims he had with the defendant's officers and employees. The plaintiff's citations to his Complaint are to no avail--none of the paragraphs he cited state any facts demonstrating how the misrepresentation came about, whether via a telephone call, meeting, electronic mail, or some other form of communication. Compl. ïï 48-55. More to the point, the plaintiff failed to aver a single fact in his Complaint indicating where the alleged misrepresentation occurred. As a consequence, the Court has no factual basis to support the exercise of jurisdiction over defendant based on tortious acts occurring in the District of Columbia. The same observations apply to the

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
Page 8
(Cite as: 2007 WL 2071644 (D.D.C.))

plaintiff's assertions about tortious injury--at no time has the plaintiff asserted any fact to support his contention that he was injured in the District of Columbia by any act committed by the defendant. At their essence, the plaintiff's claims of tortious acts and injuries are revealed to be bare conclusory allegations. As a result, the plaintiff has failed to allege specific facts sufficient to meet his burden of establishing a prima facie case for the exercise of personal jurisdiction under this statute. GTE New Media Servs., 199 F.3d at 1349 (holding that "conclusory statements and intimations" were not enough to establish personal jurisdiction).

C. D.C.Code § 13-334

The plaintiff's final argument asserts that the Court may exercise general personal jurisdiction over the defendant pursuant to D.C.Code § 13-334, which has been construed by the courts to authorize general personal jurisdiction over non-resident defendants if the defendant is "doing business" in the District of Columbia, regardless of whether the actual claims arise from the defendant's contacts with the District. See, e.g., Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509 (D.C.Cir.2002). The D.C. Court of Appeals has held that the scope of jurisdiction under D.C.Code § 13-334 is coextensive with the Due Process Clause. Id. at 510. "For general jurisdiction, the Due Process Clause requires that the defendant have 'continuous and systematic general business contacts' with the forum." El-Fadl, 75 F.3d at 675. Given that this is a more rigorous standard than the "minimum contacts" necessary to establish specific personal jurisdiction, which the Court has found lacking in this case, it logically follows that the same contacts that were insufficient to support the exercise of specific jurisdiction cannot suffice to support the exercise of general jurisdiction.

**\*9** To recapitulate, the facts presented to the Court indicate that the defendant is involved in the business of facilitating the adoption of Russian children by parents in the United States. No facts were alleged, however, to show that the defendant provides adoption services to District of Columbia residents or markets any of its services here. The plaintiff alleged that the defendant met with him multiple times in the District of Columbia, but the plaintiff offered no specific facts to tie those meetings to business the defendant conducts here versus business conducted in Russia or elsewhere. Nor did the plaintiff show that the meeting with the defendant's counsel was in any way meaningful for the purpose of the Court's analysis. The plaintiff also omitted any facts demonstrating that those meetings were systematic and not occasional. So, with regard to the contacts the defendant itself had in the District of Columbia, the Court finds that they fall far short of the standard for exercising

specific personal jurisdiction.

As was the case in the prior analysis, the remaining factual allegations advanced by the plaintiff involve his own acts and conduct in the District of Columbia, such as meeting with Russian Federation officials and conducting activities at the Embassy of the Russian Federation and the Russian Consulate. The Court is disinclined to agree that such acts demonstrate continuous and systematic business contacts with the District of Columbia in light of controlling precedent recognizing that general jurisdiction is inappropriate when a defendant's presence in this particular forum is necessitated by virtue of the fact that this is the only place where federal agencies, embassies, and other such instrumentalities are located. See Fandel v. Arabian Am. Oil Co., 345 F.2d 87, 88-89 (D.C.Cir.1965).

In Fandel, the D.C. Circuit considered whether it would be appropriate to exercise general personal jurisdiction over a Delaware oil-production corporation based on the fact that it maintained an office in the District of Columbia for diplomatic and intelligence relationships with government and private agencies interested in Middle East affairs. Id. at 88. Distinguishing the activities performed by the corporation's District office from those of a company "whose agents in Washington are seeking contracts, either with our own Government or with other governments represented in Washington," the D.C. Circuit ultimately concluded that the corporation's presence was "of a kind we think this court has heretofore regarded as falling outside the range of Congressional contemplation of the scope of 'doing business' as that phrase is used in 13 D.C.Code § 334." Id. at 89. The D.C. Circuit cited a number of cases that it observed "constitute a recognition that Washington presents many business organizations with special needs for a continuous and ponderable physical presence there, which needs are not those customarily associated with strictly commercial operations; and that the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction." Id.

**\*10** This same reasoning applies to the defendant's alleged presence in the District of Columbia, which is premised on the plaintiff's activities at the Embassy of the Russian Federation and Russian Consulate for the purpose of complying with Russian legal requirements [FN13] that could be accomplished only at those facilities [FN14] and appear not to be for the purpose of soliciting business on behalf of the defendant. Fasolyak Aff. ¶¶ 9-12, 18-22. Thus, this Court is disposed to agree with my colleague that "it would not comport with due process for this Court to exercise general jurisdiction over [the defendant] because of its contacts with foreign embassies, as the District of Columbia is the only district in the country where these embassies are located." [FN15]

(C) 2008 West Group
Page 9
(Cite as: 2007 WL 2071644 (D.D.C.))

AGS Int'l Servs. S.A. v. Newmont USA Ltd., 346 F.Supp.2d 64, 76 (D.D.C.2004) (J. Walton). In a similar vein, the plaintiff's contacts with a United States senator are subject to the "government contacts" exception to the exercise of personal jurisdiction, which provides that contacts with federal agencies and instrumentalities located in the District of Columbia "will not give rise to personal jurisdiction." United States v. Ferrara, 54 F.3d 825, 831 (D.C.Cir.1995).

FN13. The plaintiff stated that he "had to make visits to and perform activities at the Embassy of the Russian Federation in Washington, D.C. and to meet with officials of the Russian government" to assist the defendant to obtain the accreditation required to conduct adoptions in Russia. Fasolyak Aff. ï 9. The plaintiff also stated that a Russian visa was required for adoptive parents and the defendant's employees to travel to the Russian Federation so he "made frequent trips to the Russian Consulate to meet--in Washington, D.C.--with Russian consular officers and process the required documents." Id. at ï 18-20. In addition, the plaintiff further stated that each Russian child must be registered at the Russian        Consulate as a matter of Russian law, so he and his agents "traveled to and from Washington, D.C. to obtain and submit the required documents, to meet with Russian consular officers, and to perform the required registrations." Id . ï 21.

FN14. This reasoning also likely applies to the plaintiff's meetings with Russian government officials, which the Court assumes from context probably were treated as something akin to lobbying efforts. Because the plaintiff's allegations regarding those meetings were conclusory and failed to provide specific facts identifying their purpose, they are untenable to demonstrate continuous or systematic business contacts consistent with Due Process.

FN15. The plaintiff stated in his affidavit that the Russian Consulate with territorial jurisdiction over Illinois is located in the District of Columbia, so the same reasoning applies to the defendant's activities at that institution as well. Fasolyak Aff. ï 18.

## II. The Plaintiff's Motion For Jurisdictional Discovery

The plaintiff requested leave to take jurisdictional discovery in the event the Court "considers the allegations and evidence submitted insufficient." Pl.'s Opp'n Br. 11. It is the rule in this circuit that "if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified." GTE New Media Servs., 199 F.3d at 1351. A plaintiff must, however, "have at least a good faith belief that such discovery will enable it to show that the court has

personal jurisdiction over the defendant." Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC, 148 F.3d 1080, 1090 (D.C.Cir.1998). Thus, it is not error to deny jurisdictional discovery when the record indicates there is nothing to be gained from the effort. See Goodman Holdings v. Rafidain Bank, 26 F.3d 1143, 1147 (D.C.Cir.1994) ("[W]e do not see what facts additional discovery could produce that would affect our jurisdictional analysis above and therefore conclude the district court did not abuse its discretion in dismissing the action when it did."). Accord Natural Res. Def. Council v. Pena, 147 F.3d 1012, (D.C.Cir.1998) (agreeing that jurisdictional discovery should be permitted "if allegations indicate its likely utility").

Unlike the cases in this circuit where plaintiffs made specific and nonspeculative allegations demonstrating that jurisdictional discovery might in fact lead to evidence supporting the exercise of personal jurisdiction, see, e.g., Edmond, 949 F.2d at 425-26, the plaintiff in this case offered nothing to support his request. He simply tacked on a one-sentence motion for discovery at the conclusion of his opposition brief without any explication about what he thought discovery might disclose with regard to likely contacts the defendant had with the District of Columbia or what information he thought might be gained from jurisdictional discovery that could possibly assist the Court in its analysis. The Court is loathe to subject a defendant to the costs and burdens of discovery, no matter how narrowly tailored, based on a plaintiff's naked assertion of entitlement. This is particularly so when, as is the case here, the jurisdictional facts already asserted have been conclusory and premised in large part on the plaintiff's unilateral acts rather than the defendant's purposeful contacts. Because the plaintiff made no showing whatsoever that jurisdictional discovery is warranted, the Court will deny the motion.

## III. The Pending Discovery Motions

**11** The Court's determination that it lacks personal jurisdiction over the defendant obviates the need for any ruling on the merits of the pending discovery motions.

## IV. Whether Transfer Pursuant To 28 U.S.C. §   1631 Is In The Interests Of Justice

28 U.S.C. §   1631 authorizes intercourt transfer when an originating court finds that it lacks jurisdiction and the interests of justice warrant such a result. 28 U.S.C. § 1631. "There are three elements to a section 1631 transfer: (1) there must be a lack of jurisdiction in the district court; (2) the transfer must be in the interest of justice; and (3) the transfer can be made only to a court in which the action could have been brought at the time it was filed or noticed." Ukiah Adventist Hosp. v. FTC, 981 F.2d 543,

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

(C) 2008 West Group
Page 10
(Cite as: 2007 WL 2071644 (D.D.C.))

549 (D.C.Cir.1992) (internal citations omitted). This Court has determined that it lacks personal jurisdiction over the defendant and, without expressing any opinion about the merits of the plaintiff's claims, the Court finds that the interests of justice warrant transfer so the plaintiff may proceed with his claims in an appropriate forum where he may be heard. The diversity of the parties and the defendant's status as a corporation organized under the laws of the State of Illinois, with its principal place of business there, suggest that the United States District Court for the Northern District of Illinois properly may exercise personal jurisdiction over the defendant, and could have done so at the time the plaintiff originally filed his claims. In addition, the contract between the parties stipulates that Illinois law shall govern the agreement. Compl. Ex. 1. The Court therefore finds that the interests of justice warrant transferring this case to the United States District Court for the Northern District of Illinois in accordance with 28 U.S.C. § 1631.

CONCLUSION

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over the defendant but that transfer to the United States District Court for the Northern District of Illinois is in the interests of justice. Accordingly, this case will be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1631. All other arguments not expressly considered are deemed to be without merit. An appropriate order consistent with this Memorandum Opinion will follow.

2007 WL 2071644 (D.D.C.)

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC, | ) ) ) | Civil No. 1:07-cv-01646 |
| | ) | Assigned to: Judge Rosemary M. Collyer |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| RICHARD (DICK) L. OLVER et al., | ) ) | |
| Defendants, | ) | |
| - and – | ) ) | |
| BAE SYSTEMS PLC, an England and Wales corporation, | ) ) | |
| | ) ) | |
| Nominal Defendant. | ) | |

## ORDER

Having considered the MEMORANDUM OF POINTS AND AUTHORITIES BY BAE

SYSTEMS PLC AND THE INDIVIDUAL BAE SYSTEMS PLC DEFENDANTS IN OPPOSITION

TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY LIMITED TO PERSONAL

JURISDICTION filed by Nominal Defendant BAE Systems plc and the Individual BAE Systems plc

Defendants Sir Robin Biggam, Sue Birley, Keith Clark Brown, Philip J. Carroll, Ulrich Cartellieri,

Sir Richard Harry Evans, Christopher V. Geoghegan, Michael J. Hartnall, Walter P. Havenstein, Lord

Alexander Hesketh, Andrew George Inglis, Ian G. King, Michael Lester, Sir Charles Beech Gordon

Masefield, Sir Peter James Mason, Steve Lewis Mogford, Richard (Dick) L. Olver, Michael Denzil

Xavier Portillo, Roberto Quarta, Mark H. Ronald, George W. Rose, Sir Anthony Nigel Russell Rudd,

Michael J. Turner, Peter A. Weinberg, and John Pix Weston, and all supporting and opposing filings

and arguments, it is ORDERED that

Plaintiff's Motion for Expedited Discovery Limited to Personal Jurisdiction is DENIED.


_____
Rosemary M. Collyer
United States District Judge

Dated: _____, 2008

## CERTIFICATE OF SERVICE

I certify that, besides having been filed and distributed electronically on the ECF system, copies of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES BY BAE SYSTEMS PLC AND THE INDIVIDUAL BAE SYSTEMS PLC DEFENDANTS IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY LIMITED TO PERSONAL JURISDICTION were sent on March 24, 2008, by First Class Mail, to the following counsel of record:

Patrick Coughlin
Mark Solomon
Mary K. Blasy
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway - Suite 1900
San Diego, California 92101

    Counsel for Plaintiff


Roger M. Adelman
1100 Connecticut Avenue, N.W. - Suite 730
Washington, D.C. 20036

    Counsel for Plaintiff


Jonathan W. Cuneo
William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C Street, N.E.
Washington, D.C. 20002

    Counsel for Plaintiff


Michael J. Vanoverbeke
Thomas C. Michaud
Vanoverbeke Michaud & Timmony PC
79 Alfred Street
Detroit, Michigan 48201

    Counsel for Plaintiff

Christopher T. Lutz
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036

    Counsel for Defendant The PNC Financial
    Services Group, Inc.


Eric M. Roth
Adir G. Waldman
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, New York 10019

    Of Counsel for Defendant The PNC Financial
    Services Group, Inc.


Richard L. Brusca
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005

Michael W. Mitchell
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

    Counsel for the Allbritton Defendants


Wm. Bradford Reynolds
Howrey, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

    Counsel for Defendant Prince Bandar bin Sultan


_Lawrence Byrne / JD_