UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOODS EMPLOYEES' RETIREMENT SYSTEM, Derivatively on behalf of BAE SYSTEMS PLC, | ) Civil No. 1:07-cv-01646 <br> ) <br> ) Assigned to: Judge Rosemary M. Collyer <br> ) |
| Plaintiff, | ) <br> ) ORAL ARGUMENT REQUESTED |
| vs. | ) <br> ) |
| RICHARD (DICK) L. OLVER, et al., | ) <br> ) |
| Defendants | ) <br> ) |
| - and - | ) <br> ) |
| BAE SYSTEMS PLC, an England and Wales Corporation, | ) <br> ) <br> ) |
| Nominal Defendant. | ) |

**PNC's AND THE ALLBRITTONS' REPLY
TO PLAINTIFF'S OPPOSITION
TO THEIR JOINT MOTION TO DISMISS**

Defendants The PNC Financial Services Group, Inc. ("PNC") and Joe, Barbara, and Robert Allbritton ("the Allbrittons") submit this Reply to plaintiff's April 23 Opposition to their January 31, 2008 Motion to Dismiss the claims against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

---

[1] PNC and the Allbrittons are separate, separately represented, parties. Their respective positions and submissions on other matters in this case may also be separate. Nonetheless, because the limited allegations in the Complaint against them differ only slightly, and because the issues affecting all of them are, in this instance, basically the same, they are submitting this Reply to avoid the Court's having to read the same arguments twice.

**Introduction**

The plaintiff's 90-page Opposition to the pending Motions to Dismiss is laced with invective, indignation, repetition, and long stretches of italicized, bold face type. It comes bearing over 1,000 pages of exhibits, hundreds of pages of foreign law, and a long expert affidavit. Bulk, however, is not merit or persuasion. And vivid punctuation is no substitute for accurate analysis. It is unfortunate that the plaintiff has burdened the Court with so much paper, because, in doing so, it has generated a massive cloudbank of smoke, but virtually no light.

The confusion generated by the Opposition is partly a product of its size and style. It offloads and quotes bits of newspaper articles, transcripts of congressional hearings, and other material having little to do with the claims here. Its legal discussion juggles and mixes cases and concepts, but never analyzes them precisely. Key points in the motions to dismiss are simply ignored. Furthermore, time and again, the Opposition is unreliable: It makes claims and recounts supposed facts that are not correct. In one instance, a statement is attributed to person who did not make it. The holdings of cases are stated inaccurately or incompletely. Exhibits are cited for support they do not provide. It is as if plaintiff's counsel decided to describe the law, background, and allegations in this case as it wished they were, but not as they actually are.

Some of these problems will be addressed in this reply. All cannot be answered within the applicable page limit, and trying to do so would simply add to the thicket of confusion the Opposition weaves. Far more important is re-emphasizing the issues truly at stake, by being clear and systematic about what the law and issues are, and what the Complaint alleges.

One more preliminary matter: A centerpiece of plaintiff's response to PNC's and the Allbrittons' Motion to Dismiss is to describe, repetitively and sometimes inaccurately,[2] the government inquiries and enforcement actions faced by Riggs Bank several years ago in connection with different depositors or transactions. Opp. at 1-2, 8-13, 73-74, 77-78. Perhaps plaintiff's counsel believe that, by trying to create an unfavorable impression of Riggs, they can secure a relaxed interpretation of the legal requirements for their claims against PNC and the Allbrittons. Or, perhaps they focus so much on these unrelated matters because they actually have nothing to allege suggesting that Riggs or the Allbrittons knowingly and substantially assisted the alleged BAE plc payments.

Whether intended or not, the Opposition's descriptions of Equatorial Guinea, Chile and non-BAE plc/Saudi transactions certainly sow confusion. At several points, the Opposition intermixes allegations from the Complaint about supposed BAE plc payments or Prince Bandar with short quotations from Congressional proceedings or news reports about different subjects. Opp. at 2,10-11, 73-74, 77-78, 81.   Such juxtaposition may create the impression that Congress looked into the Bandar/BAE plc relationship and criticized Riggs about it. That is simply not true. In the hundreds of pages of exhibits that the plaintiff attaches regarding investigations of Riggs, not a single syllable deals with BAE plc or payments to Prince Bandar for defense contracts. Like so much in the Opposition, plaintiff's breathless descriptions of past investigations of Riggs are colorful, but they have nothing to do with BAE plc, with this case, or with these claims – and they do nothing to advance a proper analysis of the law and issues.

Despite the fog generated by the Opposition, the issues on this motion to dismiss remain quite simple.  To state a claim against PNC and the Allbrittons for aiding and abetting, controlling District

---

[2] For example, and though the point has no relevance to the claims here, it is utterly false to say that "two of the 9/11 highjackers had Riggs accounts." Opp. at 9.

of Columbia law requires plaintiff to plead facts showing that these defendants "knowingly and substantially assist[ed] the principal violation" by the BAE plc Defendants.  Halberstam v. Welch, 705 F.2d 472, 477, 277 U.S. App. D.C. 167 (D.C. Cir. 1983).  But the Complaint alleges no such thing:  To the contrary, it alleges that Riggs "never knew the source of the funds" wired each quarter from an account in London to a Saudi government account at Riggs.  Complaint ¶¶ 13, 120 (emphasis supplied); see also Id. Ex. A at 2 (Riggs "discovered . . . large movements of money . . . that we could not understand" and was "never able to get . . . answers").  This allegation is fatally inconsistent with a claim for aiding and abetting liability.  And, since the alleged misconduct of the BAE plc Defendants, supposedly committed in the course of their work for BAE plc, must be imputed to the company as a matter of law, the plaintiff in this derivative case is in any event barred from recovery against PNC and the Allbrittons under the doctrine of *in pari delicto*.   The claims against PNC and the Allbrittons should be dismissed.

## Argument

I.      **Based on Foss v Harbottle, the Plaintiff Lacks Standing to Bring This Action Against Any of the Defendants.**

PNC and the Allbrittons will rely primarily on the BAE plc Defendants' Reply to explain the inadequacies in plaintiff's opposition to the fact that, under the rule in Foss v. Harbottle, which states the applicable English rule on derivative actions, plaintiff lacks standing to bring this case. Beyond relying on the BAE plc Defendants' arguments, PNC and the Allbrittons have the following additional Foss v. Harbottle observations:

First, the PNC/Allbritton Motion shows (Mem.[3] at 9) that if the plaintiff lacks standing to bring this derivative suit, it lacks standing to make claims on behalf of BAE plc against *anyone*, and

_____

[3] "Mem. at ___" refers to pages in the Memorandum of Points and Authorities in Support of PNC's and the Allbrittons' Joint Motion to Dismiss, filed January 31, 2008.

4

so the entire action should be dismissed. Plaintiff's Opposition does not respond to this point. It is thus conceded that if the rule in <u>Foss v. Harbottle</u> bars this action – and we believe it does – then the claims against PNC and Allbrittons must also be dismissed.

Second, the expert affidavit on which plaintiff relies for a statement of English law specifically says that, if English law governs the claims against the BAE plc Defendants, then the rule in <u>Foss v. Harbottle</u> unquestionably applies. Girolami Aff. at ¶ 6(2) and (3). This Court can thus disregard the plaintiff's repeated references to provisions in the 2006 Companies Act, and it can ignore the Opposition's descriptions of <u>Foss v. Harbottle</u> as "fuzzy," "old," "antiquated" "statutorily repealed," "outdated," "draconian," or "spurious." Opp. at 27, 32, 33, 50. Such pejorative characterizations are beside the point. The question is simply what law applies. Under the internal affairs doctrine and common sense, the standard for measuring the fiduciary duties of the directors of an English corporation and the rights of its shareholders to seek redress for the breach of those duties is the law of England. This in turn means, as plaintiff's English law expert agrees, that the rule in <u>Foss v. Harbottle</u>  governs plaintiff's standing to sue – regardless of plaintiff's opinion of it.

Finally, it is worth noting that there are only limited differences between the views of the BAE plc Defendants' expert on English law and those of plaintiff's expert. The 43-page broadside on <u>Foss v. Harbottle</u> in the Opposition (at 26-69) bears scant resemblance to the more measured analysis of plaintiff's own expert, and it obscures the few, relatively narrow areas of disagreement between the two sides' English law experts. The specifics of those differences, and what, if anything, they mean for plaintiff's ability to prosecute its derivative claims on behalf of BAE plc are addressed in the BAE plc Defendants' Reply. As before, PNC and the Allbritton defendants join in the BAE plc Defendants' argument that plaintiff lacks standing to sue under English law.  Rather than restate those arguments here, we note only that comparing the Opposition with plaintiff's expert's opinions

is yet another example of a recurrent problem with that submission: What the Opposition says bears little resemblance to the exhibits and authorities it cites as support.

## II. The Complaint Fails Adequately to Allege Aiding and Abetting Claims Against PNC and the Allbrittons.

### A. The Opposition is Wrong to Suggest That Aiding and Abetting Claims Can be Based on the Complaint's Allegations of Laxity, Inattention, or Negligence.

It is important to begin by clearly reviewing what the law on aiding and abetting is – and what it is not. The Opposition creates considerable confusion about that important subject.

If aiding and abetting is recognized as a tort in the District of Columbia,[4] both sides agree that Halberstam v. Welch, 705 F.2d 472, 477, 227 U.S. App. D.C. 167 (D.C. Cir. 1983) defines the elements of that cause of action. See Opp. at 70-71. Under Halberstam, a complaint must adequately plead

> (1)     that the party whom the defendant aided performed "a wrongful act that causes an injury";
>
> (2)     that the defendant was "generally *aware* of his role as part of an overall illegal or tortious activity at the time that he provide[d] the assistance"; and
>
> (3)     that "the defendant . . . *knowingly and substantially* assist[ed] the principal violation."
>
> Id. (emphasis added)

In light of the approach taken in the Opposition, it is worth stressing what should be obvious from Halberstam: A well-pled claim of aiding and abetting must allege facts supporting the inference that the defendant was *actually aware* of his role in an illegal or tortious scheme and

---

[4] The District of Columbia Court of Appeals recently emphasized in dictum that it has not "to date" recognized the tort of aiding and abetting. See Mem. at 13, n.12.

that he *actually knew* he was providing substantial assistance to it. No other construction of Halberstam is possible.

Despite this, plaintiff's Complaint alleges no facts indicating that PNC or the Allbrittons actually knew about the alleged BAE plc payment scheme to Prince Bandar. To the contrary, the Complaint adopts quotations from source material that says just the opposite – that Riggs "never knew the source of the funds" and "could not understand" and was "never able to get . . . answers" about the wire transfers at issue. Mem. at 2, 6-7, 8, 16-17, 22. Lest there be any issue that plaintiff's theory of the case is that Riggs was ignorant of the alleged bribery scheme, the Opposition repeats the Complaint's allegation that Riggs "never knew the source of the funds." Opp. at 2, quoting Complaint ¶ 13.

Given Halberstam's requirement that an alleged aider and abetter must be "aware" of its role in supposedly tortious or illegal activity and then provide "knowing" and "substantial" assistance to the wrongdoer, plaintiff's persistent failure to allege facts indicating such knowledge (and its allegation of facts indicating just the opposite) warrants dismissal. In tacit recognition of the fact that the Complaint's allegations do not satisfy Halberstam's requirements of awareness and knowledge, the Opposition takes another approach: It suggests new, but spurious, legal standards molded to fit Riggs's *lack* of knowledge and awareness. In doing so, the Opposition's discussion of aiding and abetting law is, to be charitable, all over the map.

For example: At one point, the Opposition seems to claim that there can be negligent or inattentive aiding and abetting. In the service of this idea, it offers short passages from cases which say that "'negligently fail[ing] to perform [one's] duty . . . establishes the wrongful act'" Opp. at 71, and that "aiding and abetting liability may flow from negligent conduct." Id. At another point, the Opposition says that it is sufficient to allege, not that the bank knew about the BAE plc payments, but

that it "knowingly operated with illegally lax banking controls" and should have known such alleged laxity could lead to misconduct by others. Opp. at 71, 73-74. At yet another point, the Opposition goes further, suggesting that it would be enough if PNC and the Allbrittons were "reckless or negligent in *not* knowing" they were assisting the BAE plc Defendants. Opp. at 72 (emphasis added). Following this, and despite <u>Halberstam</u>, the Opposition even once flatly says that the "plaintiff need not show knowledge." <u>Id</u>.

Based on this novel view of aiding and abetting law, the emphasis in the Opposition is not on what Riggs allegedly *did* know and do, but what it supposedly did *not* do. Thus, there are many references – none of them related to BAE plc – to supposedly "illegally lax" oversight of accounts and to the alleged failure to file reports with the government. The concept seems to be that a company can stumble into being an aider and abetter, even as to tortious activity that it was unaware of – or perhaps the idea is that, if a bank is allegedly very "lax," it will be an aider and abetter as to *any* misdeed involving money that moves through its accounts. Whatever the theory, it is wrong. The actual legal standards for aiding and abetting are different.

The first reason the Opposition's legal discussion is incorrect is fundamental: The <u>Halberstam</u> case itself. That case explicitly requires allegations of knowledge and awareness of the tortious activity, the defendant's role in it, and the substantial assistance provided. It cannot be squared with what the Opposition says.

Second, the cases cited in the Opposition on behalf of plaintiff's negligence or laxity theory do not support it. In using the term "negligence," those cases do not refer to the behavior of alleged aiders and abetters, but instead to the conduct of the primary wrongdoer  And, even where the

primary wrongdoer acts negligently, those cases require the sort of awareness of the tort and the knowing assistance also required by Halberstam.[5]

At some points, the Opposition mentions cases that say, as does Halberstam, that a "general awareness" of the primary wrongdoer's tortious behavior is sufficient. Opp. at 73, n.55. That is no help for the plaintiff: "awareness," whether general or not, is still awareness, which entails knowledge.[6] It is certainly not the same as ignorance by Riggs of the source and purpose of the alleged BAE plc payments, which is what the Complaint and the Opposition say existed here.

Finally, some of the Opposition's commentary on aiding and abetting law, such as the claim that it is enough to be "reckless or negligent in not knowing" (Opp. at 72) are based on nothing at all.[7] No authority is cited, and none exists. The final word on all this can appropriately be given to case on which the Opposition itself relies (at 75, n.57): "We stress that the requirement is actual knowledge . . . and therefore evidence establishing negligence, i.e., that a bank 'should have known'

---

[5] The Opposition (at 71-72) cites two "negligence" cases, but neither comes close to supporting the point seemingly made. One is Gould v. American Hawaiian Steamship Co., 535 F.2d 761, 779 (3d Cir. 1976). There, the "plaintiffs . . . urge[d] that Litton and Monroe were aiders and abettors in Casey's wrongdoing," and Casey's conduct involved "negligence," but "to sustain this charge, the plaintiffs would have the burden of proving . . . the alleged aiders and abettors' knowledge of it and their knowing and substantial participation in the wrongdoing." Id. at 779. In addition, the opinion notes that "allegations of knowledge that fall short of stating facts indicating actual knowledge are insufficient." Id. at 780. The other "negligence" case is Anderson v. Airco Inc., No. 02 C-12-091 (HDR), 2004 WL 2827887 (Del. Super. Ct. Nov. 30, 2004); there, too, the "negligence" mentioned was the conduct of the primary wrongdoer and not an aider and abettor, and there, too, aiding and abetting is said to require knowledge and substantial assistance. Id. at *4-*5.

[6] The same is true of cases cited for the proposition that "knowing inaction" can be "substantial assistance." Opp. at 72, citing Hurley v. Atlantic City Police Dept., 174 F.3d 95, 128 (3d Cir. 1999) Such conduct may be "inaction" but if it is "knowing" it involves a state of mind that the specific allegations in the Complaint here do not attribute to PNC or the Allbrittons.

[7] In addition, the Opposition (at 72-73) cites United States v. Nguyen, 493 F.3d 613 (5th Cir. 2007) for a concept called "deliberate ignorance," but Nguyen is a criminal case, deals with the requisite state of mind for direct criminal liability, and does not discuss civil aiding and abetting law.

will not suffice." <u>Aetna Cas. & Sur. Co. v. Leahey Const. Co.</u>, 219 F.3d 519, 536 (6th Cir. 2000) (emphasis added).[8]

In short: Despite the Opposition's advocacy of a different legal standard, a well-pled aiding and abetting claim here unquestionably requires allegations of fact that support the inference that Riggs actually knew about the BAE plc payment arrangement, knew that it was illegal or tortious, and knowingly and substantially assisted it. No such facts are alleged. In fact, as the next section shows, parts of the Complaint allege just the opposite – something the Opposition never even attempts to explain.

**B.     The Opposition Does Not Explain the Complaint's Allegations That PNC and the Allbrittons Did *Not* Know the Source or Purpose of the BAE plc Payments, and in Fact It Repeats Them.**

One of the central points made by the PNC/Allbritton Motion to Dismiss is that parts of the Complaint explicitly say that Riggs did *not* know the source or purpose of the alleged payments in issue here. Mem. at 2, 6-7, 8, 16-17, 22.  Such allegations are entirely inconsistent with the <u>Halberstam</u> standards for aiding and abetting claims.  A party cannot "knowingly and substantially" assist a payment scheme, know it is illegal, or be "aware" of it when, as the Complaint alleges, it did not know where the money came from or what it was for.

This point could not have been more prominent in the PNC/Allbritton Motion to Dismiss. The presentation plainly invited, even demanded, a response. But the Opposition says nothing. It never explains how plaintiff's own allegations of Riggs's ignorance can meet <u>Halberstam</u>'s requirements of

---

[8] The <u>Leahy</u> case also quotes <u>Camp v. Dema</u>, 948 F.2d 455, 459 (8th Cir. 1991) to the effect that "Negligence . . . is never sufficient" for an aiding and abetting claim. <u>Leahey</u>, 219 F.3d at 536.

knowledge and awareness. In fact, with an inaccurate addition, the Opposition *repeats* the allegation that Riggs did not know.[9]

The undeniable fact is that the *Newsweek* article quoted, and the BBC transcript incorporated by reference, in the Complaint completely undercut plaintiff's aiding and abetting claim. Those accounts of Mr. Caruso's statements, which plaintiff adopts as allegations of Riggs' state of mind, plainly say that Riggs did not know the source of, or the reason for, the transfers of funds. The Opposition has no answer for this -- it ignores the allegations in plaintiff's own Complaint.

The Opposition also ignores the fact that other media reports plaintiff submitted to the Court (in connection with its February ex parte TRO application) – the accuracy of which plaintiff's counsel vouched for at the hearing on that application[10] -- help explain why Riggs did not know the source of the funds: According to those sources, the arrangements to make the alleged bribes were contained in "secret annexes" to the al Yamamah contract, Blasy TRO Aff. Ex. B at 4, and the payments themselves were wired from "a special [UK] Ministry of Defence account run by the [UK] government banker, the paymaster general," rather than an account identified as a BAE plc account. Blasy TRO Aff. Ex. A. It is small wonder then that, when she appeared before this Court at the hearing on plaintiff's ex parte application for a TRO, plaintiff's counsel (Ms. Blasy) informed the Court that Riggs's former head of security (Mr. Caruso) had told the BBC that "he *couldn't*

---

[9] At 2, the Opposition quotes David Caruso, former Riggs compliance official as saying "*the rank and file at Riggs never asked* and 'never knew the source of funds'." As support, it cites Paragraph 13 of the Complaint and Exhibit A to the Complaint. Neither of those sources, however, says that anyone at Riggs "never asked." If anything, part of what Mr. Caruso <u>did</u> say – "What we discovered was clearly large movements of money . . . that we simply could not understand" (Complaint Ex. A at 3) – indicates that Riggs <u>did</u> ask. The italicized language is an invention, supported by nothing. Again, what the Opposition says and the support it offers do not match.

[10] See 2/5/08 Tr. at 6 (characterizing both *The Guardian* and the BBC as "very upstanding publications" that "would not print something . . . that had not been checked and cross checked").

*understand* why money was coming in from the Bank of New (sic) England." 2/5/08 Tr. at 6 (emphasis added).

In short, the Complaint, the Opposition, and plaintiff's counsel all agree: Riggs did not know where the payments in question were coming from or what they were for. More than that, it did not know "why money was coming from the Bank of . . . England," and there is no allegation that it had any reason to think funds originated with BAE plc. The Opposition simply ignores all this. It has no answer. It never explains how Riggs' *un*awareness of the source of or purpose for the transfers can possibly give rise to aiding and abetting liability under <u>Halberstam</u>. Of course, it cannot: plaintiff's admission that Riggs did not know these facts means that it has not pled the "knowing" and "substantial" assistance required by that case and warrants dismissal of their claims against PNC and the Allbrittons.

C.     **The Opposition Ignores Cases Applying Aiding and Abetting Standards to Banks.**

The aiding and abetting claims in this case are directed at a bank (PNC) and former bank executives (the Allbrittons). Given the particular functions performed by banks, and the regulatory environment they face, the PNC/Allbritton Motion included a discussion of many cases dealing with banks and other financial institutions charged with aiding and abetting. Mem. at 18–21. Those cases establish the following crucial points:

--     Ordinary banking services such as accepting deposits and making funds transfers (which is what the Complaint describes as the role played by Riggs) do not constitute the "substantial assistance" required by <u>Halberstam</u>. <u>Id</u>. at 18-19.[11]

--     Failure to file Suspicious Activity Reports and make similar filings also do not constitute "substantial assistance." <u>Id</u>. at 20–21.

_____

[11] At one point the Opposition says (at 80) that "PNC/Allbrittons proffer that . . . their alleged provision of 'normal banking services' somehow belies . . . substantial assistance . . . ." Of course, it is not PNC and the Allbrittons alone that "proffer" this, but also, and more important, several federal court decisions, all of which the Opposition ignores.

--      A bank's inattention, negligence, or failure to prevent a scheme from happening do not constitute adding and abetting and are not independently actionable under a negligence cause of action. Id. at 18.

Application of any one of these bank-specific principles to this case would support dismissal.

In response, the Opposition, again, says absolutely nothing.[12] The points, supported by substantial case authority, are simply ignored by the plaintiff, stand unrebutted, and mean that PNC and the Allbrittons' Motion should be granted.

**D.      The PNC/Allbritton Motion is Based on Rules 8 and 12(b)(6) and Not, As Opposition Claims, a Demand for "Trial Level Proof."**

Along with failing to address crucial arguments that PNC and the Allbrittons *did* make, the Opposition spends time on an argument that PNC and the Allbrittons did *not* make. This phantom argument is that PNC and the Allbrittons "insist" that "trial level proof" (Opp. at 6) is required at this stage. The Opposition even charges that PNC and Allbrittons expect the Complaint to "detail every instance of their misconduct," id. at 72, and to allege the "precise account numbers, dollars, and dates of [each] transfer." Id. at 75.

That is complete nonsense. Once more, the Opposition fails to cite anything supporting its charges, because there is nothing to support them. The PNC/Allbritton Motion to Dismiss does not begin to suggest that the plaintiff must prove its case at this point or explain the facts in great detail.

---

[12] The Opposition mentions two aiding and abetting decisions in which a bank was a defendant, but neither is comparable. One, Linde v. Arab Bank PLC, 384 F. Supp. 2d 571, 583-84 (E.D.N.Y. 2005), was a suit by relatives of victims of terrorism against a bank that was alleged to have known Hamas was a terrorist organization but that nevertheless provided various kinds of assistance to it, including the administration of a death and dismemberment insurance plan for suicide bombers. Id. at 576-77. There are no remotely similar allegations here. The other, Lerner v. Fleet Bank N.A., 459 F.3d 273, 278 (2d Cir. 2006), was a suit brought by bank depositors, the holders of trust accounts to whom the bank owed special duties, concerning the bank's assistance to a lawyer who orchestrated a Ponzi scheme; the allegations there, unlike those here, claimed out-of-the-ordinary assistance from bank employees to the lawyer including several changes in the bank's handling of checks it knew the lawyer had written on overdrawn trust accounts. Id. at 281-82. Again, nothing like that is alleged in this case.

Instead, it scrupulously limits its focus to the relatively few allegations in the Complaint that claim to explain how PNC and the Allbrittons were connected to the alleged BAE plc payment operation. See Mem. at 3-8. It then applies those allegations to the pleading standards under Rule 12(b)(6) especially as recently explained by Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007). Mem. at 10-11, 13-22. Based on that analysis, the Motion to Dismiss points out that the Complaint fails, among other things, to allege facts supporting the following inferences:

-- that Riggs knew funds were being supplied by BAE plc; in fact, it actually says Riggs did not know this;

-- that Riggs knew payments were being made to Prince Bandar by BAE plc in connection with arms sales; in fact, it alleges that Riggs did not know what the payments were for;

-- that Riggs knew BAE plc was engaged in illegal or tortious behavior; and

-- that Riggs offered substantial assistance by doing more than providing ordinary banking services.

These and other pleading deficiencies support dismissal under Rule 12(b)(6) – and not because plaintiff has failed to provide "trial level proof, " but because plaintiff has failed to plead facts essential to its claim.

**E.    Leave to Amend Should Not Be Granted.**

Plaintiff finally asks for leave to amend the Complaint. Opp. at 82. Having failed to plead an aiding and abetting case against PNC and the Allbrittons, plaintiff's counsel want more chances to stir around in the hope of finding something. As justification, they say their "Statement of the Case" provides "evidence . . . in the Congressional record" which shows what they "could" allege. Id. at 82, n. 60. But, as noted, nothing in all those pages of Congressional material has anything at all to do with BAE plc or the scheme alleged in the Complaint.

14

Rule 15(a) does indeed say that leave to amend should be "freely" granted, but it does not say it should be "always" permitted. In particular, leave to amend can properly be denied when amendments would be futile, frivolous, or offered in support of a defective legal theory. See Nat'l Wrestling Coaches v. U.S. Dept. of Education, 263 F. Supp. 2d 82, 103-04 (D.D.C. 2003); Graves v. United States, 961 F. Supp. 314, 317-18 (D.D.C. 1997); In Re Ampicillin Antitrust Litigation, 82 F.R.D. 647, 650 (D.D.C. 1979); Wright, Miller, and Kane, *Federal Practice and Procedure* §1487, at 637-42 (2d Ed. 1990 and 2008 Supp.).

Here, several such considerations support denial of leave to amend. First, as shown, it is already apparent that plaintiff has nothing to warrant re-pleading, since the Congressional material and other proceedings it cites as a source of amendments never mention the alleged BAE plc/Bandar payments. The fact is that plaintiff has put thousands of pages of paper before the Court, but it contains nothing suggesting that plaintiff will ever be able to fashion adequate allegations against PNC or the Allbrittons. Second, based on the Opposition's faulty analysis, any amendments would be in support of a meritless legal theory: Namely, the idea that a "lax" bank which "should have known" about an alleged bribery scheme can be held liable for negligently or inadvertently aiding and abetting that scheme – all of which is inconsistent with Halberstam. Finally, the plaintiff has already made allegations that rebut any claim of aiding and abetting – that Riggs never knew the source or purpose of the funds involved – and it stands by them in its Opposition.

## III.  The Doctrine of *In Pari Delicto* Bars Plaintiff's Claims Against PNC and the Allbrittons.

Contrary to what the Opposition says, federal courts routinely dismiss claims of aiding and abetting breaches of fiduciary duties when, as here, the Complaint shows that the officers and directors of the corporation on whose behalf suit was brought are chiefly responsible for the alleged misconduct.  The Opposition offer nothing dictating a different result. The Complaint clearly alleges

that the BAE plc Defendants and Prince Bandar were the sole architects of the alleged bribery scheme, and that they used Riggs and the Allbrittons to facilitate this scheme, with the bank as an unwitting "conduit" for the alleged payments. The Complaint itself thus ascribes the greater fault to the BAE plc Defendants. And, because the BAE plc Defendants' misconduct must be imputed to BAE plc as a matter of law, the *in pari delicto* defense requires dismissal of the claims against PNC and the Allbrittons.

### A.    Federal Courts Routinely Grant Motions to Dismiss on the Basis of *In Pari Delicto.*

Plaintiff's argument that the *in pari delicto* defense cannot be resolved on a motion to dismiss is simply wrong, as many cases show. Opp. at 83. A motion to dismiss may be granted where the Complaint sets forth allegations that conclusively demonstrate the applicability of an affirmative defense. Smith-Haynie v. District of Columbia, 332 U.S. App. D.C. 182, 155 F.3d 575, 578, (D.C. Cir. 1998). Federal appeals courts have thus repeatedly affirmed dismissal under Rule 12(b)(6) when the Complaint shows on its face the validity of the *in pari delicto* defense. See Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1151 (11th Cir. 2006); Nisselson v. Lernout, 469 F.3d 143, 158 (1st Cir. 2006); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 164 (2d Cir. 2003); Official Comm. of Unsecured Creditors v. R. F. Lafferty & Co., 267 F.3d 340, 358-60 (3d Cir. 2001); In re Dublin Securities, Inc. v. Hurd, 133 F. 3d 377, 380 (6th Cir. 1997). Courts in this circuit have also dismissed suits on that basis. Alberts v. Tuft (In re Greater Southeast Cmty. Hosp. Corp.), 353 B.R. 324, 369 (Bankr. D.D.C. 2006).[13] As shown below, this is such a case, and dismissal of Plaintiff's claims against PNC and the Allbrittons is therefore warranted.

_____

[13] Plaintiff carelessly cites Knauer v. Jonathon Roberts Fin. Group, 348 F.3d 230, 237 (7th Cir. 2003) for the proposition that courts should "postpone consideration of . . . *in pari delicto* until

**B.    The Face of the Complaint Here Conclusively Establishes the Applicability of the *In Pari Delicto* Defense.**

The Opposition wrongly asserts that the Complaint's allegations are insufficient to determine the applicability of the *in pari delicto* defense as a matter of law.  Opp. at 84-85.  In fact, the Complaint plainly alleges that the BAE plc Defendants and Prince Bandar alone conceived and initiated the supposed bribery scheme.  Specifically, it says the payments at issue "were explicitly bargained for and recognized at the outset of the [arms sale to the Saudi Arabian government] between BAE and the Saudis involved."  Compl. ¶ 115.  Consistent with this, it also says that "[Riggs] never knew the source of the funds" that were wired to the accounts maintained at Riggs by the Saudi government.  Compl. ¶ 120.

Because plaintiff's own allegations portray the BAE plc Defendants and Prince Bandar as the principal wrongdoers, while Riggs was unaware, the claims against PNC and the Allbrittons should be dismissed based on the *in pari delicto* defense.  See Pinter v. Dahl, 486 U.S. 622, 632 (1988) (*in pari delicto* defense applies when "plaintiff bore at least substantially equal responsibility for his injury"); Banco Industrial de Venezuela v. Credit Suisse, 99 F.3d 1045, 1051 (11th Cir. 1996) (noting that the court will not "help the equal or major wrongdoer who first caused the problem to recoup its losses.").

The Opposition tries to confuse matters by suggesting that, to decide the *in pari delicto* defense, the Court must weigh the relative culpability of the BAE plc Defendants, Prince Bandar and various "other entities."  Opp. at 87.  To rule on *this* motion, however, the Court need determine only the relative culpability of the BAE plc Defendants, on the one hand, and PNC and the Allbrittons, on the other.  This can easily be done simply by reviewing what the Complaint says. On the facts alleged

_____

the complaint is answered."  Opp. at 83, 84 n.62.  In fact, the Seventh Circuit affirmed the grant of a motion to dismiss in Knauer, holding that the doctrine of *in pari delicto* barred plaintiff's claims.  See 348 F.3d at 237.

there, the BAE plc Defendants and Prince Bandar are *in maiore delicto* ("at greater [alleged] fault") in this matter.

In addition, plaintiff has identified no applicable exceptions to the District's longstanding imputation rule, which requires the alleged misconduct of the BAE plc Defendants to be imputed to BAE plc. See Bowen v. Mount Vernon Sav. Bank, 70 App. D.C. 273, 105 F.2d 796, 799 (D.C. Cir. 1939). As noted in our opening brief, because the BAE plc Defendants were acting within the scope of their apparent authority when they allegedly permitted a bribery scheme, their conduct is imputed to BAE plc as a matter of law. See Alberts, 353 B.R. 359-60; see also Restatement (Second) of Agency § 257 (1958). Plaintiff cannot invoke the adverse interest exception to the imputation rule because its Complaint alleges that, far from being adverse to BAE plc, the BAE plc Defendants engaged in bribery as a means of securing $80 billion in defense contracts for the company. Compl. ¶¶ 8, 13, 113, 115, 120. Likewise, because the Complaint alleges that the BAE plc Defendants and Prince Bandar conceived of and initiated the alleged scheme, plaintiff cannot invoke the exception for third parties who use a company's agents "to further their own frauds upon the [company]." BCCI Holdings v. Clifford, 964 F. Supp. 468, 480 (D.D.C. 1997).[14]

### C.     The *In Pari Delicto* Defense is Appropriate in Cases Brought by Third Parties on Behalf of Companies.

The Opposition incorrectly argues that the *in pari delicto* defense can never be raised in a derivative action brought by "innocent" shareholders. Opp. at 6. In fact, that doctrine frequently bars cases brought by third parties on behalf of companies whose officers and directors have allegedly

---

[14] The Opposition claims that the *in pari delicto* defense must be "applied cautiously" here because there is a risk that PNC and the Allbrittons have "immunize[d] themselves from liability . . . by enlisting the help of an executive in the victim-corporation." Opp. at 87. But nothing in the Complaint supports that. To the contrary, plaintiff's own allegations clearly say that the BAE plc Defendants and Prince Bandar devised the alleged scheme and then "chose" and used Riggs and the Allbrittons. Those allegations plainly do not depict an unscrupulous third party suborning corporate insiders to perpetrate a fraud on a corporation. See, e.g., BCCI, 964 F. Supp. at 480.

engaged in misconduct. Specifically, the defense has been successfully invoked to preclude

bankruptcy trustees and corporate receivers from bringing suit on behalf of companies whose

shareholders and creditors played no role whatsoever in the malfeasance that led to the companies'

downfall. See Edwards, 437 F.3d at 1151 (11th Cir. 2006); Grassmueck v. Am. Shorthorn Ass'n,

402 F.3d 833, 837 (8th Cir. 2005); Nisselson, 469 F.3d at 158 (1st Cir. 2006); Color Tile, Inc., 322

F.3d at 164 (2d Cir. 2003); Dublin Securities, 133 F.3d at 380 (6th Cir. 1997); Alberts, 353 B.R. 324,

369 (Bankr. D.D.C. 2006). These cases uniformly reject the "innocent investor" argument, and

recognize instead that the imputation requirement contains no exception for cases brought for the

benefit of such investors. See, e.g., Baena v. KPMG LLP, 453 F.3d 1, 7, 10 (1st Cir. 2006) (rejecting

the argument that it would be inequitable to apply the *in pari delicto* defense against a bankruptcy

trustee bringing suit on behalf of "innocent" creditors and shareholders when "prior management was

at fault"). Because the alleged misconduct of the BAE plc Defendants must be imputed to BAE plc

as a matter of law, plaintiff, having stepped into BAE plc's shoes, is barred from bringing this

action.[15]

    The Opposition cites only two cases for the proposition that the *in pari delicto* doctrine is

inapplicable when shareholders sue on behalf of a company. Neither supports that position. Plaintiff

primarily relies on Scholes v. Lehmann, 56 F.3d 750 (7th Cir. 1995). But that case is irrelevant, at

best. In Scholes, the Seventh Circuit declined to apply the *in pari delicto* defense in a case that had

been brought by a court-appointed receiver for the benefit of "innocent investors." The court

concluded that the receiver should not be bound by the defense because the managers who had

---

[15] Plaintiff asserts that *in pari delicto* is "simply not available when a corporation brings an action against an insider." Opp. at 85. Although some courts have prohibited officers and directors from raising the *in pari delicto* defense because these "insiders" abused their positions to cause their companies to engage in frauds, see, e.g., In re Healthsouth Corp., 845 A.2d 1096, 1107 (Del.Ch. 2003), aff'd 2004 Del. LEXIS 175 (Del. Apr. 14, 2004), this rationale does not apply to PNC and the Allbrittons, who, after all, are not BAE plc "insiders."

executed the fraudulent Ponzi scheme had been ousted from the company. Id. at 754. Yet subsequent rulings – including some by the Seventh Circuit itself – have limited Scholes to situations involving the looting of a company through fraudulent conveyances.[16] See Knauer, 348 F.3d at 237 (distinguishing Scholes and affirming dismissal of claims brought by a bankruptcy trustee on *in pari delicto* grounds); Edwards, 437 F.3d at 1151 (distinguishing Scholes and noting that federal appeals courts unanimously agree that the *in pari delicto* defense applies to bankruptcy trustees even when they bring suit on behalf of innocent shareholders and creditors).

    This Circuit has also rejected the view that Scholes means that those who bring suit for the benefit of "innocent investors" are immune from defenses that would have applied had the company filed suit itself. See Goodman v. FCC, 337 U.S. App. D.C. 188, 182 F.3d 987, 991-92 (D.C. Cir. 1999) (noting that Scholes is merely a "straightforward application of the rule that a receiver has authority to bring a suit only if the entity in receivership could itself properly have brought the same action"). Curiously, the Opposition never mentions this long-standing precedent. Moreover, the only lower court in this Circuit to have considered the issue dismissed the Scholes rationale as "just plain wrong." Alberts, 353 B.R. at 366-67 (the court was "far from convinced" that the innocent successor theory announced in Scholes "holds water"). Again, the Opposition is curiously silent: It never mentions this aspect of Alberts. [17]

---

    [16] The Complaint nowhere alleges that the BAE Defendants have looted the company via fraudulent conveyances—nor could it. As previously noted, the bribery scheme (if it existed) was designed to enrich the company, not to loot it.

    [17]    Plaintiff's reliance on Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P., 906 A.2d 168 (Del. Ch. 2006), aff'd., 2007 Del. LEXIS 357 (Del. Aug. 14, 2007) is also misplaced. That case followed Scholes, which the Seventh Circuit and the this Circuit have limited to cases involving looting. Moreover, plaintiff's reliance on the Trenwick court's statement – in dicta – that the *in pari delicto* defense has never barred a shareholder derivative suit in Delaware is misleading because it incorrectly suggests that Delaware courts have actually considered and decided the issue that way. In fact, the only Delaware court to consider the availability of the *in pari delicto* defense in a derivative suit against a third party acknowledged the general availability of the defense in such suits, but

In sum, courts have dismissed plaintiff's argument because it is wrongly based on the idea that claims such as this are brought on behalf of third parties – when they are actually brought on behalf of the companies themselves. Plaintiff cannot avoid the fact that it has stepped into the shoes of BAE plc. It is therefore subject to the same defenses that could have been asserted against the company had it brought this action itself. See Goodman, 182 F.3d at 991; 13 Fletcher Cyc. Corp. § 5954.30, at 55-56 ("Since shareholders in derivative proceedings stand in the shoes of the corporation they are subject to the same affirmative defenses available against the corporation.").

> **D.      Public Policy Does not Prohibit Application of the *In Pari Delicto* Doctrine Here.**

Plaintiff fares no better with its argument that application of the *in pari delicto* defense in this case would frustrate "public policy." The Opposition mentions cases in which federal courts have declined, on public policy grounds, to invoke the defense because the suits before them were brought under federal statutes prohibiting certain conduct, such as anti-competitive behavior and securities fraud. Opp. at 87-88. Plaintiff's "public policy" argument thus lacks an essential precondition: the claims against PNC and the Allbrittons are predicated on the District's tort law, not a federal statute embodying special matters of public policy. And, as noted, federal courts have regularly invoked the *in pari delicto* defense in cases involving common law claims of tortious conduct.

Moreover, the cases on which plaintiff relies, particularly Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134 (1968), overruled on other grounds, Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752 (1984) and Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299 (1985), do not establish that the *in pari delicto* defense is per se inapplicable, even when federal statutes are involved. As the Eleventh Circuit recently noted, although the Supreme Court declined to apply the *in pari delicto* defense in these cases, the Court did so chiefly because plaintiffs were not

---

determined that its application was barred there by a federal statute. See Schleiff v. B&O R.R. Co., 130 A.2d 321, 352 (Del. Ch. 1955).

sufficiently implicated in the wrongdoing to be "of equal fault" with the defendants. Edwards, 437

F.3d at 1153-54. In Perma Life, for example, the Court found that the plaintiffs (franchisees who

brought suit against their franchisors for anticompetitive conduct) were not at fault because they were

mere passive participants in "illegal arrangements formulated and carried out by the [defendants]."

Perma Life, 392 U.S. at 139.[18] In light of this, the Eleventh Circuit held that the *in pari delicto*

defense barred a private lawsuit against the organizer of a Ponzi scheme under the Racketeer

Influenced and Corrupt Organizations Act (RICO), even though such a suit would have served the

"important public purpose" of combating securities fraud.[19] Edwards, 437 F.3d at 1153.

Unlike the plaintiffs in Perma Life and Bateman, plaintiff here is not seeking to vindicate an

overriding public policy.[20] In fact, public policy considerations weigh in favor of permitting PNC

and the Allbrittons to invoke the *in pari delicto* defense in circumstances such as these. Failure to

permit the assertion of the defense here would allow BAE plc – which, if the Complaint's allegations

are taken at face value, greatly benefited by securing one of the largest defense contracts of all time –

to benefit still further by recovering from unaware outsiders who, it is said, were used by BAE plc to

facilitate the scheme. See Edwards, 437 F.3d at 1155 (noting that it would be "anomalous" for the

---

[18] Similarly, in Bateman, the Court determined that plaintiffs (who had unwittingly received inside information from the defendants as part of a securities fraud scheme) were not as culpable as the defendants, who had "masterminded" the scheme. Bateman, 472 U.S. at 311-13.

[19] Plaintiff cites cases in which lower federal courts have declined to invoke the *in pari delicto* defense in cases involving federal RICO claims. Opp. at 87 n.65. In Edwards, however, the Eleventh Circuit rejected the rationale employed by these courts. See 437 F.3d at 1155.

[20] Indeed, courts have implicitly recognized the absence of a countervailing public interest in suits such as this by dismissing, on *in pari delicto* grounds, claims brought against third parties who allegedly assisted companies' efforts to defraud investors. See, e.g., Knauer, 348 F.3d at 237 (affirming dismissal of claims against third parties who allegedly facilitated a Ponzi scheme); Edwards, 437 F.3d at 1155-57 (same).

law to prohibit certain conduct while allowing the violator – through suit brought on its behalf – to seek damages from those who facilitated the violation).

Plaintiff implies that recognition of the *in pari delicto* defense in shareholder derivative suits would leave shareholders who are victimized by corporate wrongdoing bereft of a remedy.  Not so.  For example, if shareholders can satisfy the standards for pursuing a derivative claim arising out of alleged bribery, recognition of the *in pari delicto* defense will not prevent them from bringing derivative claims against the true alleged malefactors—the officers and directors who supposedly authorized the payment of bribes and the alleged ultimate recipients of bribe payments. These claims would not be barred by permitting an unwitting "conduit" for the alleged bribes to assert an *in pari delicto* defense.

## Conclusion

For the reasons stated here and in their Joint Motion to Dismiss, the claims against PNC and the Allbrittons should be dismissed.

Respectfully submitted,

STEPTOE & JOHNSON LLP

Christopher T. Lutz (D.C. Bar No. 204008)
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036
Telephone:    (202) 429-6440
Facsimile:    (202) 429-3902

Of Counsel:

WACHTELL, LIPTON, ROSEN & KATZ
Eric M. Roth
Adir G. Waldman
51 West 52nd Street
New York, New York 10019

23

Telephone:     (212) 403-1000
Facsimile:     (212) 403-2000

Counsel for The PNC Financial Services Group, Inc.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM
LLP

_____
Richard L. Brusca (D.C. Bar No. 366746)
1440 New York Ave. NW
Washington, D.C. 20005

Telephone:     (202) 371-7140
Facsimile:     (202) 661-8209

Of Counsel:

Michael W. Mitchell
Four Times Square
New York, New York 10036

Telephone:     (212) 735-3000
Facsimile:     (212) 735-2000

Counsel for the Allbrittons

Dated: May 23, 2008

## CERTIFICATE OF SERVICE

I certify that copies of the foregoing PNC's AND THE ALLBRITTONS' REPLY TO PLAINTIFF'S OPPOSITION TO THEIR JOINT MOTION TO DISMISS were filed and distributed electronically on the Court's ECF system on May 23, 2008, and were in that manner served on the following counsel:

Roger M. Adelman
1100 Connecticut Avenue NW – Suite 730
Washington, D.C. 20036

Counsel for Plaintiff


Darren J. Robbins
Mary K. Blasy
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway – Suite 1900
San Diego, CA 92101

Counsel for Plaintiff


Jonathan W. Cuneo
William H. Anderson
Cuneo Gilbert & LaDuca LLP
507 C St N.E.
Washington, D.C. 20002

Counsel for Plaintiff


Michael J. Vanoverbeke
Thomas C. Michaud
Vanoverbeke Michaud & Timmony PC
79 Alfred St.
Detroit MI 48201

Counsel for Plaintiff

Lawrence Byrne
Mary Warren
Linklaters LLP
1345 Avenue of the Americas
New York, New York 10105

       Counsel for BAE  Systems plc Defendants


Wm. Bradford Reynolds
Howrey, LLP
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

       Counsel for Prince Bandar bin Sultan

- 2 -