UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF HARPER WOOD EMPLOYEES' RETIREMENT SYSTEM, Derivatively on Behalf of BAE SYSTEMS PLC,<br>　　　　　　　　Plaintiff,<br><br>　　　vs.<br><br>RICHARD (DICK) L. OLVER et al.,<br>　　　　　　　　Defendants,<br>　　　-and-<br>BAE SYSTEMS PLC, an England and Wales corporation,<br>　　　　　　　　Nominal Defendant. | ) Civil No. 1:07-cv-01646<br>) Assigned to:<br>) Judge Rosemary M. Collyer<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### SECOND DECLARATION OF PAUL GIROLAMI QC

Pursuant to 28 U.S.C. § 1746, I, **PAUL JULIAN GIROLAMI QC** of Maitland Chambers, 7 Stone Buildings, Lincoln's Inn, London, England **DECLARE** as follows:-

1. I make this declaration to respond to Mr Moore's Supplemental Declaration dated 27 June 2008.

2. In my declaration of 23 April 2008 I, in effect, gave the answer "no" to the question whether, under English law before 1 October 2007, a simple majority of shareholders could ratify breaches of duty by the directors which consisted of their applying the company's money in making illegal or improper payments, and which were breaches

   (a) by them of the criminal law, including (but not limited to) breaches of the US Foreign Corrupt Practices Act, of the UK Prevention of Corruption Act 1906 as amended by the Anti-terrorism, Crime and Security Act 2001, and/or

1

    (b)    of their duty to their company which were otherwise fraudulent or involve dishonesty on the part of the Director Defendants, and/or

    (c)    in either case, were breaches of duty which were conscious and deliberate and were an abuse of their powers[1].

I shall not repeat here what I said in my earlier declaration. But notwithstanding Mr Moore's declaration in reply to my declaration, and his supplemental declaration of 27 June 2008, I adhere to my view.

3.    Mr Moore in his supplemental declaration answers "yes" to the slightly different question whether *"Under English company law, is an illegal act by a company director ratifiable by the shareholders?"* Although his formulation of the question might be thought to suggest otherwise, I take Mr Moore's view to be that *all* illegal acts by a company director are ratifiable by a simple majority, no matter what the quality of that illegal act, subject to one proviso. That proviso is that the illegal act must not be *ultra vires* the company (in the strict and narrow sense of being beyond the ability of the company itself to do the act) or a breach of the statute(s) to which the company owes its existence.

4.    Mr Moore's view, as I pointed out in my earlier declaration, is amongst other things inconsistent with the views expressed in the seven textbooks which I cited; the view of Lord Wedderburn in his well-known article; the view expressed by the Court of Appeal of the Northern Territory of Australia in <u>Australian Agricultural Co v Oatmont Pty</u> [1992] 8 ACSR 255; and the decision of the Irish Court of Appeal in <u>Cockburn v Newbridge Sanitary Steam Laundry Co Ltd and Llewellyn</u> [1915] 1 IR 237. The authorities which he cites as, he says, supporting his view and contradicting mine, in particular *Rolled Steel* and *Arab Monetary Fund,* only support him if one assumes the correctness of the proposition for which he contends.

---

[1] See in particular paragraph 18 and my discussion from paragraph 22 onwards.

5. Mr Moore makes observations in his declaration in reply to mine about the relative weight which might be attached to textbooks in the US and the UK. I am not sufficiently familiar with US practice in order to offer a view but I should make clear that the textbooks which I cited were not chosen because they were the only ones which supported my view and contradicted Mr Moore's, but because they are the leading English law textbooks in the field. There can be no doubt of their standing and persuasive authority. The current editors of *Gore-Brown* and *Buckley* for example are distinguished judges, practitioners and academics in the field. *Gore-Brown* has as it current editor-in-chief Lord Millett, whose learning in the area is unquestioned, and who has recently retired as a judge in the House of Lords, the UK's highest court. The scope of what is and is not ratifiable is a substantial point, and the passages which I have mentioned from the textbooks cannot I think be explained as the ossification of erroneous citation, as paragraph 22 of Mr Moore's declaration of 23 May 2008 might be taken as suggesting[2]. By contrast, Mr Moore does not identify any English textbook which adopts his very restrictive view.

6. Even the Law Commission report to which Mr Moore refers at paragraph 25(c) of that declaration, and which was concerned to highlight the undoubted deficiencies in the case-law in relation to *Foss v Harbottle*, does not to my mind really support Mr Moore's view. The last sentence of his quotation from the report drew attention to the fact that authority established that where a company proposed to do an illegal act which was not *ultra vires* in the narrow sense, a member may bring proceedings to restrain the company from so acting, and then continues "*but it is doubtful* whether he can bring proceedings to recover any loss which the company may suffer as a result without showing fraud on the minority."[3] It is impossible conscientiously to say that the point is free from doubt; but my view is that, if required to decide it, the court would not answer "yes" either to the question I posed at 2 above, nor to the question posed by Mr Moore at 3 above. It is conspicuous that the Law Commission report does *not* espouse Mr Moore's apparently doubt-free view that all illegal acts can be

---

[2] And, indeed, Mr Moore's suggestion that the point is a recent arrival in some textbooks – see paragraph 26 of his declaration of 23 May 2008 – appears to contradict this.

[3] My emphasis; and I have filled in the ellipsis contained in Mr Moore's quotation.

ratified by a simple majority[4]. It is difficult to see otherwise how the report could recognise that a minority shareholder may validly take proceedings to restrain an illegal act which is not *ultra vires*. I drew attention at the end of paragraph 24 of my earlier declaration to the apparent distinction (which seems to me unsound) between restraining the commission of an illegal act in advance and seeking damages after the event. It is not clear that Mr Moore has addressed this point or explained how the distinction is justified, perhaps because he takes the view, contrary to the Law Commission report, that a minority shareholder cannot pursue proceedings to restrain the commission of an illegal act unless it is also *ultra vires* or a breach of the statute(s) to which the company owes its existence.

7. Mr Moore does not question the status of Irish or Australian decisions as persuasive authority. As I understand him, he seeks to explain Oatmont either because the law in Australia is relevantly different or because the Court was contemplating a derivative action in respect of the postulated illegal acts which fell within the wrongdoer control exception. As to the former point, he does not elaborate how he says that Australian law is relevantly different; and the latter point cannot I think be the explanation: the discussion in this part of the Oatmont decision was specifically directed to when a minority shareholder might or might not maintain an action in respect of illegal acts, and that discussion would have been beside the point if the Court contemplated the wrongdoer control exception applying[5]. Mr Moore explains the difference between his view and the decision in Cockburn as perhaps being attributable to the difference between Irish law then and English law now in relation to *ultra vires*. But the Court in Cockburn expressly treated illegality and ultra vires as separate issues and overruled the Court below on the very point for which Mr Moore contends. It seems to me that Mr Moore really needs to say that Cockburn is wrong in relation to *illegality* and explain why. It is not clear that he does so.

---

[4] Subject to his proviso as I have called it at paragraph 3 above.
[5] Since it would apply whether or not the act concerned was illegal in this sense.

4

8. It is worth dwelling briefly on the second aspect of Mr Moore's proviso, namely that acts are not ratifiable by a simple majority which are contrary to the statutes to which the company owes its existence. It is not clear how far Mr Moore contemplates this second aspect extending. In one sense it is obviously true if confined to those things which statute provides that a company is simply incapable of (as opposed to prohibited from) doing either at all or without the fulfillment of certain conditions. But if so confined, it adds nothing of substance to *ultra vires* and highlights the extreme narrowness of Mr Moore's view. If not so confined, it appears to make the question of ratifiability depend upon the happenstance of whether the relevant prohibition is contained in a company law statute or not. So for example the carrying on of a company's business for any fraudulent purpose (including but not limited to defrauding creditors) is prohibited under company statutes, and a person knowingly involved in doing so commits a criminal offence[6]. It may be that Mr Moore would say that before 1 October 2007 a simple majority *could* absolve the directors from liability for their having knowingly caused the company to conduct business in that way, thereby throwing on the shareholders as a whole the burden of any liabilities or losses caused to the company for it having done so. If so, it seems it would be for the simple reason that, whatever the law or the shareholders may have contemplated as to the way the business should be conducted, one cannot say that it was not the company's act to carry on business in that way. If Mr Moore would say that a simple majority could *not* so absolve the directors, then it seems he would do so simply because the prohibition is in a Companies Act rather than another statute.

9. Finally I return to the observation that Mr Moore's reliance on *Rolled Steel* and *Arab Monetary Fund* in particular only support him if one assumes the correctness of the proposition for which he contends. I agree with Mr Moore that the effect of ratification is to render the wrongful act no longer a breach of duty to the company, but that it does not otherwise absolve the director for criminal liability or liability to third parties. The question of ratification arises of course *even if* the company is any event bound by and therefore legally responsible for the act in question (this is a point which arises

---

[6] Section 485 Companies Act 1985; section 993 Companies Act 2006;.

habitually in the context of principal and agent); and it is therefore a distinct question from whether the act is *ultra vires*. I also agree with Mr Moore that the ability to ratify is limited by the company's corporate capacity. But I do not agree that that is the *only* limit on the power of a simple majority to bind the minority. That is to my mind the crucial issue, and the so-called exceptions to *Foss v Harbottle* are concerned with the circumstances in which a simple majority may not bind the minority. *Rolled Steel* and *Arab Monetary Fund* do not help at all to resolve that question. Mr Moore himself accepts there are other limits on the power of the simple majority, since he acknowledges the existence of the super-majority exception. The question is whether English law would recognize another in relation to illegality. I think that it would. In the example which I have postulated at the end of paragraph 8 above, I do not think that a court would consider that a simple majority, even if wrongdoer control were absent, could absolve the directors so as to throw the loss onto the shareholders as a whole[7]. I also believe that the Court would answer "no" to the question which I have posed in paragraph 2 above.

I declare that under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 7th July 2008.

*[signature: Paul Girolami]*

Paul Julian Girolami QC

---

[7] My view does not depend, I should make clear, upon the prohibition being contained in a Companies Act. Nor have I overlooked the possibility of a minority shareholder showing unfair prejudice and being authorized by the Court to commence derivative proceedings accordingly; but it is not clear that this adds to the debate. Mr Moore would I think say (see in particular the last 2 paragraphs of his supplemental declaration) that there is not and cannot be anything unfair about a simple majority deciding to ratify the postulated or any illegality. I would say that in the circumstances I have described it would not be necessary to go down the unfair prejudice route to establish that a simple majority could not validly ratify.

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 7, 2008.

                        s/ MARY K. BLASY
                        MARY K. BLASY

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: maryb@csgrr.com

# Mailing Information for a Case 1:07-cv-01646-RMC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Roger M. Adelman**
  radelman@erols.com,lisamp@csgrr.com,tlatimer@csgrr.com,e_file_sd@csgrr.com

- **Mary K. Blasy**
  maryb@csgrr.com

- **Richard L. Brusca**
  rbrusca@skadden.com

- **Lawrence Byrne**
  larry.byrne@linklaters.com

- **Patrick J. Coughlin**
  patc@csgrr.com

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **Sterling Darling , Jr**
  sterling.darling@linklaters.com

- **Matthew John Herrington**
  mherrington@steptoe.com

- **James Neil Lombardo**
  nlombard@skadden.com,dlmlcwas@skadden.com

- **Christopher Talbott Lutz**
  clutz@steptoe.com

- **William Bradford Reynolds**
  ReynoldsW@howrey.com

- **Eric M. Roth**
  emroth@wlrk.com

- **Mark Solomon**
  marks@csgrr.com

- **Adir G. Waldman**
  awaldman@wlrk.com

- **Mary K. Warren**
  mary.warren@linklaters.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael W. Mitchell
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, NY 10036
```